# 25-3078-cr

# United States Court of Appeals

*for the*

## Second Circuit

❖

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

SHAWN PHILLIPS, JEFFREY NOVIS,

*Defendants,*

PHILIP PRIOLO,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## APPELLANT'S APPENDIX

ARTHUR L. AIDALA
LINO J. DE MASI
DIANA FABI
LAW OFFICES OF AIDALA, BERTUNA
& KAMINS, P.C.
*Attorneys for Defendant-Appellant*
546 Fifth Avenue, 6th Floor
New York, New York 10036
(212) 486-0011

CP COUNSEL PRESS    (800) 4-APPEAL • (393167)

i

## TABLE OF CONTENTS

**Page**

District Court Docket Entries ..................................... A-1

Indictment, November 9, 2021 .................................. A-26

Letter Response in Opposition,
    Filed January 24, 2025 ............................................ A-42

    Exhibit 6 to Letter –
    Email, dated August 22, 2014 ............................... A-53

Letter from Government,
    Dated January 10, 2025 ......................................... A-55

    Exhibit 1 to Letter –
    Justin Grant "Employees," 2000 ........................... A-70

    Exhibit 2 to Letter –
    Sweepstake Advisory Network Corporate Filing .. A-72

    Exhibit 3 to Letter –
    Evidence of Complaints to Sweepstake Advisory
    Network and Justin Grant ...................................... A-75

    Exhibit 4 to Letter –
    Sweepstake Advisory Network and Justin Grant
    Prize Notice Examples ........................................... A-98

Opinion and Order,
    Filed March 4, 2025 .............................................. A-114

Letter Motion in Limine Re: United States v. Priolo,
    Docket No. 21-CR-566 (NJC),
    Filed March 4, 2025 .............................................. A199

Letter Response in Opposition,
    Filed March 6, 2025 .............................................. A-201

**ii**

**Page**

Excerpts from the Minute Entry for Proceedings Held
    Before Judge Nusrat J. Choudhury,
        Dated March 7, 2025 ................................................    A-204

Letter Regarding Impeachment of Government
    Witnesses on Direct Examination as to
    Philip Priolo,
        Filed March 12, 2025 ..............................................    A-213

Letter Motion in Limine Regarding Cathy Johnson
    Testimony by Philip Priolo,
        Filed March 12, 2025 ..............................................    A-216

Excerpts for Minute Entry for Proceedings Held
    Before Judge Nusrat J. Choudhury,
        Dated March 13, 2025 .............................................    A-219

Judgment in a Criminal Case,
        Filed November 19, 2025 ........................................    A-249

Notice of Appeal,
        Filed December 5, 2025 ..........................................    A-257

A-1

APPEAL

# U.S. District Court
## Eastern District of New York (Central Islip)
## CRIMINAL DOCKET FOR CASE #: 2:21-cr-00566-NJC-3

Case title: USA v. Phillips et. al.

Date Filed: 11/09/2021

Date Terminated: 11/19/2025

Assigned to: Judge Nusrat J. Choudhury

**Defendant (3)**

**Philip Priolo**
*TERMINATED: 11/19/2025*

represented by **Arthur L. Aidala**
Aidala, Bertuna & Kamins, P.C.
546 Fifth Avenue
New York, NY 10036
212-486-0011
Email: aidalaesq@aidalalaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**James R. Froccaro**
20 Vanderventer Avenue
Suite 103W
Port Washington, NY 11050
(516) 944-5062
Fax: 516-944-5066
Email: jrfesq61@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Jonathan Isidor Edelstein**
Jonathan I. Edelstein
501 5th Ave
Suite 514
New York, NY 10017
212-871-0571
Email: jonathan.edelstein.2@gmail.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Michael T Jaccarino**
Aidala Bertuna & Kamins
546 5th Avenue
6th Floor
New York, NY 10036
718-238-9898

A-2

Email: jaccarino@aidalalaw.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Mitchell C Elman**
Law Offices of Mitchell C. Elman, P.C.
233 East Shore Road
Ste 210
Great Neck, NY 11023
516-586-6666
Fax: 516-345-2517
Email: mitchell@elmanlawny.com
*TERMINATED: 11/06/2024*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1349 and 3551 et seq. Conspiracy to Commit Mail Fraud and Wire Fraud (2) | Forty Two (42) Months of Custody on each count to run concurrently and Two (2) Years of Supervised Release on each count to run concurrently |
| 18:1341, 2 and 3551 et seq. Mail Fraud (3-6) | Forty Two (42) Months of Custody on each count to run concurrently and Two (2) Years of Supervised Release on each count to run concurrently |

**Highest Offense Level (Opening)**
Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level (Terminated)**
None

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

---

**Plaintiff**

| **USA** | represented by | **Ann F. Entwistle** |
| --- | --- | --- |
| | | U.S. Department of Justice Fraud Section/Criminal Division 1400 New York Ave NW Washington, DC 20005 202-305-3630 Fax: 202-514-3708 Email: ann.f.entwistle@usdoj.gov *LEAD ATTORNEY* |

A-3

*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*

**Charles B Dunn**
DOJ-Civ
Consumer Protection Branch
PO Box 386
Washington, DC 20044-0386
202-307-0066
Fax: 202-514-8742
Email: charles.b.dunn@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*

**Jason Feldman**
DOJ-Civ
450 5th Street NW
Washington, DC 20001
202-514-4320
Email: jason.b.feldman@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*

**Michael Murali**
DOJ-Civ
450 5th Street NW
Sixth Floor South
Washington, DC 20001
202-514-0324
Email: michael.murali@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/09/2021 | 1 | SEALED INDICTMENT as to Shawn Phillips (1) count(s) 1, 7-8, Jeffrey Novis (2) count(s) 1-2, 3-6, 7-8, Philip Priolo (3) count(s) 2, 3-6. (Attachments: # 1 Criminal Information Sheet, # 2 Sealing Cover Sheet) (Coleman, Laurie) (Entered: 11/10/2021) |
| 11/10/2021 | | Arrest of Philip Priolo in Southern District of Florida. (Florio, Lisa) (Entered: 11/15/2021) |
| 11/10/2021 | 5 | Rule 5(c)(3) Documents Received as to Philip Priolo. (Florio, Lisa) (Entered: 11/15/2021) |
| 11/15/2021 | 12 | MOTION to Unseal Case by USA as to Shawn Phillips, Jeffrey Novis, Philip Priolo. (Tirado, Chelsea) (Entered: 11/16/2021) |
| 11/15/2021 | 13 | ORDER granting 12 Motion to Unseal Case as to Shawn Phillips, Jeffrey Novis, Philip Priolo - WHEREFORE, it is ordered that the above-captioned matter in its entirety be unsealed. SO Ordered by Magistrate Judge Steven I. Locke on 11/15/2021. (Tirado, Chelsea) (Entered: 11/16/2021) |
| 11/15/2021 | | Case unsealed as to Shawn Phillips, Jeffrey Novis, Philip Priolo, INDICTMENT UNSEALED as to Shawn Phillips, Jeffrey Novis, Philip Priolo (Tirado, Chelsea) (Entered: 11/16/2021) |

A-4

| 11/16/2021 | 14 | NOTICE OF ATTORNEY APPEARANCE Charles B Dunn appearing for USA. (Dunn, Charles) (Entered: 11/16/2021) |
|---|---|---|
| 11/16/2021 | 15 | NOTICE OF ATTORNEY APPEARANCE: Mitchell C Elman appearing for Philip Priolo (Elman, Mitchell) (Entered: 11/16/2021) |
| 12/01/2021 | 19 | Notice of Related Case (Entwistle, Ann) (Entered: 12/01/2021) |
| 12/07/2021 | | ORDER REASSIGNING CASE as to Jeffrey Novis, Philip Priolo. Reassigned to Judge Joan M. Azrack. Judge Gary R. Brown no longer assigned to the case. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such.. Ordered by Chief Judge Margo K. Brodie on 12/6/2021. (Davis, Kimberly) (Entered: 12/07/2021) |
| 12/10/2021 | 20 | Letter *Requesting Travel* as to Philip Priolo (Elman, Mitchell) (Entered: 12/10/2021) |
| 12/10/2021 | 21 | Letter *Requesting Travel from FL to NY* as to Philip Priolo (Elman, Mitchell) Modified on 12/13/2021 to change event type to motion (Coleman, Laurie). (Entered: 12/10/2021) |
| 12/13/2021 | | ORDER granting 21 Motion to Travel as to Philip Priolo (3). Ordered by Judge Joan M. Azrack on 12/13/2021. (Posillico, Lauren) (Entered: 12/13/2021) |
| 12/17/2021 | | SCHEDULING ORDER as to Shawn Phillips, Jeffrey Novis, Philip Priolo - A telephone Status Conference is set for 1/5/2022 at 11:00 AM before Judge Joan M. Azrack. All parties shall dial 1-877-873-8017 and enter access code 4785432 at the prompt. Ordered by Judge Joan M. Azrack on 12/17/2021. (Posillico, Lauren) (Entered: 12/17/2021) |
| 12/22/2021 | 22 | Minute Entry for proceedings held before Magistrate Judge Steven Tiscione: Arraignment as to Philip Priolo (3) held on 12/22/2021. Case called. Counsel for all sides present. Arraignment on the indictment. Defendant enters a plea of Not Guilty. Order Setting Conditions of Release and Bond continued. Next Court appearance scheduled for January 5, 2022 before Judge Azrack. Defendant remains on bond. Arraignment and initial appearance in the Eastern District of New York. Counsel for both sides present. Defendant arraigned on the indictment and plead Not Guilty. Defendant waived a public reading of the Indictment. The Court, pursuant to Federal Rule of Criminal Procedure 5(f), reminded the Government of their disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963). Bond continued with conditions as set in the Southern District of Florida. (FTR Log #3:05-3:15.) (Florio, Lisa) (Entered: 12/22/2021) |
| 12/22/2021 | 23 | ORDER: This order is entered pursuant to Federal Rule of Criminal Procedure 5(f) to confirm the prosecution's disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, and to summarize the possible consequences of violating those obligations as to Philip Priolo. Ordered by Magistrate Judge Steven Tiscione on 12/22/2021. (Florio, Lisa) (Entered: 12/22/2021) |
| 01/05/2022 | 24 | MINUTE ENTRY for proceedings held before Judge Joan M. Azrack: Criminal Cause for STATUS CONFERENCE as to Jeffrey Novis, Philip Priolo held on 1/5/2022. Defendant Jeffrey Novis (2) present on bail with Tracey Gaffey, Federal Defender. Defendant Philip Priolo (3) present on bail with retained counsel Mitchell Elman. DOJ: Charles Dunne, Anne Entwistle. Courtroom Deputy: LMP. Case called. Counsel present for all sides. All parties consent to appear telephonically. Waiver of speedy trial entered; time excluded 1/5/2022 through 3/16/2022. A further status conference is scheduled before Judge Azrack for 3/16/2022 at 1:30 PM and will be held by telephone. All parties should dial 1-877-873-8017 and enter access code 4785432. Defendants remain on bond. Defendant Philip is a Canadian resident and the government is seeking extradition.at the prompt. (Court Reporter Lisa Schmid.) (Coleman, Laurie) (Entered: 01/05/2022) |

A-5

| 03/01/2022 | 25 | NOTICE OF ATTORNEY APPEARANCE: James R. Froccaro appearing for Philip Priolo (Froccaro, James) (Entered: 03/01/2022) |
|---|---|---|
| 03/03/2022 | 26 | MOTION for Protective Order by USA as to Shawn Phillips, Jeffrey Novis, Philip Priolo. (Attachments: # 1 Proposed Order) (Entwistle, Ann) (Entered: 03/03/2022) |
| 03/04/2022 | 27 | Protective Order as to Shawn Phillips (1), Jeffrey Novis (2), Philip Priolo (3). Ordered by Judge Joan M. Azrack on 3/4/2022. (Florio, Lisa) (Entered: 03/04/2022) |
| 03/16/2022 | 28 | MINUTE ENTRY for proceedings held before Judge Joan M. Azrack: Criminal Cause for STATUS CONFERENCE as to Shawn Phillips, Jeffrey Novis, Philip Priolo held on 3/16/2022. Defendant Shawn Phillips (1) not present. Defendant Jeffrey Novis (2) present on bail with LaKeytria Felder for Tracey Gaffey, Federal Defender. Defendant Philip Priolo (3) present on bail with retained counsel James Froccaro. DOJ: Charles Dunn, Ann Entwistle. Courtroom Deputy: LMP. Case called. Counsel present for all sides. All parties consent to appear telephonically. Waiver of speedy trial entered; time excluded from 3/16/2022 through 6/14/2022. A further status conference is scheduled before Judge Azrack for 6/14/2022 at 1:30 PM and will be held by telephone. All parties should dial 1-877-873-8017 and enter access code 4785432 at the prompt. defendants remain on bond. (Court Reporter Lisa Schmid.) (Coleman, Laurie) (Entered: 03/16/2022) |
| 06/09/2022 | | SCHEDULING ORDER as to Shawn Phillips, Jeffrey Novis, Philip Priolo - Due to a change in this Court's calendar, the telephone status conference scheduled for 6/14/2022 is ADVANCED to 10:30 AM. All parties shall dial 1-877-873-8017 and enter access code 4785432 at the prompt. Ordered by Judge Joan M. Azrack on 6/9/2022. (Posillico, Lauren) (Entered: 06/09/2022) |
| 06/14/2022 | 29 | MINUTE ENTRY for proceedings held before Judge Joan M. Azrack: Criminal Cause for STATUS CONFERENCE as to Shawn Phillips, Jeffrey Novis, Philip Priolo held on 6/14/2022. Defendant Shawn Phillip (1) not present. Defendant Jeffrey Novis (2) present on bail with Tracey Gaffey, Federal Defender. Defendant Philip Priolo (3) present on bail with John Rapaway for James Froccaro, retained. DOJ: Charles Dunn, Ann Entwistle. Courtroom Deputy: JG. Case called. Counsel present for all sides. All parties consent to appear telephonically. Waiver of speedy trial entered; time excluded from 6/14/2022 through 11/8/2022. A further status conference is scheduled before Judge Azrack for 11/8/2022 at 10 AM and will be held by telephone. All parties should dial 1-877-873-8017 and enter access code 4785432 at the prompt. Defendants remain on bond. OTHER: Discovery remains ongoing. Case marked as complex case. (Court Reporter Paul Lombardi.) (Coleman, Laurie) (Entered: 06/14/2022) |
| 11/08/2022 | 31 | MINUTE ENTRY for proceedings held before Judge Joan M. Azrack: Criminal Cause for STATUS CONFERENCE as to Shawn Phillips, Jeffrey Novis, Philip Priolo held on 11/8/2022. Defendant Shaw Phillips (1) not present. Defendant Jeffrey Novis (2) present on bail with Charles Millioen, Federal Defender. Defendant Phillip Priolo (3) present on bail with retained counsel James Froccaro. DOJ: Charles Dunn, Ann Entwistle. Courtroom Deputy: JG. Case called. Counsel present for all sides. All parties consent to appear telephonically. Waiver of speedy trial entered; time excluded from 11/8/2022 through 5/19/2023. A further status conference is scheduled before Judge Azrack for 5/19/2023 at 10 AM and will be held by telephone. All parties should dial 1-877-873-8017 and enter access code 4785432 at the prompt. Defendants Remain on Bond. OTHER: Government is still seeking extradition of the first defendant. Discovery remains ongoing. Case marked as complex case. A motion schedule will be set at the next conference. (Court Reporter ATT.) (LC) (Entered: 11/09/2022) |
| 12/09/2022 | 32 | MOTION to Travel by Philip Priolo. (Froccaro, James) (Entered: 12/09/2022) |

A-6

| 12/12/2022 | | ORDER granting 32 Motion to Travel as to Philip Priolo (3). Ordered by Judge Joan M. Azrack on 12/12/2022. (LP) (Entered: 12/12/2022) |
|---|---|---|
| 05/02/2023 | | SCHEDULING ORDER as to Shawn Phillips, Jeffrey Novis, Philip Priolo - **Due to a change in this Court's calendar, the telephone status conference scheduled for 5/19/2023 is ADVANCED to 5/18/2023 at 10:00 AM.** Dial-in remains the same. Ordered by Judge Joan M. Azrack on 5/2/2023. (LP) (Entered: 05/02/2023) |
| 05/16/2023 | | SCHEDULING ORDER as to Shawn Phillips, Jeffrey Novis, Philip Priolo - **In light of the expiration of the CARES Act, the telephone conference scheduled for 5/18/2023 at 10:00 AM is converted to an in-person conference before Judge Azrack in Courtroom 920 of the Long Island Courthouse.** Ordered by Judge Joan M. Azrack on 5/16/2023. (LP) (Entered: 05/16/2023) |
| 05/16/2023 | 33 | Letter *regarding waiver of defendant's appearance at May 18 status conference* as to Philip Priolo (Froccaro, James) (Entered: 05/16/2023) |
| 05/17/2023 | | ORDER as to Philip Priolo re 33 Letter - The defendant's appearance shall be waived. Ordered by Judge Joan M. Azrack on 5/17/2023. (LP) (Entered: 05/17/2023) |
| 05/18/2023 | 34 | Minute Entry for proceedings held before Judge Joan M. Azrack: CRIMINAL CAUSE FOR STATUS CONFERENCE. Defendant Shawn Phillips, not present. Defendant Jeffrey Novis, present on bail, with F.D. Tracey Gaffey for Charlies Millioen. Defendant Philip Priolo (app waived), not present on bail, with Counsel James Froccaro. DOJ: Charles Dunn. Status Conference held on 5/18/2023 at 10:00 AM. Waiver of speedy trial entered; time excluded from 5/18/2023 through 2/5/2024. Jury selection and trial is scheduled for 2/5/2024 at 9:30 AM before Judge Azrack. Defendants Remain on Bond. OTHER: Government indicates they will move to sever defendant Phillips. Complex case designation remains in place. (Court Reporter Lisa Schmid.) (GO) (Entered: 05/18/2023) |
| 08/06/2023 | 36 | MOTION to Travel by Philip Priolo. (Froccaro, James) (Entered: 08/06/2023) |
| 08/07/2023 | | ORDER granting 36 Motion to Travel as to Philip Priolo (3). Ordered by Judge Joan M. Azrack on 8/7/2023. (LP) (Entered: 08/07/2023) |
| 09/26/2023 | | ORDER granting 37 Motion to Continue as to Jeffrey Novis (2) ORDER TO CONTINUE - Ends of Justice as to Jeffrey Novis, Philip Priolo. Jury Selection and trial is rescheduled for 6/10/2024 at 9:30 AM before Judge Joan M. Azrack. Speedy trial time is waived through 6/10/2024. Signed by Judge Joan M. Azrack on 9/26/2023. (LP) (Entered: 09/26/2023) |
| 10/20/2023 | | Terminate Deadlines and Hearings as to Jeffrey Novis, Philip Priolo: terminated additional hearing date behind the scenes. (LP) (Entered: 10/20/2023) |
| 12/04/2023 | 39 | MOTION for Separate Trial on Counts Shawn Phillips (1) Count 1,7-8 and Jeffrey Novis (2) Count 1,7-8 by USA as to Shawn Phillips, Jeffrey Novis, Philip Priolo. (Entwistle, Ann) (Entered: 12/04/2023) |
| 12/18/2023 | 40 | RESPONSE to Motion re 39 MOTION for Separate Trial on Counts Shawn Phillips (1) Count 1,7-8 and Jeffrey Novis (2) Count 1,7-8 (Froccaro, James) (Entered: 12/18/2023) |
| 02/20/2024 | | SCHEDULING ORDER as to Jeffrey Novis, Philip Priolo - A Telephone Status Conference is set for 2/28/2024 at 11:00 AM before Judge Joan M. Azrack. A new trial date will be set at the conference. Counsel and defendants shall dial 1-877-873-8017 and enter access code 4785432 at the prompt. Ordered by Judge Joan M. Azrack on 2/20/2024. (LP) (Entered: 02/20/2024) |
| 02/28/2024 | 43 | MINUTE ENTRY for proceedings held before Judge Joan M. Azrack: Criminal Cause for STATUS CONFERENCE held on 2/28/2024. Defendant: Jeffrey Novis (2) present on |

| | | |
|---|---|---|
| | | bail. Defense Counsel: Charles Millioen, Federal Defender. Defendant: Philip Priolo (3) present on bail. Defense Counsel: James Froccarro, retained. DOJ: Charles Dunn, Ann Entwistle. Courtroom Deputy: LMP. Case called. Counsel present for all sides. Waiver of speedy trial entered; time excluded from 2/28/2024 through 1/6/2025. 42 motion to adjourn trial is granted. Jury selection and trial is re-scheduled for 1/6/2025 at 9:30 AM before Judge Azrack. Defendants remain on bond. OTHER: 39 motion for separate trial for Shawn Phillips is granted; Motion for Separate Trial on Counts Jeffrey Novis (2) Count 1,7-8 (2), Philip Priolo (3). If he appears in the United States before the scheduled trial date, the severance will be revisited. (Court Reporter Denise Parisi.) (LC) (Entered: 02/28/2024) |
| 02/28/2024 | | ORDER granting 39 Motion for Separate Trial on Counts Shawn Phillips (1) Count 1,7-8 as to Shawn Phillips (1), Jeffrey Novis (2), Philip Priolo (3). Ordered by Judge Joan M. Azrack on 2/28/2024. (LP) (Entered: 04/25/2024) |
| 04/02/2024 | 44 | MOTION to Travel by Philip Priolo. (Froccaro, James) (Entered: 04/02/2024) |
| 04/03/2024 | | ORDER granting 44 Motion to Travel as to Philip Priolo (3). Ordered by Judge Joan M. Azrack on 4/3/2024. (LP) (Entered: 04/03/2024) |
| 07/24/2024 | | Case as to Shawn Phillips, Jeffrey Novis, Philip Priolo reassigned to Judge Nusrat Jahan Choudhury. Judge Joan M. Azrack no longer assigned to the case. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (LF) (Entered: 07/24/2024) |
| 07/26/2024 | | Status Conference set for 9/5/2024 at 11:00 AM in Courtroom 1040 before Judge Nusrat Jahan Choudhury. Ordered by Judge Nusrat Jahan Choudhury on 7/26/2024. (BMM) (Entered: 07/26/2024) |
| 07/31/2024 | | Jury Selection and Trial set for 1/6/2025 at 10:00 AM in Courtroom 1040 before Judge Nusrat Jahan Choudhury. Ordered by Judge Nusrat Jahan Choudhury on 7/31/2024. (BMM) (Entered: 07/31/2024) |
| 08/21/2024 | | SCHEDULING ORDER as to Shawn Phillips, Jeffrey Novis, Philip Priolo: Due to a change in the Court's calendar, the 9/5/24 Status Conference is rescheduled for **October 30, 2024 at 11:30 AM** in Courtroom 1040. Ordered by Judge Nusrat Jahan Choudhury on 8/21/2024. (BMM) (Entered: 08/21/2024) |
| 10/25/2024 | 46 | MOTION to Compel *disclosure of advice-of-counsel defense* by USA as to Jeffrey Novis, Philip Priolo. (Entwistle, Ann) (Entered: 10/25/2024) |
| 10/26/2024 | | ORDER: The Court has received the government's Motion to Compel Defendants Jeffrey Novis and Philip Priolo to provide notice and discovery concerning any advice-of-counsel defense by November 6, 2024 (ECF No. 46 ). Novis and Priolo shall file any response in opposition by **November 1, 2024**. Ordered by Judge Nusrat J. Choudhury on 10/26/2024. (NB) (Entered: 10/26/2024) |
| 10/29/2024 | 50 | NOTICE OF ATTORNEY APPEARANCE Jason Feldman appearing for USA. (Feldman, Jason) (Entered: 10/29/2024) |
| 10/30/2024 | | Minute Entry for proceedings held before Judge Nusrat J. Choudhury: Status conference as to Jeffrey Novis and Philip Priolo held on October 30, 2024. AUSAs Ann Entwistle, Jason Feldman and Charles Dunn present. Defendant Novis present on bond with Federal Defender Charles Millioen. Defendant Priolo present on bond with retained counsel James Froccaro. Scheduling and briefing addressed on the record and will be set forth in a scheduling order to be issued by the Court. A competency hearing is scheduled for 12/11/2024 at 10:00 am in courtroom 1040. Jury selection and trial is rescheduled before |

A-8

| | | |
|---|---|---|
| | | Judge Choudhury to begin on 2/17/2025 at 9:00 am. (Court Reporter Lisa Schmid) (BMM) (Entered: 10/31/2024) |
| 10/31/2024 | | Terminate Deadlines and Hearings as to Philip Priolo: (BMM) (Entered: 10/31/2024) |
| 10/31/2024 | 51 | SCHEDULING ORDER: The parties shall comply with the deadlines for status reports, pretrial filings, and disclosures and filings in advance of the competency hearing set forth in the attached scheduling order. The parties shall additionally appear for a pre-trial conference on **February 11, 2025 at 12:00 PM** in the Alfonse D'Amato courthouse in Central Islip, Long Island, courtroom 1040. Ordered by Judge Nusrat J. Choudhury on 10/31/2024. (NB) (Entered: 10/31/2024) |
| 11/01/2024 | 52 | RESPONSE in Opposition re 46 MOTION to Compel *disclosure of advice-of-counsel defense - Joint Opposition by Jeffrey Novis and Philip Priolo* (Millioen, Charles) (Entered: 11/01/2024) |
| 11/04/2024 | 54 | Letter MOTION to Substitute/Terminate Attorney *requesting that prior counsel be terminated from docket* as to Philip Priolo (Froccaro, James) Modified event type from Letter to Motion on 11/5/2024 (AMF). (Entered: 11/04/2024) |
| 11/06/2024 | 55 | Letter *Concerning Discovery Matters Discussed at October 30, 2024 Status Conference* as to Shawn Phillips, Jeffrey Novis, Philip Priolo (Dunn, Charles) (Entered: 11/06/2024) |
| 11/06/2024 | | Order: In light of the fact that 2/17/2025 falls on a Federal Holiday, the jury selection and trial in this matter is rescheduled on 2/18/2025 at 9:00 am. The parties are invited to submit an amended waiver of speedy trial time until 2/18/2025 for the Court's endorsement. Ordered by Judge Nusrat J. Choudhury on 11/6/2024. (BMM) (Entered: 11/06/2024) |
| 11/06/2024 | | ORDER granting 54 Motion to Substitute Attorney as to Philip Priolo (3). Mitchell C. Elman Terminated. Ordered by Judge Nusrat Jahan Choudhury on 11/6/2024. (BMM) (Entered: 11/06/2024) |
| 11/08/2024 | 56 | REPLY TO RESPONSE to Motion re 46 MOTION to Compel *disclosure of advice-of-counsel defense* (Entwistle, Ann) (Entered: 11/08/2024) |
| 11/12/2024 | 57 | MOTION to Continue *Trial Until February 18, 2025, Filed Jointly With Philip Priolo* by Jeffrey Novis as to Shawn Phillips, Jeffrey Novis, Philip Priolo. (Millioen, Charles) (Entered: 11/12/2024) |
| 11/12/2024 | | Order: Telephone Conference set for 11/13/2024 at 2:30 PM before Judge Nusrat Jahan Choudhury. The parties are directed to call the Cisco Teleconferencing Center at (571) 353-2301 and to enter Access Code 981400071 when prompted. The Government is directed to provide the Court by November 13, 2024 at 10am any orders or transcripts setting forth the Court's ruling in the related case, United States v. Novis, 2:20-cr-00335 (E.D.N.Y), on any motion by the government for pre-trial disclosure of the advice of counsel defense and information supporting and/or undermining such a defense. To the extent that there was no motion practice or ruling on this issue in the related case, the Government shall file a letter with the Court indicating as such. Ordered by Judge Nusrat J. Choudhury on 11/12/2024. (BMM) (Entered: 11/12/2024) |
| 11/12/2024 | | ORDER: granting (ECF # 57 ) Joint Motion to Continue. The Defendants' joint motion for a waiver of speedy trial time is granted. Time is excluded from 11/12/2024 through 2/18/2025. Excluding this time is in the interest of justice as it will permit the parties to prepare for the 2/18/2025 trial. Ordered by Judge Nusrat J. Choudhury on 11/12/2024. (BMM) (Entered: 11/12/2024) |
| 11/12/2024 | | SCHEDULING ORDER: As trial is scheduled in this case to begin with jury selection on February 18, 2025, the government shall make its disclosures pursuant to Federal Rule of |

A-9

| | | |
|---|---|---|
| | | Criminal Procedure 16(G) of all expert witnesses -- with the sole exception of the clinician retained to evaluate Jeffrey Novis's competence to stand trial -- no later than **November 20, 2024**. As noted in the Court's prior order, the government's expert report and response to Mr. Novis's motion for a competency hearing is due on December 6, 2024. (ECF No. 51.)<br><br>The government shall ensure that any expert disclosures comply with the requirements of Rule 16(G), including the requirement to set forth "a complete statement of all opinions that the government will elicit from the witness in its case-in-chief" and "the bases and reasons for" each of those opinions. *See, e.g., United States v. Mrabet*, 703 F. Supp. 3d 442 (S.D.N.Y. 2023) (detailing the failure of the government's expert disclosures to comply with the requirements of Rule 16(G)(iii)). Ordered by Judge Nusrat J. Choudhury on 11/12/2024. (NB) (Entered: 11/12/2024) |
| 11/12/2024 | 58 | Letter *in Response to Court's Order* as to Shawn Phillips, Jeffrey Novis, Philip Priolo (Attachments: # 1 Exhibit) (Feldman, Jason) (Entered: 11/12/2024) |
| 11/13/2024 | | Minute Entry for proceedings held before Judge Nusrat J. Choudhury: Telephone conference and oral argument on the government's motion for pre-trial disclosure by the defense of the assertion of the advice-of-counsel defense and the derivative advice-of-counsel defense as to Jeffrey Novis and Philip Priolo held on November 13, 2024. AUSAs Ann Entwistle, Jason Feldman and Charles Dunn present. Federal Defenders Charles Millioen and Jason Feldman present on behalf of defendant Novis who is not present. Retained counsel James Froccaro present on behalf of defendant Priolo who is not present. Attorneys for defendants Novis and Priolo waive their clients' appearance for the purpose of this telephone conference. Discussion held on the record. Decision reserved. (Court Reporter Paul Lombardi) (BMM) (Entered: 11/13/2024) |
| 11/14/2024 | | Order: Telephone Conference set for 11/14/2024 at 4:15 PM before Judge Nusrat Jahan Choudhury. The parties are directed to call the Cisco Teleconferencing Center at (571) 353-2301 and to enter Access Code 981400071 when prompted. Ordered by Judge Nusrat Jahan Choudhury on 11/14/2024. (BMM) (Entered: 11/14/2024) |
| 11/14/2024 | | Minute Entry for proceedings held before Judge Nusrat J. Choudhury: Telephone conference on the government's motion for pre-trial disclosure by the defense of the assertion of the advice-of-counsel defense and the derivative advice-of-counsel defense and relevant privileged and otherwise protected information as to Jeffrey Novis and Philip Priolo held on November 14, 2024. AUSAs Ann Entwistle, Jason Feldman and Charles Dunn present. Federal Defenders Charles Millioen and Jason Feldman present on behalf of defendant Novis who is not present. Retained counsel James Froccaro present on behalf of defendant Priolo who is not present. Attorneys for defendants Novis and Priolo waive their clients' appearance for the purpose of this telephone conference. Rulings placed on the record. The Government's (ECF# 46 ) Motion is DENIED in part and a ruling on the remainder of the motion is RESERVED for the reasons stated on the record. The deadline to provide to the Court for in camera review the names of any attorneys who may be called in the event the defendant asserts an advice-of-counsel defense and derivative advice-of-counsel defense and all privileged or otherwise protected information that would support or undermine any such defenses is November 21, 2024 for defendant Priolo and December 18, 2024 for defendant Novis. (Court Reporter Paul Lombardi) (BMM) (Entered: 11/15/2024) |
| 11/27/2024 | | Telephone Conference as to defendant Novis set for 11/27/2024 at 3:00 PM. The parties are directed to call the Cisco Teleconferencing Center at (571) 353-2301 and to enter Access Code 981400071 when prompted. Ordered by Judge Nusrat Jahan Choudhury on 11/27/2024. (BMM) (Entered: 11/27/2024) |

A-10

| 12/12/2024 | | A telephone conference is scheduled on 12/16/2024 at 10:30AM. The parties are directed to call the Cisco Teleconferencing Center at (571) 353-2301 and to enter Access Code 981400071 when prompted. Ordered by Judge Nusrat Jahan Choudhury on 12/12/2024. (BMM) (Entered: 12/12/2024) |
|---|---|---|
| 12/12/2024 | 70 | Letter *(Joint) Regarding Scheduling of Continued Competency Hearing* as to Jeffrey Novis, Philip Priolo (Dahlberg, Jeffrey) (Entered: 12/12/2024) |
| 12/16/2024 | | Minute Entry for proceedings held before Judge Nusrat J. Choudhury: Telephone conference as to Jeffrey Novis and Philip Priolo held on December 16, 2024. AUSAs Ann Entwistle, Jason Feldman, and Charles Dunn present. Federal Defender Jason Feldman present on behalf of defendant Novis who is not present. Retained counsel James Froccaro present on behalf of defendant Priolo who is not present. Attorneys for defendants Novis and Priolo waive their clients' appearance for the purpose of this telephone conference. Rulings placed on the record. The Government's MOTION to Compel disclosure of advice-of-counsel defense as to Mr. Priolo (ECF# 46 ) is Denied for the reasons stated on the record today and during the November 14, 2024 conference with the parties. Decision is reserved as to defendant Novis. The December 18, 2024 deadline for Novis's submission of materials for in camera review relating to the government's Motion to Compel is adjourned.<br><br>The Court has reviewed the parties' Joint Letter Regarding Scheduling of Continued Competency Hearing. For the reasons stated on the record, the deadline for Novis's disclosure of any rebuttal expert submissions and motion to limit expert testimony under FRE 702-705 and the Daubert line of cases, if any, shall be filed by January 7, 2025. A continued competency hearing as to defendant Novis is scheduled before Judge Choudhury on January 14, 2025 at 10:00 am.<br><br>For the reasons stated on the record, the trials of defendant's Novis and Priolo are severed. The trial of defendant Novis is canceled without date.<br><br>Jury Selection and Trial as to defendant Priolo is scheduled to proceed on February 18, 2025 at 10am. The Government and Priolo shall abide by all dates set forth in the Scheduling Order (ECF No. 51 ).<br><br>(Court Reporter Paul Lombardi) (BMM) (Entered: 12/16/2024) |
| 12/23/2024 | | ORDER: For the reasons stated on the record at previous conferences, the Court makes the following rulings.<br><br>The Court denies the Government's Motion to Compel the Advice of Counsel Defense (ECF No. 46 ) as set forth on the record during the November 14, 2024 and December 16, 2024 conferences. (*See* Min. Entry, Nov. 14, 2024; Min Entry, Dec. 16, 2024.)<br><br>The Court denies the Motion for Discovery as to Jeffrey Novis (ECF No. 71 ) for the reasons set forth on the record during the November 27, 2024 conference. (*See* Min. Entry, Nov. 27, 2024.)<br><br>The Court grants the Motion for Discovery as to Jeffrey Novis (ECF No. 72 ) as set forth in the Court's December 2, 2024 Electronic Order. (Elec. Order, Dec. 2, 2024.)<br><br>The Court grants the Motion for a Continued Competency Hearing as to Jeffrey Novis (ECF No. 73 ) as set forth on the record during the December 11, 2024 competency hearing and the Court's December 16, 2024 teleconference.(*See* Min. Entry, Dec. 11, 2024; Min. Entry, Dec. 16, 2024.) |

A-11

| | | Ordered by Judge Nusrat Jahan Choudhury on 12/23/2024. (BMM) (Entered: 12/23/2024) |
|---|---|---|
| 12/30/2024 | | Terminate 1/6/25 Hearings as to Shawn Phillips, Jeffrey Novis, Philip Priolo: (BMM) (Entered: 12/30/2024) |
| 01/07/2025 | | Order: Telephone Conference set for 1/7/2025 at 4:00 PM. The parties are directed to call the Cisco Teleconferencing Center at (571) 353-2301 and to enter Access Code 981400071 when prompted. Ordered by Judge Nusrat Jahan Choudhury on 1/7/2025. (BMM) (Entered: 01/07/2025) |
| 01/07/2025 | | Minute Entry for proceedings held before Judge Nusrat J. Choudhury: Telephone conference as to Philip Priolo held on January 7, 2025. AUSAs Ann Entwistle, Jason Feldman, and Charles Dunn present. Retained counsel James Froccaro present on behalf of defendant Priolo who is not present. Attorney for defendant Priolo waives his client's appearance for the purpose of this telephone conference. Trial schedule discussed and parties are advise that the Court will not hold trial on Friday 2/21/2025. Recorded via Cisco Teleconference. (BMM) (Entered: 01/08/2025) |
| 01/10/2025 | 78 | MOTION in Limine by USA as to Shawn Phillips, Jeffrey Novis, Philip Priolo. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8) (Dunn, Charles) (Entered: 01/10/2025) |
| 01/13/2025 | 79 | MOTION for Extension of Time to File *Response in Opposition to Government's Motion* by Philip Priolo. (Froccaro, James) (Entered: 01/13/2025) |
| 01/14/2025 | | ORDER: The motion for an extension of time to file a response in opposition to the government's motion to introduce evidence pursuant to Rule 404(b), Fed. R. Evid., filed by counsel for Philip Priolo (ECF No. 79 ) is GRANTED because the request is timely, the government does not oppose the request, and counsel for Mr. Priolo has provided good cause. Mr. Priolo shall file any response in opposition to the government's 404(b) motion by **January 24, 2025**. All other deadlines set in the Court's October 31, 2024 scheduling order (ECF No. 51) remain as set, including the January 17, 2025 deadline for either party to file any other motions in limine. Ordered by Judge Nusrat J. Choudhury on 1/14/2025. (NB) (Entered: 01/14/2025) |
| 01/16/2025 | 80 | NOTICE OF ATTORNEY APPEARANCE Michael Murali appearing for USA. *Filter Team* (Murali, Michael) (Entered: 01/16/2025) |
| 01/16/2025 | 81 | MOTION in Limine by USA as to Philip Priolo. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit) (Feldman, Jason) (Entered: 01/16/2025) |
| 01/16/2025 | 82 | Letter *Confirming Government Technology Meeting* as to Philip Priolo (Feldman, Jason) (Entered: 01/16/2025) |
| 01/24/2025 | 85 | RESPONSE in Opposition re 78 MOTION in Limine *to introduce prior-act evidence* (Froccaro, James) (Entered: 01/24/2025) |
| 01/27/2025 | 86 | RESPONSE in Opposition re 81 MOTION in Limine *re: assertion of advice of counsel and derivative advice of counsel defenses* (Froccaro, James) (Entered: 01/27/2025) |
| 01/28/2025 | 87 | Letter *confirming meeting occurred with Courtroom Deputy re available equipment* as to Philip Priolo (Froccaro, James) (Entered: 01/28/2025) |
| 01/28/2025 | 90 | MOTION in Limine *for remote testimony* by USA as to Philip Priolo. (Entwistle, Ann) (Entered: 01/28/2025) |
| 01/28/2025 | 91 | RESPONSE to Motion re 90 MOTION in Limine *for remote testimony* (Froccaro, James) (Entered: 01/28/2025) |

| 01/29/2025 | 93 | MOTION in Limine *for Witness Immunity* by USA as to Shawn Phillips, Jeffrey Novis, Philip Priolo. (Attachments: # 1 Proposed Order Granting Immunity) (Dunn, Charles) (Entered: 01/29/2025) |
|---|---|---|
| 01/30/2025 | 94 | NOTICE OF ATTORNEY APPEARANCE: Jonathan Isidor Edelstein appearing for Philip Priolo (Edelstein, Jonathan) (Entered: 01/30/2025) |
| 01/30/2025 | 95 | REPLY TO RESPONSE to Motion re 78 MOTION in Limine (Dunn, Charles) (Entered: 01/30/2025) |
| 01/31/2025 | | Order: Telephone Conference set for 2/4/2025 at 2:00 PM. The parties are directed to call the Cisco Teleconferencing Center at (571) 353-2301 and to enter Access Code 981400071 when prompted. Ordered by Judge Nusrat J. Choudhury on 1/31/2025. (BMM) (Entered: 01/31/2025) |
| 02/03/2025 | 97 | Proposed Jury Instructions/Verdict Form by USA as to Philip Priolo, Proposed Voir Dire by USA as to Philip Priolo (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Proposed Verdict Sheet) (Feldman, Jason) (Entered: 02/03/2025) |
| 02/04/2025 | | ORDER: The government has submitted a Motion in Limine seeking to admit certain evidence at trial, including a judgment of conviction for Jeffrey Novis. (ECF No. 78 , ECF No. 78-5.) Exhibit 5 to the government's Motion contains personally identifying information that must be redacted pursuant to 49.1, Fed. R. Crim. P. The Clerk of Court shall redact the document at ECF No. 15 to case participants and parties only. Plaintiff shall refile the document located at ECF No. 78 with the proper redactions in accordance with Rule 49.1.

In addition, the Court has received an email from the government stating that the government has sent the Court PDFs and digital videos of its trial exhibits on a thumb drive and a CD via FedEx. Due to the Court's security procedures, the Court cannot accept evidence in this format. The government shall consult the Court's instructions on submitting evidence to the Court, which can be found at the website for the Eastern District of New York, https://www.nyed.uscourts.gov/content/attorney-instructions-submitting-evidence-court. The government can contact the Clerk of Court for any further questions regarding the filing of evidence. Once the government has submitted evidence in accordance with the Court's procedures, it shall file a letter to the Court on ECF so indicating. Ordered by Judge Nusrat J. Choudhury on 2/4/2025. (NB) (Entered: 02/04/2025) |
| 02/04/2025 | 98 | Notice of Request to Submit Electronic Evidence. as to Philip Priolo by USA. (Entwistle, Ann) (Entered: 02/04/2025) |
| 02/04/2025 | 99 | MOTION in Limine by USA as to Philip Priolo. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8) (Dunn, Charles) (Entered: 02/04/2025) |
| 02/04/2025 | 100 | Letter *Concerning Exhibits Relating to Conduct Occurring 2002 or Earlier* as to Philip Priolo (Dunn, Charles) (Entered: 02/04/2025) |
| 02/04/2025 | 101 | ORDER granting 93 Motion in Limine as to Shawn Phillips (1), Jeffrey Novis (2), Philip Priolo (3). Ordered by Judge Nusrat Jahan Choudhury on 2/4/2025. (BMM) (Entered: 02/04/2025) |
| 02/04/2025 | | Minute Entry for proceedings held before Judge Nusrat J. Choudhury: Telephone conference as to Philip Priolo held on February 4, 2025. AUSAs Ann Entwistle, Jason Feldman, and Charles Dunn present. Retained counsel James Froccaro and Jonathan Edelstein present on behalf of defendant Priolo who is not present. Attorney for defendant Priolo waives his client's appearance for the purpose of this telephone conference. |

A-13

| | | |
|---|---|---|
| | | Rulings placed on the record. Motion ECF# 81 concerning the derivative advice-of-counsel defense and Motion ECF# 93 concerning witness Cathy Johnson are granted for the reasons stated on the record. (Court Reporter Denise Parisi) (BMM) (Entered: 02/04/2025) |
| 02/05/2025 | | ORDER: The binders of exhibits the government provided to the Court contain an unredacted version of Jeffrey Novis's judgment of conviction, in the government's Proposed Exhibit No. 381. The government shall provide the Court with hard copies of the redacted versions of that exhibit to replace within the Court's trial binders, and shall review the copies of the exhibits it intends to introduce to ensure that the exhibits offered at trial redact personally identifying information as necessary pursuant to Fed. R. Crim. P. 49.1. Ordered by Judge Nusrat J. Choudhury on 2/5/2025. (NB) (Entered: 02/05/2025) |
| 02/05/2025 | | ORDER: At the conference in this matter on February 4, 2025, counsel for Defendant Philip Priolo indicated that Mr. Priolo may decide to file motions in limine with respect to some of the Section 3500 material the government disclosed to the defense this week. Any motions in limine with respect to this material shall be filed by **Monday, February 10, 2025 at Noon**. The government may file any response by **Thursday, February 13, 2025 at 5pm**. Ordered by Judge Nusrat J. Choudhury on 2/5/2025. (NB) (Entered: 02/05/2025) |
| 02/06/2025 | | ORDER: The parties shall appear for a final pre-trial conference on **February 14, 2025 at 1:00 PM** in the Alfonse D'Amato Courthouse, Courtroom 1040. Ordered by Judge Nusrat J. Choudhury on 2/6/2025. (NB) (Entered: 02/06/2025) |
| 02/07/2025 | 103 | Letter *Regarding Submission of Electronic Trial Exhibits* as to Philip Priolo (Entwistle, Ann) (Entered: 02/07/2025) |
| 02/07/2025 | 104 | TRIAL BRIEF by USA as to Philip Priolo (Dunn, Charles) (Entered: 02/07/2025) |
| 02/09/2025 | | ORDER: The Court received a letter via email from counsel for Philip Priolo, copying the government, requesting a two-week adjournment of the trial in this action. Counsel for Priolo shall file this motion for an adjournment on the electronic docket. The government shall file a letter by **February 10, 2025** providing the government's position on this adjournment request and indicating the availability of the government and its witnesses for trial during the weeks of March 3, 2025 and March 10, 2025. Ordered by Judge Nusrat J. Choudhury on 2/9/2025. (NB) (Entered: 02/09/2025) |
| 02/09/2025 | 105 | MOTION to Continue *or adjourn trial date* by Philip Priolo. (Froccaro, James) (Entered: 02/09/2025) |
| 02/10/2025 | 106 | Letter MOTION in Limine by Philip Priolo. (Edelstein, Jonathan) (Entered: 02/10/2025) |
| 02/10/2025 | | Order: The pre-trial conference scheduled before the undersigned on 2/11/2025 is converted to a Telephone Conference. The parties are directed to call the Cisco Teleconferencing Center at (571) 353-2301 and to enter Access Code 981400071 when prompted. Upon receipt of the government's response to the motion to adjourn trial, the court will make a further determination as to whether to reschedule the 2/11/2025 pre-trial conference. Ordered by Judge Nusrat J. Choudhury on 2/10/2025. (BMM) (Entered: 02/10/2025) |
| 02/10/2025 | 107 | RESPONSE in Opposition re 105 MOTION to Continue *or adjourn trial date* (Entwistle, Ann) (Entered: 02/10/2025) |
| 02/10/2025 | 108 | REPLY TO RESPONSE to Motion re 105 MOTION to Continue *or adjourn trial date* (Froccaro, James) (Entered: 02/10/2025) |

A-14

| 02/10/2025 | 109 | Proposed Jury Instructions/Verdict Form by USA as to Philip Priolo (Attachments: # 1 Exhibit) (Feldman, Jason) (Entered: 02/10/2025) |
|---|---|---|
| 02/10/2025 | | ORDER: The Motion to Continue the trial filed by Defendant Philip Priolo (ECF No. 105 ) is GRANTED in light of defense counsel's current, unexpected illness and fall substantiated by a note from a medical provider indicating that counsel will be cleared to resume work without restrictions on February 17, 2025. The trial currently scheduled for February 18, 2025 is rescheduled to begin on **March 10, 2025 at 10:00 AM**. The pretrial conferences scheduled for February 11, 2025 at 12:00 PM and February 14, 2025 at 1:00 PM are adjourned and will be rescheduled to take place sometime after February 18, 2025.<br><br>The parties are required to make any application for waiver of time between February 18, 2015 and March 10, 2025 under the Speedy Trial Act by February 11, 2025. Signed by Judge Nusrat J. Choudhury on 2/10/2025. (NB) (Entered: 02/10/2025) |
| 02/12/2025 | 113 | MOTION for Extension of Time to File Response/Reply as to 106 Letter MOTION in Limine by USA as to Philip Priolo. (Entwistle, Ann) (Entered: 02/12/2025) |
| 02/12/2025 | | Order: Granting (ECF # 113 ) Motion for Extension of Time to File Response/Reply as to 106 Letter MOTION in Limine by USA as to Philip Priolo. Ordered by Judge Nusrat J. Choudhury on 2/12/2025. (BMM) (Entered: 02/12/2025) |
| 02/12/2025 | | ORDER: The Court has received a letter from counsel for Philip Priolo consenting to an exclusion of time resulting from the adjournment of trial from February 18, 2025 to March 10, 2025 which states that it has been served on "All Counsel (Via ECF)" but which has been filed ex parte. (ECF No. 112 .) Counsel for Priolo shall refile this letter in a manner that provides notice to all counsel. Ordered by Judge Nusrat J. Choudhury on 2/12/2025. (NB) (Entered: 02/12/2025) |
| 02/13/2025 | 114 | Letter MOTION to Exclude *Time* by Philip Priolo. (Edelstein, Jonathan) (Entered: 02/13/2025) |
| 02/15/2025 | | Order: Granting (ECF 114 ) Letter MOTION to Exclude Time by Philip Priolo. On consent of the parties, time is excluded from 2/18/2025 through 3/10/2025. Ordered by Judge Nusrat J. Choudhury on 2/15/2025. (BMM) (Entered: 02/15/2025) |
| 02/18/2025 | 117 | Letter *regarding schedule for upcoming trial* as to Philip Priolo (Entwistle, Ann) (Entered: 02/18/2025) |
| 02/19/2025 | 118 | Letter *response to filter team motion* as to Philip Priolo (Edelstein, Jonathan) (Entered: 02/19/2025) |
| 02/20/2025 | 120 | RESPONSE to Motion re 106 Letter MOTION in Limine (Attachments: # 1 Exhibit 1, transcript excerpts) (Dunn, Charles) (Entered: 02/20/2025) |
| 02/20/2025 | | ORDER: The parties shall appear for a final pretrial conference on **February 27, 2025 at 1:00 PM** in the Alfonse D'Amato Courthouse, Courtroom 1040. Any additional pretrial conference(s) scheduled by the Court will be held via teleconference. The Court will hold trial on Friday, March 14, 2025. Ordered by Judge Nusrat J. Choudhury on 2/20/2025. (NB) (Entered: 02/20/2025) |
| 02/21/2025 | 121 | Consent MOTION to Take Deposition *Pursuant to Federal Rule of Criminal Procedure 15* by USA as to Philip Priolo. (Entwistle, Ann) (Entered: 02/21/2025) |
| 02/21/2025 | | ORDER: On February 12, 2025, the government filter team served notice of its Sealed Letter Motion for Authorization to Produce Records to Jeffrey Novis ("Novis") and Phillip Priolo ("Priolo") pursuant to Federal Rule of Evidence 502(d) (ECF No. 111-1) |

| | | |
|---|---|---|
| | | upon counsel for Novis, Priolo, Shawn Phillips ("Phillips") and the prosecution team. (ECF No. 116). The Court ordered that Novis, Priolo, and Phillips file any response to the filter team's Motion by February 19, 2025. (Elec. Order, Feb. 12, 2025.) Priolo filed a letter with the Court on February 19, 2025 and did not raise any objection to this disclosure. (ECF No. 118.) Novis filed a letter on February 19, 2025, stating that he agrees with the relief sought and joins the filter team in requesting disclosure of the 42 pages pursuant to an order that this disclosure will not waive Phillips's claim of privilege under Rule 502(d), Fed. R. Evid. (ECF No. 119.) Phillips has not responded. |
| | | The filter team's motion (ECF No. 111-1) is GRANTED. The filter team shall produce the 42 redacted pages, Exhibit G, to Novis and Priolo, but nothing in this Order or in the disclosure of these documents to Priolo and Novis shall be deemed to constitute a waiver of Shawn Phillips's privilege with respect to the disclosed documents. Signed by Judge Nusrat J. Choudhury on 2/21/2025. (NB) (Entered: 02/21/2025) |
| 02/21/2025 | | ORDER: The Court has reviewed the government's motion for an order authorizing the government to depose witness A.T. before trial and to offer her deposition testimony at trial pursuant to Rule 15, Fed. R. Crim. P., to which Defendant Philip Priolo consents. (ECF No. 121 ). The government's motion is GRANTED pursuant to Rule 15(h), Fed. R. Crim P. Ordered by Judge Nusrat J. Choudhury on 2/21/2025. (NB) (Entered: 02/21/2025) |
| 02/21/2025 | | ORDER: On February 19, 2025, counsel for Jeffrey Novis ("Novis") and Phillip Priolo ("Priolo") each filed letters in response to the government filter team's sealed motion (ECF Nos. 88, 89) requesting authorization to produce to the prosecution team four specific records as well as the defense's joint privilege log as modified by the filter team to include certain metadata. (ECF Nos. 118, 119.) In these letters, both Novis and Priolo stated that they do not object to the disclosure of these four documents to the prosecution team, "[w]ithout waiving any other claims of privilege" that they have asserted. (ECF Nos. 118, 119.) Novis further states that he "does not waive any objections to the relevance or admissibility of the documents at issue." (ECF No. 119.) Neither Priolo nor Novis requested that these documents be redacted prior to their disclosure to the prosecution team. |
| | | Accordingly, without opposition, the government filter team's sealed motion (ECF Nos. 88 , 89 ) is GRANTED. It is therefore ORDERED that: |
| | | 1) the government filter team shall produce SWE-PP-00001963, SWE-PP-00002325, SWE-PP-00002336, and SWE-PP-00002356 to the Prosecution Team by **February 22, 2025**; |
| | | 2) the government filter team shall supplement defendants' joint privilege log with the metadata fields shown in Exhibit D to the government filter team's motion (ECF No. 88-4) and shall provide that supplemented joint privilege log to the Prosecution team by **February 22, 2025**; |
| | | 3) the prosecution team shall file any motions they deem necessary to challenge defendants' privilege claims by **March 1, 2025**; and |
| | | 4) Priolo and Novis shall file any response by **March 7, 2025**. |
| | | Ordered by Judge Nusrat J. Choudhury on 2/21/2025. (NB) (Entered: 02/21/2025) |
| 02/21/2025 | 122 | Consent MOTION in Limine *for remote testimony* by USA as to Philip Priolo. (Entwistle, Ann) (Entered: 02/21/2025) |
| 02/21/2025 | | ORDER: Philip Priolo may file any memorandum in response to the government's Trial Memorandum (ECF No. 104) and/or any reply in support of Mr. Priolo's Motion in |

| | | |
|---|---|---|
| | | Limine (ECF No. 106) by **February 25, 2025**. Ordered by Judge Nusrat J. Choudhury on 2/21/2025. (NB) (Entered: 02/21/2025) |
| 02/24/2025 | | ORDER: The Court has reviewed the government's Motion in Limine for two witnesses, M.M. and P.P., to testify remotely at trial (ECF No. 122 ). Because Defendant Philip Priolo does not object to this Motion, the government's Motion is GRANTED. Ordered by Judge Nusrat J. Choudhury on 2/24/2025. (NB) (Entered: 02/24/2025) |
| 02/24/2025 | 123 | NOTICE *of Compliance with Court Orders* as to Shawn Phillips, Jeffrey Novis, Philip Priolo re Order on Motion to Produce,,,,,,,,,,,, Order on Motion to Produce,,,,,,,,,,,,,,,,,,,,,,, (Murali, Michael) (Entered: 02/24/2025) |
| 02/24/2025 | 124 | REPLY TO RESPONSE to Motion re 106 Letter MOTION in Limine (Edelstein, Jonathan) (Entered: 02/24/2025) |
| 02/27/2025 | | Minute Entry for proceedings held before Judge Nusrat J. Choudhury: Pretrial conference as to Philip Priolo held on February 27, 2025. AUSAs Ann Entwistle, Jason Feldman, and Charles Dunn present. Retained counsel James Froccaro and Jonathan Edelstein present on behalf of defendant Priolo who is not present. Attorney for defendant Priolo waives his client's appearance for the purpose of this conference. The Court heard argument on the parties' motions in limine. Rulings placed on the record and additional rulings are forthcoming in a written order. The parties are to provide supplemental submissions on certain issues identified on the record concerning the parties' motion in limine by February 28, 2025 at Noon. A further Pretrial Conference is scheduled before Judge Choudhury on 3/6/2025 at 2:30pm. (Court Reporter Paul Lombardi) (BMM) (Entered: 02/28/2025) |
| 02/28/2025 | 125 | RESPONSE in Opposition re 106 Letter MOTION in Limine *Concerning TRO (GX 168, 169)* (Attachments: # 1 Exhibit --emailed service of TRO) (Dunn, Charles) (Entered: 02/28/2025) |
| 02/28/2025 | 126 | RESPONSE in Support re 106 Letter MOTION in Limine *(Supplemental Argument)* (Attachments: # 1 Exhibit A: Alemitu Teshale Deposition) (Edelstein, Jonathan) (Entered: 02/28/2025) |
| 02/28/2025 | 127 | MOTION in Limine by USA as to Philip Priolo. (Attachments: # 1 Exhibit) (Feldman, Jason) (Entered: 02/28/2025) |
| 02/28/2025 | 128 | RESPONSE in Opposition re 106 Letter MOTION in Limine *, Letter identifying government exhibits as directed by the Court* (Dunn, Charles) (Entered: 02/28/2025) |
| 03/03/2025 | 129 | NOTICE *of Table Agent During Trial* as to Philip Priolo (Dunn, Charles) (Entered: 03/03/2025) |
| 03/04/2025 | 130 | For the reasons set forth in the attached Opinion and Order, the government's Motion in Limine (ECF Nos. 78 , 99 ) is GRANTED in part and DENIED in part, the government's Supplemental Motion in Limine to admit Alemitu Teshale's deposition testimony (ECF No. 127 ) is GRANTED, and Philip Priolo's Motion in Limine (ECF No. 106 ) is GRANTED in part and DENIED in part. <br><br> The government shall file a supplemental letter by **March 5, 2025** with proffers of the specific testimony it intends to elicit from each of the family members of alleged victims who will be called to testify at trial, other than Alemitu Teshale. The government shall identify the testimony it intends to elicit regarding: (1) statements from the alleged victims concerning their beliefs about the mailings they received; (2) any financial impact on the alleged victims beyond the direct payments that are allegedly attributable to Priolo and/or the Priolo-Novis entities; and (3) a breakdown of the money paid by each victim that is attributable to mailings by or on behalf of Priolo or Priolo-Novis entities and the |

| | | |
|---|---|---|
| | | losses attributable to other mailings.<br><br>The Court defers a ruling, at this time, on the admissibility of the particulars of the testimony from these witnesses.<br>Signed by Judge Nusrat J. Choudhury on 3/4/2025. (NB) (Entered: 03/04/2025) |
| 03/04/2025 | 131 | Letter MOTION in Limine *re Testimony of Thomas Ressler* by Philip Priolo. (Edelstein, Jonathan) (Entered: 03/04/2025) |
| 03/05/2025 | | ORDER: Defendant Philip Priolo shall file any response to the government's Notice that it intends to have Postal Inspector Timothy Ray be present in the courtroom during trial pursuant to Rule 615(a), Fed. R. Evid. (ECF No. 129 ) by **March 6, 2025 at 10:00 AM**. Ordered by Judge Nusrat J. Choudhury on 3/5/2025. (NB) (Entered: 03/05/2025) |
| 03/05/2025 | | ORDER: The government shall file a response to Philip Priolo's Second Motion in Limine to exclude the testimony of Thomas Ressler (ECF No. 131 ) by **March 6, 2025 at 10:00 AM**. In its response, the government shall proffer the specific testimony it intends to elicit from Ressler, including any testimony regarding Ressler's interactions with Priolo or any other connection the government intends to make between Ressler's testimony and Priolo. Ordered by Judge Nusrat J. Choudhury on 3/5/2025. (NB) (Entered: 03/05/2025) |
| 03/05/2025 | 132 | Letter *stating that defendant does not object to Postal Inspector Ray being present in the courtroom* as to Philip Priolo (Edelstein, Jonathan) (Entered: 03/05/2025) |
| 03/05/2025 | 133 | Letter *providing joint summary of charges for jury selection* as to Philip Priolo (Entwistle, Ann) (Entered: 03/05/2025) |
| 03/05/2025 | | Terminate Deadlines and Hearings as to Philip Priolo: (BMM) (Entered: 03/05/2025) |
| 03/05/2025 | 135 | Letter *regarding anticipated family-member witness testimony* as to Philip Priolo (Entwistle, Ann) (Entered: 03/05/2025) |
| 03/06/2025 | 136 | RESPONSE in Opposition re 131 Letter MOTION in Limine *re Testimony of Thomas Ressler* (Dunn, Charles) (Entered: 03/06/2025) |
| 03/06/2025 | | Minute Entry for proceedings held before Judge Nusrat J. Choudhury: Pretrial conference as to Philip Priolo held on March 6, 2025. AUSAs Ann Entwistle, Jason Feldman, and Charles Dunn present. Retained counsel James Froccaro and Jonathan Edelstein present on behalf of defendant Priolo who is not present. Attorney for defendant Priolo waives his client's appearance for the purpose of this conference. Discussion held on the record. A telephone conference is scheduled on 3/7/2025 at 3:00pm. The parties are directed to call the Cisco Teleconferencing Center at (571) 353-2301 and to enter Access Code 981400071 when prompted. (Court Reporter ToniAnn Lucartorto) (BMM) Modified on 3/7/2025 (BMM). (Entered: 03/06/2025) |
| 03/07/2025 | 137 | ORDER: The parties shall submit any objections or concerns regarding the attached jury questionnaire, Proposed Court Exhibit 1, by **Sunday, March 9, 2025 at 12:00 PM**. Ordered by Judge Nusrat J. Choudhury on 3/7/2025. (NB) (Entered: 03/07/2025) |
| 03/07/2025 | | Minute Entry for proceedings held before Judge Nusrat J. Choudhury: Final Pretrial Conference as to Philip Priolo held on March 7, 2025. AUSAs Ann Entwistle, Jason Feldman, and Charles Dunn present. Retained counsel James Froccaro and Jonathan Edelstein present on behalf of defendant Philip Priolo who was not present. Attorney for defendant Priolo waives his client's appearance for the purpose of this conference. Discussion held on the record. Rulings placed on the record. For the reasons stated on the record, the Court denies Priolo's motion in limine to preclude Thomas Ressler's testimony (ECF No. 131 ) and grants the government's Motion in Limine for Thomas Ressler to |

A-18

| | | |
|---|---|---|
| | | testify remotely (ECF No. 90 ). (Court Reporter ToriAnn Lucartorto.) (NB) (Entered: 03/07/2025) |
| 03/09/2025 | 138 | Proposed Jury Instructions/Verdict Form by USA as to Philip Priolo (Attachments: # 1 Exhibit, # 2 Proposed Verdict Sheet) (Feldman, Jason) (Entered: 03/09/2025) |
| 03/10/2025 | | Minute Entry for proceedings held before Judge Nusrat J. Choudhury: Jury Selection as to Philip Priolo held on March 10, 2025. Ann Entwistle, Jason Feldman and Charles Dunn present on behalf of the Government with Postal Inspector Christine Reins-Jarin. Retained counsel James Froccaro and Jonathan Edelstein present on behalf of defendant Philip Priolo who is also present. The Court began the process of jury selection. Jury selection will continue on March 11, 2025. (Court Reporters Denise Parisi, Lisa Schmid and ToniAnn Lucartorto) (BMM) (Entered: 03/14/2025) |
| 03/11/2025 | 141 | COURT EXHIBIT 1 Jury Questionnaire as to Defendant Philip Priolo. (CV) (Entered: 03/11/2025) |
| 03/11/2025 | 142 | COURT EXHIBIT 2 Verdict Form as to Defendant Philip Priolo. (CV) (Entered: 03/11/2025) |
| 03/11/2025 | | Minute Entry for proceedings held before Judge Nusrat J. Choudhury: Jury Selection as to Philip Priolo held on March 11, 2025. Ann Entwistle, Jason Feldman and Charles Dunn present on behalf of the Government with Postal Inspector Christine Reins-Jarin. Retained counsel James Froccaro and Jonathan Edelstein present on behalf of defendant Philip Priolo who is also present. Jury selection continues. Jury is selected and sworn. Jury Trial begins. Sworn testimony was heard from Sharon Soltis and Cheryl Jacquard. Trial will continue on March 12, 2025. (Court Reporters Denise Parisi, Lisa Schmid, Paul Lombardi and ToniAnn Lucartorto) (BMM) (Entered: 03/14/2025) |
| 03/12/2025 | | ORDER: The government shall file a letter no later than **tonight, March 12, 2025 at 10 PM** indicating whether Cathy Johnson's attorney will be present tomorrow during Ms. Johnson's anticipated testimony. Ordered by Judge Nusrat J. Choudhury on 3/12/2025. (NB) (Entered: 03/12/2025) |
| 03/12/2025 | 143 | Letter *regarding impeachment of government witnesses on direct examination* as to Philip Priolo (Entwistle, Ann) (Entered: 03/12/2025) |
| 03/12/2025 | 144 | Letter MOTION in Limine *regarding Cathy Johnson testimony* by Philip Priolo. (Edelstein, Jonathan) (Entered: 03/12/2025) |
| 03/12/2025 | 145 | Letter *regarding witness counsel* as to Philip Priolo (Entwistle, Ann) (Entered: 03/12/2025) |
| 03/12/2025 | | Minute Entry for proceedings held before Judge Nusrat J. Choudhury: Jury Trial as to Philip Priolo held on March 12, 2025. Ann Entwistle, Jason Feldman and Charles Dunn present on behalf of the Government with Postal Inspector Christine Reins-Jarin. Retained counsel James Froccaro and Jonathan Edelstein present on behalf of defendant Philip Priolo who is also present. Jury Trial continues. Sworn testimony was heard from Pamela Pence, Cheryl Jacquard, Ashley Seip, Marilyn Burks, and US Postal Inspector Joseph Bizzarro. Trial will continue on March 13, 2025. (Court Reporters Denise Parisi, Paul Lombardi and ToniAnn Lucartorto) (BMM) (Entered: 03/14/2025) |
| 03/13/2025 | | Minute Entry for proceedings held before Judge Nusrat J. Choudhury: Jury Trial as to Philip Priolo held on March 13, 2025. Ann Entwistle, Jason Feldman and Charles Dunn present on behalf of the Government with Postal Inspector Christine Reins-Jarin. Retained counsel James Froccaro and Jonathan Edelstein present on behalf of defendant Philip Priolo who is also present. Jury Trial continues. Sworn testimony was heard from Marlene Montilla, Cathy Johnson, and Mary Lilienkamp. Trial will continue on March |

| | | |
|---|---|---|
| | | 14, 2025. (Court Reporters Denise Parisi, Lisa Schmid and ToniAnn Lucartorto) (BMM) (Entered: 03/14/2025) |
| 03/14/2025 | | Minute Entry for proceedings held before Judge Nusrat J. Choudhury: Jury Trial as to Philip Priolo held on March 14, 2025. Ann Entwistle, Jason Feldman and Charles Dunn present on behalf of the Government with Postal Inspector Christine Reins-Jarin. Retained counsel James Froccaro and Jonathan Edelstein present on behalf of defendant Philip Priolo who is also present. Jury Trial continues. Sworn testimony was heard from Cathy Johnson. Trial will continue on March 17, 2025. (Court Reporters Denise Parisi and Paul Lombardi) (BMM) (Entered: 03/14/2025) |
| 03/15/2025 | | ORDER: Defendant Phillip Priolo's Motion in Limine to preclude testimony regarding witness Cathy Johnson's proffer agreement with the government and grant of immunity under 18 U.S.C. § 6003(b) (ECF No. 144 ) is denied for the reasons stated on the record during the jury trial on March 14, 2025, outside of the presence of the jury. Ordered by Judge Nusrat J. Choudhury on 3/15/2025. (NB) (Entered: 03/15/2025) |
| 03/16/2025 | | ORDER: The parties have included the following instructions in the Parties' Joint Requests to Charge: (1) "Puffery is an exaggerated, blustering, or boastful statement upon which no reasonable buyer would be justified in relying." (2) "If the defendant believed in good faith that he was acting properly, even if he was mistaken in that belief, and even if others were injured by his conduct, there would be no crime." By Monday, March 17, 2025 at Noon, the parties shall provide legal authority in the mail or wire fraud or conspiracy to commit mail or wire fraud context for the two aforementioned proposed instructions. Ordered by Judge Nusrat J. Choudhury on 3/16/2025. (NB) (Entered: 03/16/2025) |
| 03/17/2025 | 147 | Letter as to Philip Priolo (Attachments: # 1 Exhibit, # 2 Exhibit) (Feldman, Jason) (Entered: 03/17/2025) |
| 03/17/2025 | 148 | Letter *regarding Request to Charge* as to Philip Priolo (Edelstein, Jonathan) (Entered: 03/17/2025) |
| 03/17/2025 | | ORDER: The parties shall comply with the following modified schedule for the charging conference tomorrow, March 18, 2025. Defendant Philip Priolo and all counsel for the parties, with the exception of Mr. James Froccaro, shall appear **in person on March 18, 2025 at 9:15 AM** in the Alfonse D'Amato Courthouse, Courtroom 1040. Mr. Frocarro shall attend the entire conference via telephone and is directed to provide his co-counsel with his contact telephone number so the Court can initiate the call.To be clear, all counsel and Mr. Priolo shall participate in the charging conference, and only Mr. Froccaro may appear by telephone. Ordered by Judge Nusrat J. Choudhury on 3/17/2025. (NB) (Entered: 03/17/2025) |
| 03/17/2025 | | ORDER: The Court has received a request sent via email by defense counsel Jonathan Edelstein requesting to appear telephonically at the charge conference tomorrow. Any application to the Court shall be filed on the Court's docket, not merely sent via email to Chambers. At least one attorney for the defense is directed to appear in person at tomorrow's charge conference to be present with the defendant, Philip Priolo. Ordered by Judge Nusrat J. Choudhury on 3/17/2025. (NB) (Entered: 03/17/2025) |
| 03/17/2025 | | Minute Entry for proceedings held before Judge Nusrat J. Choudhury: Jury Trial as to Philip Priolo held on March 17, 2025. Ann Entwistle, Jason Feldman and Charles Dunn |

| | | |
|---|---|---|
| | | present on behalf of the Government with Postal Inspector Christine Reins-Jarin. Retained counsel James Froccaro and Jonathan Edelstein present on behalf of defendant Philip Priolo who is also present. Jury Trial continues. Sworn testimony was heard from Cathy Johnson, Thomas Ressler and Postal Inspector Christine Reins-Jarin. The Government and defendant rests. Defendant made a motion for judgment of acquittal under Fed. R. Crim. Proc. 29 orally. Decision reserved. Charging conference scheduled on March 18, 2025 at 9:15 am. Mr. Froccaro is permitted to appear via telephone. Trial will continue on March 19, 2025 at 9am. (Court Reporters Denise Parisi, Lisa Schmid and Marie Foley) (BMM) (Entered: 03/19/2025) |
| 03/18/2025 | 150 | ORDER: Attached is the jury charge in this action redlined to reflect the Court's resolution of issues raised by the parties during the Charge Conference on March 18, 2025 at 9:15 AM. Ordered by Judge Nusrat J. Choudhury on 3/18/2025. (NB) (Entered: 03/18/2025) |
| 03/18/2025 | | Minute Entry for proceedings held before Judge Nusrat J. Choudhury: Charging Conference as to Philip Priolo held on March 18, 2025. Ann Entwistle, Jason Feldman and Charles Dunn present on behalf of the Government. Retained counsel James Froccaro appears via telephone. Retained counsel Jonathan Edelstein present on behalf of defendant Philip Priolo, who is also present. Trial will continue on March 19, 2025 at 9am. (Court Reporters Lisa Schmid) (BMM) (Entered: 03/20/2025) |
| 03/19/2025 | | Minute Entry for proceedings held before Judge Nusrat J. Choudhury: Jury Trial as to Philip Priolo held on March 19, 2025. Ann Entwistle, Jason Feldman and Charles Dunn present on behalf of the Government with Postal Inspector Christine Reins-Jarin. Retained counsel James Froccaro and Jonathan Edelstein present on behalf of defendant Philip Priolo who is also present. Jury Trial continues. The parties presented their summations. The Jury was charged and began deliberations. The jury reached a verdict of guilty of Conspiracy to Commit Mail and Wire Fraud as to Count One, Guilty to Mail Fraud as to Count Two, Guilty to Mail Fraud as to Count Three, Guilty to Mail Fraud as to Count Four, and Guilty to Mail Fraud as to Count Five. Jury Polled. Jurors excused and Jury Trial concluded. Parties agree to Defendant's continued release on the same conditions as pre-trial release. Sentencing is scheduled before the undersigned on 9/17/2025 at 11:30am. Defendant released on bond with consent of all parties. (Court Reporters Lisa Schmid Paul Lombardi and ToniAnn Lucatorto) (BMM) (Entered: 03/20/2025) |
| 03/19/2025 | 152 | COURT EXHIBIT 3 Jury Letter as to Defendant Philip Priolo. (CV) (Entered: 03/20/2025) |
| 03/19/2025 | 153 | COURT EXHIBIT 4 Jury Charge as to Defendant Philip Priolo. (CV) (Entered: 03/20/2025) |
| 03/19/2025 | 154 | COURT EXHIBIT 5 Jury Note as to Defendant Philip Priolo. (CV) (Entered: 03/20/2025) |
| 03/19/2025 | 155 | COURT EXHIBIT 6 Jury Note as to Defendant Philip Priolo. (CV) (Entered: 03/20/2025) |
| 03/19/2025 | 156 | COURT EXHIBIT 7 Jury Verdict Form as to Defendant Philip Priolo. (CV) (Entered: 03/20/2025) |
| 03/19/2025 | | JURY VERDICT (Court Exhibit 7) as to Defendant Philip Priolo (3) Guilty on all Counts. (CV) (Entered: 03/20/2025) |
| 03/19/2025 | 157 | Order of Sustenance/Lodging/Transportation; IT IS ORDERED that proper SUSTENANCE be provided to the (16) jurors empaneled in the above entitled case. So Ordered by Judge Nusrat J. Choudhury on 3/19/2025. (CV) (Entered: 03/20/2025) |

A-21

| 03/19/2025 | 158 | Order of Sustenance/Lodging/Transportation; IT IS ORDERED that proper TRANSPORTATION be provided to the (1) juror empaneled in the above entitled case. So Ordered by Judge Nusrat J. Choudhury on 3/19/2025. (CV) (Entered: 03/20/2025) |
|---|---|---|
| 04/07/2025 | 163 | NOTICE OF ATTORNEY APPEARANCE: Arthur L. Aidala appearing for Philip Priolo (Aidala, Arthur) (Entered: 04/07/2025) |
| 04/07/2025 | 164 | NOTICE OF ATTORNEY APPEARANCE: Michael T Jaccarino appearing for Philip Priolo (Jaccarino, Michael) (Entered: 04/07/2025) |
| 04/15/2025 | | Order: Granting (ECF # 166 ) MOTION for Extension of Time to File Rebuttal Report by Dr. Christoph Leonhard. Ordered by Judge Nusrat J. Choudhury on 4/15/2025. (BMM) (Entered: 04/15/2025) |
| 06/27/2025 | 173 | NOTICE *of Additional Authority in Opposition to Defendant's Oral Motion for Judgment of Acquittal* as to Philip Priolo (Dunn, Charles) (Entered: 06/27/2025) |
| 06/30/2025 | | Order: Defendants shall file their response to ECF Document # 173 , if any, on or before 7/7/2025. Ordered by Judge Nusrat J. Choudhury on 6/30/2025. (BMM) Modified on 7/7/2025 (BMM). (Entered: 07/02/2025) |
| 08/21/2025 | 183 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Shawn Phillips, Jeffrey Novis, Philip Priolo held on 6-20-2025, for hearing type Motion Hearing, before Judge Nusrat Choudhury. Court Reporter/Transcriber Lisa Schmid, Telephone number (631)712-6102. Email address: LisaSchmidCRR.RMR@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/11/2025. Redacted Transcript Deadline set for 9/22/2025. Release of Transcript Restriction set for 11/19/2025. (Schmid, Lisa) (Entered: 08/21/2025) |
| 09/03/2025 | 184 | SENTENCING MEMORANDUM by Philip Priolo (Attachments: # 1 Exhibit Character Letters) (Aidala, Arthur) (Entered: 09/03/2025) |
| 09/10/2025 | 185 | SENTENCING MEMORANDUM by USA as to Philip Priolo (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Entwistle, Ann) (Entered: 09/10/2025) |
| 09/10/2025 | 186 | Letter *submitting victim impact statements* as to Philip Priolo (Entwistle, Ann) (Entered: 09/10/2025) |
| 09/11/2025 | | Order: The sentencing before the undersigned in this matter is rescheduled on 10/6/2025 at 10:00 am. A telephone conference is scheduled on 9/17/2025 at 11:30 am. The parties are directed to call the Cisco Teleconferencing Center at (571) 353-2301 and to enter Access Code 981400071 when prompted. Ordered by Judge Nusrat J. Choudhury on 9/11/2025. (BMM) (Entered: 09/11/2025) |
| 09/16/2025 | 187 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Shawn Phillips, Jeffrey Novis, Philip Priolo held on 3-17-2025, for hearing type Jury Trial, before Judge Nusrat Choudhury. Court Reporter/Transcriber Lisa Schmid, Telephone number (631)712-6102. Email address: LisaSchmidCCR.RMR@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 10/7/2025. Redacted Transcript Deadline set for 10/17/2025. Release of Transcript Restriction set for 12/15/2025. (Schmid, Lisa) (Entered: 09/16/2025) |

| | | |
|---|---|---|
| 09/16/2025 | 188 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Shawn Phillips, Jeffrey Novis, Philip Priolo held on 3-18-2025, for hearing type Jury Trial, before Judge Nusrat Choudhury. Court Reporter/Transcriber Lisa Schmid, Telephone number (631)712-6102. Email address: LisaSchmidCCR.RMR@gmail.com.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 10/7/2025. Redacted Transcript Deadline set for 10/17/2025. Release of Transcript Restriction set for 12/15/2025. (Schmid, Lisa) (Entered: 09/16/2025) |
| 09/16/2025 | 189 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Shawn Phillips, Jeffrey Novis, Philip Priolo held on 3-19-2025, for hearing type Jury Trial, before Judge Nusrat Choudhury. Court Reporter/Transcriber Lisa Schmid, Telephone number (631)712-6102. Email address: LisaSchmidCCR.RMR@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 10/7/2025. Redacted Transcript Deadline set for 10/17/2025. Release of Transcript Restriction set for 12/15/2025. (Schmid, Lisa) (Entered: 09/16/2025) |
| 09/16/2025 | 190 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Philip Priolo held on March 10, 2025, before Judge Choudhury. Court Reporter/Transcriber Denise Parisi, Telephone number 631-712-6101. Email address: deniseparisi72@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 10/7/2025. Redacted Transcript Deadline set for 10/17/2025. Release of Transcript Restriction set for 12/15/2025. (Parisi, Denise) (Entered: 09/16/2025) |
| 09/16/2025 | 191 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Philip Priolo held on March 11, 2025, before Judge Choudhury. Court Reporter/Transcriber Denise Parisi, Telephone number 631-712-6101. Email address: deniseparisi72@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 10/7/2025. Redacted Transcript Deadline set for 10/17/2025. Release of Transcript Restriction set for 12/15/2025. (Parisi, Denise) (Entered: 09/16/2025) |
| 09/16/2025 | 192 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Philip Priolo held on March 11, 2025, before Judge Choudhury. Court Reporter/Transcriber Denise Parisi, Telephone number 631-712-6101. Email address: deniseparisi72@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 10/7/2025. Redacted Transcript Deadline set for 10/17/2025. Release of Transcript Restriction set for 12/15/2025. (Parisi, Denise) (Entered: 09/16/2025) |
| 09/16/2025 | 193 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Philip Priolo held on March 12, 2025, before Judge Choudhury. Court Reporter/Transcriber Denise Parisi, Telephone number 631-712-6101. Email address: deniseparisi72@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court |

A-23

| | | |
|---|---|---|
| | | Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 10/7/2025. Redacted Transcript Deadline set for 10/17/2025. Release of Transcript Restriction set for 12/15/2025. (Parisi, Denise) (Entered: 09/16/2025) |
| 09/16/2025 | 194 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Philip Priolo held on March 13, 2025, before Judge Choudhury. Court Reporter/Transcriber Denise Parisi, Telephone number 631-712-6101. Email address: deniseparisi72@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 10/7/2025. Redacted Transcript Deadline set for 10/17/2025. Release of Transcript Restriction set for 12/15/2025. (Parisi, Denise) (Entered: 09/16/2025) |
| 09/16/2025 | 195 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Philip Priolo held on March 14, 2025, before Judge Choudhury. Court Reporter/Transcriber Denise Parisi, Telephone number 631-712-6101. Email address: deniseparisi72@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 10/7/2025. Redacted Transcript Deadline set for 10/17/2025. Release of Transcript Restriction set for 12/15/2025. (Parisi, Denise) (Entered: 09/16/2025) |
| 09/17/2025 | | Minute Entry for proceedings held before Judge Nusrat J. Choudhury: Telephone conference as to Philip Priolo held on September 17, 2025. AUSAs Ann Entwistle, Jason Feldman present. Retained counsel Arthur I Aidele and Michael T. Jaccarino present on behalf of defendant Priolo who is also present. USPO Jeremy Toner Present. Defense counsel indicate that Attorney James Froccaro continues to be retained on this case and does not intend to withdraw. Discussion held on the record. A telephone conference is scheduled on 10/3/2025 at 9:30am. The parties are directed to call the Cisco Teleconferencing Center at (571) 353-2301 and to enter Access Code 981400071 when prompted. (Court Reporter ToniAnn Lucartorto) (BMM) (Entered: 09/17/2025) |
| 09/22/2025 | 196 | Order: In advance of sentencing on October 6, 2025, defense counsel is required to review with Mr. Priolo the mandatory and standard conditions of supervised release set forth on pages 3 and 4 of this District's form for Judgment in a Criminal Case. Mr. Priolo and defense counsel should be prepared to address at sentencing whether Mr. Priolo has had sufficient time to discuss with counsel whether he has any objection to the imposition of any mandatory and/or standard conditions of supervised release and whether he has any such objections. Ordered by Judge Nusrat J. Choudhury on 9/22/2025. (BMM) (Entered: 09/22/2025) |
| 09/30/2025 | 200 | Letter as to Philip Priolo (Aidala, Arthur) (Entered: 09/30/2025) |
| 09/30/2025 | | Order as to Philip Priolo: Due to a change in the Court's calendar, the sentencing originally scheduled on 10/6/2025 is rescheduled before the undersigned on 10/16/2025 at 10:00 am. The telephone conference originally scheduled on 10/3/2025 is rescheduled on 10/14/2025 at 12:10 pm. Counsel are required to join the teleconference line 10 minutes in advance. All counsel appearing for a party must have a Notice of Appearance entered on the docket. The parties are directed to call the Cisco Teleconferencing Center at (571) 353-2301 and to enter Access Code 981400071 when prompted. Ordered by Judge Nusrat J. Choudhury on 9/30/2025. (BMM) (Entered: 09/30/2025) |

| 10/01/2025 | 201 | Letter *attaching victim impact statement* as to Philip Priolo (Entwistle, Ann) (Entered: 10/01/2025) |
|---|---|---|
| 10/07/2025 | 203 | CORRECTED Order: The Court's Order at ECF No. 196 is struck and replaced with the following. In advance of sentencing on October 16, 2025, defense counsel is required to review with Mr. Priolo the mandatory and standard conditions of supervised release set forth on pages 3 and 4 of this District's form for Judgment in a Criminal Case. The correct version of this form is attached. Mr. Priolo and defense counsel should be prepared to address at sentencing whether Mr. Priolo has had sufficient time to discuss with counsel whether he has any objection to the imposition of any mandatory and/or standard conditions of supervised release and whether he has any such objections. Ordered by Judge Nusrat J. Choudhury on 10/7/2025. (BMM) (Entered: 10/07/2025) |
| 10/09/2025 | | Order as to Philip Priolo: Due to a change in the Court's calendar, the sentencing originally scheduled on 10/16/2025 is rescheduled before the undersigned on 10/30/2025 at 10:00 am in Courtroom 1040 of the Alfonse D'Amato U.S. Courthouse at 100 Federal Plaza, Central Islip, New York.<br><br>The telephone conference originally scheduled for 10/14/2025 is rescheduled to take place on 10/29/2025 at 10:30am. Counsel are required to join the teleconference line 10 minutes in advance. All counsel appearing for a party must have a Notice of Appearance entered on the docket. The parties are directed to call the Cisco Teleconferencing Center at (571) 353-2301 and to enter Access Code 981400071 when prompted. Ordered by Judge Nusrat J. Choudhury on 10/9/2025. (BMM) (Entered: 10/09/2025) |
| 10/27/2025 | | Order: The sentencing scheduled before the undersigned on 10/30/2025 is rescheduled on 11/18/2025 at 11:30am. The telephone conference scheduled before the undersigned on 10/29/2025 at 10:30 am remains on schedule. Ordered by Judge Nusrat J. Choudhury on 10/27/2025. (BMM) (Entered: 10/27/2025) |
| 10/27/2025 | | Order: Due to a change in the Court's calendar, the telephone conference scheduled before the undersigned on 10/29/2025 is canceled. The telephone conference will be rescheduled by the Court after consultation with the parties on their availability. Ordered by Judge Nusrat J. Choudhury on 10/27/2025. (BMM) (Entered: 10/27/2025) |
| 11/18/2025 | 205 | ORDER: For all of the reasons set forth in the attached Opinion and Order, sufficient evidence supports Priolo's conviction on four substantive counts of mail fraud under 18 U.S.C. § 1341 and one count of conspiracy to commit mail and wire fraud under 18 U.S.C. § 1349. This Court therefore denies Priolo's oral motion for judgment of acquittal made under Rule 29(a), Fed. R. Civ. P., at the close of evidence and before the case was submitted to the jury. Ordered by Judge Nusrat J. Choudhury on 11/18/2025. (JEG) (Entered: 11/18/2025) |
| 11/18/2025 | | Minute Entry for proceedings held before Judge Nusrat J. Choudhury: Sentencing as to Philip Priolo held on November 18, 2025. AUSAs Ann Entwistle, Chales Dunn and Jason Feldman present on behalf of the Government. Defendant present on bond with retained counsel Arthur L. Aidala and Michael T. Jaccarino. United States Probation Officer Jeremy Toner Present. Case called. Statements of defendant and counsel heard. The Court sentences the defendant on Counts Two (2) Through Six (6) of the Indictment. Defendant is sentenced to Forty Two (42) Months of Custody on each count to run concurrently and Two (2) Years of Supervised Release on each count to run concurrently, including certain mandatory, standard, and special conditions as set forth on the record. Fine imposed in the amount of $1,250,000. The defendant shall perform 400 hours of community service in a manner approved by the U.S. Probation Office. The defendant will cooperate in allowing the U.S. Probation Office to confirm that community service is completed. The Court makes the following recommendation to the Bureau of Prisons: Federal Prison Camp |

| | | |
|---|---|---|
| | | Miami, Florida. The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons before 2pm on 2/2/2026. Defendant notified of his right to appeal. (Court Reporter Lisa Schmid) (BMM) (Entered: 11/20/2025) |
| 11/19/2025 | 208 | JUDGMENT as to Defendant Philip Priolo (3); IMPRISONMENT: COUNTS TWO (2) THROUGH SIX (6): FORTY TWO (42) MONTHS CUSTODY ON EACH COUNT TO RUN CONCURRENTLY; SUPERVISED RELEASE: COUNTS TWO (2) THROUGH SIX (6): TWO (2) YEARS OF SUPERVISED RELEASE ON EACH COUNT TO RUN CONCURRENTLY including certain mandatory, standard, and special conditions. Special Assessment: $500.00; Fine: $1,250,000.00. So Ordered by Judge Nusrat J. Choudhury on 11/19/2025. (CV) Modified on 11/20/2025 (BMM). (Entered: 11/20/2025) |
| 12/05/2025 | 211 | NOTICE *of Change of Office and Address* as to Shawn Phillips, Jeffrey Novis, Philip Priolo (Dunn, Charles) (Entered: 12/05/2025) |
| 12/05/2025 | 212 | NOTICE OF APPEAL by Philip Priolo Filing fee $ 605, receipt number ANYEDC-19697426. (Aidala, Arthur) (Entered: 12/05/2025) |
| 12/05/2025 | | Electronic Index to Record on Appeal as to Philip Priolo sent to US Court of Appeals 212 Notice of Appeal - Final Judgment Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 12/05/2025) |
| 12/05/2025 | 213 | Letter *regarding the Notice of Appeal* as to Philip Priolo (Aidala, Arthur) (Entered: 12/05/2025) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/13/2026 13:27:19 | | | |
| **PACER Login:** | linojdemasi | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:21-cr-00566-NJC |
| **Billable Pages:** | 23 | **Cost:** | 2.30 |

A-26

MRM:AFE/CBD
F. # 2020R00262

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  NOV 09 2021  ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

SHAWN PHILLIPS,
JEFFREY NOVIS and
PHILIP PRIOLO,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

INDICTMENT

Cr. No. C R 21 5 6 6
(T. 18, U.S.C., §§ 1341, 1343, 1349, 2
and 3551 et seq.)

BROWN, J.

LOCKE, M. J.

THE GRAND JURY CHARGES:

INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    The Defendants and Their Mass-Mailing Fraud Schemes

1.    In or about and between March 2015 and December 2016, both dates being approximate and inclusive, the defendants JEFFREY NOVIS and PHILIP PRIOLO, together with others, engaged in mass-mailing fraud schemes that sent fraudulent prize notices to consumers throughout the United States (the "Novis-Priolo Mass-Mailing Schemes"). The prize notices falsely and fraudulently induced recipients (the "Victims") to pay fees as a purported condition of receiving promised cash prizes. Despite payment of such fees by many Victims, the promised cash prizes were not given.

2.    In or about and between June 2013 and November 2016, both dates being approximate and inclusive, the defendant SHAWN PHILLIPS, together with others,

2

engaged in mass-mailing fraud schemes that sent fraudulent prize notices to consumers throughout the United States (the "Phillips Mass-Mailing Schemes"). The prize notices falsely and fraudulently induced Victims to pay fees as a purported condition of receiving promised cash prizes. Despite payment of such fees by many Victims, the promised cash prizes were not given.

3. The defendants SHAWN PHILLIPS, JEFFREY NOVIS, and PHILIP PRIOLO conspired with Gary Denkberg and NOVIS's son Sean Novis, who owned and controlled a direct-mail operation based on Long Island, New York (the "Direct-Mail Operation"). The Direct-Mail Operation aided and abetted PHILLIPS, NOVIS, and PRIOLO in the execution of both the Phillips and the Novis-Priolo Mass-Mailing Schemes. In furtherance of the schemes, employees of the Direct-Mail Operation handled many of the daily operations of the Phillips and the Novis-Priolo Mass-Mailing Schemes, including inventory management, working with third-party vendors to print and mail the prize notices, and maintaining and updating the schemes' mailing lists.

4. In and about September 2016 through November 2016, both dates being approximate and inclusive, the defendant JEFFREY NOVIS conspired with the defendant SHAWN PHILLIPS to facilitate the Phillips Mass-Mailing Schemes by taking Victim responses from the U.S. Mail, depositing the payments into a bank account, and transmitting Victim funds to PHILLIPS.

II.    The Novis-Priolo Mass-Mailing Schemes

5. As part of the schemes, the defendants JEFFREY NOVIS and PHILIP PRIOLO, together with Sean Novis, Gary Denkberg, and others, sent fraudulent prize notices by U.S. Mail to the Victims, many of whom were elderly and vulnerable. The prize notices

3

fraudulently represented that the Victims were specifically chosen to receive a large cash prize—typically, over $1,000,000—and would receive the prize if they paid a fee, ranging from approximately $20 to $40. Victims who paid the requested fee did not receive the promised cash prize. The object and purpose of the schemes was to obtain money from the Victims by means of these false and fraudulent statements and material concealments of fact in the mailings.

6. The defendants JEFFREY NOVIS and PHILIP PRIOLO sent multiple versions of the fraudulent prize notices to the Victims. The fraudulent prize notices appeared to be from official-sounding entities, such as "Prize Advisory Board," which the mailings represented as sophisticated businesses with employees and organizational structures. The prize notices appeared to be signed by officers or representatives of the entities, such as "Sean Williams, Director P.A.B." In fact, these entities existed only on paper, and the named officers and representatives did not exist.

7. The fraudulent prize notices appeared to be personalized notices for the respective recipients. In fact, the prize notices were mass-produced, boilerplate documents that were bulk mailed to hundreds of thousands of recipients. The defendants JEFFREY NOVIS and PHILIP PRIOLO, together with others, obtained the names and addresses of recipients from mailing lists purchased from other parties. When the Victims sent payments in response to fraudulent prize notices, NOVIS and PRIOLO, together with others, sent additional fraudulent prize notices to the Victims.

8. In addition to the false and misleading language described above, the fraudulent prize notices often included language indicating that the recipients had not won any money or prizes, and that the mailings were not prize notifications or sweepstakes entry

A-29

4

forms.   However, the language did not correct the false and misleading statements contained in the mailings.

9.     The fraudulent prize notices included pre-addressed return envelopes and directed the recipients to pay the fees by cash, check, or money order sent to the return address listed on the envelope.   The fraudulent prize notices directed Victims to make checks and money orders payable to multiple three-letter payee names, including "PAB" and "NPF."   The defendants JEFFREY NOVIS and PHILIP PRIOLO, together with others, rented post office boxes at multiple post offices on Long Island to receive return mailings from the Victims.

10.     The defendants JEFFREY NOVIS and PHILIP PRIOLO, together with others, caused return mailings from the Victims to be delivered from the post office boxes to a Long Island-based "caging service," which is an operation that receives and handles return mail, payments, and correspondence on behalf of a direct mailer (the "Long Island Caging Service").   The Long Island Caging Service recorded Victim responses and payments in a database, and transmitted Victim payments to PacNet Services Ltd. ("PacNet"), a payment processor based in Canada.

11.     As part of the mass-mailing schemes, the defendant PHILIP PRIOLO opened accounts with PacNet in order to receive and process Victim payments.   PRIOLO provided PacNet with the three- or four-letter payee names that would appear on checks and money orders from Victims.   PRIOLO directed PacNet to disburse the proceeds of the fraud schemes through wire transfers to bank accounts controlled by the defendant JEFFREY NOVIS and PRIOLO, as well as to pay co-conspirators, including the Direct Mail Operation

5

and vendors that provided various services to facilitate the Novis-Priolo Mass-Mailing Schemes.

12.    From approximately March 2015 through December 2016, the Novis-Priolo Mass-Mailing Schemes received more than $2.2 million from the Victims.    The defendants JEFFREY NOVIS and PHILIP PRIOLO, together with others, used this money to enrich themselves and to further promote the schemes.

III.    The Phillips Mass-Mailing Schemes

13.    As part of the schemes, the defendant SHAWN PHILLIPS, together with others, sent fraudulent prize notices by U.S. Mail to the Victims, many of whom were elderly and vulnerable.    The prize notices fraudulently represented that the Victims were specifically chosen to receive a large cash prize—typically, over $1,000,000—and would receive the prize if they paid a fee, ranging from approximately $20 to $40.    Victims who paid the requested fee did not receive the promised cash prize.    The object and purpose of the scheme was to obtain money from the Victims by means of these false and fraudulent statements and material concealments of fact in the mailings.

14.    The defendant SHAWN PHILLIPS sent multiple versions of the fraudulent prize notices to the Victims.    The fraudulent prize notices appeared to be from official-sounding entities, such as "Pinkerton Prize Authority" and "Prize Disbursement Authority," and appeared to be signed by officers or representatives of the entities, such as "Allan Pinkerton, President" and "Gerald Bauer, President."    In fact, these entities existed only on paper, and the named officers and representatives did not exist.

15.    The fraudulent prize notices appeared to be personalized notices for the respective recipients.    In fact, the prize notices were mass-produced, boilerplate documents

A-31

6

that were bulk mailed to hundreds of thousands of recipients. The defendant SHAWN PHILLIPS, together with others, obtained the names and addresses of recipients from mailing lists purchased from other parties. When the Victims sent payments in response to fraudulent prize notices, PHILLIPS, together with others, sent additional fraudulent prize notices to the Victims.

16. In addition to the false and misleading language described above, the fraudulent prize notices often included language indicating that the recipients had not won any money or prizes and that the mailings were not prize notifications or sweepstakes entry forms. However, the language did not correct the false and misleading statements contained in the mailings.

17. The fraudulent prize notices included pre-addressed return envelopes and directed the recipients to pay the fees by cash, check, or money order sent to the return address listed on the envelope. The fraudulent prize notices directed Victims to make checks and money orders payable to multiple three-letter payee names, including "PTN" and "PDA." The defendant SHAWN PHILLIPS, together with others, rented post office boxes at multiple post offices to receive return mailings from the Victims.

18. From at least as early as July 2013 through September 2016, the defendant SHAWN PHILLIPS, together with others, caused return mailings from the Victims to be delivered from the post office boxes to the Long Island Caging Service. The Long Island Caging Service recorded Victim responses and payments in a database and transmitted Victim payments to the payment processor PacNet.

19. The defendant SHAWN PHILLIPS, along with others, opened accounts with PacNet in order to receive and process Victim payments. PHILLIPS and his

A-32

7

co-conspirators directed PacNet to disburse the proceeds of the fraud schemes through wire transfers, checks, and cash.   PHILLIPS and his co-conspirators directed wire transfers to bank accounts controlled by PHILLIPS, as well as to pay co-conspirators including the Direct Mail Operation, and vendors that provided various services to facilitate the Phillips Mass-Mailing Schemes.

20.     In or about October 2014, a Judicial Officer of the United States Postal Service issued a Cease and Desist Order that permanently banned a co-conspirator of the defendant SHAWN PHILLIPS and a company through which PHILLIPS, along with others, operated the Phillips Mass-Mailing Schemes, from sending fraudulent prize notices. Despite this Cease and Desist Order, PHILLIPS continued sending fraudulent prize notices.

21.     From approximately June 2013 to November 2016, the Phillips Mass-Mailing Schemes received more than $10.8 million from the Victims.   The defendant SHAWN PHILLIPS, together with others, used this money to enrich himself and to further promote the schemes.

IV.     The Defendants' Collection of Victim Proceeds after September 26, 2016

22.     On or about September 22, 2016, the United States filed a civil complaint that alleged the operators and employees of the Long Island Direct Mail Operation, including Sean Novis and Gary Denkberg, and the operator of the Long Island Caging Service, were engaged in predatory mail fraud schemes targeting primarily the elderly and vulnerable.   On or about that same date, the United States District Court for the Eastern District of New York entered a temporary restraining order barring the operators and employees of the Direct-Mail Operation, including Sean Novis and Gary Denkberg, as well as the operator of the Long Island Caging Service, from using the United States mail to

8

distribute any materials that represent: (1) that the recipient has won, will win, or will receive cash, prizes, or awards; or (2) that offer for sale information regarding sweepstakes or lotteries (the "Temporary Restraining Order"). As a result of the Temporary Restraining Order, the Direct Mail Operation immediately ceased facilitating mailings and the Long Island Caging Service immediately ceased processing victim payments for the defendants SHAWN PHILLIPS, JEFFREY NOVIS, and PHILIP PRIOLO.

23.     On or about September 26, 2016, PacNet stopped processing any U.S. dollar payments, including payments from Victims of the mass-mailing schemes operated by the defendants SHAWN PHILLIPS, JEFFREY NOVIS, and PHILIP PRIOLO.

24.     In or around and between October 2016 and November 2016, the defendant JEFFREY NOVIS conspired with the defendant SHAWN PHILLIPS to facilitate the processing of Victim payments that had been sent in response to prize notices as part of the Phillips Mass-Mailing Schemes.

25.     In support of the Phillips Mass-Mailing Schemes, the defendant JEFFREY NOVIS formed the shell company Creative Development LLC in the State of South Dakota in or around October 2016.

26.     On or about October 26, 2016, the defendant JEFFREY NOVIS opened two bank accounts in the name of Creative Development LLC at Signature Bank, Private Client Group located in Jericho, New York. NOVIS provided the three-letter payee names utilized by the defendant SHAWN PHILLIPS as the payee names on his fraudulent prize notifications as "doing business as" names for Creative Development LLC on the two accounts, including "PTN," "PDA," and "APO." In or about November 2016, NOVIS

9

deposited checks and money orders sent by Victims in response to prize solicitations sent as part of the Phillips Mass-Mailing Schemes into the two Creative Development LLC bank accounts. NOVIS then forwarded those proceeds on to bank accounts controlled by PHILLIPS.

27. After September 2016, the defendants JEFFREY NOVIS and PHILIP PRIOLO continued to take from the U.S. Mail payments from Victims of the Novis-Priolo Mass-Mailing Schemes. NOVIS and PRIOLO deposited checks and money orders received from Victims in response to the Novis-Priolo Mass-Mailing Schemes into bank accounts they controlled in or around November and December 2016.

COUNT ONE
(Conspiracy to Commit Mail Fraud and Wire Fraud)

28. The allegations contained in paragraphs one through 27 are realleged and incorporated as if fully set forth in this paragraph.

29. In or about and between June 2013 and December 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SHAWN PHILLIPS and JEFFREY NOVIS, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the Victims, and to obtain money and property from the Victims by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, to (a) place and cause to be placed one or more matters and things in a post office and authorized depository for mail matter, to be sent and delivered by the United States Postal Service, and to take and receive therefrom one or more such matters and things, contrary to Title 18, United States Code, Section 1341, and (b) transmit and cause to be

10

transmitted, by means of wire communication in interstate or foreign commerce, writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
### (Conspiracy to Commit Mail Fraud and Wire Fraud)

30. The allegations contained in paragraphs one through 27 are realleged and incorporated as if fully set forth in this paragraph.

31. In or about and between March 2015 and December 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JEFFREY NOVIS and PHILIP PRIOLO, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the Victims, and to obtain money and property from the Victims by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, to (a) place and cause to be placed one or more matters and things in a post office and authorized depository for mail matter, to be sent and delivered by the United States Postal Service, and to take and receive therefrom one or more such matters and things, contrary to Title 18, United States Code, Section 1341, and (b) transmit and cause to be transmitted, by means of wire communication in interstate or foreign commerce, writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNTS THREE THROUGH SIX
### (Mail Fraud)

32. The allegations contained in paragraphs one through 27 are realleged and incorporated as if fully set forth in this paragraph.

A-36

11

33.    On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendants JEFFREY NOVIS and PHILIP PRIOLO, together with others, did knowingly and intentionally devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, did place and cause to be placed one or more matters and things in a post office and authorized depository for mail matter, to be sent and delivered by the United States Postal Service, and did take and receive therefrom such matters and things, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| THREE | November 21, 2016 | Check sent from Kentucky by Victim A.G., an individual whose identity is known to the Grand Jury, to the Eastern District of New York, in response to a fraudulent prize notice |
| FOUR | December 11, 2016 | Check sent from Florida by Victim M.T., an individual whose identity is known to the Grand Jury, to the Eastern District of New York, in response to a fraudulent prize notice |
| FIVE | December 15, 2016 | Check sent from Virginia by Victim A.K., an individual whose identity is known to the Grand Jury, to the Eastern District of New York, in response to a fraudulent prize notice |
| SIX | December 21, 2016 | Check sent from California by Victim N.G., an individual whose identity is known to the Grand Jury, to the Eastern District of New York, in response to a fraudulent prize notice |

(Title 18, United States Code, Sections 1341, 2 and 3551 et seq.)

A-37

12

## COUNTS SEVEN AND EIGHT
### (Wire Fraud)

34.    The allegations contained in paragraphs one through 27 are realleged and incorporated as if fully set forth in this paragraph.

35.    On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendants SHAWN PHILLIPS and JEFFREY NOVIS, together with others, did knowingly and intentionally devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purposes of executing such scheme and artifice did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, one or more writings, signs, signals, pictures, and sounds, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| SEVEN | November 10, 2016 | Interstate wire transfer of $5,000.00 from the account of Creative Development LLC at Signature Bank to the account of PHILLIPS at Bank of America |

A-38

13

| Count | Approximate Date | Description |
|-------|------------------|-------------|
| EIGHT | November 16, 2016 | Interstate wire transfer of $6,000.00 from the account of Creative Development LLC at Signature Bank to the account of PHILLIPS at Bank of America |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

A TRUE BILL

_____
FOREPERSON

_____
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

_____
GUSTAV W. EYLER
DIRECTOR
CONSUMER PROTECTION BRANCH

F. #2020R00262

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

SHAWN PHILLIPS, JEFFREY NOVIS and PHILIP PRIOLO,

Defendants.

## INDICTMENT

(T. 18, U.S.C., §§ 1341, 1343, 1349, 2 and 3551 et seq.)

*A true bill.*

Karen Swiecicki

_____

Foreperson

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____

Clerk

*Bail,* $ _____

_____

***Ann F. Entwistle, Trial Attorney, U.S. Department of Justice***
***(202) 305-~~927~~ 3670***

Case: 25-3078, 05/15/2026, DktEntry: 17.1, Page 42 of 260

A-39

A-40

**INFORMATION SHEET**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 09 2021 ★

LONG ISLAND OFFICE

1.   Title of Case:  United States v. Shawn Phillips, Jeffrey Novis, and Philip Priolo

2.   Related Magistrate Docket Number(s): _____

3.   Arrest Date:  __N/A__

4.   Nature of offense(s):   ☒  Felony
                            ☐  Misdemeanor

CR 21 566

BROWN, J.

LOCKE, M. J.

5.   Related Cases - Title and Docket No(s). (Pursuant to Rule 50.3.2 of the Local E.D.N.Y. Division of Business Rules): United States v. Sean Novis and Gary Denkberg, 20-cr-00335

6.   Projected Length of Trial:   Less than 6 weeks   ☒
                                  More than 6 weeks   ☐

7.   County in which crime was allegedly committed: _____Nassau_____
     (Pursuant to Rule 50.1(d) of the Local E.D.N.Y. Division of Business Rules)

8.   Was any aspect of the investigation, inquiry and prosecution giving rise to the case
     pending or initiated before March 10, 2012.[1]            ☒ Yes  ☐ No

9.   Has this indictment/information been ordered sealed?       ☒ Yes  ☐ No

10.  Have arrest warrants been ordered?                         ☒ Yes  ☐ No

11.  Is there a capital count included in the indictment?       ☐ Yes  ☒ No

BREON PEACE
United States Attorney

By:   _____/s/_____
      Name: Ann F. Entwistle
      Title: Trial Attorney
      Consumer Protection Branch
      U.S. Department of Justice
      Phone: (202) 305-3630

---

[1]   Judge Brodie will not accept cases that were initiated before March 10, 2012.

Rev. 10/04/12

TO: Clerk's Office
## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

### APPLICATION FOR LEAVE
### TO FILE DOCUMENT UNDER SEAL

*******************************************

UNITED STATES OF AMERICA
   -against-
SHAWN PHILLIPS,
JEFFREY NOVIS, and
PHILIP PRIOLO,
        Defendants.

*********************************

SUBMITTED BY: Plaintiff____ Defendant____ DOJ ✓
Name: Ann F. Entwistle
Firm Name: Consumer Protection Branch, U.S. Department of Justice
Address:   450 5th St. NW, Suite 6400 South
          Washington, DC, 20001
Phone Number: 202-305-3630
E-Mail Address: Ann.F.Entwistle@usdoj.gov

INDICATE UPON THE PUBLIC DOCKET SHEET: YES____ NO ✓
**If yes, state description of document to be entered on docket sheet:**



**C R 21 566**

Docket Number
## BROWN, J.
### LOCKE, M. J.

**A) If pursuant to a prior Court Order:**
Docket Number of Case in Which Entered:_____
Judge/Magistrate Judge:_____
Date Entered:_____

**B) If a new application,** the statute, regulation, or other legal basis that authorizes filing under seal

Ongoing criminal investigation; risk of flight and evidence destruction.

**ORDERED SEALED AND PLACED IN THE CLERK'S OFFICE, AND MAY NOT BE UNSEALED UNLESS ORDERED BY THE COURT.**

DATED: Central Islip      NEW YORK

11/9/21

**U.S. MAGISTRATE JUDGE**

RECEIVED IN CLERK'S OFFICE_____
                        DATE

**MANDATORY CERTIFICATION OF SERVICE:**
**A.)** ___ A copy of this application either has been or will be promptly served upon all parties to this action, **B.)** ___ Service is excused by 31 U.S.C. 3730(b), or by the following other statute or regulation:_____; or **C.)** ✓ This is a criminal document submitted, and flight public safety, or security are significant concerns. (Check one)

11/9/2021
———————
DATE                     SIGNATURE

A-41

A-42

**JAMES R. FROCCARO, JR.**
**Attorney at Law**
**20 Vanderventer Avenue, Suite 103W**
**Port Washington, NY 11050**
**telephone: (516) 944-5062**
**fax: (516) 944-5066**
**email: JRFESQ61@aol.com**

January 24, 2025

BY ECF
Hon. Nusrat J. Choudhury
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

Re:  United States v. Philip Priolo
21 Cr 566 (NJC)

Dear Judge Choudhury,

This letter is submitted in opposition to the government's motion *in limine* to admit "prior-acts" evidence against defendant Philip Priolo at trial (ECF Doc 78).  Namely, that Mr. Priolo worked with Jeffrey Novis and Sean Novis to purportedly send fraudulent prize mailings between the late 1990's and early 2000's.  And also, to introduce evidence that Jeffrey Novis was previously convicted of mailing fraudulent prize notices in his 1995 criminal case.

In reality, the government's motion is a thinly veiled attempt to introduce improper and highly prejudicial "propensity" and "guilt by association" evidence against Mr. Priolo at trial.  As the government clearly stated in its moving papers to Your Honor: "[t]he government seeks to introduce evidence and testimony concerning pre-indictment

1

A-43

conduct that is identical or nearly identical to that reflected in the present indictment.  See ECF 78 at page 2.  As set forth below, the government's motion should be denied.

In assessing the government's motion, it is important to take note of the following facts.  Mr. Priolo is charged in Count Two of the instant Indictment, along with Jeffrey Novis, with conspiracy to commit mail and wire fraud *during a very limited and discreet time frame - between March 2015 and December 2016*.  Mr. Priolo is also charged, along with Jeffrey Novis, with four substantive mail fraud counts over a one-month period - between November 21, 2016, and December 21, 2016 (Counts Three through Six).

Sean Novis and Gary Denkberg, on the other hand, were charged in a separate Indictment, 20 Cr 335 (JMA), with, among other crimes, participating in a conspiracy to commit mail fraud over a thirteen-year period - *between January 2003 and September 2016* (Count One).  As noted in the government's motion - neither Mr. Priolo nor Jeffrey Novis were charged nor named as co-conspirators in the overarching 2003-2016 mail fraud conspiracy charge in that Indictment.  See ECF Doc 78 at page 2.

The applicable exclusionary provisions of the Federal Rules of Evidence - Rule 404(b) and Rule 403 - are clearly worth noting here.  Rule 404(b)(1) provides in pertinent part that: "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion that person acted in accordance with the character." Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

The government's first request - to introduce evidence that Mr. Priolo worked with Jeffrey Novis and Sean Novis in the late 1990's to purportedly send fraudulent mailings - should be precluded pursuant to Rule 404(b)(3). This Rule specifically provides that in a criminal case, a prosecutor *must provide "reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it."* This prior-act conduct was *not* included in the 404(b) notice provided by the government to the defense over 10 months ago - in March of 2024. See government Exhibit 8. The government did *not* provide the defendant with notice of its intention to offer this evidence at trial until the filing of its prior-acts *in limine* motion on January 10th. Id. at page 6. As the government explained: "this motion also serves as notice under Rule 404(b) of the government's intent to admit evidence related to Priolo's involvement in Justin Grant, Sweepstakes Advisory Network, and the other activities discussed herein." Id.

The government has also now advised of its intention to present a substantial amount of "both witness testimony and documentary evidence" related to this uncharged conduct at trial. See ECF Doc 78 at pages 2-3. The government has also stated in its motion that it intends to offer the testimony of "copywriter" Thomas Ressler at Mr. Priolo's trial. According to the government, Ressler's testimony would demonstrate how prize notices that Ressler created were misleading. Id. at page 3.

Earlier this week, I had a few free moments to review another *in limine* motion recently filed by the government - this one made under seal to Your Honor - seeking the remote testimony of Mr. Ressler at trial. In reviewing this motion I inadvertently learned - since the government did not mention it in connection with the instant motion - *that Mr. Ressler is not expected to testify that he was involved with the mailings which are the subject of the charges contained in Mr. Priolo's Indictment. And, that no other witness can provide this testimony.* Apparently, the government plans to call Mr. Ressler to testify that similar prize notices he purportedly created around 25 years ago were

3

misleading.  The defendant, of course, objects to any testimony by Mr. Ressler at trial since he was *not* the "copywriter" on the mailings related to the specific charges contained in Mr. Priolo's Indictment, but, rather, mailings purportedly created 25 years ago.  His testimony would serve no proper purpose except to demonstrate a criminal propensity in the mailings - to tell to the jury that since prize notices were purposely created to be misleading then - they are misleading now.

The government's request to introduce all of this "prior-act" evidence should be denied on a Rule 404(b)(3) basis, alone.  How could the defendant ever have a fair opportunity to meet all of this "prior-act" evidence within the mere weeks the government has purposely left the defendant with to meet it?  I would be constitutionally ineffective if I did not ask for - and I most respectfully am here - an adjournment of the trial to meet this evidence - if it is going to be admitted at Mr. Priolo's trial. I am aware that Rule 404(b)(3) provides no definition about what constitutes "reasonable notice," and that Courts in our Circuit have held in some cases that two or three weeks notice may be reasonable.  But, what the government conveniently left out of Judge Kuntz's decision in the Brown case it cited (id. at page 6) is that "a longer period may be appropriate, depending on the circumstances." See United States v. Brown, 627 F.Supp 3d 206, 242 (E.D.N.Y. 2022) (Kuntz, J.).  I respectfully submit that the circumstances presented here dictate a far longer period to enable me to meet this evidence - 25 year old allegations - if it is going to be admitted at trial.

In any event, this "prior act" evidence is clearly not "direct proof" of the charged offenses as the government has suggested in its moving papers.  See ECF Doc 78 at page 1.  The evidence related to these purported late 1990's mailings is not "inextricably linked" to or "direct evidence" of the 2015 conspiracy charge - because it is alleged to have occurred 15 years *before* the charged conspiracy allegedly began here. And, the government has cited no case law that suggests a different result.  For example, the government suggested to Your Honor in its moving papers that the Lingat case "presents similar issues to those

presented by [their] motion regarding conduct occurring before the charged indictment period. Id. at page 10. In reality, the facts in Lingat are clearly distinguishable from the facts presented in the case at bar. In United States v. Lingat, 21 Cr 573, 2024 WL 1051633 (S.D.N.Y. Mar. 11, 2024), the defendants were charged with conspiracy to avoid payroll-taxes during the 2010 to 2016 period. Id. at *2. The government in Lingat sought to introduce evidence at trial that the defendants had been continuously engaged in the same conduct involving payroll-tax avoidance for many years before 2010. The court in Lingat allowed this evidence to be introduced as "direct evidence" because the defendants had been engaged in the same - ongoing - uninterrupted - payroll-tax avoidance scheme since the 1980's. Simply put, in Lingat there wasn't a 15-year interruption or gap in the conduct like there is here - clearly distinguishing that case from the case at bar. Moreover, this evidence can hardly be quoted "intrinsic" to this conspiracy when the government, itself, has charged Sean Novis and Gary Denkberg in a separate indictment in a separate conspiracy covering a thirteen-year period that Mr. Priolo was not charged with nor named as a co-conspirator.

All of the uncharged "prior-act" evidence from the late 1990's years that the government has now asked Your Honor to introduce at trial will lead the jury to conclude that Mr. Priolo has a propensity for engaging in fraudulent mass-mailings with the Novis'. Leading the jury to conclude that because he engaged in fraudulent mailings before in the late 1990's he must have done it again beginning in 2015. This will deny Mr. Priolo of a fair trial on the merits of the case. Namely, whether over a very discreet charging period - between March 2015 and December 2016 - he was involved in a fraudulent mass-mailing. Mr. Priolo's character has not been placed in issue. This evidence should be precluded under Rule 404(b)(1) because it is not being offered for a proper purpose.

Regardless, this evidence should also be precluded under Rule 403 as the probative value of it - is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay and wasting time.

A-47

In closing on this point, I respectfully submit that a fair and just solution - and one that would I would consent to - in order to provide the jury with an appropriate background to the parties relationships is actually contained within the government's submission and provides as follows:

> Witness Cathy Johnson, who began working for Sean Novis in 2000, will testify that at the time she began working for Sean Novis, both Jeff Novis and Priolo were working with Sean Novis to send out sweepstakes mailings very similar to those sent out under the name "Winner's Circle" in the 2015-2016 time period.

Id. at page 2.  This narrative would fairly explain how relationships developed without creating a trial within a trial or depriving Mr. Priolo of a fair trial.

The government's other prior-act request - that it be permitted to introduce at trial evidence related to Jeffrey Novis' conviction in a 1995 federal case of being a "mailer" of fraudulent prize notices (id. at page 3) - should be denied without compromise.

There is no allegation whatsoever that Mr. Priolo was involved in the conduct relating to Jeffrey Novis' 1995 case and Mr. Priolo will - as the Court is no doubt well aware - be the only defendant on trial in February - not Jeffrey Novis.  It is telling that the government did not even attempt to introduce this evidence at the trial of Sean Novis and Gary Denkberg before Judge Azrack.  As the government acknowledged in its pending motion before this Court:

> In the 2002 trial of Sean Novis and Denkberg, both defendants were convicted of aiding and abetting mail fraud (counts 16-19 in the[ir] Superseding Indictment) in connection with the defendants in this case:  Priolo, Novis and Phillips....  In that 2022 trial, the government did not introduce evidence of [Jeffrey] Novis' conviction for mail fraud and his 2001-2002

imprisonment, despite those facts being widely known amongst the persons those defendants associated with..."

Id. at page 2.

In the first instance, the government's evidentiary proffer that Mr. Priolo was purportedly aware of Mr. Novis' conviction, let alone, somehow also the particulars of it - is not only "circumstantial" as the government has repeatedly conceded in its moving papers (Id. at pages 5, 6 and 10) - *but also specious at best*. For example, the government argued in their moving papers that Mr. Priolo was aware that PacNet - a Canadian payment processing company - had rejected accounts associated with Jeffrey Novis in light of his prior conviction for mail fraud. Id. at page 5. The government even attached an email chain from PacNet as Exhibit 6 to its moving papers in support of this argument. Id. I have attached an additional copy of government Exhibit 6 for the Court's review. Significantly, *a careful review* of the emails included with government Exhibit 6 reveals that (a) Mr. Priolo *is not* included on any of these emails, (b) the emails are internal PacNet communications - *no one* outside of PacNet is even included on these emails, (c) the emails are dated August 22, 2014  - well *before* the conspiracy Mr. Priolo is charged with is alleged to have began, and (d) the subject and content of these emails has nothing to do with Mr. Priolo.

The issue at trial - and the jury's proper focus should be on whether or not the mailings sent between the charged time frame - March 2015 and December 2016 - were fraudulent. The government has created this sideshow "circumstantial" fiction in an attempt to posit, at least, a "theory" for the admission of Jeffrey Novis' conduct and conviction well over 25 years ago - as "direct evidence" of the charged conspiracy here.[1]

---

[1] Elsewhere in its motion, the government acknowledged that it "possesses no evidence that Priolo was a member of Novis' operation in 1994," and possesses only "circumstantial evidence that Priolo knew of Novis' [criminal] history during the time of the charged offenses." Id. at page 10.

A prior conviction for conduct that the government has described as "identical or nearly identical to that reflected in the present indictment." The prejudice that Mr. Priolo will suffer by virtue of the introduction of evidence related to Novis' conviction for "identical" conduct will be overwhelming. No limiting instruction exists to overcome it.

Mr. Novis' prior guilty plea and conviction should be precluded in accordance with the Supreme Court's ruling in Crawford v. Washington, 124 S.Ct. 1354 (2004). Indeed, the Supreme Court in Crawford established a *per se* bar on the admission of out-of-court statements, including guilty pleas, made by unavailable declarants where there was no opportunity for cross-examination. Id. at 1370. In the case at bar, Mr. Novis will clearly be unavailable and Mr. Priolo will have no opportunity to cross-examine him with respect to his 1995 guilty plea and resulting conviction. The *per se* bar of Crawford should apply here. See also, United States v. McClain, 377 F.3d 219 (2d Cir. 2004) (admission of codefendant's guilty plea against a codefendant found to be a *per se* violation of the Confrontation Clause under Crawford).

If the Court disagrees, the government's argument that *Novis' prior conduct in the early 1990's* is admissible proof of the charged scheme's "background" and to "tell the story of the crime on trial" - also fails. Id. at page 9. In support of this argument, the government suggested to this Court that "[d]ecisions within the Second Circuit illustrate the admissibility of this evidence" and cited United States v. Coonan and United States v. Esposito in support of this argument. Id. at page 10. Those cases are inapposite. For example, in Coonan, the government argued that the Court introduced evidence without reference to Rule 404(b) of a criminal gang's murders even though those events occurred prior to the defendant's membership. But, Coonan and Esposito for that matter were both RICO cases where evidence related to the charged enterprise - in that case a murderous gang called the "Westies" - is routinely admitted. They not mail fraud cases. These cases cited by the government in support of this argument are apples and oranges from

8

Mr. Priolo's mass-mailing case.

The government's argument for the admission of highly prejudicial "prior act" evidence of a codefendant should also fail and be precluded under Rule 404(b).  The government has argued - without hearing a shred of the trial evidence or Mr. Priolo's defense at trial - that evidence of Novis' conviction for conduct in the early 1990' that is "identical to that reflected in the present indictment" should be admitted to prove Mr. Priolo's and Mr. Novis' "knowledge" and "intent" in the 2025 criminal case.  Ostensibly, because "knowledge" and "intent" are elements of the conspiracy charge the government included in their submission.  Id. at 7-9. Mr. Novis is not on trial, however, only Mr. Priolo is.  Morever, the government's knowledge and intent argument - taken to its logical conclusion - would result in the admission of this type of evidence at the pre-trial stage in *every* conspiracy case.  Fortunately, however, that is not the state-of-the law.

Regarding "convictions specifically," the government cited United States v. Esposito and United States v. Smothers, for the proposition that "courts have admitted evidence of prior convictions as 'background' evidence and because it was 'inexorably intertwined' with and to 'complete the story' of the charged offenses."  Id. at page 10.  In reality, however, both of these cases are clearly distinguishable from the case at bar on this point as well.  In the first instance - both are RICO cases - where the rules of evidence regarding the admission of enterprise proof are significantly different - more relaxed - than a mail fraud case.  More importantly, in both Esposito and Smothers, the convictions admitted at trial by the courts were the defendants own prior convictions - not a codefendant's.

The same holds true for the other two cases cited by the government dealing with the admission of prior convictions, namely, McCallum and Moran-Toala.  Id. at page 12.  In both of those cases - the prior convictions admitted *were the defendant's own prior convictons* - not the 30-years old prior conviction of a codefendant in a 2015 mail

9

fraud case.  Again - apples and oranges.  The Court in <u>McCallum</u>, however, did provide an accurate statement of the law and concern over the admission of a defendant's prior convictions at trial.  As the Court explained:

> In <u>Old Chief v. United States</u>, 519 U.S. 172 (1997), the Supreme Court defined "unfair prejudice" as "an undue tendency to suggest decision on an improper basis," *Id.* at 180, and invoked as an example, a jury's "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily)," Id. at 180-81.  In this regard, evidence of prior convictions merits particular searching, conscientious scrutiny.  Such evidence easily lends itself to generalized reasoning about a defendant's criminal propensity and thereby undermines the presumption of innocence.  Despite the most careful instructions from the court, the risk is present that jurors are likely to believe that if a defendant was previously convicted of a drug offense, there is a high probability that he is guilty of the drug offense for which he is on trial...  Morever, prior convictions are far more likely to be received as potent evidence of propensity than other prior bad acts routinely offered under Rule 404(b) because they have the imprimatur of the judicial system and indicia of official reliability....

> Consequently, as we have repeatedly held, prior convictions should not be admitted unless the court has carefully conducted the Rule 403 balancing test required by *Huddleston [v. United States*, 485 U.S. 681 (1988)].  *See e.g., United States v. Salameh*, 152 F.3d 88, 110 (2d Cir. 1988) ("To avoid acting arbitrarily, the district court must make a "conscientious assessment of whether unfair prejudice substantially outweighs probative value." (quoting *United States v. Birney*, 686 F.2d 102, 106 (2d Cir. 1982); United States v. Williams, 596 F.2d 44, 51

(2d Cir. 1979) ("*District Judges must carefully scrutinize both the basis for the claimed relevance of [prior crimes] evidence and the balance between its probative value and prejudicial effect.  The key to a far trial in such cases is a careful determination by the trial judge of both issues, particularly the latter* (emphasis added).

See <u>United States v. McCallum</u>, 584 F.3d 471, 76 (2d Cir. 2009).

Here, the government is seeking to use Mr. Novis' prior criminal conviction from the early 90's - for conduct that is "identical"  to that in the present indictment" - to inescapably bootstrap their entire case against Mr. Priolo based upon a specious claim of relevance.  For all of the reasons previously provided, this evidence should be precluded.

In sum, in order for Mr. Priolo to receive a fair trial - the focus of his February trial should be on proving beyond a reasonable doubt whether the actual mass-mailings sent under the name Winner's Circle between March 2015 and December 2016 were fraudulent.  The government's attempt to create a sideshow at trial should be denied.

Respectfully submitted,

/JRF/

James R. Froccaro, Jr.

JRF:pa

11

A-53

# EXHIBIT
# 6

# PacNet's reluctance to conduct business with Novis

**From:** Monica Estrada
**Sent:** Friday, August 22, 2014 6:02 PM
**To:** Sarah Panchuk
**CC:** Renee Frappier;Miles Kelly
**Subject:** FW: Col Trading International - Jeffrey Novis

Hi Sarah,

We received a call from Ronald Clinton today notifying that Jeffrey Novis will no longer be part of COL Trading International Corporation.

Ron would like to know if it there is a possibility to reconsider this company once all the corresponding documents are finalized and if so, what documents/requirements are needed to resubmit an application for cheque processing.

Could you kindly look into and advise?

Let me know if further information is required for the evaluation of this possibility. I'd be happy to reach out to Ron.

Many thanks,
Monica

---

**From:** Monica Estrada , PacNet Services Ltd.
**Sent:** Friday, August 22, 2014 2:49 PM
**To:** Monica Estrada , PacNet Services Ltd.
**Cc:** Monica Estrada , PacNet Services Ltd.
**Subject:** FW: Col Trading International - Jeffrey Novis

-----Original Message-----
**From:** Sarah Panchuk, PacNet Services Ltd. [mailto:sarah@pacnetservices.com];
**Sent:** 6/27/2014 9:48:53 AM
**To:** Monica Estrada , PacNet Services Ltd. [mailto:monica@pacnetservices.com];
**CC:** Miles Kelly, PacNet Services Ltd. [mailto:miles@pacnetservices.com]; Renee Frappier, PacNet Services Ltd.
[mailto:Renee@PacNetServices.com];
**Subject:** Col Trading International - Jeffrey Novis

Good morning Monica

We will have to decline Col Trading International due to the criminal record of its owner and director Jeffrey Novis, on the same basis as the previous prospect of David Dobin (attached for your reference)

Additional References:

http://edumacation.com/DeceptiveMailingsDobinPreparedStatement

http://www.newsday.com/business/it-s-your-money-careful-fraud-in-the-mail-operators-of-sweepstakes-business-sent-to-jail-after-pleading-guilty-sidebars-1-cautious-players-feel-phone-v-vibe-2-never-pay-to-play-in-contests-see-end-of-text-1.366988

http://www.gpo.gov/fdsys/pkg/CHRG-106shrg59577/html/CHRG-106shrg59577.htm

Kind Regards,

Sarah

Exhibit 6, Page 2

MSFT-PN3-000000035290



**U.S. Department of Justice**
Consumer Protection Branch

---

**Charles B. Dunn**
Telephone:    (202) 305-7227
Fax:          (202) 514-8742
charles.b.dunn@usdoj.gov

**Overnight Delivery Address**
450 5th St., N.W., Room 6400
Washington, D.C.  20001

**Mailing Address**
P.O. Box 386
Washington, D.C.  20044

January 10, 2025

By ECF
Honorable Nusrat Choudhury
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

> Re: *United States v. Phillips, et al.*
> Case No. 21-cr-566

Dear Judge Choudhury:

The United States respectfully moves this Court for an order determining the admissibility of prior-acts evidence related to defendant Philip Priolo, and to a lesser extent, defendant Jeffrey Novis.  The government asserts that the evidence discussed herein is inextricably intertwined with the indictment's charges and is admissible to prove the background and development of the charged conspiracy (Count 2), and that in the most important ways, all or nearly all of this evidence is not "other acts" evidence, but rather, direct proof of the charged offenses.  Out of an abundance of caution, the government also seeks a ruling that the evidence is admissible under Fed. R. Evid. Rule 404(b) to prove the defendants' knowledge and intent to defraud.

### I.      Procedural Posture of the Case and Relevant History of the Related Case

Insofar as the trial set to commence on February 18, 2025 is only against Priolo, the scope of evidence contemplated by this motion is substantially reduced from that the government would seek to introduce in its trial of the same counts against Novis.  That said, the first count against Priolo charges conspiracy to commit mail fraud, and as alleged in the indictment, Priolo's co-conspirators were not only Novis, but also Sean Novis,[1] Gary Denkberg, and others.  *Indictment*, Dkt No. 1, at 1–5, 9.

---

[1] The government uses "Novis" when referring to defendant Jeffrey Novis, and "Sean Novis" to refer to Novis's son where necessary.

In the 2022 trial of Sean Novis and Denkberg, both defendants were convicted of all counts of aiding and abetting mail fraud (counts 16–19 in the *Superseding Indictment*) in connection with the defendants in this case: Priolo, Novis, and Phillips. *United States v. Sean Novis and Gary Denkberg*, 20cr335 at Dkt Nos. 33, 137, 139. In that 2022 trial, the government did *not* introduce evidence of Novis's conviction for mail fraud and his 2001–2002 imprisonment, despite those facts being widely known amongst the persons those defendants associated with; that said, the government noted various defense-initiated circumstances in which the government reserved the right to offer evidence and testimony surrounding those facts. *Id.* at Dkt No. 51, *Trial Memorandum of the United States*, p. 23–24. Neither Priolo nor Novis were defendants in that case or specifically named as co-conspirators.

## II.    Evidence Regarding Pre-Indictment Conduct

The government seeks to introduce evidence and testimony concerning pre-indictment conduct that is identical or nearly identical to that reflected in the present indictment. The government also seeks to introduce evidence that Priolo carried out acts in furtherance of the charged conspiracy with knowledge of Novis's criminal history, and the nature of that history in the form of Novis's conviction.

### A.  Priolo worked with Novis and Sean Novis to send fraudulent prize mailings in the early 2000s

The government intends to present both witness testimony and documentary evidence that Priolo first got involved in sending fraudulent mailings with Novis and Sean Novis long before the 2015–2016 time period charged in the Indictment. Witness Cathy Johnson, who began working for Sean Novis in 2000, will testify that at the time she began working for Sean Novis, both Jeff Novis and Priolo were working with Sean Novis to send out sweepstakes mailings very similar to those they sent under the name "Winner's Circle" in the 2015–2016 time period. Documentary evidence the government intends to use at trial shows Priolo's involvement with "Justin Grant, Ltd." and "Sweepstakes Advisory Network, Inc.," two shell companies in this early 2000s period. For example, an early 2000 letter recovered during the execution of the 2016 search warrant at Sean Novis's office states that Priolo and Novis were "employees" of "Justin Grant, Ltd." Exhibit 1. Public records show that "Justin Grant" was a corporation formed in 1998 and dissolved soon thereafter.[2] Similarly, Priolo was a "director" of "Sweepstakes Advisory Network, Inc." prior to the 2002 dissolution of that company, and Sean Novis is listed as an "officer." Exhibit 2.

---

[2] Nevertheless, the "Justin Grant" name was used for years thereafter by members of the conspiracy. *See, e.g.*, HZN-SWU3-00079920 (2007 Verizon phone bill to "Justin Grant Limited" and record of payment). Complaints also continued to flow to the conspirators related to "Justin Grant," Exhibit 3 at 8–11, 23 (2008 Better Business Bureau complaints and 2005 letter from district attorney), which appears to be a result of the conspirators' use of the same PO boxes and types of mailings (i.e., prize notices) under different shell company names.

Both of these entities Priolo was associated with between the late 1990s to the early 2000s—"Justin Grant" and "Sweepstakes Advisory Network"—were engaged in the same "business" of sending letters in the mail to mislead victims into believing they had won money and needed to remit a fee in order to receive that money. Both companies received numerous complaints and inquiries to that effect and provided numerous refunds, often in response to correspondence from state attorneys general. *See, e.g.*, Exhibit 3.[3] Prize notices sent by "Justin Grant" and "Sweepstakes Advisory Network" during this earlier period may also be used as evidence. *See, e.g.*, Exhibit 4.[4] The government may also offer the testimony of the "copywriter," Tom Ressler, who created prize notices used by the conspirators under those shell companies. As Ressler testified in the 2022 trial of Sean Novis and Denkberg, his expected testimony would demonstrate how the prize notices were created to mislead victims into believing they had already won money through his uses of artistic and linguistic techniques.

B. <u>Novis was convicted of conspiracy to commit mail fraud in the 1990s and that conviction impacted Novis and Priolo's operation of their Winner's Circle mailing scheme in 2015-2016</u>

Beginning in approximately 1992, Novis was a "mailer" of fraudulent prize notices. In the mid-1990s, Postal Inspectors investigated Novis's scheme, including executing a search warrant at Novis's office in 1994. As a result of the USPIS investigation, Novis signed agreements to plead guilty to one count of conspiracy to commit mail fraud pursuant to 18 U.S.C. § 371, and agreed to be fully debriefed by the government about his crimes and other matters of which Novis had knowledge. Novis's guilty plea and that of his then-partner, David Dobin, were entered in 1995; Novis was sentenced in 2001 to 15 months' confinement. *See generally United States v. Jeffrey Novis and David Dobin*, 95-cr-250 (E.D.N.Y. 1995).[5] Novis served his term of imprisonment in the 2001–2002 time period. The information and final judgment are attached hereto as Exhibit 5.

---

[3] Some of the complaints refer to victims receiving phone calls asking for additional funds as advance payments for receiving the promised prize—these appear to be a result of a competitor further defrauding Novis's and Priolo's victims once they received their mailing lists in the list-rental market. The government does not attribute this phone scam directly to Novis or Priolo and will redact any references to that from any victim complaints used at trial.

[4] The prize notices in this exhibit do not all state on the face of the document that they are being sent by "Justin Grant" or "Sweepstakes Advisory Network." It was the practice of Priolo's companies, both in the early 2000s and in the 2015-2016 time period to send mailings appearing to come from multiple "doing business as" entities. For example, in the prize notification appearing at pages 3-5 of Exhibit 4 (Bates HZN-SWU3-00038737 to 00038739), the company name "Justin Grant" only appears in the final line of the "Consumer Disclosure."

[5] The case is docketed on PACER but electronic documents are not available. The prosecution team retrieved the case file from the National Archives and has provided it in discovery; it is available to the Court should it require a copy.

The information to which Novis pleaded guilty outlines a scheme that is nearly identical to that set forth in the present indictment. The scheme's outline in the information included the following facts:

1. Novis and Dobin sent "sweepstakes announcements" to hundreds of thousands of persons in the United States, doing so with the use of purchased "target lists." The sweepstakes announcements were mailed under the names of at least 30 different companies and appeared to have been signed by someone with an official-sounding title, such as "Chairperson," "Chief of Corporate Records," "Treasurer," "Comptroller," or "Independent Auditor." These company names were fictitious as were the signatures, names, and titles of company officers.

2. The sweepstakes announcements were designed to make the recipient believe that they had won $12,000, and that to receive the prize they need only return the enclosed form in order to "verify his identity" and pay the requested fees. In fact, Novis and Dobin did not intend to pay anyone the prize money.

3. Instead of cash prizes, victims received a pamphlet advertising various discounts prices for various goods and services; to receive any benefit, a victim would have to spend thousands of dollars. Novis and Dobin intended for victims to believe that the money they paid entitled them to these benefits without additional expenditures.

4. The announcement also advised that a "unique identification number" would also be used to verify identity.

5. Recipients were directed to send their responses to one of multiple post office boxes opened by Novis and Dobin.

6. Novis and Dobin's scheme generated more than $6 million from more than 650,000 victims.

Exhibit 5 at 8–11. This describes a scheme that was largely unchanged over the following decades, with the exception of the discounts pamphlet morphing into the "sweeps report," but both ultimately being worthless products in pamphlet form that are inexpensive to produce and mail to victims as a cover-story fulfillment item for the fraudulent prize notices.

Following Novis' conviction, his son Sean Novis and employees hired by Sean Novis took over the day-to-day operation of the mailing scheme. Sean Novis's operation supported the mailing of fraudulent mailings on behalf of multiple "mailers" including Sean Novis himself, Novis, Gary Denkberg, Shawn Phillips, and Priolo (as described above).

Novis's prior conviction (amongst other evidence the government does *not* intend to introduce in a trial only against Priolo) shows Novis's knowledge that (a) the prize-notice

4

A-59

scheme was illegal, (b) the prize notices contained false representations, and (c) the scheme worked only if you led victims to believe they had already won money. As relevant to the February trial, Novis's prior conviction is probative of his own knowledge and intent to defraud. Concerning Priolo, Novis's prior conviction, and the strong circumstantial evidence described below that Priolo was well aware of that conviction, provides circumstantial evidence of Priolo's knowledge and intent to defraud. Priolo's knowledge of this prior conviction also provided motivation for Novis's conspirators—including Priolo—to keep Novis's name and presence in the background of the activities set forth in the present indictment.

Following on the latter point, it was widely known that Novis had legal troubles. The operation's lower-level employees' knowledge of the nature of Jeff Novis's legal trouble varied. Cathy Johnson, the youngest of those employees who began working for the operation in early 2000, recalls that Jeffrey Novis went to prison, believing it to be for tax evasion. Cheryl Jacquard, hired by the operation years after Jeffrey Novis's release from prison, knew that Jeffrey Novis was prohibited from being involved in running the operation because of legal troubles, and that Sean Novis was running the operation instead. Johnson and Jacquard are expected to testify at trial to this effect.[6]

In addition to this testimony, as described above, the government intends to present evidence of Priolo's involvement in the mailing operation and work with Jeff Novis in the late 1990s to the early 2000s, long after Novis's 1995 guilty plea and shortly before, during, and after his imprisonment.

Further, Novis's conviction impacted his later ability to access banking and payment processing services for similar mailing schemes, and this was reflected in how Novis and Priolo operated the scheme charged in the indictment. For example, Priolo was the "face" of the Novis-Priolo conspiracy to PacNet, the Canadian payment processing company used by Novis and Priolo in the events covered by the indictment. While the government does not suggest PacNet, the payment processor of choice for similar mass-mailing fraud schemes, is in any way an unwitting victim,[7] it had previously rejected accounts associated with Jeff Novis in light of his prior conviction for mail fraud. Exhibit 6. Novis and Priolo jointly owned, operated, and controlled Winners Circle, one of the business entities through which they operated the scheme charged in Court 2 of the indictment. However, Priolo affirmatively misrepresented Novis's involvement in "Winners Circle" to PacNet when he filled out an account application in late 2014, stating on a notarized-as-true form, amongst other things, that Priolo held "100% ownership" of Winners Circle, and that Priolo was the sole shareholder and authorized person

---

[6] In addition, Jason Spector, a partner in the scheme with Sean Novis and Gary Denkberg who left the conspiracy after government enforcement actions in 2012, recalls that Novis went to prison for mail fraud in connection with prize-notice mailings. Novis himself told Spector about his conviction and imprisonment. The government is considering calling Spector as a witness, but has not yet decided whether he will be called in a trial only against Priolo.

[7] The principals of PacNet are pending extradition relating to PacNet's decades-long facilitation of mass-mailing fraud schemes. *United States v. Day, et al.*, No. 19cr155 (D. Nev. 2019).

who could act for Winners Circle.  Exhibit 7 at 11, 12, 17, 19.  This indicates Priolo's awareness that Novis's ownership and involvement in Winner Circle should be misrepresented and obscured and that even PacNet would balk at Novis's involvement due to his prior conviction. Priolo also corresponded extensively with PacNet, sought their "approvals" for prize notices, and directed the dispersal of fraud proceeds from PacNet, all while concealing Novis's involvement. Similarly, the two had problems keeping banking relationships—for example, Peoples United Bank closed their "Winners Circle" account in 2015 once they understood Novis's criminal history involving sweepstakes mailings.  The government intends to introduce documents from Peoples United Bank and the testimony of a bank employee to this effect, as well as evidence that Priolo was aware of this problem with that bank that led to the account closure.

Thus, in addition Novis's criminal history being common knowledge among scheme participants, that history manifested in the operations of the scheme in a number of ways involving Priolo and is more direct (though still circumstantial) evidence that (1) Priolo knew Novis's criminal history, and thus (2) Priolo knew that the scheme was illegal and (3) Priolo misrepresented Novis's involvement in the scheme.

### III.  The government provided notice to the defendants as required by Rule 404(b)

The government provided notice of potential 404(b) evidence to defense counsel in March 2024, approximately 11 months before trial.  Exhibit 8. This notice included Jeff Novis's prior conviction for conspiracy to commit mail fraud and Novis and Priolo's continued involvement in the scheme from the early 2000's onward. The government does not intend to offer at a trial solely against Priolo evidence of the postal service administrative action against Jeffrey Novis in 1997, Novis's numerous admissions about the scheme to Postal Inspectors as a cooperator, and similar evidence.

In addition to categories of evidence described in the March 2024 notice, this motion also serves as notice under Rule 404(b) of the government's intent to admit evidence related to Priolo's involvement in Justin Grant, Sweepstakes Advisory Network, and the other activities discussed herein, insofar as it is filed more than five weeks in advance of trial.  *Cf. United States v. Brown,* 627 F. Supp. 3d 206, 241–42 (E.D.N.Y. 2022) (Kuntz, J.) (rejecting defense motion for 30 day notice under Rule 404(b), approving government request to provide notice on motions date 17 days before trial, and noting that courts in the Second Circuit have held that "two or three weeks notice" under Rule 404(b) is "reasonable" within the meaning of the Rule).

### IV.  Law and Discussion

The evidence and testimony on which the government seeks the Court's ruling on admissibility includes the items discussed above, including the Exhibits to this motion and potential witness testimony about the topics they raise.  Exhibits to the motion that include prize-notice mailings, complaints or responses to complaints, and similar evidence are representative of the types of evidence the government intends to introduce at trial, but do not represent the entire universe of such evidence that the government may offer.

A. <u>The evidence of Priolo's earlier involvement in sweepstakes-related mail fraud and his knowledge of Novis's prior conviction is admissible without reference to Rule 404(b) because the government must prove Novis's intent to violate the law and commit mail fraud, and because this evidence is inextricably intertwined with the evidence regarding the charged offenses and is necessary to complete the story of the crimes on trial.</u>

Evidence of criminal activity that is not specifically recounted in the indictment may be admissible without reference to Rule 404(b), because such "evidence of uncharged criminal activity is not considered 'other crimes' evidence 'if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'" *United States v. Kaiser*, 609 F.3d 556, 570 (2d Cir. 2010) (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir.2000)); *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997).

Evidence of Priolo's involvement in the late 1990s to early 2000s and Novis's criminal history with circumstantial evidence of Priolo's knowledge of that history is probative of conspiracy and the scheme-to-defraud element of the charged offenses. Such evidence provides a background for the scheme described in the indictment, as well as proof of Novis's and Priolo's knowledge of that scheme, and their fraudulent intent in mailing prize notices. As the Second Circuit has noted:

> The trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment. Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed.

*Gonzalez*, 110 F.3d at 941, quoting *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991). Similarly, in conspiracy cases, such evidence may be used "to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators." *United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999).

1. <u>Despite severance, the government must still prove Novis's unlawful intent and knowledge of the scheme's object: mail fraud.</u>

As an initial matter, the critical relevance of Novis's intent and knowledge did not evaporate upon the Court's severing his trial from Priolo's. In other words, the government must still prove that (1) a conspiracy existed between two or more persons who agreed to act together in violation of the law, and (2) that they specifically intended to commit mail fraud. Proof merely of Priolo's conduct, knowledge, and intent is insufficient to establish the elements of a mail-fraud conspiracy. As Judge Azrack instructed the jury in relevant part in the Sean Novis and Gary Denkberg trial in 2022:

[T]he indictment charges the defendants with conspiracy to commit mail fraud. In short, the indictment charges that the defendants conspired to devise a scheme to defraud that used mails sent through the United States Postal Service. . . .

A conspiracy is a kind of criminal partnership, an agreement or understanding *by two or more persons to violate another law.* A conspiracy to commit a crime is an entirely separate and different offense from the underlying crime a conspirator is charged with agreeing to commit. That is because the existence of a conspiracy or partnership for criminal purposes is, in and of itself, a crime. The essence of the crime of conspiracy is the agreement or understanding among *two or more persons that they will act together to violate the law*. Thus, if a conspiracy exists, even if it should fail to achieve its purpose, it is still punishable as a crime. . . .

In order to prove the crime of conspiracy to commit mail fraud, the government must establish the following three elements of the crime beyond a reasonable doubt: First, *that two or more persons entered into the particular unlawful agreement* charged in the indictment. Second, that the objective of the conspiracy was to commit the crime of mail fraud; and Third, that the defendant knowingly, intentionally and willfully became a member of the conspiracy. Let me discuss these elements in more detail with you.

The first element, the existence of the agreement. First, *the government must prove beyond a reasonable doubt that two or more persons entered into the unlawful agreement* charged in the indictment. In other words, *one cannot commit the crime of conspiracy alone*. Rather, the proof must convince you that *at least two persons joined together in a common criminal scheme*.

Now, the government need not prove that members of the conspiracy met together or entered into any express or formal agreement. You need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or the means by which it was to be accomplished. It is sufficient to show that the conspirators implicitly came to a mutual understanding to accomplish the unlawful objective charged in the indictment by means of a joint plan or common design. You may, of course, find that the existence of an agreement between two or more persons to engage in criminal conduct has been established by direct proof. But since a conspiracy is, by its very nature, often characterized by secrecy, direct proof may not be available. You may, therefore, infer the existence of a conspiracy from the circumstances and the conduct of the parties involved. You may, in determining whether an agreement existed here, consider the actions and statements of those you find to be conspirators as proof that a common design existed to act together for the accomplishment of the unlawful purpose alleged in the indictment.

The second element, unlawful acts. The second element that the government must prove beyond a reasonable doubt is that *the objective of the conspiracy was to*

8

*commit the specific unlawful act charged in the indictment, i.e., mail fraud.* I have previously defined the legal elements of mail fraud for you in connection with counts two through seven, and those instructions apply here as well. Hence, you must find that there was agreement to commit mail fraud as I have defined that offense for you.

The third element, membership in the conspiracy. If you find that a conspiracy existed, and that the objective of such conspiracy was the commission of mail fraud as charged in the indictment, the third element the government must prove beyond a reasonable doubt is that the defendant you are considering knowingly, intentionally and willfully became a member of the charged conspiracy.

Transcript, *United States v. Sean Novis and Gary Denkberg*, 20cr335 at 1889–93 (emphasis added). *See also*, *Iannelli v. United States*, 420 U.S. 770, 777–78 (1975) (noting that the essence of conspiracy is the agreement to commit an unlawful act and discussing the nature of conspiracy as collective criminal agreement); *United States v. Babilonia*, 854 F.3d 163, 175 (2d Cir. 2017) (discussing elements of conspiracy); *United States v. Martino*, 759 F.2d 998, 1005 (2d Cir. 1985) (affirming admission of 11-year old prior conviction to prove knowledge and intent in drug conspiracy and possession-with-intent trial).

Here, Novis's prior conviction and the basis for that conviction is direct proof of his knowledge and intent to commit the crime of mail fraud as charged in the indictment. The similarity of the methods and techniques set forth in the criminal information from his earlier case, to which Novis pleaded guilty, as well as the sanctions imposed upon Novis in the form of conviction and imprisonment, shows his unequivocal knowledge that the conspiracy with Priolo was both in violation of the law and had the specific object of committing mail fraud, probative of the first and second elements of conspiracy set forth above.

Anticipating that Priolo will object and state that introducing this evidence is prejudicial, the government has two responses. First, the government is *not* seeking to introduce many other forms of evidence of Novis's knowledge and intent, such as his statements to investigators to the effect that the scheme does not work if the prize notices don't make people think they had already won money, or his 1997 postal administrative enforcement action wherein he agreed to "permanently discontinue" the scheme involving prize notices. Rather, the government is limiting this knowledge-and-intent evidence, much as it did in the 2022 trial, and is not seeking to "pile on." Second, while the evidence may be "prejudicial" to Priolo's liberty interests insofar as it could contribute to his conviction, it is not unfairly so—additional bases for admission and Rule 403 prejudice are addressed in this motion. Thus, Novis's conviction is admissible proof of conspiracy.

2. Evidence of Novis's prior conduct is otherwise admissible proof of the scheme's background, the understanding and intent of the conspirators, and is necessary to tell the story of the crime on trial.

Decisions within the Second Circuit further illustrate the admissibility of this evidence. In *Coonan,* the government introduced evidence (without reference to Rule 404(b)) of a criminal

9

gang's "gruesome murders and dismemberments" even though those events occurred prior to the defendant's membership. *Coonan*, 938 F.2d at 1561. The court deemed this evidence to have been properly admitted—despite not directly relating to the charged offense—because it was "probative of the charged enterprise" and admissible as background evidence "to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." *Id.* Here, evidence of Novis's prior criminal case and conviction is admissible to show "the understanding or intent with which certain acts were performed" by Priolo and Novis, even though the government possess no evidence that Priolo was a member of Novis's operation in 1994—this is especially so where there is circumstantial evidence that Priolo knew of Novis's history during the time of the charged offenses. *Id.*

*United States v. Lingat* presents similar issues to those presented by this motion. No. 21cr573, 2024 WL 1051633 (S.D.N.Y. Mar. 11, 2024). In that case, the defendants were charged with conspiracy to avoid payroll taxes during the 2010 to 2016 period. *Id.* at *2. As relevant here, the government sought to introduce two types of evidence that were outside the indictment: (1) evidence that the same conduct involving payroll-tax avoidance had been occurring for many years before 2010, as far back as the late 1980s, and (2) evidence that *one* of the two defendants had also been engaged in personal tax evasion pursuant to Rule 404(b). The court's Rule 404(b) analyses are discussed below, but concerning the identical conduct occurring before the indictment period, the court permitted that evidence as "direct evidence" to provide background for the indicted scheme, to provide context, and to avoid jury confusion by "complet[ing] the story of the crime on trial" because "'[i]t would have been impossible to intelligibly present a case about much of what went on after [the beginning of the charged conduct] without starting at the beginning.'" *Id.* at *3 (quoting *United States v. Kaiser*, 609 F.3d 556, 571 (2d Cir. 2010) (alterations in original)).

Concerning convictions specifically, courts have admitted evidence of prior convictions as "background" evidence and because it was "inextricably intertwined" with and to "complete the story" of the charged offenses. In *United States v. Esposito*, the Second Circuit affirmed the admission of the defendant's conviction as "background," "inextricably intertwined," and "necessary" where the conviction would be a "red flag" that the defendant discussed with a witness. No. 20-2143-CR, 2021 WL 5492935, at *2 (2d Cir. Nov. 23, 2021). Similarly, in *United States v. Smothers*, the court admitted the defendant's three prior convictions on these grounds, where incarceration resulted in the scheme's leadership changes and where the convictions "were a part of his years-long criminal relationship with his co-conspirators," amongst other reasons. 652 F. Supp. 3d 271, 303–04 (E.D.N.Y. 2023) (Matsumoto, J.).

Nearly all of this evidence that the government intends to use was found in the offices of the defendants' co-conspirators or in email accounts controlled by Novis and Priolo. The fact that the co-conspirators maintained such detailed records of the scheme, including past prize notices, complaints and notes from victims, complaints and inquiries from government officials and consumer advocates, responses to complaints, and that they committed the charged acts in the midst of those records is part of the *res gestae* of the charged counts, i.e., is necessary to

complete the story of the charged offenses. *United States v. Volkell*, 251 F.2d 333, 336 (2d Cir. 1958) (noting "courts have admitted evidence as to other articles found at the time of the search as constituting 'part of the res gestae'"). It is also necessary to show the background and development of the charged conspiracies, insofar as Priolo and the other conspirators were committing the same offenses together and in the same way for a number of years prior to the events described in the indictment.

Moreover, the evidence shows that the overarching Novis sweepstakes prize-notice mail fraud scheme was in continuous operation between the early 1990s and at least the end of 2016, and that the co-conspirators used the same techniques and methods to carry out the scheme during that entire period; moreover, the identities of the participants involved in the earlier activity was substantially similar to that reflected in the current charges. As in *Lingat* and *Diaz* it is necessary to "start at the beginning" to tell the story of the crime on trial and to provide background, context, an understanding of the defendants' intent, and the development of the trusting relationship between the conspirators. Here, the "beginning" for Priolo involves Justin Grant, Sweepstakes Advisory Network, Novis's criminal history, and the same key conspirators as those in the charged conspiracy, namely Novis, Sean Novis, and Priolo.

As to Novis's criminal history, the evidentiary value of Priolo's concealment of Novis's involvement is entirely lost absent evidence of Novis's criminal history. It will also improperly confuse jurors to see Priolo's various assertions that he is the sole person associated with Winners Circle, or the banker's closure of the Winners Circle account, without explanation and proper context that he didn't want to raise "red flags" in the financial industry. *Esposito*, 2021 WL 5492935, at *2. Both of these events happened in the course of and in preparation for the charged conspiracy, but they lose their evidentiary value without the context provided by the pre-indictment evidence. This is what "background," "inextricably intertwined" and "necessary to complete the story of the crime on trial" mean. *Id.* Similarly, this history is necessary to explain the "years-long criminal relationship" between the conspirators, how Sean Novis came to lead the mailing operation, how Priolo acted with the knowledge of these past events in furtherance of the charged conspiracy, and the other reasons stated herein. *Smothers*, 652 F. Supp. 3d at 303–04.

B.  The evidence is also admissible as "other acts" evidence under Rule 404(b).

Alternatively, the government seeks a determination of admissibility of this evidence under Rule 404(b). That rule is considered to be a rule of inclusion—not exclusion—where the evidence is offered for some purpose other than showing the defendant's criminal propensity. *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992). Despite the "inclusionary" approach, Rule 404(b) does not provide "carte blanche" for admission of "any prior act of the defendant in the same category of crime." *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009). Rather, when offering prior-act evidence to establish the defendant's knowledge or intent, the government must "identify a similarity or connection between the two acts that makes the prior act relevant to establishing knowledge of the current act." *Id.* The process for determining admissibility of evidence under Rule 404(b) is as follows:

First, the district court must determine if the evidence is offered for a proper purpose, one other than to prove the defendant's bad character or criminal propensity. If the evidence is offered for a proper purpose, the district court must next determine if the evidence is relevant to an issue in the case, and, if relevant, whether its probative value is substantially outweighed by the danger of unfair prejudice. Finally, upon request, the district court must give an appropriate limiting instruction to the jury. Since a district court is in the best position to evaluate the evidence and its effect on the jury, its rulings on admissibility under Rule 404(b) will not be overturned on appeal absent a clear showing of abuse of discretion.

*Pitre*, 960 F.2d at 1119. With respect to admission of prior convictions, such evidence merits careful balancing under Rule 403, *McCallum*, 584 F.3d at 476, but Rule 403 is by no means a bar to the admission of such evidence. *See, e.g., United States v. Moran-Toala,* 726 F.3d 334, 346 (2d Cir. 2013) (holding that prior conviction in a nearly identical, separate conspiracy was properly admitted as highly probative of knowledge, despite the risk of prejudice); *United States v. Sterling*, No. 22cr247(EK), 2023 WL 1967526 (E.D.N.Y. Feb. 12, 2023) (Komitee, J.) (admitting evidence of prior conviction to show knowledge and intent and stating that "[t]he Second Circuit has repeatedly declined to find probative evidence unduly prejudicial under Rule 403 where it 'did not involve conduct more inflammatory than the charged crime'").

In *Pitre,* the Second Circuit affirmed the trial court's admission of evidence of prior drug transactions against four of the six defendants to show the conspiracy's background and the development of the illegal relationship between the defendants, as set forth above in Section A. 960 F.2d at 1118, 1119. Under Rule 404(b), evidence of the defendants' involvement with prior drug transactions was probative of their intent or knowledge in connection with the charged drug transactions. *Id.* at 1119; *see also United States v. Araujo*, 79 F.3d 7, 8 (2d Cir. 1996) (holding that where knowledge and intent are at issue, other-acts evidence involving similar transactions is probative of knowledge and intent). Indeed, such evidence is not only the best evidence of a defendant's knowledge or intent, but is often the only such evidence. *Huddleston v. United States*, 485 U.S. 681, 685 (1988) (noting that "[e]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct").

In *Lingat*, the court determined that the pre-indictment period conduct was admissible under Rule 404(b), in addition to being admissible as direct evidence. Noting the distinctions between intrinsic and extrinsic acts—extrinsic acts being those "other" acts that Rule 404(b) addresses—the court stated that "[a]t bottom, all evidence of 'intrinsic act[s] offered as direct proof of the crime charged will, by definition, satisfy Rule 404(b)'" and concluded that Rule 404(b) was satisfied where the pre-indictment conduct dating to the 1980s was admissible as direct evidence. 2024 WL 1051633, at *4. The court then briefly considered the pre-indictment conduct as extrinsic (i.e., other-act) evidence, which the government offered as bearing "directly on [the defendants'] planning and preparation for, knowledge of, and intent to participate in the

12

same scheme between 2010 and 2016." *Id.*  The court agreed that the pre-indictment evidence was admissible "to prove knowledge and intent, which are disputed elements of the charged offense, and that its probative value substantially outweighs any possible prejudicial effect." *Id.*

Also in *Lingat*, the court deemed to be admissible under Rule 404(b) the other-act evidence of personal tax evasion committed by *one* of the defendants.  As noted above, where the other-act evidence is proof of knowledge and intent, it is admissible "if there is a similarity or connection between the charged and uncharged acts." *Id.* at *7, citing *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017).  The court determined that the personal tax evasion and the payroll tax evasion were sufficiently similar—both involving the creation of "sham companies" and routing funds through those "sham companies"—to constitute proof of "knowledge of and intent to commit the charged crime" under Rule 404(b).  *Id.* at *7.

Here, the government offers this evidence for a proper purpose: to show Priolo's and Novis's knowledge of the scheme's nature, its methodologies, and their intent to defraud.  The evidence and these purposes are relevant to issues in the case—amongst the elements the government must prove are that the defendant knowingly participated in a scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud.  *See, e.g.*, *United States v. Sean Novis and Gary Denkberg*, No. 20cr335 (JMA), 2023 WL 4746541, at *21, 22 (Azrack, J.) (E.D.N.Y. July 24, 2023).  Subject to Rule 403 analysis, discussed below, the evidence is thus admissible under Rule 404(b).  *Pitre*, 960 F.2d at 1119.

C. The probative value of this evidence outweighs any speculative prejudicial effect.

The final step in Rule 404(b) analysis is the Court's determination of whether the other-act evidence is more prejudicial than probative.  Such evidence is not unfairly prejudicial where (amongst other considerations) "the evidence . . . did not involve conduct any more sensational or disturbing than the crimes with which [the defendants were] charged." *Pitre*, 960 F.2d. at 1120, citing *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990).  Here, the conduct behind the evidence the government seeks to introduce is nearly identical to that charged in the present indictment.

For example, in *Lingat*, the defendant argued that evidence of a "different" tax-avoidance scheme risked "confusing the issue" of the scheme for which the defendant was standing trial, and that it would create a "side show" and "prolong an already complex trial." 2024 WL 1051633, at *8.  While not expressly stating so, the court appeared to approve of the government response, to the effect that the evidence was largely subject to proof through documents and existing witnesses (as here), thus eliminating risks of a "side show" and confusion, and that the evidence was neither "more sensational" nor more "disturbing" than the charged conduct. *Id.*, citing *Pitre*, 960 F.2d at 1120.  The court also concluded that there was "minimal risk that a jury would be unfairly shocked or influenced by a limited discussion of an alleged personal tax evasion when such evasion through the use of a sham entity is virtually identical to the charged conduct," and whatever unfair prejudice that might occur was curable with a limiting instruction. *Id.; see also United States v. Archer,* No. 22-539, 2023 WL 3860530, at *3 (2d Cir. June 7, 2023), cert. denied, 144 S. Ct. 694, 217 L. Ed. 2d 389 (2024) (holding that introduction of co-

13

conspirator's prior conviction did not create spillover prejudice and that judge's instructions cured any risk of prejudice); *United States v. Frazier*, No. S6 15-CR-153 (VSB), 2019 WL 761912, at *13 (S.D.N.Y. Feb. 21, 2019) (holding that evidence of co-conspirator's prior conviction created no spillover prejudice; new trial granted on other grounds).

Here, the conduct at issue, including that underlying Novis's conviction, is virtually identical to that charged in the indictment, which should cause no undue prejudice to Priolo. As Judge Komitee noted in his analysis of similar issues, "[t]he Second Circuit has repeatedly declined to find probative evidence unduly prejudicial under Rule 403 where it did not involve conduct more inflammatory than the charged crime." *Sterling*, 2023 WL 1967526, at *4 (internal quotations omitted). This is particularly true where the fact of the conviction (as to Priolo) is used to prove Priolo's knowledge, intent, and preparation, not his criminal propensity; indeed, the conviction is not even Priolo's own, making unfair prejudice an even lower risk than in the many cases where courts have admitted the defendant's own prior conviction. As discussed at length above, the conviction also provides critical evidence of Novis's intent and knowledge vis-à-vis the conspiracy charge.

   D.   The government proposes that the Court give a limiting instruction.

Once the court has determined that the other-acts evidence is admissible under Rule 404(b), the court must give a limiting instruction on request. *Pitre*, 960 F.2d. at 1119. Assuming Priolo desires such an instruction, the government proposes the following:

> The government has offered evidence tending to show that on a different occasion the defendant engaged in conduct similar to the charges in the indictment. Specifically, the government has introduced evidence that the defendant engaged in conduct similar to that alleged in the indictment during the late 1990s and early 2000s, that the defendant was aware that Jeffrey Novis and only Jeffrey Novis had previously been convicted of similar conduct, and that the defendant acted in accordance with his awareness of Jeffrey Novis's conviction in preparing to carry out the scheme alleged in the indictment.

> In that connection, let me remind you that the defendant is not on trial for committing this act not alleged in the indictment. Accordingly, you may not consider this evidence of the similar act as a substitute for proof that the defendant committed the crime charged. Nor may you consider this evidence as proof that the defendant has a criminal personality or bad character. The evidence of the other, similar act was admitted for a much more limited purpose and you may consider it only for that limited purpose.

> If you determine that the defendant committed the acts charged in the indictment and the similar acts as well, then you may, but you need not draw an inference that in doing the acts charged in the indictment, the defendant acted knowingly and intentionally and not because of some mistake, accident or other innocent reasons.

14

A-69

Evidence of similar acts may not be considered by you for any other purpose. Specifically, you may not use this evidence to conclude that because the defendant committed the other act he must also have committed the acts charged in the indictment.

This instruction is taken verbatim from Sand, et al., 1 MODERN FEDERAL JURY INSTRUCTIONS— CRIMINAL P 5.10 (Matthew Bender), with the exception of the second sentence, which was added to direct the jury's attention to the specific evidence embraced by this motion.

We thank the Court for its consideration of this request.

Respectfully submitted,

/s/ Charles B. Dunn
CHARLES B. DUNN
ANN F. ENTWISTLE
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
(202) 305-7227
Charles.B.Dunn@usdoj.gov

cc:    Charles Millioen (by ECF only)
       Jeff Dahlberg (by ECF only)
       James Froccaro (by ECF only)

15

A-70

# EXHIBIT 1

## Justin Grant "Employees," 2000

Exhibit 1, Page 1

A-71

# Justin Grant, Ltd.

February 28, 2000

Sportime at Syosset
75 Hasket Drive
Syosset, NY  11791

To Whom it May Concern:

This is to inform you that the following Sportime members are currently employed by

Justin Grant, Ltd.:

> Keara Albert
> Robert Kossin
> Philip Priolo
> Jeffrey Novis
> Sean Novis
> Jennifer Woska

If  I can assist you further, please let me know.

Very truly yours,

Sean Novis

Exhibit 1, Page 2

A-72

# EXHIBIT 2

Sweepstakes Advisory Network corporate filing

A-73

# STATE OF NEW YORK
# DEPARTMENT OF STATE

I hereby certify that the annexed copy for SWEEPSTAKES ADVISORY NETWORK, INC., File Number 020111000555 has been compared with the original document in the custody of the Secretary of State and that the same is true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on January 02, 2025.

WALTER T. MOSLEY
Secretary of State

BRENDAN C. HUGHES
Executive Deputy Secretary of State

Authentication Number: 100007216689 To Verify the authenticity of this document you may access the Division of Corporation's Document Authentication Website at http://ecorp.dos.ny.gov

Exhibit 2, Page 2

A-74

୫୫20111000555

New York State
Department of State
Division of Corporations, State Records
and Uniform Commercial Code
Albany, NY 12231

## CERTIFICATE OF DISSOLUTION
## OF

Sweepstakes Advisory Network, Inc.
*(Insert corporate name)*

Under Section 1003 of the Business Corporation Law

F. RST: The present name of the corporation is: _Sweepstakes Advisory Network, Inc._
(If the name of the corporation has been changed, the name under which it was formed is:

_____.)

SECOND: *(must include month, day and year)* The certificate of incorporation was filed by the Department of State on: _11-10-99_

THIRD: *(must include number and street)* The name and addresses of each officer and director of the corporation is:

_Sean Novis - 71 Eagle Chase          - officer_
_                    Woodbury, NY 11797_

_Phil Priolo -    PO. Box 801          - Director_
_                    Plainview, NY 11803_

FOURTH: The corporation elects to dissolve.

FIFTH: *(check appropriate box)*

☐   The dissolution was authorized at a meeting of shareholders by a vote of two-thirds of all outstanding shares entitled to vote or by the unanimous written consent of the holder(s) of all outstanding shares entitled to vote and the certificate of incorporation does not provide for an alternate manner of authorization.

☒   The dissolution was authorized in the manner required by provisions in the certificate of incorporation.

Document must be signed on reverse side.

DOS 1337 (rev. 8/98)

A-75

# EXHIBIT 3

Evidence of complaints to Sweepstakes Advisory Network and Justin Grant

A-76

# Fw: Nassau Police

| | |
|---|---|
| **From:** | Sean <dmcsi@hotmail.com> |
| **To:** | Ellen <ellen@dmcsinc.com> |
| **Date:** | Thu, 10 May 2001 15:19:34 -0400 |

----- Original Message -----
**From:** Sheldon Lustigman
**To:** Sean Novis
**Cc:** Ellen Mc Devitt
**Sent:** Thursday, May 10, 2001 12:17 PM
**Subject:** Nassau Police

Detective George called me today to ask about Justin Grant Inc - Is it still in business, what does it market etc in response to an unspecified complaint from London. Please advise as to status
----------------------------------------------------------------
--
This message is intended only for the use of the individual or entity to
which it is addressed, and may contain information that is privileged,
confidential and exempt from disclosure under applicable law.  If the reader
of this message is not the intended recipient, or the employee or agent
responsible for delivering the message to the intended recipient, you are
hereby notified that any dissemination, distribution or copying of this
communication is strictly prohibited.  If you have received this
communication in error, please delete it and notify us immediately.

===========================

Exhibit 3, Page 2

HZN-SWU-00470185

A-77

***Sweepstakes Advisory Network***
***Customer Service Department***
***P.O. Box 129***
***Plainview, NY  11803-0129***

Sherril Potter
State of Colorado
Office of the Attorney General
1525 Sherman St., 5th Fl.
Denver, CO  80203                                        December 11, 2000

Re:  Bren, Majda

Dear Ms. Potter,

We have received your letter of complaint dated November 22, 2000.  Although we believe that we comply with all applicable laws, rather than have a dissatisfied consumer, we are happy to remove Ms. Bren from our mailing list and refund any money she may have sent us.

A letter was sent to Ms. Bren requesting a copy of her canceled check so that we may process a refund for her and her name is being removed from our mailing list.  If you need to contact us further, please write to us at the above address.

Sincerely,

Susan
Customer Relations

Exhibit 3, Page 3

HZN-SWU-02343525

A-78

**_Sweepstakes Advisory Network_**
**_Customer Service Department_**
**_P.O. Box 129_**
**_Plainview, NY  11803-0129_**

Majda Bren
6464 Simms St., #B
Arvada, CO  80004                                    December 8, 2000

Dear Ms. Bren,

We have received a copy of your letter of complaint to the attorney general's office.  Although we believe we comply with all applicable laws, rather than have a dissatisfied consumer, we will be happy to refund any money you have sent to us.  Simply send us a copy of the cancelled check (front and back) so that we can process your refund.  Additionally, we are removing you name from our mailing list.  If a mailing is in progress at the time of this request, you may receive one or two more communications from us.

If you need to contact us further, please do so at the above address.

Sincerely,

Susan
Customer Relations

Exhibit 3, Page 4

HZN-SWU-02345859

A-79

### *Sweepstakes Advisory Network*
### *Customer Service Department*
### *P.O. Box 9102*
### *Bethpage, NY  11714-9102*

Cami Ellerbe
Indiana Government Center South
Fifth Floor
402 West Washington Street
Indianapolis, IN  46204-2770                    February 22, 2001

Re:01A508

Dear Ms. Ellerbe,

We are in receipt of your letter dated February 13, 2001 regarding the complaint of Mrs. Pat Fields on behalf of Harold Wolfgang.  We are notifying our data entry department to remove Mr. Wolfgang from our mailing lists.  Please be advised that if a mailing is in progress at the time of the request, he may receive one or two more communications.

If you need further information, please write to us at the above address.

Sincerely,



Susan Russo
Customer Relations

Exhibit 3, Page 5

HZN-SWU-02343536

A-80

*Sweepstakes Advisory Network*
*Customer Service Department*
*P.O. Box 9102*
*Bethpage, NY  11714-9102*

Robert Freilich
Office of the Attorney General
200 Old Country Road
Suite 460
Mineola, NY  11501                                February 27, 2001

Re:  Kolb, G.

Dear Mr. Freilich,

We are in receipt of your letter dated February 22, 2001 regarding the complaint of Gladys Kolb.  Sweepstakes Advisory Network is not a sweepstakes but a report of sweepstakes that can be entered no purchase necessary.  The report includes information such as the prizes and the approximate retail value of each, the method of entry, dates of entry and deadlines, etc.  The $21.95 that Mrs. Kolb sent in covers the cost of this report.

If Mrs. Kolb has not yet received the report, one will be sent to her.  If she has received it and is not satisfied, she can send us a copy of the canceled check (front and back) and we will be happy to refund her money.

If you need further information, please write to us at the above address.

Sincerely,

Susan Russo
Customer Relations

cc:G. Kolb

Exhibit 3, Page 6

HZN-SWU-02343542

A-81

# Justin Grant, Ltd.

April 18, 2000

Ms. JoAnn Soltan
Attorney General Eliot Spitzer
State of New York
Office of the Attorney General
Bureau of Consumer Frauds and Protection
300 Motor Parkway - Suite 205
Hauppauge, NY  11788

RE:  Complaint by:    Sharetta Lee
                      915 S. 32nd St.
                      Louisville, KY  40211-1503

Dear Ms. Soltan:

Although we believe that we comply with all applicable laws, rather than have a dissatisfied customer, we are happy to refund all amounts paid by the complainant.

We are in the process of issuing her the $9.00 refund check.  Once this is sent, we will notify your office.  This process normally takes 2-3 weeks.  In addition, we have removed the complainant's name from all mailing lists.  Please be advised that in almost all cases, this will guarantee that the complainant will receive no further mailings; however, if there is a mailing in progress at the time that this letter is sent, the complainant may receive one further communication.

Very truly yours,


Susan Kossin
Customer Relations


Exhibit 3, Page 7

HZN-SWU2-00329800

A-82



# The Better Business Bureau
### Serving Long Island's Nassau and Suffolk Counties
399 Conklin Street, Farmingdale, NY 11735 ~ Tel: (516) 420-0766 ~ Fax: (516) 420-1095 ~ E-mail: LongIsland@newyork.bbb.org

Date: 09/09/2008
Case: 806814.
Mediator: Burton Goldstein

Consumer: Mrs. Gladys Gonzalez
        585Lonesome Oak Dr.
        Copperas Cove, TX 76522
        Home phone:
        Work phone:

Business: Justin Grant Inc. /National Prize Reporting Center
        PO Box 9101
        Bethpage, NY 11714-9101

Date Complaint Received: 07/02/2008
Product/Service Involved: Process fee
Date problem first occurred:
Sales Person: Mr. J. Reitman
Date purchased: 03/08/2008
Purchase Price: $19.99
Amount in Dispute: $19.99
Nature of Complaint: Refund Or Exchange Issues

*Refund NPRC*

Description: Consumer states:    On March/08 I received a letter from the National Prize Reporting Center, saying that I was identify as a winner of certain sweepstakes.  All they need from me was to sign a paper and send it with a fee of $19.99. On March 8/08 I send them the money order.  On April 04/08 (before the 60 days refund policy) I request my refund in writing, because they use a misleading advertising.  So far I have send them three notices, and I still haven't received my money back.  It is not a big amount of money, but I want you to be awared of their scam technique.  Thank you for your help.    Gladys Gonzalez

Settlement Sought: Consumer seeks:    Refund - A refund of $19.99.

Case: 806814.
Page 2 of 3

Exhibit 3, Page 8

HZN-SWU3-00066416

A-83

# The Better Business Bureau
### Serving Long Island's Nassau and Suffolk Counties
399 Conklin Street, Farmingdale, NY 11735 ~ Tel: (516) 420-0766 ~ Fax: (516) 420-1095 ~ E-mail: LongIsland@newyork.bbb.org

Date: 09/09/2008

To:    Justin Grant Inc. /National Prize Reporting Center
       Attention: To whom it may concern
       PO Box 9101
       Bethpage, NY 11714-9101


From:  Burton Goldstein, Mediator
       BBB Serving Long Island's Nassau and Suffolk Counties

Case: 806814.

### **IMPORTANT  REMINDER-TIME SENSITIVE**

It has been at least three (3) weeks since we provided you with the enclosed complaint. To date, we have not received your reply.  It may be that you have already contacted your customer and resolved the problem. Please let us know within two (2) weeks so that your file does not reflect an unanswered complaint.

It is important to respond because the Better Business Bureau must report on unanswered complaints to all consumers, businesses, banks, government officials, and members of the media who inquire about your company. In addition, firms maintaining even one unanswered complaint are issued an UNSATISFACTORY rating by the Bureau.

In our experience, companies that are most responsive to consumers gain the advantage of repeat business and positive "word of mouth." Please respond to this second notice within two (2) weeks. Regretfully, if we do not receive it by then, we will enter it on your record as an unanswered complaint. Your anticipated cooperation is very much appreciated.

Case: 806814.
Page 1 of 3

Exhibit 3, Page 9

HZN-SWU3-00066418

A-84



# The Better Business Bureau
### Serving Long Island's Nassau and Suffolk Counties
399 Conklin Street, Farmingdale, NY 11735 ~ Tel: (516) 420-0766 ~ Fax: (516) 420-1095 ~ E-mail: LongIsland@newyork.bbb.org

Date: 08/13/2008

To:    Justin Grant Inc. /National Prize Reporting Center
        Attention: To whom it may concern
        PO Box 9101
        Bethpage, NY 11714-9101


From: Burton Goldstein, Mediator
       BBB Serving Long Island's Nassau and Suffolk Counties

Case: 806814.

      One of the most important services of the Better Business Bureau is to bring businesses and consumers together to resolve customer complaints. In our experience, companies that are most responsive to consumers gain the advantage of repeat business and positive "word of mouth."

      We are sending you a summary of a complaint from one of your customers, as well as the settlement they are seeking. Please examine it and advise us of your position within three (3) weeks.

      Even if you have already addressed their concerns, please complete the enclosed form so that your BBB file does not reflect any unanswered complaints. This is very important because we report on unanswered complaints to all consumers, businesses, banks, government officials, and members of the press who inquire about your firm. Companies maintaining even one unanswered complaint are issued an unsatisfactory rating by the Bureau.

      Our sincere goal is to neutrally assist both you and your customer in arriving at an amicable resolution to your dispute. Please respond within three (3) weeks with a statement of your position and response to this customer's request for settlement. Your anticipated cooperation is very much appreciated.

Case: 806814.
Page 1 of 3

HZN-SWU3-00066419

A-85

Case 2:21-cr-00566-NJC    Document 99-3    Filed 02/04/25    Page 11 of 23 PageID #: 2188



# The Better Business Bureau
## Serving Long Island's Nassau and Suffolk Counties
399 Conklin Street, Farmingdale, NY 11735 ~ Tel: (516) 420-0766 ~ Fax: (516) 420-1095 ~ E-mail: LongIsland@newyork.bbb.org

Date: 08/13/2008
Case: 806814.
Mediator: Burton Goldstein

Consumer: Mrs. Gladys Gonzalez
      585Lonesome Oak Dr.
      Copperas Cove TX 76522
      Home phone:
      Work phone:

Business: Justin Grant Inc. /National Prize Reporting Center
      PO Box 9101
      Bethpage, NY 11714-9101

Date Complaint Received: 07/02/2008
Product/Service Involved: Process fee
Date problem first occurred:
Sales Person: Mr. J. Reitman
Date purchased: 03/08/2008
Purchase Price: $19.99
Amount in Dispute: $19.99
Nature of Complaint: Refund Or Exchange Issues

Description: Consumer states:    On March/08 I received a letter from the National Prize Reporting Center, saying that I was identify as a winner of certain sweepstakes.  All they need from me was to sign a paper and send it with a fee of $l9.99. On March 8/08 I send them the money order.  On April 04/08 (before the 60 days refund policy) I request my refund in writing, because they use a misleading advertising.  So far I have send them three notices, and I still haven't received my money back.  It is not a big amount of money, but I want you to be awared of their scam technique.  Thank you for your help.    Gladys Gonzalez

Settlement Sought: Consumer seeks:    Refund - A refund of $19.99.

Additional Purchase Information:  Additional Purchase Info:
-Payment Made: Yes
-Payment Method: Money Order
Dates Complained to Firm: 04/04/2008  05/01/2008 06/01/2008

Case: 806814.
Page 2 of 3

Exhibit 3, Page 11

HZN-SWU3-00066420

A-86

Mr.D.Rogers                                    RE:Mr.D.Rogers
48 Ascot Drive                                 IDENTIFYING ASSESSMENT
IP3 9BY Ipswich                                I.D. 8165022347
UNITED KINGDOM                                 FILE:Receiver of Documents
                        03/05/01.


Dear Mr.Jeff Phillips,
                        I have dutyfully answered all legal documents so
far,and I have concisely conformed with all the detail.

    I understand that all "transactions" are legal" and binding" to myself
provided I conform with the nessesary detail,and respond promptly.
    I was pleased to receive five winning's guaranteed to be processed and sent
onto myself respectfully.
    Since sending me the form stating my Reported Money and Prizes of the amount
totaling)**£421,780.00***,I have therefore received these legal prize official'
as follows:

        U.S.AWARDS COMMISSION
        AWARD/ENTITLEMENT NOTIFICATION
            KANSAS CITY,MO $@+&+- 64171-8035 USA.

    It was included with the form 174B.and entitles me to the award amount of
£5,000.00,and I duly sent on the full payment and signed all the nessesary
paperwork as stated.
                    I also have received since then from the Cash Claim
Advisors as follows:
                    OFFICIAL ADVISORY OF A GUARANTEED (BY LAW)PRIZE ,of
the following amount;£600,000.00. payable to me provided I return the completed
form within 5 Day's. This has been done and sent on, on this day of 1 MAY 2001
and sent the required amount of£11.89 in English Postal Orders.
                    I believe therefore because of the  High Profile of your
Company and reputation this is correct and true, and I look now to my rewards
with respect and  honor,to these said amounts, and naturally I too am very
excited  to be the receiver.
                    If you would send me further correspondence this would be
appreciated.


            (All due Respects to  Sweepstakes Advisory Network,)

                    Yours Faithfully, Mr. D.Rogers.


P.S. : Ihave so far complied with every detail required of me, and have sent
       out in Cheque's and Postal Order's to the value of £60-£80** and am
       eager to know how soon the monie's will be paid to myself respectfully,
       and as you mentioned to me in the letter they do indeed state me as the
       "confirmed" Winner.Also it state's that these prize monie;s are now lawfull
       and rightly mine.....Could you kindly therefore give me approximate and
       usual time's,that I should expect this process to be processed,and of
       course directly to my person.

            Basically,as I am a young man who has not won before my
       good fortune, and i guess luck of the draw pulled me out!,,so really i'm
       just asking how long it usually take's for each money to come to me,
       probably in cheque form (in my name)....

            I'm sure you would wish me to be a happy,"confident" winner of
       your's,so if you would please enform& enlighten me -how long this usually
       take's,I will be most gratefull!!Your's Truthfully,

Exhibit 3, Page 12

HZN-SWU3-00089575

A-87

E.P.S.  I too,am so very excited to hear this good new's for me!

I know that you are a bonafide and reputable Company ,being the Sweepstakes' Advisory Network of America,and i am sure by now you have received my last Correspondence,and;that you will soon write back to me to reassure me of all the process's, and the usual time's for me to be sent monie's to myself-CONFIRMED!

      Please do write back soon,
            Mr.D.Roger's.

Exhibit 3, Page 13

HZN-SWU3-00089576

A-88

MRS E ROSE

Filed I.D.
81467220049    Rules 6/7/01    16 BARNACK ESTATE
BURGH. LE. MARSH
SKEGNESS
PE24 5LU
UNITED KINGDOM

Dear Sir

Sometime ago I sent back Confirmation which you asked for and the fee I paid and sent it by Registered mail to be sure you received it about the claim you said I had won which was. £421,780.00 which you said was in my name. I have ordered a new Car thinking you was getting intouch with me soon about this and I have not had any reply I did Send my Phone Number to get intouch with me but had no

Exhibit 3, Page 14

HZN-SWU3-00089577

A-89

2

responce please can you tell me that it is no joke as I was so overjoyed. please tell me when I am going to hear from you or to receive the cheque. Please Phone 01754-811949 and put my mind at rest

Sincerely

Mrs E Rose

P.S I did inform you of my change of address I did live at

2 REDHill LANE
LUDFORD
MARKet RASen
LN8 6AG

but MOVED ON 9TH DEC 2000 To This address above.

Exhibit 3, Page 15

HZN-SWU3-00089578

A-90

*SAN Rules 6/7/01*

#71 Winifred Road
Dagenham
Essex
England
RM8 1PP
020 8593 6243

29/05/01

SRN
PO BOX 9841
Melville NY 11747

Ms Rosana Raghoobar
Filed: I.D 8174123359

**ATT: Jeff Phillipe**

Dear Sir

I have completed the certification form, which you sent me for prize money of £421,780.00 as requested.

It was posted to you on the 10th May 2001 together with a postal order in the sum of £20.00 made payable to 'SRN Office' using the envelope you accommodated.

An early reply confirming the receipt if this letter at your earliest would be kindly appreciated.

Thank you
Ms Rosana Raghoobar

*Rosana Raghoobar*

Exhibit 3, Page 16

HZN-SWU3-00089579

A-91

Your no! 9517
6085AA

Mrs G. F. Lacey
8 Mead Park Close
Bickington, Barnstaple
N. Devon, EX31 2PE
15th November 00

Payment Procedure Committee
PO Box 9002.
Levittown
New York 11756-9002.
U.S.A.

For the attn of Mr Jeff Benson
Contest Director

Dear Mr Benson,

I have an undated letter signed by you, concerning "Payment Proceduring Identified as ID no. 0002159960". The letter also refers to the "Proposed Documents for the Issuance of no. 1-285 in the amount of $12,000 Twelve Thousand Dollars" to myself.. There is also the figure of £2,000 mentioned.

I have written on the letter "Certificate returned with Cheque 041 (£8.99) dated 3rd Nov." (This was probably the "£6.99 assessed fee" referred to in your letter at

OLSHAN000399

Case 2:21-cr-00566-NJC    Document 99-3    Filed 02/04/25    Page 18 of 23 PageID #: 2195

paragraph 5): I have heard nothing further from you.

On the evening of 6th Nov. I had a telephone call. A young lady spoke saying she was speaking on behalf of PPC. She asked my name and address. I gave them and also asked her name. She gave her name as Julie Petersen and was phoning from Nicaragua for PPC. I asked what the letters stood for. The "penny dropped" so to speak that I was utterly taken by surprise. Miss Petersen asked me if I was aware that "certain monies were due to me" - the reason for asking me to verify my name and address. I remember being non-committal; being elderly my brain doesn't work very well at the end of the day. She said they would get in touch later. Since then I have heard nothing nor received any communication.

It is now 15th Nov. and the reason for my writing to you. Mr Benson, have you heard or learned anything about this call from Nicaragua? Why did I receive this call?

Secondly, referring to your letter
which

OLSHAN000400

A-93

(which must have been written before 3rd. Nov) – do I look forward to receiving £12,000 dollars, or nothing? Referring to the Rules I do not appear to have done anything wrong – I did what I was asked to do.

If you can spare the time, I would be very interested to hear from you.

Yours sincerely

Gladys Lacey.

OLSHAN000401

A-94

ID 814403570046/TNK'06

Dear Sir,

On the 14/10/00 I received your letter, informing me, that I had 'won' a Prize in your Grand Prize Draw

You also asked, for an amount of money to be sent to you, so as I could receive that 'Prize'. I 'respected' your call and I believed you when you said, that to receive my prize; money has to be sent to receive it. 'Ireland' is a place of Hard Times, as unemployment is high and jobs are few.

I sent money I could not afford to send, to get in return, my PRIZE.

But, up till now nothing has reached me? Please be good enough to reply.

Mr. Lindsay Yours Faithfully.

ow. Lindsay

313, Ballycolman Est

Strabane. Co Tyrone

BT82 9EQ.

Tele: 07790401253

OLSHAN000404

Exhibit 3, Page 20

A-95

Dear SAM
    I have signed a number
of pappers for you.
    You Kept Saying you
won (21,780.00. And I have
never seen it Then you
Keep Taking money out of
my card. Now When
I thought you were on the
up and up I did not mind.
Now I am getting mad
I have been called to
many Time. I well have
This stop. And If you are
not going to give me my
money.
    Would really like it
if you took me off your
List or I well Do something
To stop it. I Know that
I can put your company
down For Coning poor/
disable people Like me

Exhibit 3, Page 21

OLSHAN000348

That hope and your company used that to con. Did you ever think that we can't hardly eat on what we make. So I Do what you say or stop mailing your Papers with con that you well get it this Time.

Patricia Flaws
3-28-01

I am not ~~happy~~ I have haved this over a year now. I mean what I say

Exhibit 3, Page 22

OLSHAN000349

A-97

Apr 29 05 10:43a                                             516-932-1268                    P.2



BOB LEE
DISTRICT ATTORNEY

# County of Santa Cruz

### DISTRICT ATTORNEY'S OFFICE

701 OCEAN STREET, ROOM 200, P.O BOX 1159, SANTA CRUZ, CA 95060
(831) 454-2400   FAX: (831) 454-2227   E-MAIL: dao@co.santa-cruz.ca.us

April 26, 2005

**ATTENTION: LEGAL DEPARTMENT**
Justin Grant Inc.
34 East Main Street
Smithtown, NY  11787

Re:  Prize Notification Letters
     National Prize Reporting Center

Dear Sirs:

The Santa Cruz County District Attorney's Office, Consumer Protection Division has received complaints about the Prize Notification Letters that you have been mailing to residents in our county and throughout California as the National Prize Reporting Center.

Your notification letters violate California Business and Professions Code §17500 which prohibits the dissemination of untrue or misleading statements in an effort to induce the public to enter into any obligation relating thereto.

Your notification letters also violate California Business and Professions Code § 17200 which prohibits any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.

Violations of these statutes can lead to civil prosecution by our office in which monetary penalties, restitution and injunctive relief are sought.

It is the general policy of the District Attorney's Office to give a business the opportunity to discuss a case before a decision is made on whether to initiate a law enforcement action. Accordingly, please contact me no later than May 9, 2005.
If I have not heard from you by that date, I will assume that you are not interested in providing any information and will make our charging decision without your input. I may be reached directly at 831-454-2542.

Sincerely,

William Atkinson
Assistant District Attorney

H:\WRA Files\Justin Grant Inc\1st ltr.wpd

WATSONVILLE OFFICE
☐ P.O. BOX 228 • FREEDOM, CA 95019 • 1430 FREEDOM BLVD • WATSONVILLE CA 95076 (TEL (831) 763-8120    FAX (831) 768-8090

Exhibit 3, Page 23

OLSHAN002346

A-98

# EXHIBIT
# 4

# Sweepstakes Advisory Network and Justin Grant Prize Notice Examples

Exhibit 4, Page 1

A-99

ASSESSMENT AND EVALUATION   SWEEPSTAKES ADVISORY NETWORK REPORT PAPERS. Files as Recorded for Assessment and Evaluation of Money and Prizes have been prepared for Report by Sweepstakes Advisory Network Reporting Office on Amounts and values regarding Sweepstakes and Contest Prize information based on public offers by the individual sponsors and independantly reported through our office. Please do not alter or change any of the information. All Prizes and Awards are guaranteed paid by the individual sponsors. Filed

SWEEPSTAKES ADVISORY NETWORK REPORTING OFFICE

## REAL ASSESSED MONEY AND PRIZES EVALUATION

### 2000



0732

FILE:    RE: Clyde Tyler
         IDENTIFYING ASSESSMENT I.D. 4554232886
         FILE: Receiver of Documents

INDIVIDUAL IDENTITY                                ADVISEMENT TO RECEIVER

IDENTIFIED:
Clyde Tyler -- Filed -- I.D. No: 4554232886

FILE AS PREPARED:
The matter Of: Documents Issued for completion    December, 2000

ENACTMENT TO TAKE PLACE
Filing and Record for Clyde Tyler                 AFFIXMENT OF OFFICE SANCTIONED SEAL

RESIDENCE OF DELIVERY
407 Holly Dr. , Albany, GA 31705-4534             RECEIVER
                                                  FILED ON RECORD

YOUR IDENTITY IS NOW PLACED ON RECORD        MATTER I.D.:      PLEASE MAKE ADDRESS CORRECTIONS
                                                               IF NEEDED. The document/papers that have
Filed--Receiver of Papers            I.D. No: 4554232886       been made-out specifically to you should be
                                                               accurate and current. ON RECORD AND FILED.

Dear Clyde Tyler,

Of this special moment in time, it is with great honor that we      ASSESSMENT AND EVALUATION DIV.
have the joy of informing you of the following matter.
                                                                   RECEIVER OF DOCUMENTS:
On December 1, 2000 Your Identity -Clyde Tyler-                     - - Now Known - -
fully occurred in our offices resulting from your recent           Clyde Tyler
participation in a National Promotion.
                                                                   IDENTIFIED INDIVIDUAL IN CONTACT:
As such, our office has -Confirmed- Your Identity and has here Issued     --delivered to residence--
Your - Identification Document- which when completed and returned to us
Fully Records you Clyde Tyler and Your -Credentials as
Candidate- I.D. No: #4554232886 for * * $621,780.00 in Money and Prizes* * as reported.

Therefore, all such reported matter becomes fully accessable to you in the Full Amount as stated;

✓REPORTED MONEY & PRIZES ] * * * $621,780.00 * * * —$ SIX HUNDRED TWENTY ONE THOUSAND, SEVEN
HUNDRED EIGHTY DOLLARS -- in Sweepstakes Contest Money as Prizes provided by the individual named
sponsors, now reported by the offices of S.A.N. to Identified Candidate Clyde Tyler —
I.D. No: 4554232886

On record as residing at 407 Holly Dr.
Albany, GA 31705-4534

- - - CERTIFICATION and CREDENTIALS here ISSUED - - -

This Clyde Tyler, and we ask that you now complete the attached request for access Certification and
return it to us as soon as possible. When received in our offices we will enact immediate procedures of
delivery for the report of the Monies and Prizes that will be sent to you.

THIS MATTER is Now Known in our office and we are awaiting your reply.

All the reported Money and Prizes are Guaranteed individually paid by the Sweepstakes and Contest
Sponsors.

The Offices of SAN Sweepstakes Advisory Network proudly assists Nationwide Clients regarding their
participation and entry activities for national public participation promotions and works
independently on behalf of consumer interests of entry for sweepstakes, contests, and promotion
participation. In doing so, SAN researches and states the amounts and values as reported, not being a
sweepstake or award notification, the reporting is based on facts stated by the sponsor. These facts
are then compiled for our reporting procedures to clients whom request such services. All individual
Amounts and Awards are guaranteed to be paid to the winners by the promoting sponsors.

We are so very excited for you Clyde Tyler and we are now awaiting Your completed Documentation.

We look foward to handling your file directly Clyde Tyler,

Richard S. Harris / Office Director

OLSHAN000393

A-100

OWNER: Ben Grant                                                    REGISTERED: 300002003-6

REGISTERED PAPERWORK        MAIN OFFICE DOCUMENT ISSUANCE CENTER FOR CONTEST COMPLETION        OFFICIAL PRIZE DOCUMENTS

RE:
No: #J-285
Check Issuance

**THE PAYMENT PROCEDURE COMMITTEE PAPERS**

MAIN OFFICE BUILDING    FINANCIAL PROCEDURES

N0:
300002003-6
5118
PPA06

*Registered Documentation & Completion Paperwork For Payout Of Money*

ACTUAL COMPLETION DOCUMENTS MUST BE COMPLETED IN FULL

PRIZE MONEY IS PAID BY CERTIFIED CHECK. ISSUED TO RECEIVER THROUGH NO PUR-CHASE NECESSARY PAPERS AS DIRECTED.

Mr. Ben Grant
P.O. Box 365
Plainview, NY 11803-0365

PREVIOUS FILING
NO PURCHASE NECESSARY
REGISTERED IN OFFICE

*Filed*

RECORD HAS BEEN FILED;
May, 1998
filed as:
- - - - - - - - - - -
Ref: Payment Procedure Papers
Made To: Ben Grant

In full accordance for you Ben,

It is truly our pleasure and honor to convey these Prepared Documents to You Ben as they confirm Your Identity for final proceduring for the Issuance of No: J-285 (In The Amount Of) - - $12,000.00 - - Twelve Thousand Dollars.

At this time, we have your participantion I.D. Papers filed and on Record as shown here:
ADDRESS OF DELIVERY  Ben Grant - - No # 300002003-6
                     P.O. Box 365
                     City of Plainview, State of destination NY 11803
        {    {    {    {    {    }    }    }    }    }

( This Important Matter of Payment Proceduring is Identified as I.D. No: #300002003-6)

Our Personal Services Manager has carefully notified our financial department of your 100% Identification for issuance of the papers which you have filed along with your address of delivery. Resulting from your recent response participation, your Identity was transferred to our office for personal handling.

Now that you are 100% Identified Ben, it is very important that you complete and return your 'Payment Procedure certificate' which is enclosed for you. This certificate has all of necessary lines for you to check and sign for final payout of money proceduring. As you will notice when checking the 3rd line you are guaranteed the * * * $3,000.00 Three Thousand Dollars * * * Expenditure Certificates for the $6⁹⁹ assessed fee and you are guaranteed this will be added to your Record.

We are happy to inform you Ben, that as the regulations require and state clearly, the Check In-The-Full-Amount must be paid and cashable at any bank of choice by winner and it is also required that taxes are responsible to be paid.

The Full Amount Of The Check is fully guaranteed to be $12,000.00 Twelve Thousand Dollars and has been registered for security in our financial office.

Upon this Confirmed Idenification of you Ben, we now are waiting to receive your completed Payment Procedure Certificate enclosed and when it arrives in our office we will initiate proceduring immediately.

Please do not change or alter the information regarding You and the Grand Prize Amount. We ask that you now complete the lines provided and use a check-mark for your indications.

In our excitement for you Ben, we ask that you promptly send in your Certificate Issued fully to YOU.

To your good fortune,

*Jeff Benson*

Jeff Benson, Contest Director

Letter to Ben Grant
Re: Amount Of Grand Prize Check $12,000.00 Dollars

Exhibit 4, Page 3

HZN-SWU3-00038737

A-101

Consumer Disclosure:

**NO PURCHASE NECESSARY TO WIN.**

Open to all individuals age eighteen and over except employees of the sponsor. Taxes are the responsibility of the winner. Winning claim number was pre-selected.

**ODDS ON YOUR CLAIM NUMBER BEING THE WINNING CLAIM NUMBER ENTITLING YOU TO RECEIVE THE $12,000.00 ARE 1 IN 3,000,000.**

Void in IN, AZ, CT, MN, LA, FL, IA, KS, and elsewhere where prohibited by law. This cash giveaway is to promote our Cash Savings Vouchers good for over $3,500.00 in fabulous discounts on purchases from nationally available stores, travel discounts, movie, jewelry, cruise, car rental, and grocery discounts. Satisfaction Guaranteed or your money will be refunded. Coupons require additional expenditures to effect savings indicated. To enter without receiving special benefits return form completed. All entries must be received by June First Nineteen Hundred Ninety Nine. Sponsor reserves the right to extend the deadline. The prize will be awarded on or about June Fifteenth Nineteen Hundred Ninety Nine.

All Decisions are final. Winner required to sign and return a winners affidavit within ten days of notification attempt. If prize is unclaimed, it will be awarded in a random drawing of all entries received during promotion period on or about June Thirtieth Nineteen Hundred Ninety Nine. Odds on random drawing depends on total number of entries received. Cash Prize Winner shall be selected from valid entries submitted in connection with this and other promotions sponsored by Justin Grant, Inc.. Additional entries shall increase the participants chance of winning. Prize winner gives unlimited use of name, city, state, (no street address will be used) for future promotions of the sponsor.

Marketing questions are voluntary, and do not indicate prize winner.

Please allow 4-6 weeks delivery on any purchases. If you elect to receive expedited rush processing, if available, allow 2-3 weeks delivery. Expedited processing does not increase your chances of winning.

A service charge of $15.00 will be charged if your check is returned for any reason when purchasing benefits. If you do not wish to receive future offerings please notify us in writing. This is for a profit promotion.

To receive the name of the Cash Winner, send a self-addressed stamped envelope to "Cash Winner", MSC 425, PPCP 34 East Main Street, Smithtown, NY 11787 after June First Nineteen Hundred Ninety Nine and before June Fifteenth Nineteen Hundred Ninety Nine.

Customer Service No. (516) 921-8759.

Customer Service Recording will be available Monday thru Friday 10AM - 3:30 PM E.S.T.

Justin Grant, Ltd.

Exhibit 4, Page 4

HZN-SWU3-00038738

A-102

# RECORD AND FILE

**FINANCIAL OFFICE**

**CERTIFICATE OWNER:** Ben Grant

**REGISTERED:** No: #300002003-6

No: #J-285

## Check Issuance -- $12,000.00 DOLLARS --

THIS ACTUAL CERTIFICATION IS ISSUED TO THE KNOWN HOLDER AS IDENTIFIED HERE. PLEASE DO NOT ALTER THE AMOUNT OF THE GRAND PRIZE MONEY AND YOUR IDENTIFICATION AS NOW ON RECORD FOR FINAL PROCEDURING FOR THE PAYOUT OF THE MONIES.

IDENTIFIED **Ben Grant**

RECORD AND FILE NO: **300002003-6**

ADDRESS FOR DELIVERY **P.O. Box 365, Plainview, NY 11803**

THIS RECORD AND FILE FULLY CERTIFY THAT THE AMOUNT OF THE FIRST PRIZE IS $12,000.00 TWELVE THOUSAND DOLLARS AND ALL PROCEEDINGS ARE PERFORMED WITH ACCURACY AND ATTENTION TO DETAILS. IDENTIFIED CANDIDATE FOR FIRST PRIZE MONIES IS RECOGNIZED HEREON AND PROVIDED INCLUSION WITH OFFICE ATTENTION NO PURCHASE NECESSARY IDENTIFIED FROM PRIOR RESPONSE INFORMATION. CANDIDATE IS FULLY GUARANTEED UPON REQUEST THE EXPENDITURE CERTIFICATES OF $3,000.00 THREE THOUSAND DOLLARS WORTH IN APPLICCABLE SUPPLEMENTS TOWARDS PURCHASES OF JEWELRY ITEMS, CRUISE, MOVIES, AUTOMOBILE RENTALS, GROCERY ITEMS IN NATIONWIDE STORES FOR THE $6" ASSESSED BUYER'S FEE AND GUARANTEES FILING IN PERSONAL RECORD AS PROVIDED BY OFFICE PERSONNEL.

**COMPLETE BOTTOM PORTION AND RETURN THIS ENTIRE CERTICATE PAGE**

THE PAYMENT PROCEDURE COMMITTEE PAPERS
MAIN OFFICE BUILDING · FINANCIAL PROCEDURES
Registered Documentation & Completion Paperwork For Payout Of Money

NO: 300002003-6
5118

PPA06

# REGISTERED CERTIFICATE

___Here I State, that positively I, Ben Grant am the Identified Candidate On Record and am here signing and completing my Grand Prize papers which I was issued and processed in your office at no purchase necessary and with this Document I am now completing my entry for the Grand Prize Monies Guaranteed Amount of $12,000.00 Dollars.

___And Do Here, Now Affix My Initials, for the Expenditure Certificates of *$3,000.00-- Three Thousand* Dollars for the $6" assessed fee and I am guaranteed filing of this in my Personal Record. I have enclosed fee as checked below.

___I am checking here for Direct Office Attention-and am including the additional $2 fee included below.

My applicable Expenditure certificate fee of $6" is enclosed by __Check __Cash __Money Order payable to 'PPC'.

PLEASE NOTE: (If requesting the $2 special attention Fee, the total is $8" ).

Is Your Address of Delivery correct?____Please write your Phone Number (_____)-(_____)-(_____)

Do you have a Credit Card and enjoy the convenience which it provides?_____

**$12,000.00 *** Twelve Thousand Dollars *****

_____
$AMOUNT

COMPLETE AND RETURN

I, Ben Grant state that I am the Identified Candidate for the Full Amount of the Prize Monies and am here completing and am returning My Grand Prize Entry Document for Final Payout Of The Monies Of The Exact Amount Of the Grand Prize is $12,000.00 ** * Twelve Thousand Dollars * * *

Signature of Ben Grant _____

OFFICE OF PERSONAL SERVICES

HZN-SWU3-00038739

A-103

Case 2:21-cr-00566-NJC   Document 89-4   Filed 02/04/25   Page 6 of 16 PageID #: 2206



ACTUAL   MONETARY   DOCUMENT   TO   RECEIVER

SWEEPSTAKE AWARD CENTER
ACTUAL MONETARY DOCUMENT TO RECEIVER
CREDENTIALS OFFICE FOR FINANCIAL PROCEDURES
NO PURCHASE NECESSARY    FILED AND ON RECORD
ENTRY PAPERWORK FOR COMPLETION TO PAY PRIZE MONIES

ENTRY PROCEDURES FOR PRIZE MONIES
DOCUMENT HERE ISSUED

DOCUMENT COMPLETION
    John J. Smith

IDENTIFICATION
    I.D. 12345678910

ADDRESS OF DELIVERY
    12345 Smith Street   Smithville, PA 12345

ESTABLISHED PROCEDURING COMMENCEMENT

GUARANTEED UP TO TOTAL $AMOUNT
--$2,000,000.00-- TWO MILLION DOLLARS
IMPRINTED AMOUNT OF SUM

EXCLUSIVE IDENTIFICATION
Exclusively for I.D.: 12345678910
    John J. Smith

Signed by RECORD-KEEPING:
FULL CONFIRMATION OF AWARD $MONIES

SWEEPSTAKE AWARD CENTER

Dear John,

Finalization of YOUR IDENTIFICATION known as I.D №:#12345678910 is now -Confirmed- You are Known Holder and Potential Report Recipient for the Prize Monies here stated.

This Prize Monies Matter has been reported and is Real.

YOU ARE FILED and ON RECORD as JOHN J. SMITH I.D. HOLDER 12345678910:
The reported $Amount of Money and Prizes is * * * $2,000,000.000 TWO MILLION DOLLARS * * *, GUARANTEED * * * to be paid to the winners by the individual sponsors. You are -CONFIRMED- on the list as Potential Recipient.

Our NSRS national sweepstakes reporting service reporting procedures for the stated the Full Amount of Monies and Prizes Guaranteed by the sponsors. Here provided is the certificate to be completed for Report access documents providing all entrant directives. As a private reporting firm we acquire and make available the entry directives for the cash, awards, and prizes and placed in Report.

The Report now in our office is accurate and upon completion and receipt of this certificate form You 100% Guarantees the Monies and Prize availability, being sure to include the one-time reporting fee of $29.95 which is required and must be included with the signed and completed Certificate below.

* * * VERY IMPORTANT* * * John, we are awaiting the return of this certificate, and upon receiving it in our office, we will proceed You to the Report of Monies and Prizes of  ~ $2,000,000.00 ~ ~ ~ TWO MILLION Dollars~.

Congratulations on Your Successful Identification!

Mary Alleson

C43



MUST BE RETURNED WITHIN 5 DAYS TO AVOID FORFIETURE      MATCHED SECURITY NUMBER
                                                              C43

OFFICIAL PRIZE MONEY REGISTRATION DOCUMENT

DOCUMENT OWNER:

OWNER OF CERTIFICATE:

IDENTIFICATION ON RECORD:

ADDRESS OF DELIVERY:

    * * $ 2 MILLION DOLLARS in Total Monies and Prizes * * *

___YES, I  John J. Smith as Identified have checked here for access within the Sweepstakes & Contests providing the $2,00... Report. In making my indications, I am Guaranteed Full~Acc... entrant directives as provided by the Report. ( please initia... 
___ I have enclosed the assessed proceduring Report fee of $2... and only fee, I am required pay.

CONFIRMED IDENTIFICATION RECEIVER

    Enclose the fee with ___Check  ___Cash ___ Money Order  made Pay...

N0:

WARNING: This is an Official ... Document -- Do not tamper with or reproduce.

Exhibit 4, Page 6

HZN-SWU3-00038785

A-104

Consumer Disclosure:

**NO PURCHASE NECESSARY TO WIN.**

Open to all individuals age eighteen and over except employees of the sponsor. Taxes are the responsibility of the winner. Winning claim number was pre-selected. **ODDS ON YOUR CLAIM NUMBER BEING THE WINNING CLAIM NUMBER ENTITLING YOU TO RECEIVE THE $12,000.00 ARE 1 IN 3,000,000.**

Void in IN, AZ, CT, MN, LA, FL, IA, KS, and elsewhere where prohibited by law. This cash giveaway is to promote our Cash Savings Vouchers good for over $3,500.00 in fabulous discounts on purchases from nationally available stores, travel discounts, movie, jewelry, cruise, car rental, and grocery discounts. Satisfaction Guaranteed or your money will be refunded. Coupons require additional expenditures to effect savings indicated. To enter without receiving special benefits return form completed. All entries must be received by June First Nineteen Hundred Ninety Nine. Sponsor reserves the right to extend the deadline. The prize will be awarded on or about June Fifteenth Nineteen Hundred Ninety Nine.

All Decisions are final. Winner required to sign and return a winners affidavit within ten days of notification attempt. If prize is unclaimed, it will be awarded in a random drawing of all entries received during promotion period on or about June Thirtieth Nineteen Hundred Ninety Nine. Odds on random drawing depends on total number of entries received. Cash Prize Winner shall be selected from valid entries submitted in connection with this and other promotions sponsored by Justin Grant, Inc.. Additional entries shall increase the participants chance of winning. Prize winner gives unlimited use of name, city, state, (no street address will be used) for future promotions of the sponsor.

Marketing questions are voluntary, and do not indicate prize winner.

Please allow 4-6 weeks delivery on any purchases. If you elect to receive expedited rush processing, if available, allow 2-3 weeks delivery. Expedited processing does not increase your chances of winning.

A service charge of $15.00 will be charged if your check is returned for any reason when purchasing benefits. If you do not wish to receive future offerings please notify us in writing. This is for a profit promotion.

To receive the name of the Cash Winner, send a self-addressed stamped envelope to "Cash Winner", MSC 327, 2799 Route 112 Ste. 9. Medford, NY 11763-2564, after June First Nineteen Hundred Ninety Nine and before June Fifteenth Nineteen Hundred Ninety Nine. Customer Service No. (516) 921-8759.

Customer Service Recording will be available Monday thru Friday 10AM - 3:30 PM E.S.T. Justin Grant, Ltd.

```
My Monies and Prize Report
0,000.00 Two Million as in
ess and shall receive all
l below John )
:9.95 which is the one-time
```

/able to: NSRS ISSUANCE OFFICE:

HZN-SWU3-00038786





Exhibit 4, Page 8

HZN-SWU3-00038787

Case 2:21-cr-00566-NJC    Document 99-4    Filed 02/04/25    Page 9 of 36 PageID #: 2209

A-106

Exhibit 4, Page 9

HZN-SWU3-00038838



FOR OFFICE
INSPECTION
**S.R.A.**

22-0931
825

Internal Targetbase
K<sup>ey#</sup> 64220-T

## Sweepstakes Resource Associates

— NECATI ALP —    Ref. #4651053748

RECEIVER IDENTITY PLACEMENT SECTION

IMPORTANT
OFFICE ARRANGEMENTS HAVE ALREADY
BEEN CONFIRMED FOR DELIVERY OF
S.R.A. AVAILABLE REPORT UPON IN-
HOUSE RECEIPT OF RECEIVER-PLACED
ORDER. PLEASE DO NOT DELAY.

Year : 2000

# 10 DAY AUTHORIZATION REQUEST PAPERS

DELIVERED FOR COMPLETION BY RECEIVER STATED HEREIN

This Page
Reference-Coded
To Individual Name
And ID No.

*** Necati Alp ***

Fully **Confirmed** Individual Upon Completion and Return Of This Document for the Report of Sweepstakes
Providing All Entry Procedures Regarding the Eligible Awards Listed-Here In Grand Total Opportunity To Win:

*** — $1,257,000 U.S. DOLLARS IN MONEY AND PRIZES — ***

ATTENTION! NOW COMES SWEEPSTAKES RESOURCE ASSOCIATES (S.R.A.) STATING FIRMLY THAT THE
TARGETBASE REF. NUMBER 4651053748            BELONGS TO   *** NECATI ALP ***
WHOSE MAILING ADDRESS IS KNOWN BY RECORDS AS  8415 BELLONA LN. APT. 1004 , BALTIMORE, MD 21204-2021
AND FURTHER UPON RECEIPT OF YOUR ORDERING PAPERS THE OFFICES OF S.R.A. SHALL PROVIDE
AND DELIVER THE REPORT OF CONFIRMED SWEEPSTAKES IDENTIFYING ALL ENTRY INSTRUCTIONS.
IT IS SINCERELY OUR PLEASURE TO ANNOUNCE AND STATE AS FACT THAT THE TOTAL VALUATION OF THE
SWEEPSTAKES LISTED IN S.R.A. REPORT IS NOW CONFIRMED FOR YOUR WIN OPPORTUNITY AT
*** — $1,257,000 IN MONEY AND PRIZES!! — ***

Data Completion Section:

PLEASE CHECK HERE [    ] Yes. I am the individual designated by Name and Address herein and do attest my age as over eighteen years of age. My current
residence is correct as Stated-Above unless I amend on this line ▶
Please Sign Name below and Enclose Full Required Fee of $25.99 for S.R.A. delivery of report providing entry procedures Into the sweepstakes with
verified opportunity regarding  MONEY AND PRIZES Announced in Grand Total ***$1,257,000 U.S.D.***

[    ] I have enclosed **$25.99** by Cash, Check, or Money Order payable to: "S.R.A."    (Add $2 extra for RUSH PROCESSING!)
*(NOTE: IMPORTANT! FEE IS REQUIRED FOR DELIVERY PROCEDURES. REPLY WITHOUT PAYMENT IS NOT PROCESSIBLE. NO C.O.D. AVAILABILITY.)*

I Have The Following (Please check to validate): [    ] DRIVERS LICENSE [    ] VALID CREDIT CARD [    ] PASSPORT
I can be reached at the following telephone number: (_____) _____ — _____    Best time to call: _____
PLEASE SIGN NAME HERE IN NORMAL HANDWRITING: X_____

64220-T

COMPLETE AND RETURN!

CORRESPONDENCE OF RECORD

RECEIVER NAME

*** — NECATI ALP — ***

SRA25

1430AA    10849    4651053748

MEANS OF DELIVERY:
(X) Mail  ( ) Telephone
STATUS OF ARRANGEMENTS FOR REPORT DELIVERY UPON S.R.A. ORDER RECEIPT
Confirmed and Verified for DIRECT Dispatch
INTERNAL PERSONNEL ADVISED: S.R.A. OFFICE SIGNATORY:
Yes

LOCATION OF HEADQUARTERS:
New York
AUTHORIZED REPLY METHOD:
First-Class Mail

DELIVERY OFFICES:
Sweepstakes Resource Associates
TOTAL VALUE OF SWEEPSTAKES LISTED AND REPORTED
DAY AND TIME OF NOTICE
Tuesday  9:08am (e.s.t.)

MAIL GRAM

A-107

CUSTOMER DISCLOSURE AND SATISFACTION COMMITMENT

SWEEPSTAKES ADVISORY NETWORK IS AN INDEPENDENT RESEARCH AND REPORTING COMPANY FOR THE PURPOSE OF PROVIDING ENTRY DETAILS ON PUBLIC PARTICIPATION SWEEPSTAKES OFFERED BY INDEPENDENT SPONSORS. SWEEPSTAKES ADVISORY NETWORK DOES NOT CONDUCT SWEEPSTAKES, AWARD MONEY OR PRIZES, OR ENTER RESPONDENTS INTO ANY SWEEPSTAKES OR CONTESTS. ENTRY IN ANY OR ALL OF THE SWEEPSTAKES REPORTED IN SWEEPSTAKES ADVISORY NETWORK PUBLISHED REPORTS IS AT THE DISCRETION OF THE RESPONDENT WHO MUST FOLLOW GUIDELINES OF SPONSORS' REGULATIONS AND RULES TO ENTER FOR THE MONEY AND PRIZE OPPORTUNITIES BEING OFFERED BY THE PARTICIPATING SWEEPSTAKES COMPANIES. THE TOTAL MONEY AND PRIZE OPPORTUNITIES REFLECTED IN EACH SWEEPSTAKES ADVISORY NETWORK PUBLISHED REPORT REPRESENTS THE CUMULATIVE TOTAL RESOURCED BY SWEEPSTAKES ADVISORY NETWORK FOR THAT REPORT. SWEEPSTAKES ADVISORY NETWORK IS NOT RESPONSIBLE FOR ENTERING INDIVIDUALS IN ANY SWEEPSTAKES. ALL INFORMATION REPORTED BY SWEEPSTAKES ADVISORY NETWORK IS BELIEVED ACCURATE AT THE TIME OF PRINTING, HOWEVER, SWEEPSTAKES ADVISORY NETWORK IS NOT RESPONSIBLE FOR ERRORS IN ENTRY METHODS OR FOR ILLEGIBLE ENTRIES, TYPOGRAPHICAL ERRORS OR ENTRIES THAT BECOME LOST, MISDIRECTED, DELAYED, DAMAGED OR MUTILATED THROUGH THE MAIL. IF ERRORS OCCUR IN PUBLISHING OF THE REPORT, SWEEPSTAKES ADVISORY NETWORK IS LIABLE TO THE RESPONDENT ONLY FOR THE EQUIVALENT AMOUNT OF MONEY PAID BY THE RESPONDENT TO SWEEPSTAKES ADVISORY NETWORK. CUSTOMER SATISFACTION IS GUARANTEED AND THE PURCHASE PRICE IS 100% REFUNDABLE TO THE CUSTOMER WITHIN 45 DAYS OF CUSTOMER PURCHASE UPON WRITTEN REQUEST.

OCCASIONALLY SWEEPSTAKES ADVISORY NETWORK MAKES ITS MAILING LIST AVAILABLE TO COMPANIES WHOSE PRODUCT OR SERVICE MAY BE OF INTEREST TO YOU AS A CUSTOMER. IF YOU WISH TO HAVE YOUR NAME EXCLUDED AND MADE NOT AVAILABLE IN THIS REGARD, PLEASE COPY YOUR NAME AND MAILING ADDRESS EXACTLY AS SHOWN ON THIS LETTER, OR IF YOU HAVE ANY QUESTIONS PERTAINING TO OUR SERVICES, PLEASE MAIL YOUR REQUESTS TO: SWEEPSTAKES ADVISORY NETWORK, CUSTOMER SERVICE DEPT., PO BOX 9102, BETHPAGE, NY 11714-9102.

Exhibit 4, Page 10

HZN-SWU3-00038839



DELIVERED INDIVIDUAL:

*** NECATI ALP ***

**R**E: Advisement of Authorization Request for
S.R.A. available Report of sweepstakes
entry procedures *Confirmed* for

**MONEY AND PRIZES**

opportunities valued in Full [Verified]

−GRAND−  $1,257,000  −TOTAL−
(One-Million-Two-Hundred-Fifty-Seven-Thousand Dols.)

— SIGNED ADVISEMENT —
PREPARED AND DELIVERED
**MAIL•GRAM**
DULY NOTED TO RECEIVER
IDENTIFIED BY

**Ref.**  #4651053748
[FILED RECORD OF RESIDENCE]

— Zip Code —
**00000-0000**

Sweepstakes Resource Associates

Office of Administration And Records, First Floor
NEW YORK HEADQUARTERS

[NOW KNOWN: CONFIRMED, AND ON RECORD] — As *Verified* on the available Report of
sweepstakes entry procedures for — NECATI ALP —
**The Total Amount of Awards listed for eligible sweepstakes as Stated
Here In-Full is...
$1,257,000 ONE-MILLION-TWO-HUNDRED-FIFTY-SEVEN-THOUSAND DOLS.}
in **Money and Prizes** for your win opportunity!!

S.R.A. OFFICES ARE THRILLED TO DELIVER THIS ACTUAL DISPATCH TO YOU TODAY, Necati ! ! !

AUTHORIZED CORRESPONDENCE

Dear Necati,

This communication comes Directly To-You by First-Class Letter delivery from the Sweepstakes Resource Associates.
Please Read Carefully:

Our offices are delighted to tell you via this prepared-correspondence that you — NECATI ALP —
have been Identified by Actual Ref. #4651053748 regarding S.R.A.'s available report of sweepstakes you may enter
for your opportunity to —WIN REAL MONEY AND PRIZES— VERIFIED IN THE GRAND TOTAL OF
**$1,257,000 U.S. DOLLARS!!**

Be it further Known, Necati...
We are thrilled to Reference you by name and ask that you give your earliest attention requested within [10 days] by returning
the accompanying Completed Page of correspondence addressed to you at your residence on record
*** 8415 BELLONA LN. APT. 1004 , BALTIMORE, MD 21204-2021 ***

IMPORTANT: Be advised that time-sensitive entry deadlines are Strictly In-Force by sponsoring sweepstakes companies who will
upon winners determination being Final provide direct dispatch of all CASH AND PRIZES. As an independent reporting service, S.R.A.
is diligent in our efforts making sure all our reporting is Fully-Accurate in every way; we do not operate sweepstakes or award prizes
from S.R.A. Hdqrts. — issuance to Prize Winning Entrants is settled directly by Awarding Sponsors!

***PLEASE DO NOT DELAY! IN SERVICE TO YOU, Necati, Tues., 9:08am (e.s.t.)***

Please verify your name as you want it printed on Documentation and make sure your address is current, including street, city, state,
and zip code information. Enclosure of fee payable to Sweepstakes Resource Associates in the amount of $25.99 is required for delivery
of the available Report of sweepstakes whereupon issuance of all entrant facts will become Yours for the entire OPPORTUNITY TO
—WIN THE ACTUAL MONEY AND PRIZES VALUED AT $1,257,000!—

In concluding this announcement, Here-Forward, our offices will await anxiously for your reply. On behalf of S.R.A.
Sweepstakes Resource Associates, it has been a great pleasure submitting this communication directly to you and we look forward
to your return correspondence shortly. Please do not delay!

Best wishes,

*Horatio Prince*

Horatio Prince
S.R.A. Administration/Ofcr.

RECEIVER NAME AND ADDRESS:

Necati Alp
8415 Bellona Ln. Apt. 1004
Baltimore, MD 21204-2021

*Attention:* — NECATI ALP —

*As S.R.A. signatory, I state the value of
Sweepstakes Money & Prizes to be Accurate
In-Full*  ***$1,257,000***

Authorized:  Horatio Prince    **64220-T**

Exhibit 4, Page 11

HZN-SWU3-00038840

A-109

Case 2:21-cr-00566-NJC   Document 99-4   Filed 02/04/25   Page 12 of 16 PageID #: 2212



Exhibit 4, Page 12

HZN-SWU3-00038841

A-110

**S.A.N. I. REPORT OFFICE**

Proceedings Office For Issuance of Report

MAIN REPORTING OFFICES

IMPORTANT DOCUMENT
REQUIRED
FOR ORDER OF REPORT

# DOCUMENTS

REPORT DOCUMENTS
OF REQUEST FOR ORDER

**RE:** S.A.N. Report Of Entry oppor-
tunities to Win Monies and
Prizes To Be Awarded

To: John J. Smith
Invitee I.D. #12345678910

**AMT:**
- - TOTAL AMOUNT OF SWEEPSTAKE
PRIZE OPPORTUNITIES - -
-- $2,600,000.00 --
Two Million Dollars

**REPORTING OFFICE**
**DOCUMENT COMPLETION REQUEST:**

| | | |
|---|---|---|
| Prospect John J. Smith | | I.D. No# 12345678910 |
| * * * Identified Invitee * * * | | Waiting for Reply |
| - - $2,600,000.00 Dollars -- | Confirmed Reported to compete for | |
| * * * TWO MILLION SIX HUNDRED THOUSAND DOLLARS * * * | | |
| 12345 Smith Street | Smithville, PA 12345 | |
| Paperwork Completion for report final delivery arrangements | | |

**PLEASE COMPLETE AND RETURN THIS ENTIRE PAGE**

REPORT OFFICE:
S.A.N. MANAGEMENT DIV.

PROMPT RESPONSE REQUEST -- **EXPECTED RESPONSE** --

- AMOUNTS VERIFIED -
--------------
December 2, 2000

Dear John,

As -Receiver- of this Letter we are notifying You of the Sweepstakes MONEY and PRIZES as reported. total
$2,600,000.00 --TWO MILLION SIX HUNDRED THOUSAND DOLLARS* * *  with public access as listed in our in our report of
opportunities for You John to Enter-to-Win.

We are now waiting here in our Report office to complete Your report request document here provided and arrange
delivery of the report which provides complete entry directions to Win. This completed paperwork will serve to
confirm that You are : John J. Smith [ I.D. No: 12345678910 ] Invitee ] and to make delivery to the address of
12345 Smith Street, Smithville, PA 12345.

As a requirement by our office of report, the Public Sweepstakes Monies and Prizes being provided by the indi-
vidual sponsors is accurate and in the Total Amount as shown. We now await the return of this order to deliver and
upon receipt in our offices, the report issuance detailing the Money and Awards not yet won will be delivered
directly. The Monies and Prizes are to be paid to the winners in the full-amounts by the individual sponsors.

S.A.N. Sweepstakes Advisory Network, reports on opportunities to enter for prizes and awards to be paid to win-
ning candidates and carefully provides entrant directives for patrons whom desire to participate. As a private
reporting firm we carefully acquire and make available the entry procedures for known cash, awards, and prizes
which are then placed on report by S.A.N. for our important patrons countrywide. Public sweepstakes are available
for anyone who wishes to participate and there is no cost for participation.. We are not a government agency and do
not conduct sweepstakes or award prizes. We strive diligently in serving consumer entrant interests by researching
available opportunities and presenting them to patrons whom we report to.

Your completion paperwork is being waited for so we ask that you promptly send it in John with the report assessed
fee of $24  and your participation access is guaranteed for entry into the Sweepstakes Cash & Contest Awards to be
awarded the winners by the sponsors. You will be attended to directly John...

Our Salutations to you John,

Douglas Bahre / Files and Records

Office Notice:
John J. Smith
12345 Smith Street
Smithville, PA 12345

IMPORTANT REQUIREMENT: Please complete the following...
_____YES, I John J. Smith state that as the Invitee Named here request-
ing the report of where to enter to Win the $2,600,000.00 in Sweepstakes
and Contest Money & Prizes. I am here completing this Document
requesting the report providing the complete entry directions for the
Money & Awards totalling $2,600,000.00 Dollars as reported by S.A.N.I.
I have enclosed the report and processing fee of $24

I have enlcosed my payment by ___check ___cash ___money order
payable to S.A.N.I. NETWORK  Please Charge To My Credit Card....
___VISA ___Mastercard ___Amex   Expir. date _____
Card No#_____

Signed by John J. Smith -Invitee-_____

HZN-SWU3-00059255

A-111

## S.A.N.I. RECORDS OFFICE
Proceedings Office For Issuance of Report

MAIN REPORTING OFFICES

IMPORTANT DOCUMENT
REQUIRED
FOR ORDER OF REPORT

# DOCUMENTS

REPORT DOCUMENTS
TO PROSPECT

**RE:** S.A.N. Report Of Monies
and Prizes To Be Awarded

To: John J. Smith
Prospect I.D. #12345678910

**AMT:**
- - AMOUNT NOW REPORTED - -
-- $2,600,000.00 --
Two Million Dollars

**RECORDS OFFICE**
**DOCUMENT COMPLETION REQUEST:**

```
    Prospect John J. Smith              I.D. No# 12345678910

    * * * Fully Identified * * *         FILED AND ON RECORD

              - - $2,600,000.00 Dollars   --   Confirmed Reported
              * * * TWO MILLION SIX HUNDRED THOUSAND DOLLARS * * *

              12345 Smith Street         Smithville, PA 12345

              Paperwork Completion for report final delivery arrangements
```

## PLEASE COMPLETE AND RETURN THIS ENTIRE PAGE

REPORT OFFICE:
FILES & RECORDS
S.A.N. MANAGEMENT DIV.

- AMOUNT FILED -
-------------

PROMPT RESPONSE REQUEST -- **FILE CONCLUSION READY** --          September 2, 2000

Dear John,

Your File has been established and YOU are IDENTIFIED AS PROSPECT CANDIDATE JOHN,,,
The Sweepstakes MONEY and PRIZES as reported, totals * * * $2,600,000.00 --TWO MILLION SIX HUNDRED THOUSAND
DOLLARS* * * with public access for your entry to participate-to-Win.

We are now waiting here in our Report office to complete Your report request document here provided and
arrange delivery of the report which provides complete entry directions to Win. This completed paperwork will
serve to confirm that You are as the records show being ...Candidate: John J. Smith [ I.D. No: 12345678910 ]
Fully Identified ] and to make delivery to the address of 12345 Smith Street, Smithville, PA 12345.

As a requirement by our office of report, the Public Sweepstakes Monies and Prizes being provided by the
individual sponsors is accurate and in the Total Amount as shown. We now await the return of this certification
and upon receipt in our offices, the report issuance detailing the Money and Awards not yet won will be deliv-
ered directly. The Monies and Prizes are paid to the winners in the full-amounts by the individual sponsors.

S.A.N. Sweepstakes Advisory Network, reports on opportunities to enter for prizes and awards to be paid to
winning candidates and carefully provides entrant directives for patrons whom desire to participate. As a
private reporting firm we carefully acquire and make available the entry procedures for known cash, awards, and
prizes which are then placed on report by S.A.N. for our important patrons countrywide. Public sweepstakes are
available for anyone who wishes to participate and there is no cost for participation.. We are not a government
agency. We strive diligently in serving consumer entrant interests by researching available opportunities and
presenting them to patrons whom we report to.

Your completion paperwork is being waited for so we ask that you promptly send it in John with the report as-
sessed fee of $24 and your participation access is guaranteed for entry into the Sweepstakes Cash & Contest
Awards to be awarded the winners by the sponsors. You will be attended to directly John...

Our Salutations to you John,

Douglas Bahre / Files and Records

Office Notice:
John J. Smith
12345 Smith Street
Smithville, PA 12345

|||||||||||||||||||||||||||||||||||||||||||||

IMPORTANT REQUIREMENT: Please complete the following...
_____YES, I John J. Smith state that I am the Identified Prospect/
Candidate as Named here requesting the report of where to enter to Win
the $2,600,000.00 in Sweepstakes and Contest Money &Prizes. As
Identified Candidate I am here completing this Document to be filed for
request of the report providing the complete entry directions for the Money
& Awards totalling $2,600,000.00 Dollars as reported by S.A.N.I.
I have enclosed the report and processing fee of $24

I have enlcosed my payment by ___check ___cash ___money order
payable to S.A.N.I. NETWORK Please Charge To My Credit Card....
___VISA ___Mastercard ___Amex   Expir. date _____

Card No#_____

I, John J. Smith state that I am
the Person Identified on this Document; Signed_____

Exhibit 4, Page 114

HZN-SWU3-00059256

A-112

**S. A. N. I. RECORDS OFFICE**
Proceedings Office For Issuance of Report

MAIN REPORTING OFFICES

IMPORTANT DOCUMENT
REQUIRED
FOR ORDER OF REPORT

# CANDIDATE DOCUMENTS

REPORT DOCUMENTS
TO PROSPECT

**RE:** S.A.N. Report Of Monies and Prizes To Be Awarded

To: John J. Smith
Candidate I.D. #12345678910

**AMT:**
- - AMOUNT NOW REPORTED - -
-- $2,600,000.00 --
Two Million Dollars

**RECORDS OFFICE**
**DOCUMENT COMPLETION REQUEST:**

Prospect John J. Smith                I.D. No# 12345678910

* * * Fully Identified * * *        FILED AND ON RECORD

- - $2,600,000.00 Dollars  --    Confirmed Reported
* * * TWO MILLION SIX HUNDRED THOUSAND DOLLARS * * *

12345 Smith Street      Smithville, PA 12345

Paperwork Completion for report final delivery arrangements

### PLEASE COMPLETE AND RETURN THIS ENTIRE PAGE

**REPORT OFFICE:**
FILES & RECORDS
S.A.N. MANAGEMENT DIV.

- AMOUNT FILED -
-------------

PROMPT RESPONSE REQUEST -- **FILE CONCLUSION READY** --

September 2, 2000

Dear John,

Your File has been established and YOU are _IDENTIFIED AS PROSPECT CANDIDATE JOHN,,,_
The _Sweepstakes MONEY and PRIZES as reported, totals * * * $2,600,000.00 --TWO MILLION SIX HUNDRED THOUSAND DOLLARS* * *_ with public access for your entry to participate-to-Win.

We are now waiting here in our Report office to complete Your report request document here provided and arrange delivery of the report which provides complete entry directions to Win. This completed paperwork will serve to confirm that You are as the records show being ...Candidate: John J. Smith [ I.D. No: 12345678910 ] Fully Identified ] and to make delivery to the address of  12345 Smith Street, Smithville, PA 12345.

As a requirement by our office of report, the Public Sweepstakes Monies and Prizes being provided by the individual sponsors is accurate and in the Total Amount as shown. We now await the return of this certification and upon receipt in our offices, the report issuance detailing the Money and Awards will be delivered directly. The Monies and Prizes are paid to the winners in the full-amounts by the individual sponsors.

S.A.N. Sweepstakes Advisory Network, reports on opportunities to enter for prizes and awards to be paid to winning candidates and carefully provides entrant directives for patrons whom desire to participate. As a private reporting firm we carefully acquire and make available the entry procedures for known cash, awards, and prizes which are then placed on report by S.A.N. for our important patrons countrywide. Public sweepstakes are available for anyone who wishes to participate and there is no cost for participation.. We are not a government agency. We strive diligently in serving consumer entrant interests by researching available opportunities and presenting them to patrons whom we report to.

Your completion paperwork is being waited for so we ask that you promptly send it in John with the report assessed fee of $24 and your participation access is guaranteed for entry into the Sweepstakes Cash & Contest Awards to be awarded the winners by the sponsors. You will be attended to directly John...

Our Salutations to you John,

Douglas Bahre / Files and Records

Office Notice:
John J. Smith
12345 Smith Street
Smithville, PA 12345

IMPORTANT REQUIREMENT: Please complete the following...
____YES, I John J. Smith state that I am the Identified Prospect/ Candidate as Named here requesting the report of $2,600,000.00 in Sweepstakes and Contest Money &Prizes. As Identified Candidate I am here completing this Document to be filed for request of the report providing the complete entry directions for the Money & Awards totalling $2,600,000.00 Dollars as reported by S.A.N.I.
I have enclosed the report and processing fee of $24

I have enlcosed my payment by ___check ___cash ___money order payable to S.A.N.I. NETWORK  Please Charge To My Credit Card....
____VISA ___Mastercard ___Amex  Expir. date _____

Card No#_____

I, John J. Smith state that I am
the Exhibit 4, Page 15 on this Document; Signed_____

A-113

IDENTIFICATION FOR COMPLETED FILE | KNOWN INDIVIDUAL
IMPORTANT PROCEDURAL ADVISEMENT FOR REPORT OF AWARD MONIES

| DELIVERY OF AMOUNT INFORMATION AS REPORTED REPORT OFFICE / NOTIFICATION DOCUMENT TO RECEIVER | | REPORT PAPERS FOR COMPLETION |
| DOCUMENT ISSUANCE OFFICE REPORT OF MONEY AND PRIZES TO BE PAID BY SPONSORS |  | S.A.N. REPORT OFFICE OF RECORDS AND NOTIFICATION OF $ AMOUNT |

COMPLETED IDENTIFICATION NUMBER
**I.D. Smith John J.**
FILE NO. **JJS Nº: 12345678910**

The Matter Of:
John J. Smith
12345 Smith Street
Smithville, PA 12345

# OFFICE NOTICE OF
# AMOUNTS AND PRIZES REPORTED

[        - - $3,700,000.00 - -        ]
**\* \* Three Million Seven Hundred Thousand Dollars \* \***

| MAIN PROCEEDINGS OFFICE PAPERWORK FOR COMPLETION TO KNOWN RECEIVER | NOTICE / RECEIVER IDENTIFICATION DOCUMENT AS FILED |
| S.A.N. REPORT OFFICE BUILDING MANAGING AND SPECIAL MATTERS | [ Filed ] July 2000 |

CONFIRMED REPORT
AMOUNT TO BE PAID

## COMPLETION PAPERS FOR IDENTIFIED RECEIVER

-reviewed and confirmed as filed-
ADDRESS FOR DELIVERY
I.D. No: #12345678910      DATE OF IDENTIFICATION  7 / 2 / 00

Issuance Of I.D: John J. Smith
File No: #12345678910

Total of Awards Amount as reported by S.A.N.
* * * $3,700,000.00 * * *

Dear John,
We wish to NOW INFORM YOU of the following } } }

John J. Smith is * * * IDENTIFIED * * *          [ - CONFIRMED - ]
I.D. Number is now Filed and PLACED ON RECORD NO: 12345678910  [ - CONFIRMED - ]
Address for Delivery is at Residence located at; 12345 Smith Street, Smithville, PA 12345

S.A.N. reported amount of total Public Sweepstakes available for Your entry to WIN Money and Prizes ...confirmed in Report. Upon order for delivery, complete easy-access directions in report to be Issued to John J. Smith I.D. Nº:12345678910; * * $3,700,000.00 DOLLARS* *

It is with care and completion of details in attending your request John ...

...THIS MATTER OF IDENTIFICATION JOHN, is a result of your recent involvement in a National Promotion in which you participated subsequently lead to our office being informed of your interests in being entered into sweepstakes and contests.

Your Report-Order is attached and much care has been given in preparing this Actual Documentation for you John. The typed lines indicated for you are the completion areas which you are requested to sign, complete and return. Upon doing so, when received in our office, guarantees that you will receive complete easy-directions and details for entry into the Full Amount of Sweepstakes Monies and Prizes as in report and guaranteed paid to the winners by the named sponsors.

The Amount of Money and Prizes reported are 100% Confirmed Accessible and YOU JOHN are IDENTIFIED AS PROSPECT for entry into these valuable opportunities. We are now following our procedures in preparing this completion document for the report which will properly provide entry details for access to all the Prizes and Monies. You must include the $22 report fee and you shall be fully attended to by our office.

Our office handles S.A.N. Sweepstakes Advisory Network which reports sweepstakes amounts and prizes to be paid by the individual sponsors and we are an independant specialized reporting firm. All such matter as reported is based on rules and entry regulations as stated by the individual sponsors. We are very attentive in matters of acquiring participation and entry instructions for our clients of whom we provide the necessary entrant advisement for the money, and prizes. All that is reported by S.A.N. Reporting includes such statement that this is not a sweepstakes or prize notification to insure and inform that the Monies and Prizes are paid directly to winner by the reported sponsors. We do not conduct sweepstakes nor pay prizes.

John, we look forward to attend You ... and w are only waiting for your completed form below.

In attending to you John, we look forward in proceeding,

Rgstr. Jeffrey Macintyre

**RETURN ENTIRE PAGE**

<table>
<tr><td>S.A.N. REPORTING OFFICE DOCUMENTS</td><td>REPORT ORDER FOR DELIVERY</td><td>IDENTIFICATION PAPERWORK FOR OFFICE HANDLING</td></tr>
</table>

## REPORT ORDER FOR DELIVERY
## • PROSPECT/CANDIDATE DOCUMENT •

S.A.N. SWEEPSTAKES ADVISORY NETWORK CAREFULLY ACQUIRES AND MAKES AVAILABLE THE ENTRY DIRECTIVES FOR KNOWN CASH, AWARDS, AND PRIZES WHICH ARE THEN PLACED IN OUR REPORT FOR OUR IMPORTANT PATRONS COUNTRY-WIDE WHOM DESIRE TO ENTER PARTICIPATION IN SUCH OPPORTUNITIES AND ARE RESPONSIBLE TO ENTER THEMSELVES. ALL PRIZES AND AWARDS ARE PAID BY THE INDIVIDUAL SPONSORS

Please complete and return **This Document.** Your Identification is carefully being attended to and delivery will be immediate when this is received in our office.          Sign, complete and return.

_____YES, I John J. Smith am properly Identified as Named here for the report which will provide easy-directions for guaranteed entry into $3,700,000.00 worth of Cash and Award availabilities. As Prospect/Candidate requesting delivery, I have enclosed the S.A.N. report fee of $22 by my __check __cash __money order payable to S.A.N. Offices.

Prospect/John J. Smith I.D. 1`2345678910

_____
**Signature of John J. Smith**

1:498,"00" 175"44

HZN-SWU3-00060380

A-114

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| United States,<br><br>-v-<br><br>Philip Priolo.<br><br>Defendant. | 2:21-cr-566<br>(NJC) |

**OPINION AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Defendant Philip Priolo ("Priolo") is charged with conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1349, and four counts of mail fraud in violation of 18 U.S.C. § 1341, arising out of his alleged involvement in a fraudulent sweepstakes mailing scheme. (Indictment ¶¶ 1, 30–33, ECF No. 1.) The Indictment alleges that between March 2015 and December 2016, Priolo conspired with others to send fraudulent letters notifying letter recipients that they had won a cash prize as part of a sweepstakes and could reclaim the prize upon payment of a fee (the "charged sweepstakes scheme"). (*Id.* ¶ 5.) The Indictment also alleges that Priolo committed the charged counts of mail fraud when he sent these mailings through the U.S. Postal Service and received checks sent through the U.S. Postal Service in response to those mailings. (*Id.* ¶ 33.) The Court has severed the trial against Priolo from the trials of the two other defendants and co-conspirators named in the Indictment, Jeffrey Novis ("Novis") and Shawn Phillips ("Phillips"). (Status Conf., Feb. 28, 2024; Status Conf.,

Dec. 16, 2024.)[1] The Indictment specifically names two other co-conspirators who are not charged as defendants, Sean Novis[2] and Gary Denkberg ("Denkberg"), who were prosecuted for their alleged involvement in a separate action in this District. *Id.* ¶ 3; *see generally United States v. Sean Novis and Gary Denkberg*, No. 20-cr-335 (E.D.N.Y.) ("*United States v. Sean Novis*, No. 20-cr-335").

Before me are Motions in Limine filed by the government and Priolo. (Gov't's Mot. Lim. ("Gov't's Mot."), ECF No. 99;[3] Def.'s Mot. Lim. ("Def.'s Mot."), ECF No. 106; Def.'s Suppl. Ltr., ECF No. 126; Gov't's Suppl. Mot. Lim. ("Gov't's Suppl. Mot."), ECF No. 127.)[4]

The government's Motion in Limine concerns its intent to offer two types of evidence at Priolo's trial. First, the government seeks to offer evidence relating to Priolo and Novis's involvement in a previous similar sweepstakes mailing scheme in the late 1990s and early 2000s, which is not charged in the Indictment (the "uncharged sweepstakes scheme"). (Gov't's Mot.) The government argues that this evidence is probative of the fact that Priolo and Novis entered

---

[1] On February 28, 2024, Judge Joan M. Azrack, to whom this action was previously assigned, ordered a separate trial for all counts against Phillips because the government was still seeking Phillips's extradition from Canada. (Status Conf., Feb. 28, 2024, ECF No. 43; *see also* ECF No. 39.) On December 16, 2024, I severed the trials against Priolo and Novis in light of pending litigation over whether Novis is competent to stand trial. (*See* Min. Entry, Dec. 16, 2024.)

[2] This Opinion and Order discusses both Jeffrey Novis and his son, Sean Novis. Any reference to "Novis" refers to Jeffrey Novis. Sean Novis will be identified by his full name.

[3] The government filed its Motion on January 1, 2025 at ECF No. 78. Because the government did not redact certain private information concerning Novis as required under Rule 49.1 of the Federal Rules of Criminal Procedure, I restricted access to the government's Motion at ECF No. 78 and ordered the government to re-file the motion with proper redactions. (Elec. Order, Feb. 4, 2025.) The government filed a public version of the Motion with the information of concern redacted at ECF No. 99. Throughout this Opinion and Order, I refer to the government's public filing at ECF No. 99, which is substantively identical to the Motion docketed at ECF No. 78.

[4] The government has a separate pending motion to permit one of its witnesses to testify remotely, ECF No. 90. I will address this motion in a separate order.

A-116

into a conspiracy to commit mail or wire fraud and that Priolo and Novis both had knowledge and the intent to defraud. (Gov't's Mot.) The evidence at issue consists of testimony from four witnesses and twenty documentary exhibits. (Gov't's Mot. at 2–3, 5 & 5 n.6; Gov't's Suppl. Ltr., ECF No. 100.) Second, the government seeks to offer the information and judgment against Novis in *United States v. David Dobin & Jeffrey Novis*, No. 95-cr-250 (E.D.N.Y.) ("*United States v. Dobin*"), which shows that Novis was convicted in 2001 of conspiracy to commit mail fraud.[5] According to the government, this evidence is probative of Priolo and Novis's knowledge and intent to defraud. (Gov't's Mot. at 4–5.) Priolo objects to all of this evidence under Rules 403 and 404(b) of the Federal Rules of Evidence ("Fed. R. Evid.," "Rule 403," and "Rule 404(b)") and further objects to evidence of Novis's conviction under the Confrontation Clause of the Sixth Amendment to the U.S. Constitution. (Def.'s Opp'n Gov't's Mot. Lim. ("Def.'s Opp'n"), ECF No. 85.)

Priolo's Motion in Limine seeks to exclude certain additional evidence the government has indicated it will offer at trial. (Def.'s Mot.) Priolo seeks to preclude the following: (1) evidence of out-of-court statements alleged victims made to their relatives about mailings they received; (2) evidence of alleged victims "being victimized by other, unspecified 'scams' and/or 'scammers' that are not charged in this case"; (3) evidence or argument regarding "payments made by alleged victims to entities related to Sean Novis and/or Gary Denkberg which are not part of the charges in this case;" (4) evidence or argument regarding complaint letters from mail recipients in the charged sweepstakes scheme and letters from state attorneys general or similar officials concerning mail recipients' complaints; and (5) evidence relating to a temporary

---

[5] Although Novis pled guilty in 1995, his sentence and judgment were not entered until 2001. (Gov't's Mot., Ex. 5 at 3.)

3

restraining order issued in a civil enforcement action to which Priolo was not a party, which are pre-marked for trial as Proposed Government Trial Exhibits 168 and 169. (*Id.* at 1–2.) Priolo also moves to preclude the government from using or eliciting the term "Prize Notices" during the examination of witnesses and to direct the government to use a neutral term instead. (*Id.* at 2.) Finally, Priolo also provides additional argument against the admission of evidence of Novis's 2001 conviction in *United States v. Dobin*. (*Id.* at 2.)

Finally, in a supplemental letter filed after oral argument on his Motion, Priolo argues that the Court should exclude the deposition testimony of Alemitu Teshale ("Teshale"), the wife of an alleged victim, in its entirety and should preclude "the testimony of other relative witnesses whose testimony is similar" to Teshale's testimony. (Def.'s Suppl. Ltr.)[6] The government's supplemental Motion in Limine seeks to admit Teshale's testimony in full. (Gov't's Suppl. Mot.)

For the reasons set forth below, both the government and Priolo's Motions are granted in part and denied in part.

I grant the government's Motion with respect to the government's proffered evidence of Priolo's involvement in the uncharged sweepstakes scheme in the late 1990s and early 2000s. The government provided Priolo reasonable notice of this evidence under Rule 404(b)(3), Fed. R. Evid., and this evidence is admissible as direct evidence of the charged conspiracy and, in the alternative, as proof of Priolo's knowledge and intent to defraud under Rule 404(b). Further, I find that this evidence is admissible under Rule 403.

---

[6] The Court granted the government's motion, made on Priolo's consent, to depose Teshale in advance of trial pursuant to Rule 15 of the Federal Rules of Criminal Procedure and to permit the government to offer her deposition testimony at trial in lieu of in-person testimony. (Elec. Order, Feb. 21, 2025; *see also* ECF No. 121.)

I deny the government's Motion, however, with respect to the government's proffered evidence of Novis's conviction in *United States v. Dobin* under Rule 403 because its probative value is substantially outweighed by the risk of unfair prejudice to Priolo, confusing the issues, and misleading the jury. Finally, because I deny the government's motion to offer evidence of Novis's prior conviction, I do not reach the question of whether admitting this evidence would violate Priolo's right to confront the witnesses against him under the Sixth Amendment's Confrontation Clause.

Priolo's Motion is granted in part and denied in part. First, evidence of payments made in response to mailings sent by the Sean Novis, Denkberg, and Phillips business entities is only admissible under Rule 403 to the extent that the mailings themselves were issued by or on behalf of Priolo or one of his and Novis's business entities. Additionally, admitting such evidence does not amount to a constructive amendment of the Indictment.

Second, Alemitu Teshale's deposition testimony is admissible. Teshale's testimony based on her own first-hand experiences and observations is relevant and thus admissible under Rule 402, Fed. R. Evid. Her testimony regarding her husband's statement indicating that he believed he won a prize is also admissible because it is relevant and not hearsay because it is not offered for its truth but to establish Priolo's fraudulent intent and the materiality of any misrepresentations in the mailings attributable to him. Even if this statement did constitute hearsay, it would be admissible under Federal Rule of Evidence 803(3) as a statement of her husband's then-existing state of mind. Accordingly, I grant the Government's Supplemental Motion to permit Teshale's deposition testimony.

Third, I reserve decision about the admissibility of the testimony of any other alleged victims' relatives. By March 5, 2025, the government shall provide the Court with proffers of the

5

specific testimony it intends to elicit from each of the relatives of alleged victims. The government shall identify what testimony it intends to elicit regarding: (1) statements from the alleged victims concerning their beliefs about the mailings they received; (2) any financial impact on the alleged victims beyond the direct payments that are allegedly attributable to Priolo and/or the Priolo-Novis entities; and (3) a breakdown of the money paid by each victim that is attributable to mailings by or on behalf of Priolo or Priolo-Novis entities and the losses attributable to other mailings.

Fourth, testimony regarding any other "scam" that is unrelated to the charged sweepstakes scheme or uncharged sweepstakes scheme from the late 1990s and early 2000s is precluded under Rules 402 and 403.

Fifth, complaint letters from mailing recipients and notices from state attorneys general on behalf of mailing recipients are admissible under Rules 402 and 403 as evidence of Priolo's knowledge of the conspiracy and intent to defraud.

Sixth, Proposed Government Trial Exhibits 168 and 169, which concern the temporary restraining order issued in *United States v. Sean Novis, et al.*, No. 16-cv-5263 (E.D.N.Y.), are inadmissible under Rule 403. Although these exhibits are probative of Priolo's fraudulent intent and knowledge of the charged conspiracy after September 26, 2016, when he received notice of the TRO, the risk of unfair prejudice and confusing the issues substantially outweighs the probative value of this evidence.

Seventh, the government is precluded from referring to an exhibit as a "Prize Notice" during witness examinations where the language "Prize Notice" or synonymous terms do not appear on the exhibit because to do so would assume facts not in evidence. However, the

6

government may refer to an exhibit as a "Prize Notice" if that term or synonymous terms *do* appear on the exhibit itself.

## BACKGROUND

The Indictment alleges that from approximately March 2015 through December 2016, Priolo worked with Novis, Sean Novis, Gary Denkberg ("Denkberg"), and others to mail out hundreds of thousands of fraudulent mailings. (Indictment ¶¶ 1, 5, 7.) These notices represented that the recipient was chosen to receive a large cash prize—typically, more than $1,000,000— and that the recipient could claim that prize by paying a fee ranging from $20 to $40 by cash, check, or money order. (*Id.* ¶¶ 5–6, 7.) The government alleges that the mailings often included a disclaimer stating that the recipient did not win any money or prize but asserts that this language was included only on the back of the mailing "buried" in a block of all-capital text "that purports to also address a host of other issues." (*Id.* ¶ 8; Gov't's Tr. Mem. at 10, ECF No. 104.)

### I.   Priolo and Novis's Companies—Winners Circle and Feel Lucky

The government alleges that Priolo and Novis operated this scheme through two shell companies—Winners Circle International Inc. ("Winners Circle") and Feel Lucky Group Inc. ("Feel Lucky")—to obscure their personal involvement in the scheme and to obtain payments that the mailing recipients sent via check and mail order. (Gov't's Tr. Mem. at 7, 9.)

The Indictment alleges that Priolo opened and used an account with PacNet Services Ltd. ("PacNet"), a payment processor based in Canada, to wire the fees that mailing recipients paid via check and money order to Priolo and Novis's bank accounts and to pay their other co-conspirators who provided various services to facilitate the scheme. (Indictment ¶¶ 10–11; *see also* Gov't's Tr. Mem. at 7.) The Indictment also alleges that mailing recipients who paid the requested fee never received the promised cash prizes. (Indictment ¶ 5.)

7

## II.   Sean Novis, Denkberg, and Phillips's Business Entities

The government alleges that Priolo's co-conspirators used separate shell companies to send out similar mailings. (Gov't's Tr. Mem. at 16–17, 17 n.48.) The government asserts that Sean Novis and Denkberg used several shell companies, including Horizon Marketing Services Inc. ("Horizon") and Quantum Marking Inc. ("Quantum"), and Phillips used several additional shell companies: Haven, Prime Source, and Lakeside. (*Id.* at 17 n.48.) The government does not allege that Priolo was involved in the operation of any of these other companies. (*See generally* Gov't's Tr. Mem.) The government alleges that when operating Winners Circle and Feel Lucky, Priolo and Novis paid Sean Novis and Denkberg's companies for services, including data management, production and mail schedules, and customer service. (*Id.* at 17.) The government also alleges that Priolo and Novis "followed the example" set by Sean Novis and Denkberg to anonymize their mailings. (Gov't's Opp'n to Priolo's Mot. Lim. ("Gov't's Opp'n") at 5, ECF No. 120.) Specifically, the government asserts that, like the mailings sent out by Sean Novis and Denkberg through Quantum and Horizon, Priolo and Novis's names did not appear on their mailings and their mailings referred to three-letter acronyms or "fake, official-sounding businesses"—like "Prize Advisory Board" and "Million Dollar Prize Exchange"—and did not reference Winners Circle or Feel Lucky at all, with the exception of one promotion that used the name "Winners Circle Sweeps." (*Id.*)

The government also alleges that Priolo and Novis sent mailings to the same alleged victims as their co-conspirators. (*Id.* at 6–7.) The government alleges that Winners Circle, Feel Lucky, and each of the co-conspirators' companies maintained their own individual mailing lists and shared lists with each other. (*Id.* at 6.) Thus, Priolo and Novis shared the lists maintained by Winners Circle and Feel Lucky with their co-conspirators, and their co-conspirators shared their companies' lists with Priolo and Novis. (*Id.*)

8

The government does not intend to introduce mailings sent out by Sean Novis, Denkberg, or Phillips, but does intend to introduce evidence of payments that alleged victims made to the business entities operated by Sean Novis, Denkberg, and Phillips. (*Id.*; *see also* Gov't's Proposed Tr. Exs. 390–91.)

Denkberg and Sean Novis were separately indicted and later convicted by a jury of conspiracy to commit mail fraud and individual counts of mail and wire fraud based on the mailings they sent out through their own companies and were convicted of aiding and abetting mail fraud based on their involvement with the mailings sent out by Priolo, Novis, and Phillips. Mem. & Order, *United States v. Sean Novis*, No. 20-cr-335, ECF No. 128 at 4. Neither Novis nor Priolo were defendants or named co-conspirators in the prosecution of Sean Novis and Denkberg. *See* Superseding Indictment, *United States v. Sean Novis*, No. 20-cr-335, ECF No. 33.

### III.    September 22, 2016 TRO

The government intends to offer a temporary restraining order ("TRO") that another judge of this Court issued on September 22, 2016 in *United States v. Sean Novis, et al.*, No. 16-cv-5263 (E.D.N.Y.) ("*United States v. Sean Novis*, No. 16-cv-5263"), restraining Sean Novis, Denkberg, and the other defendants from engaging in mailings the government argues are similar to those at issue in this case. (Gov't's Proposed Tr. Ex. 168.) In the TRO, the court found "probable cause to believe" that Sean Novis, Denkberg, Cathy Johnson, Horizon, Quantum, DMCS INC., and Direct Marketing Consulting Services, Inc. "are violating and are about to violate 18 U.S.C. § 1341." (*Id.* at 1.) Under the Anti-Fraud Injunction Statute, 18 U.S.C. § 1345, the court temporarily restrained these defendants, as well as "their agents, officers, and employees, and all other persons and entities in active concert or participation with them" from "committing mail fraud under 18 U.S.C. § 1341" (*id.* at 2), and from, among other things:

9

using the United States mail, or causing others to use the United States mail, to distribute any advertisements, solicitations, or promotional materials:

(a) that represent, directly or indirectly, expressly or impliedly that the recipient of the solicitation has won, will win, or will receive cash, prizes or awards; or

(b) that offer for sale information regarding sweepstakes or lotteries;

(c) that represent, directly or indirectly, expressly or impliedly, that the recipient of the solicitation was specifically selected to receive the mailing based on a reason other than the fact that the recipient's name appears on a mailing list;

(d) that represent, directly or indirectly, expressly or impliedly, that services or items offered for purchase will, or could, improve the victim's financial condition; or

(e) that contain any other false or misleading representations. . . .

(*Id.* at 2–3, ¶ (ii)(a)–(e).) The TRO also ordered that the defendants were temporarily restrained

from:

receiving, handling, opening, or forwarding any mail that responds, by sending payment or otherwise, to the materials described in paragraph (ii)(a)–(e), *supra*; . . . . [and] performing "caging services" on mail received from U.S. residents in response to any of the materials described in paragraphs (ii)(a)–(e), *supra*, including opening mail received from U.S. residents; . . . handling, forwarding, or depositing any checks received from U.S. residents, including currency, bank checks, certified checks, money orders, or credit card charge authorizations, or handling any mail received from U.S. residents. . . .

(*Id.* at 3, ¶¶ (iii), (v).) The TRO further ordered the named defendants to provide notice of the

TRO to all "brokers, printer/distributors, mailing houses, and/or caging services with which they

do business regarding the materials described in Paragraph (ii)(a)–(e), *supra*, informing them that

they are subject to the [TRO] as an entity *in active concert or participation* with Defendants."

(*Id.* at 4 (emphasis added).)

Although Priolo was not a named defendant in that civil case, the government intends to

offer the TRO and a Certificate of Notice filed in that action in which counsel for then-defendant

Cathy Johnson asserted that, on September 26, 2016 and September 28, 2016, in compliance

10

with the TRO, notice of the TRO was provided to "Phil Priolo," among others. (Gov't's Proposed Tr. Ex. 169 at 1, 3.) The government also intends to offer an email from Cathy Johnson dated September 26, 2016 to "Phil Priolo <philpriolo8@yahoo.com>" and "Jeffrey Novis <jeffnovis@gmail.com>," which states, "Please find attached a copy of the temporary restraining order issued against me and/or my company." (Gov't's First Suppl. Ltr., ECF No. 125; ECF No. 125-1 at 2.) The government also intends to offer a follow-up email from Johnson to Priolo and Novis on September 28, 2016, stating: "Further as to the below email and attached court order, please see the first paragraph of Page 4 thereof stating that you 'are subject to the Temporary Restraining Order as an entity in active concert or participation with defendants.'" (ECF No. 125-1 at 1.)

## IV.    Alleged Victims' Relatives

The government intends to offer testimony from some of the alleged victims—people who received the mailings and paid the fee as the mailings instructed—as well as relatives of some of the alleged victims. (Gov't's Tr. Mem. at 31.) The government proffers that relatives who did not themselves receive the mailings will testify about statements the alleged victims—their family members who *did* receive and respond to the mailings—made indicating their belief that they had won a large cash prize. (*Id.* at 31–32.)

As an example, the government proffers that one of its witnesses, Sharon Soltis ("Soltis") will testify that her late father, John Single ("Single"), sent payments in response to mailings he received, and that he told her that he was sending the money because he believed he had won millions of dollars, and needed to pay to collect his winnings. (*Id.* at 31–32.) The government intends to present additional evidence that Single responded to 237 mailings associated with the charged sweepstakes scheme, including 7 responses to Feel Lucky mailings, and 66 responses to Winners Circle mailings. (*Id.* at 32.)

11

The government also seeks to present to the jury the video of the February 26, 2025 deposition of Teshale, whose husband is an alleged victim, but who did not herself receive any sweepstakes mailings during the charged timeframe. (Gov't's Suppl. Mot. at 1.) During her deposition, Teshale testified that between 2015 and 2016, her husband, Alemu Kore ("Kore"), received letters that were:

> normal, medium-sized letter which would say, you are going to win this amount of money, you are the next person to win, and his name. And it will be with, the figure would be with a big letter, number, and some writings on it. And then he would bring that from the post, and then he will send money.

(Tr. Teshale Dep. ("Teshale Dep.") at 8:13–14, 13:5–19, ECF No. 126-1.)

Teshale testified that when Kore first started receiving these letters, she was able to see the letters because she would be in the kitchen with her husband while he was "writing checks" in response. (*Id.* at 14:2–6.) She testified at that that time: "I would be there around cooking and I would watch it. And I would see that." (*Id.* at 14:6–8.) Counsel for the government showed Teshale Proposed Government Trial Exhibit 9, which the government alleges is a Winners Circle mailing to which Kore responded in June 2016 by paying $34 dollars. (*Id.* at 14:9–16; *see also* Gov't's Suppl. Mot. at 2 n.1; Gov't's Proposed Tr. Ex. 9.) The government asked Teshale whether this exhibit is "an example of the letters that [she was] talking about a moment ago" and Teshale responded "[y]es." (Teshale Dep. at 14:12–18.) Teshale later testified several times, however, that while she saw a large number and Kore's name on the mailings, she "didn't read the letters." (*Id.* at 31:2–6.)[7]

---

[7] *See also* Teshale Dep. at 26:14–15 ("At that time I didn't read all these things."); *id.* at 27:13–16 ("As I told you, I just see the number and the, I always disagree with my husband so I don't go detail to read the letters. That I didn't do."); *id.* at 28:6–7 (stating, in response to a question about whether she had seen the second page of the mailing that provided consumer information: "I don't read all this. . . . No. I didn't read it. I don't read it."); *id.* at 28:11–15 ("We don't read

12

A-126

Teshale testified that these letters came in the mail "maybe two times or three times a week" and that they were "all over the house." (*Id.* at 17:23; 18:1–7.) Teshale further testified that while she and other family members told her husband that he did not "have to do money for these people[,] . . . he thought he might win the lottery and he might get money. That's what his thinking was." (*Id.* at 15:12–17.) She testified that when she asked him "why are you paying them[,] . . . [h]e would say, I'm going to win." (*Id.* at 15:20–24.)

## V.    Complaint Letters from Alleged Victims and Government Agencies

The government intends to offer letters about the mailings from state attorneys general, other governmental officials, consumer advocates, and other complaints, inquiries, and notes from or concerning mailing recipients regarding the mailings in this case. (Gov't's Tr. Mem. at 24.)[8] These letters were directed to the various business entities referenced in the mailings, and the government asserts that these documents were recovered from Sean Novis and Denkberg's office and Cathy Johnson's home, which the government alleges served as a caging office. (*Id.* at 15–16.) The government alleges that Cathy Johnson ("Johnson") performed "customer service" work for Priolo and Novis, responding to these letters. (*Id.* at 14–15.) The government anticipates that Johnson will testify that mailing recipients frequently sent letters demonstrating their belief that they had won a large cash prize. (*Id.* at 16.) In many of these letters, a mailing recipient or an attorney general writing on behalf of a mailing recipient complained about not receiving the promised cash prize and requested a refund or complained about the mailings and

---

that. The only thing we see, I see, is the number what he's going to win and his name. That's what I see.").

[8] Specifically, the government proffers Proposed Government Exhibits 52, 60– 62, 151, 160–62, 171, 173–75, 175A, 177–78, 353, 363–64, and 368A–D. (Gov't's Second Suppl. Ltr., ECF No. 128.)

asked to be removed from a mailing list. (Gov't's Tr. Mem. at 15; *see also generally* Gov't's Proposed Tr. Ex. 162.) In other letters, the writer merely inquired about the prize money. (Gov't's Tr. Mem. at 15.)

The government alleges that Priolo was usually involved in responding to letters from government entities and demands for refunds from alleged victims. (*Id.*) Where a letter only inquired about the prize money without requesting a refund or removal from the mailing list, the government alleges that the operation would respond with a "rules letter" under the pseudonym "Christine Peters," a fake customer service employee. (*Id.*) These "rules letters" would restate the language from the disclaimer on the mailings stating that the recipient had not won any prize or money and would inform the recipient that they were not automatically refunded but could request a refund. (*Id.* at 11, 15.)

## VI.     Uncharged Sweepstakes Scheme in the 1990s and 2000s

The government alleges that Novis and Priolo were both previously involved in the uncharged sweepstakes scheme—an alleged sweepstakes mailing scheme in the 1990s and early 2000s, which the government alleges was "identical or nearly identical" to the charged sweepstakes scheme allegedly carried out from approximately March 2015 through December 2016. (Gov't's Mot. at 2, 4.) The government alleges that Novis was involved in the scheme starting in the early 1990s and that Priolo was involved in the late 1990s and early 2000s. (*Id.* at 2, 4.)

### A.     Novis's Conviction Based on Involvement in the Uncharged Sweepstakes Scheme from 1993–1994

At trial, the government seeks to introduce the information and the judgment as to Novis in *United States v. Dobin*, showing that Novis was convicted in 2001 of conspiracy to commit mail fraud based on his mailing of similar fraudulent sweepstakes notices between 1993 and

1994. (Gov't's Mot. at 3; *see also* Gov't's Mot., Ex. 5, ECF No. 99-5.)[9] The information alleges that Novis conspired with David Dobin between May 1993 to September 1994 to mail announcements that were designed to lead recipients to believe that each recipient had won $12,000. (Gov't's Mot., Ex. 5 ¶¶ 2, 5.) The announcements stated that, if the recipient paid a particular sum—typically between $6.98 and $10.98—the recipient would receive additional "entitlements" purportedly worth thousands of dollars. (*Id.* ¶ 6.) The judgment shows that Novis pleaded guilty to one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371 for the period from May 1993 to September 1994 and that he was sentenced to fifteen months of incarceration to be served starting on March 5, 2001, and to be followed by a three-year term of supervised release. (*Id.* at 3–5.)

      B.  Priolo's Involvement in the Uncharged Sweepstakes Scheme in the Late 1990s–Early 2000s

The government alleges that after Novis was convicted, Sean Novis continued operating the mailing scheme along with Priolo, Denkberg, and Phillips. (Gov't's Mot. at 4.) The government seeks to prove Priolo's involvement in the uncharged sweepstakes scheme in the late 1990s and early 2000s through testimony from individuals who were involved in the uncharged sweepstakes scheme—Johnson and Tom Ressler ("Ressler")—as well as documents relating to the scheme. (*Id.* at 2–3.) The government proffers that Johnson will testify that she began working with Sean Novis in 2000, and that at that time, both Novis and Priolo were working with Sean Novis to send out sweepstakes mailings very similar to those sent out in the charged sweepstakes scheme under the name "Winner[]s Circle." (*Id.* at 2.) The government also seeks to introduce documents showing that in the 2000s, Novis and Priolo was involved with two

---

[9] The government has pre-marked this exhibit for trial as Proposed Government Trial Exhibit 381.

A-129

companies, Justin Grant, Ltd. ("Justin Grant") and Sweepstakes Advisory Network, Inc. ("Sweepstakes Advisory Network"), and other documents showing that these two companies were used to send fraudulent sweepstakes mailings in the late 1990s and early 2000s. (*Id.* at 2–3.)[10] The government proffers that Ressler will testify that he created the Justin Grant and Sweepstakes Advisory Network notices used by the co-conspirators during the late 1990s and early 2000s, and that he will testify about the artistic and linguistic techniques he employed when creating the notices in order to mislead recipients. (*Id.* at 3.) The government represented at the February 4, 2025 hearing that it expects Ressler to testify that he met Priolo at the time. (Hr'g, Feb. 4, 2025.)

---

[10] *See* Gov't's Mot., Ex. 1, ECF No. 99-1 (letter dated February 28, 2000 stating that Novis and Priolo are currently employed by Justin Grant) (pre-marked for trial as Proposed Government Trial Exhibit 188); Gov't's Mot., Ex. 2, ECF No. 99-2 (Sweepstakes Advisory Network certificate of dissolution) (Gov't's Proposed Tr. Ex. 383 at 7–8); Gov't's Mot., Ex. 3, ECF No. 99-3 (emails and letters between December 2000 and April 2005 regarding complaints about the notices sent by Sweepstakes Advisory Network and Justin Grant); Gov't's Mot., Ex. 4, ECF No. 99-4 (notices sent by Sweepstakes Advisory Network and Justin Grant) (pages 9–12 of this exhibit have been pre-marked for trial as Proposed Government Trial Exhibit 403).

The government has also proposed the following trial exhibits that pertain to the uncharged sweepstakes scheme: (1) the certificate of incorporation for Justin Grant, dated April 10, 1998 (Gov't's Proposed Tr. Ex. 382); (2) the certificate of incorporation of the Sweepstakes Advisory Network, dated November 10, 1999 (Gov't's Proposed Tr. Ex. 383 at 1–6); (3) an additional document signed by Sean Novis consenting to the dissolution of the Sweepstakes Advisory Network, filed with the New York Department of State on January 11, 2002 (*id.* at 9–10); (4) internal records from Justin Grant, including sweepstakes notices (Gov't's Proposed Tr. Ex. 384); (5) letters from March and April of 2000 from Priolo regarding a real estate purchase (Gov't's Proposed Tr. Ex. 399); (6) payment records for Justin Grant and the Sweepstakes Advisory Network and various invoices from 2000 for the Sweepstakes Advisory Network, including invoices for rent and water charges, electrical work and locksets (Gov't's Proposed Tr. Ex. 380); and (7) mailings from Justin Grant and Sweepstakes Advisory Network (Gov't's Proposed Tr. Exs. 401–13).

C.   Priolo's Knowledge of Novis's Conviction

The government also seeks to prove that Priolo knew about Novis's conviction based on, among other things, Priolo's involvement with Novis in the uncharged sweepstakes scheme and through evidence that other individuals involved with the uncharged sweepstakes scheme in the late 1990s and early 2000s knew that Novis had been involved with the legal system. (Gov't's Mot. at 5.)

The government proffers that Johnson will testify that she knew Novis went to prison, although she believed he was sentenced for tax evasion. (*Id.*) The government also seeks to offer testimony from Cheryl Jacquard ("Jacquard"), an employee for the uncharged sweepstakes scheme hired "years after . . . Novis's release from prison," that she knew Novis was "prohibited from being involved in running the operation because of his legal troubles." (*Id.*) The government also seeks to offer testimony from Jason Spector ("Spector"), who worked with Sean Novis and Denkberg until 2012, that Novis "told him about his conviction and imprisonment" for mail fraud "in connection with prize-notice mailings." (*Id.* at 5 n.6.)

Lastly, the government alleges that Novis's prior conviction affected the ways in which Novis and Priolo operated the charged sweepstakes scheme in 2015 and 2016. (Gov't's Mot. at 5–6.) The government seeks to offer evidence that payment processing companies, including PacNet, had previously rejected accounts associated with Novis because of his criminal conviction. (*Id.* at 5.) The government alleges that because of this, even though Novis and Priolo jointly owned Winners Circle, Priolo falsely represented to PacNet that he had 100% ownership of Winners Circle and was the sole shareholder of that company when he applied for an account.

17

(*Id.* at 5–6; Gov't's Mot., Ex. 7, ECF No. 99-7.)[11] The government also seeks to admit emails from Novis to Priolo, which forward an email that a representative from PacNet had addressed to Priolo at a Winners Circle email address. (Proposed Government Trial Exhibits 356A and 356B; *see* Hr'g, Feb. 27, 2025; Gov't's Tr. Mem. at 7–8.) The government alleges that these emails further demonstrate that Novis "disguised" his participation in Winners Circle from PacNet. (Gov't's Tr. Mem. at 7–8.)

## VII.    Procedural History

Priolo's trial is scheduled to begin on March 10, 2025. (*See* Elec. Order, Feb. 10, 2025.) One year earlier, on March 11, 2024, the government emailed counsel for Novis and Priolo with a letter stating its intent to introduce evidence at trial related to the prior uncharged sweepstakes scheme. (Gov't's Mot., Ex. 8, ECF No. 99-8.) On January 10, 2025, the government filed the instant Motion, along with supporting exhibits. (ECF No. 78; *see supra* note 3.) Priolo opposed the Motion on January 24, 2025, raising objections to evidence of the uncharged sweepstakes scheme under Rule 404(b), Rule 403, and the Confrontation Clause. (Def.'s Opp'n.) The government filed a reply on January 30, 2025. (Gov't's Reply Supp. Gov't's Mot. Lim. ("Gov't's Reply"), ECF No. 95.) The government submitted its proposed trial exhibits to the Court on February 3, 2025.

On February 4, 2025, I heard argument on the government's Motion. (Hr'g, Feb. 24, 2025.) The government noted that its proposed trial exhibits included documents relating to Priolo's prior involvement in the uncharged sweepstakes scheme in the late 1990s and early

---

[11] *See also* Gov't's Mot., Ex. 6 (August 2014 emails showing that PacNet denied an application from COL Trading International Corporation due to Novis's "criminal record," and that an individual named Ronald Clinton asked PacNet to reconsider the denial because Novis would no longer be involved in that company).

18

A-132

2000s which were not attached to the government's Motion. (*Id.*) I directed the government to file a letter indicating which of its proposed trial exhibits related to this period of time, and the government filed the requested letter later that day. (ECF No. 103.) The proposed trial exhibits identified by the government included some of the documents the government filed in support of its Motion[12] as well as several additional exhibits.[13]

On February 7, 2025, the government filed a Trial Memorandum. (Gov't's Tr. Mem. at 23.) On February 10, 2025, Priolo filed a Motion in Limine seeking to exclude certain government evidence at trial. (Def.'s Mot. at 7.) On February 20, 2025, the government filed a reply to Priolo's Motion in Limine. (Gov't's Opp'n.) On February 24, Priolo filed a reply in support of his Motion. (Def.'s Reply Supp. Def.'s Mot. Lim. ("Def.'s Reply"), ECF No. 124.)

On February 27, 2025, I held an oral argument on Priolo's Motion and heard additional argument on the government's Motion. (Hr'g, Feb. 27, 2025.) On February 28, 2025, the parties filed four supplemental submissions to address issues raised during the oral argument. First, the government submitted a supplemental letter addressing the notice Priolo was given of the TRO in *United States v. Sean Novis*, No. 16-cv-5263, and attached a copy of the email that Johnson sent to Priolo and Novis providing service. (Gov't's First Suppl. Ltr.; ECF No. 125-1.) Second, Priolo submitted a supplemental letter attaching the deposition of proposed government witness Teshale and provided additional argument that Teshale's testimony is inadmissible as irrelevant and because she testifies to inadmissible hearsay. (Def.'s Suppl. Ltr. at 1–2.) In this letter, Priolo

---

[12] *See supra* notes 9–10 (identifying the Proposed Government Trial Exhibits that correspond with exhibits to the government's Motion).

[13] Proposed Government Trial Exhibits 380, 382–83 at 1–6 and 9–10, 384, 399, and 401–13 were not attached to the Motion. *See also supra* note 10 (describing the contents of these proposed trial exhibits.)

also provided additional argument in support of his motion to exclude the TRO in *United States v. Sean Novis*, No. 16-cv-5263. (*Id.* at 3.)[14] Third, the government filed a supplemental motion in limine to admit Teshale's deposition testimony and also attached a copy of Teshale's deposition. (Gov't's Suppl. Mot.; ECF No. 127-1.) Fourth, the government filed a letter providing a list of exhibits it seeks to offer, which consists of complaints and notes from mailing recipients and government entities. (Gov't's Second Suppl. Ltr., ECF No. 128.)

## STANDARD OF REVIEW

A motion in limine provides the court with the opportunity to rule in advance of trial on the admissibility of certain forecasted evidence. *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996);[15] *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Courts should only exclude evidence in response to a motion in limine if the proffered evidence is "clearly inadmissible on all potential grounds." *United States v. Pugh*, 162 F. Supp. 3d 97, 100 (E.D.N.Y. 2016).

## LEGAL STANDARDS

### I.    The Charged Offenses

#### A.  Mail and Wire Fraud

The elements of mail or wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, respectively are: "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mail[] or wires to further the scheme." *United States v. Moses*, 109 F.4th 107, 117 (2d Cir. 2024). "[T]he gravamen of the offense is the scheme to defraud." *United States v.*

---

[14] Priolo also provided his position on whether the indictment, or any portion thereof, should be read to the jury or sent back during deliberations, which was discussed at the February 27, 2025 hearing. (Def.'s Suppl. Ltr. at 3.) This Order does not resolve this issue.

[15] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, brackets, and citations.

*Greenberg*, 835 F.3d 295, 305 (2d Cir. 2016). "In order to prove the existence of a scheme to defraud, the government must also prove that the misrepresentations were material, and that the defendant acted with fraudulent intent." *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) (per curium); *see United States v. Saint Clair*, No. 22-2100, 2024 WL 413422, at *4 (2d Cir. Feb. 5, 2024) (same).

A statement is material for the purposes of mail and wire fraud "if the misinformation or omission would naturally tend to lead or is capable of leading a reasonable person to change his conduct." *Weaver*, 860 F.3d at 94. "In other words, a lie can support a fraud conviction only if it is material, that is, if it would affect a reasonable person's evaluation of a proposal." *Id.* "[M]ateriality looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." *Id.* (citing *Universal Health Servs., Inc. v. United States*, 597 U.S. 176 (2016)).

To prove fraudulent intent, the government must prove that the defendant "either intend[ed] to harm their victim or contemplate[ed] that their victim may be harmed." *United States v. Gatto*, 986 F.3d 104, 113 (2d Cir. 2021); *see also United States v. Jabar*, 19 F.4th 66, 76 (2d Cir. 2021) ("Because an intent to deceive alone is insufficient to sustain a wire fraud conviction, misrepresentations amounting only to a deceit must be coupled with a contemplated harm to the victim.").

"[F]raudulent intent may be inferred from the scheme itself if the necessary result of the actor's scheme is to injure others." *Gatto*, 986 F.3d at 113 (2d Cir. 2021); *see also Jabar*, 19 F.4th at 76–77 ("Such harm is apparent where there exists a discrepancy between benefits reasonably anticipated because of the misleading representations and the actual benefits which the defendant delivered, or intended to deliver."). The government may also prove intent to

21

defraud "through circumstantial evidence, including by showing that [the] defendant made misrepresentations to the victim(s) with knowledge that the statements were false." *Jabar*, 19 F.4th at 76 (quoting *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999)); *Saint Clair*, 2024 WL 413422, at *4 (same).

While the government must prove that a defendant "*contemplated* some actual harm or injury to their victims," and that the defendant's misrepresentations had "a natural tendency to influence" the intended victims, the government is not required "to prove that the victims of the fraud were *actually* injured." *Weaver*, 860 F.3d at 94–95; *Jabar*, 19 F.4th at 77 ("Proof of actual injury to the victim is not required because the scheme need not have been successful or completed."). "[T]he only significance in a fraud case of proof of actual harm befalling the victim as a result of the scheme is that it may serve as circumstantial evidence from which a jury could infer the defendant's intent to cause harm." *Weaver*, 860 F.3d at 97.

### B.  Conspiracy to Commit Mail or Wire Fraud

To prove a conspiracy to commit wire or mail fraud under 18 U.S.C. § 1349, the government must prove that "the defendant agreed with another to commit wire [or mail] fraud and knowingly engaged in the conspiracy with the intent to commit that offense." *United States v. DiMassa*, 117 F.4th 477, 487 (2d Cir. 2024); *see also* 18 U.S.C. § 1349 ("Any person who . . . conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."); *United States v. Jimenez*, 96 F.4th 317, 324 (2d Cir. 2024) ("To prove conspiracy, the government must show that two or more persons entered into a joint enterprise for an unlawful purpose, with awareness of its general nature and extent, and that those persons agreed to participate in what they knew to be a collective venture directed toward a common goal.").

22

A-136

## II.      Evidence "Inextricably Intertwined" with the Charged Offense

Rule 404(b) of the Federal Rules of Evidence generally governs the admissibility of "[e]vidence of any other crime, wrong, or act." Fed. R. Evid. 404(b). In the Second Circuit, however:

> evidence of uncharged criminal conduct is not evidence of other crimes, wrongs, or acts under Rule 404(b) if that conduct arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.

*United States v. Zhong*, 26 F.4th 536, 551 (2d Cir. 2022). The Second Circuit and district courts have applied this rule to admit evidence of uncharged conduct. *See, e.g.*, *United States v. Kaiser*, 609 F.3d 556, 571 (2d Cir. 2010) (holding that evidence of acts pre-dating the charged conspiracy fell outside of Rule 404(b) as "inextricably intertwined with the evidence regarding the charged offense"); *United States v. Esposito*, No. 20-2143, 2021 WL 5492935, at *2 (2d Cir. Nov. 23, 2021) (holding that evidence of the defendant's prior conviction for attempted enterprise corruption fell outside of Rule 404(b) as "inextricably intertwined" with the charged racketeering and conspiracy to commit extortion and "necessary to complete the story on trial"); *United States v. Lingat*, No. 21-cr-573, 2024 WL 1051633, at *3 (S.D.N.Y. Mar. 11, 2024) (holding that evidence of the origins and operations of a tax evasion scheme prior to the time period charged was not governed by Rule 404(b) and was admissible to "provide context for the jury" about the "nature, structure, and development of the scheme").

In *Kaiser*, the Second Circuit held that the district court did not err in admitting evidence of uncharged acts that pre-dated the charged conspiracy as falling outside the scope of Rule 404(b). 609 F.3d at 571. Kaiser was charged, among other things, with conspiracy to commit securities fraud for participating in a scheme to inflate income that his corporation, a distributer of food and related products, received from food vendor payments—called "promotional

23

allowances"—for 2001 and 2002. *Id.* at 560. The indictment alleged that Kaiser lied to outside auditors about promotional allowance agreements with vendors that generated the inflated income numbers. *Id.* at 562–63. At trial, the district court admitted evidence that in the 1990s, well before the period charged in the indictment, Kaiser negotiated contracts on behalf of the corporation that required vendors to prepay promotional allowances, which artificially inflated the corporation's income. *Id.* at 561. The Second Circuit found that the evidence of these prior contracts did not constitute "other crimes" evidence under Rule 404(b) because it was "inextricably intertwined with the evidence regarding the charged offense." *Id.* at 570–71. It affirmed that "[i]t would have been impossible to intelligibly present a case about much of what went on after April of 2000 without starting at the beginning" because evidence of the prior contracts "continued to have bearing on whether Kaiser lied to auditors about the existence of prepayments and written contracts" and because the company's promotional allowance rate during the indictment period was a rate Kaiser had calculated based on previous income numbers recorded from these pre-indictment contracts. *Id.* at 571.

In *Lingat*, two co-defendants were charged with conspiracy to defraud the Internal Revenue Service ("IRS") for an alleged scheme to evade payroll taxes owed by Moishe's Moving from 2010 to 2016. 2024 WL 1051633, at *1. Before trial, the government moved to admit evidence that the tax evasion scheme with Moishe's Moving had begun before the indictment period, as early as the late 1980s. *Id.* at *2. The district court ruled in limine that "evidence concerning the origins of the payroll tax evasion scheme at Moishe's Moving and its operation prior to the charged period is likely admissible as direct evidence" because this evidence "will likely provide significant background demonstrating the circumstances surrounding the inception of the scheme and to provide background for the scheme alleged in the

indictment." *Id.* at \*3. The court explained that testimony about the origins of the scheme "may be necessary to provide context for the jury" and excluding such evidence "may lead to jury confusion." *Id*. at \*3. Accordingly, it held that testimony relating to "the nature, structure, and development of the scheme may be necessary to complete the story of the crime on trial." *Id.*

### III.    Evidence of "Other Crimes, Wrongs, or Acts" under Rule 404(b)

Under Rule 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence "may be admissible for another purpose," however, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Second Circuit "has adopted an 'inclusionary' approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." *United States v. McPartland*, 81 F.4th 101, 115 (2d Cir. 2023). This "inclusionary rule is not a carte blanche," however, "to admit prejudicial extrinsic act evidence that is offered to prove propensity, or otherwise to allow propensity evidence in sheep's clothing." *Zhong*, 26 F.4th at 551. The government must also give the defense "reasonable notice" of the evidence it intends to offer at trial of "other crimes, wrongs or acts" under Rule 404(b). Fed. R. Evid. 404(b)(3).

### A.  Proper Purposes under Rule 404(b)(2)

In *United States v. Pitre*, the Second Circuit held that in the prosecution of a conspiracy, "[p]rior act evidence may be admitted" under Rule 404(b)(2) "to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed." 960 F.2d 1112, 1119 (2d Cir. 1992). The Second Circuit affirmed the district court's admission of

evidence of prior narcotics transactions as "relevant in informing the jury of the background of the conspiracy charged, in that such evidence could help explain to the jury the relationship between" the co-conspirators. *Id.* at 1119. In its later, 2010 decision in *Kaiser*, the Second Circuit recognized that the type of prior act evidence permitted in *Pitre* under Rule 404(b)(2) as information about the background and development of the charged conspiracy and completion of the story of the crimes charged is now analyzed as evidence that falls outside of Rule 404(b)(2) as evidence inextricably intertwined with a charged conspiracy. *See Kaiser*, 609 F.3d at 570.

Evidence of prior acts may also be admissible under Rule 404(b)(2) to prove a defendant's intent or knowledge when those elements are in dispute. *United States v. Graham*, 51 F.4th 67, 82 (2d Cir. 2022) ("Where it is apparent that intent will be in dispute, evidence of prior or similar acts may be introduced during the government's case-in-chief."); *see also Pitre*, 960 F.3d at 1119 (evidence of prior drug distribution scheme admissible to prove intent and knowledge in later drug distribution conspiracy trial).[16] "Where such evidence is offered for the purpose of establishing the defendant's knowledge or intent," the government must "identify a similarity or connection between the two acts that makes the prior act relevant to establishing knowledge of the current act." *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009); *Zhong*, 26 F.4th at 551 (noting that the government can offer "other act evidence to show knowledge or intent only when such evidence is sufficiently similar to the conduct at issue to permit the jury to draw a reasonable inference of knowledge or intent from the other act"). "Even

---

[16] The Second Circuit has held that these elements are at issue where they are elements the government is required to prove at trial. *See e.g.*, *Pitre*, 960 F.3d at 1119 (the intent or knowledge of the two defendants was "clearly at issue" in a heroin distribution conspiracy case because "the government was required to prove that [the defendants] knowingly or intentionally conspired to distribute heroin, or to possess it with intent to distribute it" under 21 U.S.C. §§ 812, 841(a)(1), and 846).

A-140

when the other bad acts and the charged conduct do not involve exactly the same co-conspirators, conduct, or temporal timelines, the evidence may still be sufficiently relevant or probative to be admitted." *Graham*, 51 F.4th at 82.

For example, in *Graham*, the Second Circuit considered the case of a defendant charged with a fraudulent mortgage-discharge conspiracy whose principal defense at trial was that she lacked the requisite mental state for a fraud conspiracy conviction. *Id.* It found that evidence that the defendant participated in a separate electronic funds transfer scheme was admissible as "probative of [the defendant's] fraudulent intent" because: (1) this other scheme was done at the same time as the charged conspiracy, (2) with the same co-conspirators, and (3) "with the same hallmarks—unconventional financial techniques used to purportedly discharge debt" as the charged mortgage-discharge scheme. *Id.*

Similarly, in *United States v. Moran-Toala*, the Second Circuit found that a defendant's plea allocution in a Florida state case that was nearly identical to the charges in New York was admissible under Rule 404(b)(2) to show her knowledge of the New York narcotics conspiracy. 726 F.3d 334, 346 (2d Cir. 2013). And in *Lingat*, the district court found that even if evidence of the defendant's pre-indictment participation in the alleged tax evasion scheme with Moishe's Moving was not direct evidence of the charged tax evasion conspiracy, it was alternatively admissible under Rule 404(b)(2) because it was offered for a proper purpose—"to show planning, preparation, knowledge, and intent on the part of the defendants." 2024 WL 1051633, at *4.

### B.   Rule 404(b)(3)'s Reasonable Notice Requirement

Rule 404(b)(3) requires that the prosecution give "reasonable notice" to the defense of evidence it intends to offer at trial that falls within Rule 404(b). In full, Rule 404(b)(3) requires the prosecutor to:

27

(A) provide *reasonable notice* of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a *fair opportunity* to meet it;

(B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and

(C) do so in writing before trial—or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b)(3) (emphasis added).

Rule 404(b)(3) does not define the term "reasonable notice." *See id.* Courts in the Second Circuit "have held that two or three weeks notice is reasonable" under 404(b), "and a longer period may be appropriate, depending on the circumstances." *United States v. Brown*, 627 F. Supp. 3d 206, 242 (E.D.N.Y. 2022) (collecting cases); *see, e.g.*, *United States v. Bracy*, No. 20-cr-483, 2022 WL 17801133, at *4 (E.D.N.Y. Dec. 19, 2022) (requiring 19 days' notice). "A court may provide for a longer notice period," for example, "in the case of a complex trial, in which the 404(b) evidence is critical to the action." *United States v. Inniss*, No. 18-cr-134, 2019 WL 6117987, at *3 (E.D.N.Y. Nov. 18, 2019). Courts have denied requests for more extended notice periods, however, where the defense has not articulated any specific reason for additional time based on the circumstances of the case. *See e.g.*, *Brown*, 627 F. Supp. 3d at 242 (setting deadline for 404(b) notice 17 days prior to trial because the defendant had "not raised any circumstances justifying [the] thirty-day notice period" requested); *United States v. Pastore*, No. 17-cr-343, 2018 WL 395490, at *6 (S.D.N.Y. Jan. 11, 2018) (denying request for 60 days' notice of 404(b) evidence where the defendant did not identify "any special circumstances that warrant . . . sixty days' notice").

## IV.    Relevance under Rule 401

Evidence is relevant under Rule 401, Fed. R. Evid., "if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of

consequence in determining the action." Fed. R. Evid. 401. "Relevant evidence is admissible unless" its admission would otherwise violate the U.S. Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court rules. Fed. R. Evid. 402. "Irrelevant evidence is not admissible." *Id.*

## V.    Rule 403 Balancing

Rule 403 provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## VI.    Hearsay Rules, Rules 801–804

The admissibility of out-of-court statements is generally governed by Rules 801 through 804, Fed. R. Evid. With some exceptions, Rule 801, Fed. R. Evid., defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Rule 802, Fed. R. Evid., provides that "[h]earsay is not admissible unless" a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provides otherwise. Fed. R. Evid. 802. Rule 803, Fed. R. Evid., sets forth exceptions to the rule against hearsay regardless of whether the declarant is unavailable to testify. Fed. R. Evid. 803. Rule 804, Fed. R. Evid., provides exceptions to the rule against hearsay only when the declarant is unavailable as a witness. Fed. R. Evid. 804(b).

Rule 803(3) sets forth an exception to the rule against hearsay for a "statement of the declarant's then-existing state of mind (such as motive, intent, or plan)." Fed. R. Evid. 803(3); *see also United States v. Johnson*, 117 F.4th 28, 47 (2d Cir. 2024) (recognizing that a declaration is admissible to "prove a relevant state of mind" under Rule 803(3) or because such a declaration

29

is not actually hearsay). This exception does not, however "includ[e] a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." Fed. R. Evid. 803(3); *see United States v. Dawkins*, 999 F.3d 767, 789–90 (2d Cir. 2021) (affirming exclusion of an out-of-court statement that was offered as an assertion of fact, rather than as a statement of motive or intent).

## DISCUSSION

### I.   Evidence of Priolo's Involvement in the Uncharged Sweepstakes Scheme

Priolo objects to the proffered evidence of his involvement in the uncharged sweepstakes scheme in the late 1990s and early 2000s, arguing that the government did not provide reasonable notice of this evidence under Rule 404(b)(3) and that this evidence is inadmissible under Rules 404(b) and 403. (Def.'s Opp'n at 3–6; *see also* Hr'g, Feb. 24, 2025). As set forth below, the government provided reasonable notice of its intent to introduce this evidence under Rule 404(b)(3), and this evidence is admissible as direct evidence of the charged conspiracy and under Rules 404(b) and 403.

### A.   Reasonable Notice Under Rule 404(b)(3)

First, Priolo argues that the first notice he received of the government's intention to offer evidence that Priolo purportedly worked with Novis and Sean Novis in the late 1990s to send fraudulent mailings was when the government filed its Motion in Limine on January 10, 2025. (Def.'s Opp'n at 3.) Priolo contends that because this Motion was filed "within mere weeks" of trial, it did not provide him with reasonable notice under Rule 404(b)(3), and he requests exclusion of the evidence or, in the alternative, an adjournment of trial, which was originally scheduled to begin on February 11, 2025 but is now scheduled to commence on March 10, 2025.

30

(*Id.* at 4.)[17] The government argues that both its March 11, 2024 letter and its Motion in Limine, filed more than eight weeks before the current trial date, provided reasonable notice of this evidence under Rule 404(b)(3). (Gov't's Mot. at 6; Gov't's Reply at 2.)

### i. March 11, 2024 Letter

The government served its March 11, 2024 letter on Priolo and Novis long before this Court issued a December 16, 2024 order severing Priolo and Novis's trials. In the letter, the government informed Priolo and Novis that it intended to offer the following evidence at trial: (1) Novis's mass-mailing sweepstakes notices, which began in around 1992; (2) the criminal investigation relating to the 1990s notices and Novis's resulting 1995 conviction and 2001 sentence of imprisonment for conspiracy to commit mail fraud; (3) an administrative action brought against Novis by the U.S. Postal Service in 1997 based on these 1990s activities, and the resulting settlement of that action; and (4) the continuation of this mailing scheme in the early 2000s as operated by Sean Novis, Priolo, and others. (Gov't's Mot., Ex. 8 at 2–4.)

With respect to Priolo's involvement in the uncharged sweepstakes scheme, the March 11, 2024 letter specifically stated the following:

> In the early 2000s, Novis's scheme continued, now managed day-to-day by his son Sean Novis, defendant Phillip Priolo, and others. At this time, the scheme continued to send $12,000 prize notices. Before and after his imprisonment, Novis participated in the prize-notice mailing operation, as did Priolo. Novis and Priolo profited from the continuing prize-notice scheme through the 2000s, worked in and collected money at the office run by Sean Novis, and otherwise continued participating in the direct-mail scheme originally started by Novis.

---

[17] Following Priolo's filing of his opposition to the government's Motion, I granted Priolo's separate motion to adjourn the commencement of trial to March 10, 2025 over the government's objection in light of documentation showing that Priolo's counsel needed time to recuperate from various health issues. (Elec. Order, Feb. 10, 2025; *see also* ECF Nos. 105, 107–08.)

A-145

(*Id.* at 3.) The March 11, 2024 letter also explained the basis for the government's belief that the evidence identified was admissible. It stated, in part:

> The continuity of operations between the early 1990s and the end of the scheme set forth in the indictment in the present matter shows that Novis and Priolo were engaged in—if not the same conspiracy—activities that were so similar in kind, scope, participants, and methods to fall squarely within the permissible uses of such other-acts evidence under Rule 404(b), including proof of modus operandi, knowledge, and intent. This evidence also illuminates the background and development of the charged conspiracies and the relationships of trust between the defendants.

(*Id.* at 4.)

The March 11, 2024 letter provided Priolo with reasonable notice that the government intended to introduce evidence about his involvement with the uncharged sweepstakes scheme. The letter specifically identified the uncharged sweepstakes scheme and Priolo's alleged involvement in that scheme. (*Id.*) The letter did not state exactly *which year* Priolo allegedly became involved in the mailing scheme, stating only that, "[b]efore and after his imprisonment, Novis participated in the prize-notice mailing operation, as did Priolo" and that "[i]n the early 2000s," Priolo helped manage the daily operations of the scheme. (*Id.* at 3.) But the letter provided clear notice to Priolo that the government intended to introduce evidence of his involvement in the scheme "[b]efore and after" Novis's 2001 imprisonment, which is reasonably interpreted to include Priolo's conduct in the late 1990s and the early 2000s. (*See id.* (stating that Novis pled guilty in 1995 and was sentenced and imprisoned in 2001).) The letter also provided Priolo notice that the government intended to introduce evidence that the scheme stretched back to the early 1990s. (*Id.* at 2–4; *see also id.* at 4 (stating the government's position that "[t]he continuity of operations between the early 1990s and the end of the scheme set forth in the indictment in the present matter" was probative of Novis and Priolo's knowledge and intent.)

32

A-146

Moreover, the March 11, 2024 letter was sent to Priolo nine months before I severed Priolo and Novis's trial. (*See* Min. Entry, Dec. 16, 2024.) Because I granted a separate defense motion to adjourn the commencement of trial from February 18, 2025 to March 10, 2025, the March 11, 2024 letter was provided to Priolo exactly one year prior to trial. (*See* Elec. Order, Feb. 10, 2025.) In this context, the March 11, 2024 notice provided Priolo with more than sufficient time to conduct any necessary investigation to meet the government's proffered evidence of Priolo's involvement in the uncharged sweepstakes scheme in the late 1990s and early 2000s.

### ii.  *January 10, 2025 Motion in Limine*

In addition to providing Priolo notice through the March 11, 2024 letter, the government served the instant Motion on Priolo on January 10, 2025, more than five weeks before Priolo's original February 18, 2025 trial date and eight weeks before the current March 10, 2025 trial date. In the Motion, the government identified the specific evidence the government intended to offer at trial, including many of the specific exhibits ultimately identified by the government for use at trial, and stated that:

> this motion also serves as notice under Rule 404(b) of the government's intent to admit evidence related to Priolo's involvement in Justin Grant, Sweepstakes Advisory Network, and the other activities discussed herein, insofar as it is filed more than five weeks in advance of trial.

(Mot. at 6.) This notice is reasonable under Rule 404(b)(3), especially when considering the disclosure of the government's March 11, 2024 letter one year before trial. The Motion provided Priolo with eight weeks of notice before trial commences on March 10, 2025—longer than the two to three weeks many courts in this district have found to be reasonable. *See e.g.*, *Brown*, 627 F. Supp. 3d at 242.

33

The fact that the government submitted seventeen additional exhibits related to this time period in its proposed trial exhibits on February 3, 2025 does not compel a different result. *See supra* notes 9–10 (describing these additional exhibits). First, the government's February 3, 2025 disclosure of trial exhibits pertaining to the government's Motion still took place two weeks prior to the original trial date of February 18, 2025, and five weeks prior to the current trial date of March 10, 2025. *See Brown*, 627 F. Supp. 3d at 242. Second, the additional exhibits all directly relate to Priolo's involvement with Justin Grant and Sweepstakes Advisory Network in the late 1990s and 2000s, and Priolo has not suggested any of these additional exhibits were not included in discovery. Thus, the March 11, 2024 letter and the January 10, 2025 Motion together provided Priolo reasonable notice of the government's intent to introduce at trial evidence of his involvement with the uncharged sweepstakes scheme in the 1990s and early 2000. Moreover, the additional trial exhibits were disclosed in pre-trial discovery. *See Kaiser*, 609 F.3d at 571 n.3 (finding that the indictment "in conjunction with the materials disclosed by the government in pre-trial discovery, was more than sufficient to put [the defendant] on notice that the government intended to introduce evidence concerning his" actions prior to the charged period).

Priolo's assertion that he requires "far longer" than the five weeks between the filing of the government's Motion on January 10, 2025 and the now-adjourned trial date of February 18, 2025 in order to confront evidence of Priolo's involvement with the uncharged sweepstakes scheme is unpersuasive. (Def.'s Opp'n at 4.) Priolo generally argues that he needs additional time because the actions at issue allegedly occurred around 25 years ago without explaining *why* this fact necessitates additional time to prepare for trial, especially since he does not argue that this evidence was not produced to him during discovery. (*See id.*) More importantly, however, Priolo's argument ignores the fact that the government's March 11, 2024 letter provided Priolo

34

notice that the government intended to introduce evidence of the uncharged sweepstakes scheme and Priolo's involvement in that scheme during the late 1990s and early 2000s. (*See* Gov't's Mot., Ex. 8.)

Accordingly, through both the government's March 11, 2024 letter one year before trial and filing of the government's Motion in Limine eight weeks before trial, the government has provided Priolo with "reasonable notice" of its intent to introduce evidence of his involvement in the uncharged sweepstakes scheme in the late 1990s and early 2000s. Fed. R. Evid. 404(b)(3). Accordingly, Priolo's request to adjourn the trial date in the event this evidence is allowed is denied. (Def.'s Opp'n at 4.)

### B.  Inextricably Intertwined

Priolo argues that the proffered evidence about his involvement in the uncharged sweepstakes scheme in the late 1990s and early 2000s is impermissible character evidence under Rule 404(b)(1). (*Id.* at 4–5.) Specifically, Priolo moves to exclude the testimony of Ressler, the copywriter in the uncharged sweepstakes scheme, arguing that this evidence has no proper purpose other than to prove Priolo's propensity to engage in crime. (*Id.* at 3–4; Hr'g, Feb. 4, 2025.) The government asserts that this evidence of Priolo's prior involvement with the uncharged sweepstakes scheme is not "other acts" evidence under Rule 404(b) because it is direct evidence of, and is inextricably intertwined with, the charged sweepstakes scheme. (Gov't's Mot. at 7–8.)

In light of the Second Circuit's precedents, the proffered evidence—including the testimony of employee Johnson, documentary evidence about Sweepstakes Advisory Network and Justin Grant, and the testimony of copywriter Ressler—are inextricably intertwined with the charged conspiracy and are therefore admissible as direct evidence of the conspiracy. *See Kaiser*, 609 F.3d at 571; *Lingat*, 2024 WL 1051633, at *3. The proffered evidence about Priolo's

35

involvement in the uncharged sweepstakes scheme in the late 1990s and early 2000s is analogous to the evidence at issue in *Lingat*, which concerned the origins of the charged tax evasion scheme and operation of the scheme prior to the charged period, which the district court found were admissible as direct evidence of the charged tax evasion conspiracy. *Lingat*, 2024 WL 1051633, at *3. Here, the evidence of Priolo's involvement in the uncharged scheme is admissible as direct evidence of the charged sweepstakes scheme for five reasons.

First, Johnson's anticipated testimony that Priolo and Novis were working with Sean Novis in 2000 to send out sweepstakes notices similar to the Winners Circle notices in the charged sweepstakes scheme is likely direct evidence of the charged conspiracy between Priolo and Novis. As in *Lingat*, this testimony will provide background for the charged sweepstakes scheme. *Id.* Indeed, Priolo acknowledges that this testimony would "provide the jury with an appropriate background to the parties['] relationship." (Def.'s Opp'n at 6.)[18]

Second, the documentary and testimonial evidence regarding Sweepstakes Advisory Network and Justin Grant, the two corporations in which Priolo and Novis were allegedly involved and which allegedly sent out mailings in the late 1990s and early 2000s, is likewise direct evidence of the charged conspiracy between Priolo and Novis.

Third, Ressler's testimony that he created mailings used in the uncharged sweepstakes scheme will also provide direct evidence of the charged conspiracy in connection with the evidence that Priolo was involved in Sweepstakes Advisory Network and Justin Grant— including Ressler's testimony that he met Priolo at the time.[19] Priolo's objects to this testimony

---

[18] Priolo does not object to this testimony to the extent that it is the only evidence admitted of Priolo's involvement in the uncharged sweepstakes scheme. (Def.'s Opp'n at 6.)

[19] Priolo's arguments that Priolo and Ressler's interactions were minimal can be drawn out on cross-examination and argued to the jury.

A-150

on the basis that Ressler is not expected to testify that he was involved in the charged sweepstakes conspiracy is unpersuasive in light of the Second Circuit's precedents. *See* Def.'s Opp'n at 3–4; *Kaiser*, 609 F.3d 556, 570–71; *Esposito*, 2021 WL 5492935, at *2.[20]

Fourth, Priolo's attempt to distinguish this case from *Lingat* is unconvincing. According to Priolo, the defendants in *Lingat* had been continuously engaged in the "same – ongoing – uninterrupted" tax avoidance scheme for many years prior to the period charged in the indictment, whereas here, there is a "15-year interruption or gap" between the uncharged sweepstakes scheme and the charged sweepstakes scheme. (Def.'s Opp'n at 5; *see also* Hr'g, Feb. 27, 2025.) The government, however, has proffered evidence in this case arguably showing that the charged sweepstakes scheme is a continuation of the uncharged sweepstakes scheme— this same representation was made by the government in *Lingat.* (*See* Gov't's Mot. at 11.)

Fifth, Priolo's speculation that the evidence about his involvement in the uncharged sweepstakes scheme in the late 1990s and early 2000s cannot be "intrinsic" to the charged conspiracy because he was not charged or named as a co-conspirator in the prosecution of Sean Novis and Denkberg, *United States v. Sean Novis*, No. 20-cr-335, is unconvincing. (Def.'s Opp'n at 5.) In this case, the Indictment plainly charges that Priolo and Novis conspired with Sean Novis, Denkburg, and others to send fraudulent notices by mail to obtain money from recipients. (Indictment ¶ 5.)

---

[20] During oral argument on February 27, 2025, Priolo also argued that the government's decision not to call a copywriter who worked on the mailings sent out in the charged sweepstakes scheme suggests that the only basis for Ressler's testimony is an improper propensity argument. (Hr'g, Feb. 27, 2025.) This argument does not address the fact that Ressler's testimony about making notices in furtherance of the uncharged sweepstakes scheme, in which Priolo was allegedly involved, is admissible under *Kaiser*, 609 F.3d 556, as direct evidence of the conspiracy between Priolo and Novis.

For all of these reasons, the government's proffered evidence concerning Priolo's involvement in the uncharged sweepstakes scheme in the late 1990s and early 2000s is admissible as direct evidence of the conspiracy. *See Kaiser*, 609 F.3d at 571.

### C. Proper Purpose Under Rule 404(b)

In the alternative, the government argues that the evidence about Priolo's involvement in the uncharged sweepstakes scheme in the late 1990s and early 2000s is admissible under Rule 404(b)(2) to prove Priolo's knowledge of the conspiracy and intent to defraud. (Gov't's Mot. at 11–13.) Priolo responds that this evidence "is not being offered for a proper purpose" under Rule 404(b) but will instead "lead the jury to conclude that Mr. Priolo has a propensity for engaging in fraudulent mass-mailings with [Novis and Sean Novis]" or in other words, that "because he engaged in fraudulent mailing before in the late 1990's he must have done it again beginning in 2015." (Def.'s Opp'n at 5.) In light of Second Circuit precedents, Priolo's knowledge of the charged conspiracy and intent to defraud are at issue in his trial. The elements of conspiracy to commit mail or wire fraud include "showing that the defendant agreed with another to commit wire [or mail] fraud and knowingly engaged in the conspiracy with the intent to commit that offense." *DiMassa*, 117 F.4th at 487. An essential element of mail fraud is the existence of a scheme to defraud, which requires proof "that the misrepresentations were material and that the defendant acted with fraudulent intent." *Weaver*, 860 F.3d at 94; *Saint Clair*, 2024 WL 413422, at *4 (same). Moreover, Rule 404(b) permits the government to present evidence of uncharged crimes or acts for any purpose other than to prove Priolo's criminal propensity. *McPartland*, 81 F.4th at 115; *see Graham*, 51 F.4th at 82; *Pitre*, 960 F.3d at 1119.

Accordingly, evidence of Priolo's involvement in the uncharged sweepstakes scheme through Johnson's testimony and documents relating to Sweepstakes Advisory Network and Justin Grant is admissible under Rule 404(b)(2) to prove Priolo's knowledge of the mail fraud

38

conspiracy and his intent to defraud, which are distinct from the prohibited purpose of proving criminal propensity. *Lingat*, 2024 WL 1051633, at *4 (holding that evidence of defendant's pre-indictment participation in the tax evasion scheme was admissible under Rule 404(b)(2) "to show planning, preparation, knowledge, and intent on the part of the defendants").[21] Evidence of Ressler's testimony as to the artistic and linguistic methods he used to make the notices for Sweepstakes Advisory Network and Justin Grant, when combined with evidence that Priolo was involved in the uncharged sweepstakes scheme at the time Ressler worked on notices, is probative of Priolo's intent to defraud and knowledge of the conspiracy. This evidence is probative because the uncharged scheme was carried out with many of the same co-conspirators as the charged scheme, and it included the "same hallmarks"—mailings with a similar aesthetic that notified recipients that they won a large sum of money and could collect their prize by paying a small fee. *See Graham*, 51 F.4th at 82 (finding an uncharged fraud scheme to be probative of the defendant's fraudulent intent to commit a separate fraudulent mortgage-discharge scheme because, among other things, the schemes were carried out with the same co-conspirators and with the same "hallmarks").[22]

      D.  Rule 403 Balancing

Priolo asserts that the government's proffered evidence about his involvement in the uncharged sweepstakes scheme in the late 1990s and early 2000s should be excluded under Rule

---

[21] In support of its Motion, the government submitted evidence of complaints addressed to Justin Grant and Sweepstakes Advisory Network about their mailings, although the government has not identified these documents as proposed trial exhibits. (*See* Gov't's Mot., Ex. 3.)

[22] To the extent that the government seeks to offer evidence of Novis's conduct in the uncharged sweepstakes scheme, such evidence is admissible under Rule 404(b) to show Novis's knowledge as it relates to whether Novis and Priolo had "an agreement on the essential nature of the fraud" that was the object of the charged conspiracy. *United States v. Rosenblatt*, 554 F.2d 36, at 42 (2d Cir. 1977); *see also infra* Discussion Section II(A)(i).

403 because its probative value is "substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay[,] and wasting time." (Def.'s Opp'n at 5.) Priolo asserts that the government could give the jury "an appropriate background to the parties['] relationships" without depriving Priolo of a fair trial or creating a "trial within a trial" by *only* introducing Johnson's testimony that "at the time she began working for Sean Novis" in 2000, "Novis and Priolo were working with Sean Novis to send out sweepstakes mailings very similar to those sent out under the name 'Winner[]s Circle' in the 2015-2016 time period." (*Id.* at 6.) The government contends, however, that this evidence should not be precluded under Rule 403 because it is not more inflammatory than the charged offense. (Gov't's Mot. at 13–14.)

The Second Circuit has clarified that even where evidence of uncharged criminal conduct is properly offered as direct evidence of the charged offense or for a proper purpose under Rule 404(b), "a district court may admit that evidence only if it satisfies the probative-prejudice balancing test of Rule 403." *Zhong*, 26 F.4th at 551. A district court abuses its discretion under Rule 403 "when it admits evidence of uncharged conduct that was significantly more sensational and disturbing than the charged crimes." *Id.*; *cf. Moran-Toala*, 726 F.3d at 346 (no abuse of discretion in admitting prior defendant's plea allocution to prove her knowledge under Rule 403, especially where the court limited the government's evidence to "a focused and brief stipulation").

In *Lingat*, the district court found that the evidence of the defendant's participation in the tax evasion scheme prior to the charged period was admissible under Rule 403 under a similar analysis. 2024 WL 1051633, at *5. The court reasoned that the evidence was "highly probative of the charged conduct" because it "directly explains the origins and design of the charged conduct and demonstrates the defendants' longstanding knowledge of and intent to engage in the

40

charged conduct." *Id*. The evidence was not "unduly prejudicial" because "it is merely a continuation of the same charged conduct and therefore cannot be more sensational or disturbing than the charged conduct." *Id*.

In *United States v. Sterling*, the district court found that evidence of a defendant's prior conviction offered to prove his knowledge and intent was admissible under Rule 403. No. 22-cr-247, 2023 WL 1967526, at *4 (E.D.N.Y. Feb. 12, 2023). The evidence of the prior conviction was "significantly probative" of the defendant's "knowledge and intent . . . to participate in trafficking cocaine," which were both elements of the charged offense, because both the charged offense and the prior conviction involved using similar code to describe narcotics. *Id.* Further, the court found that the risk of any undue prejudice did not outweigh the probative value of this evidence under Rule 403 because the government did not have any other direct evidence of the defendant's knowledge that the code described the narcotics, the prior conviction was not more sensational than the charged offense, and any prejudice would be mitigated by a limiting instruction to the jury. *Id.*

The Second Circuit's opinion in *Moran-Toala* is instructive on the application of Rule 403 to the evidence at issue. 726 F.3d at 346. In *Moran-Toala*, the district court found that the risk of prejudice from admitting a defendant's prior plea allocution, which was nearly identical to the pending charges, did not substantially outweigh the probative value of that evidence to show that same defendant's knowledge of the charged conspiracy. *Id.* The Second Circuit found the district court had not abused its discretion. Here, as in *Moran-Toala*, the government anticipates that the evidence will show the charged and uncharged sweepstakes schemes are "nearly identical." (Gov't's Mot. at 13; Gov't's Reply at 2.) In this context, the probative value of the government's proffered evidence as to Priolo's knowledge and intent is significant. *See*

41

*Graham*, 51 F.4th at 82. Furthermore, the risk of potential prejudice here is also low because the uncharged acts are not "significantly more sensational and disturbing than the charged crimes." *Zhong*, 26 F.4th at 551; *see also Lingat*, 2024 WL 1051633, at *5; *Sterling*, 2023 WL 1967526, at *4. The evidence in this case is less prejudicial than the prior act evidence deemed admissible in *Moran-Toala*, which showed that the defendant actually pled guilty to a nearly identical crime. 726 F.3d at 346.

Finally, Priolo's contention that the evidence about his involvement in the uncharged sweepstakes scheme in the late 1990s and early 2000s will lead to delay because it will become a "trial within a trial" is unpersuasive. (*See* Def.'s Opp'n at 6.) The evidence the government has proffered—the testimony of two witnesses, Johnson and Ressler, and nineteen proposed trial exhibits—are not overly voluminous and will not cause undue delay or distraction from the issues at trial where the government has proposed a total of 23 witnesses and 251 trial exhibits.

Given these considerations, Rule 403 does not preclude the government from introducing at trial the evidence identified by the government concerning Priolo's prior involvement in the uncharged sweepstakes scheme.

## II.    Jeffrey Novis's Prior Conviction

The government seeks to offer the information and judgment concerning Novis's prosecution, conviction, and imprisonment for conspiracy to commit mail fraud in *United States v. Dobin*. (Gov't's Mot. at 9–11; Gov't's Tr. Mem. at 23.) There is no evidence or allegation that Priolo was involved in any of the conduct leading to Novis's prior conviction. Priolo is not alleged to have worked with Novis during the timeframe of the conduct charged in the 1995 information. (*See* Gov't's Reply at 2 (noting that the government "possesses no evidence that Priolo was . . . involved" in the conduct leading to Novis's conviction in *United States v.*

A-156

*Dobin*).) Nor was Priolo named as a defendant in the conspiracy to which Novis pled guilty. (*See* Gov't's Mot., Ex. 5 at 8–14.)

Instead, the government intends to offer evidence of Novis's prior conviction for the principal purpose of establishing *Novis's* knowledge of the charged conspiracy and intent to defraud. (Gov't's Mot. at 5.) As a secondary matter, the government seeks to offer this evidence to prove Priolo's knowledge and intent to defraud, arguing that there is "circumstantial evidence" that Priolo knew of Novis's conviction. (*Id.* at 4–5.) Priolo objects, arguing that evidence of Novis's prior guilty plea and conviction is not relevant because Novis is not on trial and therefore Novis's knowledge and intent are not at issue. (Def.'s Opp'n at 6–7; *see also* Def.'s Mot. at 2.) Priolo also argues that the government's "circumstantial evidence" that he was aware of the prior conviction is "specious at best." (Def.'s Opp'n at 6–8 (citing Gov't's Mot. at 5).) Finally, Priolo objects to the admission of this evidence under Rules 404(b) and 403 and the Confrontation Clause of the Sixth Amendment to the U.S. Constitution. (*Id.* at 8–11.)

Evidence of Novis's prior conviction for conspiracy to commit mail fraud is inadmissible under Rule 403 because the probative value of this evidence is substantially outweighed by the risk of undue prejudice to Priolo, confusing the issues, and misleading the jury. Accordingly, I do not reach the question of whether admission of the information and judgment relating to Novis's prior conviction violates the Confrontation Clause.

    A.  <u>Probative Value</u>

While Novis's guilty plea and conviction in *United States v. Dobin* is relevant to Novis's knowledge of the charged conspiracy, the probative value of this evidence is reduced based on the other evidence the government intends to present at trial. Further, Novis's guilty plea and conviction has only marginal relevance, if any, to *Priolo's* knowledge and intent to commit mail or wire fraud.

43

A-157

### i.  *Novis's Knowledge and Intent to Defraud*

The government argues that Novis's prior information and judgment is probative of Novis's knowledge and intent to defraud in the charged sweepstakes scheme even though Novis's trial has been severed from Priolo's trial. (Gov't's Mot. at 7–9.) The government asserts that

> [t]he similarity of the methods and techniques set forth in the criminal information from his earlier case, to which Novis pleaded guilty, as well as the sanctions imposed upon Novis in the form of conviction and imprisonment, shows his unequivocal knowledge that the conspiracy with Priolo was both in violation of the law and had the specific object of committing mail fraud . . . .

(*Id.* at 9.) The government also argues that the evidence of Novis's prior conviction shows that Novis "*knew* that a scheme like that outlined in the conviction documents was illegal, amounted to mail fraud, and that he therefore intended to defraud consumers when he implemented a similar scheme with Priolo as set forth in the indictment." (Gov't's Tr. Mem. at 22–23.)

Priolo argues that Novis's knowledge and intent are *not* at issue because Novis is no longer being tried with him. (Def.'s Opp'n at 6–7; Def.'s Mot. at 2.) The government contends that even though the trials have been severed, the government must still show Novis's knowledge and intent to defraud in order to prove that Priolo engaged in a conspiracy to commit mail or wire fraud with Novis as his co-conspirator. (Gov't's Mot. at 7–9.)

The government has failed to identify a single case in which the court held that the intent of an alleged co-conspirator who is not on trial is an element the government must prove to establish that the defendant on trial engaged in a conspiracy. (*See* Gov't's Mot. at 7–9; Gov't's Reply at 1–2.) Nor has the government identified a single case where the court held that the prior conviction of a co-defendant not on trial was admissible at the trial of a defendant charged with conspiracy. (*See* Gov't's Mot. at 7–9; Gov't's Reply at 1–2.) At oral argument, the government acknowledged that despite its efforts, it has not been able to find such authority. (Hr'g, Feb. 27,

44

2025.) Instead, in its Motion, the government principally relies on the jury instruction on conspiracy to commit mail or wire fraud provided in the 2022 trial of Sean Novis and Denkburg to argue that the government's burden to prove that Priolo engaged in such a conspiracy requires showing the intent of co-conspirators who are not on trial. (Gov't's Mot. at 7–9 (citing Trial Tr. at 1889–93, *United States v. Sean Novis*, No. 20-cr-335).)

It is true that in Priolo's trial, the government bears the burden of proving the elements of conspiracy to commit mail or wire fraud and that the first element requires proving that Priolo had an agreement with another person to commit the unlawful act of mail or wire fraud. *See DiMassa*, 117 F.4th at 487; *see also* 18 U.S.C. § 1349. Certainly, evidence tending to make more probable that there was an agreement between Priolo and Novis to engage in the charged sweepstakes scheme is relevant evidence under Rule 401. But the government stretches this requirement too far by arguing that proof of Novis's specific intent to defraud is squarely at issue in Priolo's severed trial. Rather than find a case on point, the government relies on cases in which the prior conviction of a co-defendant was admitted in trials where co-conspirators were *tried together*. *See* Gov't's Mot. at 9 (citing *Iannelli v. United States*, 420 U.S. 770, 777–78 (1975), *United States v. Babilonia*, 854 F.3d 163, 175 (2d Cir. 2017), and *United States v. Martino*, 759 F.2d 998, 1005 (2d Cir. 1985).)

For example, the government relies on *Martino*, which is distinguishable. Although the Second Circuit found no error in the admission of a prior criminal conviction to prove a conspiracy to distribute narcotics, the evidence at issue concerned the appellant-defendant's *own* prior conviction—not the prior conviction of a co-conspirator who was not on trial. 759 F.2d at 1004–05.

A-159

Under Second Circuit precedent, because the government must prove that Priolo and a co-conspirator had an agreement to defraud, Novis's *knowledge* of the conspiracy is at issue in Priolo's severed trial. In *United States v. Rosenblatt*, the Second Circuit reversed Rosenblatt's conviction for conspiracy to defraud the United States where the evidence at trial showed that Rosenblatt himself "neither intended nor agreed to commit" the substantive crime with which his co-defendant was charged or might have been guilty "because [Rosenblatt] *had no knowledge* of such a plan." 554 F.2d 36, at 39 (2d Cir. 1977) (emphasis added). Thus, "the government neither pled nor proved *an agreement on the essential nature of the fraud*" between Rosenblatt, who was on trial, and his alleged co-conspirator, who had pled guilty. *Id*. at 42 (emphasis supplied). In determining whether there was such an agreement, the defendant's *own* knowledge and mental culpability for the conduct to which the co-conspirator had pled guilty was at issue. *Id.* at 39. *Rosenblatt* makes clear that the government must prove that co-conspirators agreed on the "essential nature of the plan" that is the object of the conspiracy. *Id*. at 38. Thus, *Rosenblatt* stands for the proposition that the *knowledge* of a co-conspirator about the essential nature of the fraud is at issue in the trial of a defendant charged with conspiracy, although it does not hold, as the government suggests, that the *intent* of a co-conspirator not on trial is squarely at issue in proving a conspiracy charge against the defendant on trial. *See id.*

The government also relies on *Rosenblatt*'s reading of prior cases: *Ingram v. United States*, 360 U.S. 672 (1959), and *United States v. Gallishaw*, 428 F.2d 760 (2d Cir. 1970). (Gov't's Opp'n at 2.) These cases are distinguishable because they both concerned the mental culpability of the *defendants on trial*, rather than a co-conspirator who was not on trial. In *Ingram*, the Supreme Court found insufficient evidence to support a conspiracy conviction to evade federal taxes imposed on lottery operations under 18 U.S.C. § 371 for two defendants who

46

were involved in the lottery operation but did not *know* that their co-conspirators "were liable for federal taxes by reason of the gambling operation." *Ingram*, 360 U.S. at 677–78. Similarly, in *Gallishaw*, the Second Circuit held that the district court erred in instructing the jury that it was not necessary for the government to prove that the defendant on trial knew the specific objectives of the conspiracy in order to be convicted of a conspiracy charge. 428 F.2d at 762–64.

If Priolo and Novis were tried together for conspiracy to commit mail or wire fraud and this Court were to deem admissible evidence of Novis's prior conviction as probative of Novis's knowledge and intent to commit mail or wire fraud, this Court would be required to provide a limiting instruction to the jury upon Priolo's request. *Pitre*, 960 F.2d at 1119. The standard jury instruction provided in such circumstances underscores that the jury cannot impute one defendant's conduct onto another. *See* Leonard B. Sand *et al*., 1 Modern Federal Jury Instructions: Criminal, Comment to Instruction 5.10 (2025) ("In multiple-defendant cases," it is appropriate to instruct the jury that "the similar act proof has been offered *solely as to the issue of the codefendant's intent* and may not be considered at all as having any independent bearing on the defendant.") (emphasis added); *see also United States v. Rosenwasser*, 550 F.2d 806, 807–09 (2d Cir. 1977) (affirming the district court's cautionary instruction in a joint trial that prior act evidence could be considered solely as to one defendant's knowledge and intent, and not as to the co-defendant's).[23]

Accordingly, Novis's intent to commit mail or wire fraud is not squarely at issue in Priolo's trial on counts of mail fraud and conspiracy to commit mail or wire fraud. Nevertheless, under *Rosenblatt*, evidence of Novis's prior guilty plea and conviction for conspiracy to commit

---

[23] *See also United States v. Spinelli*, 352 F.3d 48, 55 n.3 (2d Cir. 2003) (noting that the district court instructed the jury to consider the co-defendants being tried "separately").

mail fraud is relevant to Novis's own knowledge as it relates to whether Novis and Priolo had "an agreement on the essential nature of the fraud" that was the object of the charged conspiracy. 554 F.2d at 42.[24] The probative value of this evidence is significantly diminished, however, because the government has offered other evidence to show Novis's knowledge of the object of the conspiracy. Indeed, as detailed above, evidence of Priolo's participation in a similar uncharged sweepstakes scheme in the late 1990s and early 2000s is admissible and is proffered for the same purposes. *See supra* Discussion Section I.

> ### ii.   Priolo's Knowledge and Intent to Defraud Based on his Purported Knowledge of Novis's Conviction

The government also argues that evidence of Novis's guilty plea and conviction in *United States v. Dobin* "provides circumstantial evidence of Priolo's knowledge and intent to defraud" based on further circumstantial evidence that Priolo knew about Novis's conviction and resulting sentence. (Gov't's Mot. at 5.) The government contends that the following circumstantial evidence shows that Priolo knew about this conviction: (1) other employees of the uncharged sweepstakes scheme in the late 1990s and early 2000s knew Novis had some "legal troubles," (2) Priolo was involved in the uncharged sweepstakes scheme before, during, and after Novis's prison sentence resulting from the *United States v. Dobin* conviction, and (3) Priolo held himself out as the sole owner of Winners Circle to PacNet only a few months after PacNet refused to work with Novis due to his criminal conviction, despite the fact that Priolo co-owned the company with Novis. (*Id.* at 5–6.)

---

[24] For this reason, evidence of Novis's prior guilty plea and conviction is not precluded under Rule 404(b), as it is offered for a purpose "other than to demonstrate criminal propensity." *McPartland*, 81 F.4th at 115.

For Novis's guilty plea and conviction based on a similar prior scheme to be probative of Priolo's knowledge of the charged conspiracy and intent to defraud, the government would have to establish that Priolo knew about the *nature* of the charge for which Novis was convicted in 1995—i.e., that it was a conviction relating to mail fraud. But the government's proffered circumstantial evidence fails to raise anything more than speculation that Priolo knew of the nature of this prior conviction.

First, the government proffers the following evidence to show that "it was widely known that Novis had legal troubles": (1) Johnson, who was involved in the uncharged sweepstakes scheme beginning in the early 2000s, will testify that she recalls Novis going to prison, but believed it was for tax evasion; (2) Jacquard, who was hired after Novis was released from prison, will testify that she knew Novis could not be involved in running the operation "because of legal troubles"; and (3) Spector will testify that Novis told him that Novis went to prison for mail fraud arising out of prize-notice mailings. (*Id.* at 5 & n.6.) This evidence does not even establish that *other* members of the uncharged scheme knew about the nature of Novis's conviction in *United States v. Dobin*, with the exception of Spector, who learned about it directly from Novis himself. (*Id.* at 5 n.6.) Indeed, Johnson's testimony confirms that employees did *not* know the nature of Novis's charges, because she believed his conviction to be related to tax evasion, not mail fraud. (*Id.* at 5.) Any suggestion that Priolo knew about the nature of Novis's prior conviction based on this evidence is speculation.

Second, the government's argument that Priolo was involved in the uncharged sweepstakes scheme before, during, and after Novis's imprisonment in 2001 is similarly based only on speculation that Priolo *could* have known about the nature of Novis's conviction. The government has not explained, for example, how closely Priolo and Novis worked during the late

49

1990s and early 2000s. But, as the government's description of Johnson and Jacquard's anticipated testimony confirms, even if Priolo knew that Novis was serving time in prison during that period, any argument that he knew that Novis had a conviction relating to mail fraud is mere speculation based on the government's proffered evidence.

Third, the government's argument that Priolo knew about the nature of Novis's conviction based on his representations to PacNet is likewise merely speculative. The emails at issue indicate that PacNet employees discussed Novis's "criminal record" and that PacNet would decline the application of a company called COL Trading International Corporation, noting that the application of "David Dobin" was also previously declined. (Gov't's Mot., Ex. 6.)[25] The emails do not indicate that Novis was convicted of conspiracy to commit mail fraud. (*Id.*) Nor do they discuss Winners Circle—the company jointly owned by Priolo and Novis. (*Id.*) Finally, Priolo was not copied on any of these emails, and the government has not proffered evidence that Priolo was aware of the contents of these emails. (*See id.*; *see also* Gov't's Mot. at 5–6.)

During oral argument on February 27, 2025, the government argued that two additional exhibits it intends to offer at trial, Proposed Government Trial Exhibits 356A and 356B, also provide circumstantial evidence that Priolo knew of Novis's prior conviction because they show that Priolo held himself out as the face of Winners Circle while Novis kept his involvement a secret from PacNet. (Hr'g, Feb. 27, 2025.) This argument is again based on speculation. The emails in Proposed Government Trial Exhibits 356A and 356B show that on two different occasions, April 28, 2015 and May 1, 2015, a PacNet representative responded to emails Priolo

---

[25] The email includes three URLs as "reference" for declining "the previous prospect of David Dobin." (Gov't's Mot., Ex. 6.) The first URL refers to "Deceptive Mailings Dobin Prepared Statement." (*Id.*) The second appears to link to a NewsDay article about fraud in the mail, but the URL does not state whether the article refers only to Dobin or also to Novis. (*Id.*) The content behind the third hyperlink is not clear based on the URL address. (*Id.*)

A-164

sent from a general email address for Winners Circle, <wincirint@gmail.com>, regarding their approval of art for Winners Circle's proposed mailings. (Gov't's Proposed Tr. Exs. 356A–B.) PacNet addressed those emails to "Phil" alone. (*Id*.) The exhibits show that Novis then forwarded those emails to Priolo with the message "FYI." (*Id*.) In one of the emails forwarded to Priolo, Novis added "Chan ges [sic] approved by pac net," and in the other he added, "I will use new art when you are ready to order these again." (*Id.*) Neither of these email threads mention Novis's prior conviction. (*Id.*)

These emails show, at most, that Priolo was the point of communication for this specific representative at PacNet regarding the art for these two proposed mailings and that Novis had access to the email account for <wincirint@gmail.com>. This evidence combined with the government's evidence that Priolo misrepresented Novis's involvement in Winner's Circle could raise an inference that Novis attempted to conceal his involvement in Winners Circle. But this evidence does not show that Priolo knew of Novis's conviction, much less the nature of Novis's prior conviction.

Even considering all of this evidence together—the knowledge of three employees that Novis had legal troubles, Priolo's involvement in the uncharged sweepstakes scheme before, during, and after Novis's prison sentence, and Priolo's act of holding himself out as the sole owner of Winners Circle to PacNet—it remains entirely speculative that *Priolo* knew that Novis had a prior conviction related to mail fraud, much less the nature of the scheme to which Novis confessed. Thus, evidence of Novis's guilty plea and conviction is, if anything, only marginally

51

A-165

probative of Priolo's knowledge of the charged sweepstakes scheme or intent to defraud and is irrelevant under Rule 401.[26]

Moreover, any marginal probative value of this evidence is significantly diminished because the government has offered other evidence showing Priolo's intent to defraud and knowledge of the conspiracy. As detailed above, evidence of Priolo's participation in a similar uncharged sweepstakes scheme in the late 1990s and early 2000s is admissible and proffered for the same purposes. *See supra* Discussion Section I. As explained in detail below, I also find admissible additional evidence of Priolo's intent in the form of letters sent by mail recipients and state attorneys general acting on behalf of mail recipients and a statement from an alleged victim indicating that he believed he was going to win a prize if he paid money in response to the mailings. *See infra* Discussion Sections IV, VI.

### iii.   Evidence that the Sweepstakes Scheme was in Continuous Operation

Lastly, the government asserts that evidence of Novis's prior guilty plea and conviction shows that "the overarching Novis sweepstakes prize-notice mail fraud scheme was in continuous operation between the early 1990s and at least the end of 2016, and that the co-conspirators used the same techniques and methods to carry out the scheme during that entire period." (Gov't's Mot. at 10–11.) As noted, the government does not argue, much less proffer evidence to support, the notion that Priolo was involved in the specific conduct giving rise to Novis's prior conviction in *United States v. Dobin*. (*Cf.* Gov't's Reply at 2.) Nor does the government argue, or proffer evidence to show, that *Priolo* was involved in this scheme in the

---

[26] For the same reason, the government's argument that evidence of Novis's prior conviction is relevant to explain *why* Priolo misrepresented the ownership of Winners Circle to PacNet is unpersuasive, because it necessarily rests on the assumption that Priolo *knew* about Novis's prior conviction. (*See* Gov't's Mot. at 5; *see also* Gov't's Mot., Ex. 6.)

*early 1990s*. (*See id.*) Therefore, any evidence of the scheme's existence prior to Priolo's involvement is not relevant to any fact of consequence in the trial against Priolo.

Thus, the government has failed to establish that: (1) Novis's intent to defraud is squarely at issue, (2) that Priolo *knew* about the nature of Novis's prior conviction, or (3) that Priolo was involved in the uncharged scheme between 1993–1994, when Novis engaged in the conduct to which he pled guilty in 1995. Although evidence of Novis's prior conviction may have a tendency to make more probable Novis's knowledge of the conspiracy as it relates to the existence of an agreement between Novis and Priolo about the essential nature of the fraud, the probative value of this evidence is significantly diminished because the government intends to offer other admissible evidence on this issue, including evidence of Priolo's participation in the uncharged sweepstakes scheme in the late 1990s and early 2000s. *See supra* Discussion Section I. Thus, the probative value of the evidence of Novis's prior conviction on any fact of consequence in Priolo's trial is minimal.

### B. Undue Prejudice and Confusion

Concerning the risks of admitting this evidence of Novis's prior conviction, there is a significant risk of undue prejudice to Priolo, confusing the issues, and misleading the jury. Such risks are self-evident here, where Novis confessed to conspiracy to commit mail fraud and Priolo now faces trial on similar charges of mail fraud and conspiracy to commit mail or wire fraud. Moreover, the factual allegations to which Novis pled guilty are similar to the charged sweepstakes scheme. *See United States v. Massino*, 319 F. Supp. 2d 295, 300 (E.D.N.Y. 2004) ("[G]iven the inherently interrelated nature of the charges, there is an enormous risk that the jury, despite a limiting instruction, would find the fact that co-defendants pleaded guilty to be

probative of the defendant's culpability for the instant charges.").[27] The government itself argues that the scheme to which Novis pled guilty in *United States v. Dobin* is similar to both the uncharged sweepstakes scheme and the charged sweepstakes scheme. (Gov't's Mot. at 5.) In this context, evidence of Novis's prior conviction is highly prejudicial to Priolo and risks misleading the jury to believe that Priolo may have been involved in the conduct to which Novis confessed.

This case is distinguishable from the cases on which the government relies for two reasons. First, here, the probative value of the evidence of Novis's prior conviction on any fact of consequence in Priolo's trial is minimal. By contrast, in *Sterling*, the court found that Rule 403 balancing weighed in favor of admitting evidence of a defendant's prior conviction given that the evidence was "significantly probative" of that defendant's knowledge and intent to participate in the charged crime of cocaine trafficking where he used similar methods in both the crime for which he was previously convicted and the charged offense. 2023 WL 1967526, at *4. Similarly, in *Lingat*, the court found that defendant's *own* participation in uncharged activity similar to the charged conspiracy was admissible under Rule 403 because the evidence was "highly probative" and "demonstrates the defendants' longstanding knowledge of and intent to engage in the charged conduct." 2024 WL 1051633, at *5. In this action, the Rule 403 balancing is very different, however, because the evidence of Novis's prior conviction is not probative of Priolo's knowledge and intent to defraud as discussed at length. *See supra* Discussion Section II(A)(ii).

---

[27] *Massino* involved the question of prejudice resulting from the admission of the guilty pleas of thirty co-defendants at the trial of the sole defendant who had not pled guilty. 319 F. Supp. 2d at 300. The court found that under Rule 403, evidence of the co-defendants' guilty pleas was inadmissible because the guilty pleas were "not particularly probative" and the government had "a variety of alternative means of rehabilitating its cooperating witnesses' credibility—which was the intended purpose for which the government offered those guilty pleas. *Id.* at 300–01. Although the prejudice from the admission of thirty different guilty pleas in that case may be even more prejudicial than the admission of evidence of Novis's guilty plea in this case, any difference in degree does not warrant a different outcome here.

A-168

The government's cases are also distinguishable because they concern situations where a court admitted evidence of a *defendant's own* prior conviction as proof of knowledge and intent—not the prior conviction of a co-conspirator who is not on trial. *Cf. Esposito*, 2021 WL 5492935, at *2 (admitting evidence of the defendant's *own* prior conviction in racketeering and conspiracy to commit extortion trial); *Moran-Toala*, 726 F.3d at 346 (admitting evidence of the defendant's *own* prior plea allocution to prove her knowledge and intent in later narcotics conspiracy trial); *Sterling*, 2023 WL 1967526, at *4 (admitting evidence of defendant's *own* prior conviction as "significantly probative" of that defendant's knowledge and intent to participate in trafficking cocaine). Any risk of unfair prejudice, confusing the issues, and misleading the jury from the admission of a defendant's own prior conviction is multiplied when the prior conviction at issue is that of a co-defendant who is not on trial.

The government contends that a limiting instruction would cure any prejudice to Priolo from the admission of evidence about Novis's prior conviction, relying on *United States v. Archer*, No. 22-539, 2023 WL 3860530 (2d Cir. June 7, 2023), *cert. denied*, 144 S. Ct. 694 (2024) and *United States v. Spinelli*, 352 F.3d 48 (2d Cir. 2003). These cases are distinguishable, however, because they involved appeals from district court denials of defendants' motions to sever their trials from the trials of co-defendants. As the Second Circuit recognized, the denial of a motion to sever "can be reversed only if a defendant can show prejudice *so severe* that his conviction constituted a miscarriage of justice and that the denial of his motion constituted an abuse of discretion." *Spinelli*, 352 F.3d at 54 (emphasis added). The question before me is not whether Priolo would suffer such severe prejudice from the admission of evidence of Novis's prior conviction that his trial should be severed from Novis's trial on that basis alone. As discussed, these two defendants' trials have *already* been severed for entirely different reasons.

A-169

*See supra* note 1. Rather, the question before me is whether the evidence of Novis's prior conviction is substantially more prejudicial than probative of the issue of Priolo's knowledge of the conspiracy and intent to defraud.

Given the interrelated nature of the allegations in the information against Novis in *United States v. Dobin* and the Indictment against Priolo in this action, the risk of unfair prejudice and confusion that would result from admitting evidence of Novis's prior conviction in Priolo's trial is very high even if the jury were given a limiting instruction that this evidence does not suggest that Priolo was involved in those prior acts in any way.

For all of these reasons, the probative value of the information and judgment concerning Novis's 2001 conviction for conspiracy to commit mail fraud is substantially outweighed by the risk of unfair prejudice to Priolo, confusing the issues, and misleading the jury. *See* Fed. R. Evid. 403. Critical to this balancing test is the fact that the government has other evidence of Priolo and Novis's knowledge of the charged conspiracy and Priolo's intent to defraud, including the evidence of their participation in a similar uncharged sweepstakes scheme in the late 1990s and early 2000s. Accordingly, the information and judgment against Novis in *United States v. Dobin* are inadmissible in Priolo's trial under Rule 403. Therefore, I do not reach Priolo's argument that the evidence would violate his rights under the Confrontation Clause of the Sixth Amendment to the U.S. Constitution.

### III.    Payments to Sean Novis, Gary Denkberg, and Shawn Phillips's Business Entities

Priolo moves to preclude evidence relating to payments received and mailings sent by Sean Novis, Denkberg, and Phillips through their business entities—Haven, Horizon, Lakeside, and Quantum—with which Priolo is not alleged to have been involved. (Def.'s Mot. at 4; Def.'s Reply at 4.) Priolo objects to this evidence under Rule 403 and under the Grand Jury Clause of the Fifth Amendment to the U.S. Constitution. (Def.'s Mot. at 4–5; Def.'s Reply at 3–4.) For the

56

reasons set forth below, the government is precluded under Rule 403 from introducing evidence of payments received by the Sean Novis, Denkberg, and Phillips business entities that were not made in response to a mailing sent by or on behalf of Priolo or a Priolo-Novis business entity (i.e., Winners Circle or Feel Lucky). Additionally, admission of this subset of the government's proposed evidence would not result in a constructive amendment of the Indictment in violation of the Fifth Amendment.

### A.  The Parties' Positions

The government has indicated that it "does not intend to introduce any of the prize notices used by Sean Novis, Denkberg, or Phillips at trial." (Gov't's Opp'n at 10.) Proposed Government Trial Exhibits 390 and 391, however, are illustrative exhibits the government has prepared to show payments made by particular alleged victims to different business entities, including Winners Circle, Feel Lucky Group, Haven, Horizon, Lakeside, and Quantum. (*Id.* at 6.)[28] Priolo argues that he is not charged with operating business entities other than Winners Circle or Feel Lucky or in aiding and abetting the operation of these other entities and that evidence of payments to these other entities would "serve no purpose other than to imply guilt by association." (Def.'s Reply at 4.) Priolo contends that since "far more" payments were made to the other entities than those allegedly made to Feel Lucky and Winners Circle, irrelevant evidence would "overwhelm" the relevant evidence of payments to the entities with which Priolo allegedly participated. (Def.'s Mot. at 4.)

In its opposition to Priolo's Motion, the government argues that Sean Novis and Denkberg are specifically named as Priolo's co-conspirators in the Indictment and Phillips is a

---

[28] *See* Gov't's Proposed Tr. Ex. 390 (a spreadsheet displaying payments made to various business entities); Gov't's Proposed Tr. Ex. 391 (a series of slides displaying payments made to various business entities).

charged co-defendant. (Gov't's Opp'n at 5.) The government further argues that this evidence is relevant as proof of the charged conspiracy because: (1) each of the business entities anonymized their mailings; (2) a critical part of the charged sweepstakes scheme was the sharing of mailing lists between the business entities "because it resulted in the most vulnerable victims getting scammed again and again"; and (3) without this evidence, alleged victims' testimony as to the sheer number of mailings they received may appear "mistaken" or "exaggerated." (*Id.* at 5–6.) The government clarifies that it does not intend to argue that Priolo directly profited from payments alleged victims sent to these other business entities. (*Id.* at 7.)

On reply, Priolo argues that the government's opposition to Priolo's Motion "represents a constructive amendment of the charges against Priolo" by essentially arguing "that because the mailings did not identify the Priolo entities as opposed to other entities, and because the Priolo entities and the Novis-Denkberg entities shared mailing lists (which is routine in the direct-mail industry), all these entities were part of one big scheme." (Def.'s Reply at 3.) Priolo argues that argument and evidence of "a single unified scheme" between Priolo, Novis, Denkberg, Novis, and Phillips would violate Priolo's rights under the Fifth Amendment. (*Id.*)

> B.  Rule 403 Balancing

First, I do not reach the issue of whether to preclude the government from offering any mailings by Sean Novis, Denkburg, and Phillips and their business entities because the government has indicated that it does not intend to offer these mailings at Priolo's trial. (Gov't's Opp'n at 10.)

Second, under Rule 403, I find that evidence of payments to Sean Novis, Denkburg, and Phillips's business entities may only be admitted after the government demonstrates that these entities were conducting business on behalf of Priolo or the Priolo-Novis business entities—Winners Circle and Feel Lucky. The government may not, however, present evidence of

A-172

payments made by alleged victims in response to mailings by the Sean Novis, Denkberg, and Phillips's business entities that were *not* made on behalf of Priolo or the Priolo-Novis business entities.

### i.  Probative Value

Evidence of payments made in response to mailings sent by Sean Novis, Denkberg, and Phillips's business entities that were *not* sent on behalf of Priolo or a Priolo-Novis business entity has minimal probative value in a trial against only Priolo for mail fraud and conspiracy to commit mail or wire fraud for three reasons.[29]

First, to the extent the government seeks to introduce this evidence to prove that the mailings Priolo and Novis sent through Winners Circle and Feel Lucky were anonymized in order to explain the nature of the charged sweepstakes scheme and to provide circumstantial evidence of Priolo's fraudulent intent, the government fails to show how evidence of payments by victims to entities other than Winners Circle and Feel Lucky tends to prove that the mailings by these two specific entities were anonymized. Even if payments to these other entities provided some circumstantial evidence for this, the mailings themselves provide much stronger evidence of the nature of the scheme and Priolo's fraudulent intent. (*See* Gov't's Tr. Mem. at 9–10.)

Second, the government argues that evidence of payments to other entities—regardless of any involvement by Priolo or a Priolo-Novis business entity in the mailing that generated the payment—is relevant because it demonstrates how Priolo, Novis, Sean Novis, Denkberg, and Phillips all shared their business entities' mailing lists and used the mailing lists of other business entities to identify mail recipients who had previously sent payments in response to mailings and

---

[29] Priolo does not contest the relevance of evidence of payments made in response to mailings sent on behalf of the Priolo or the Priolo-Novis business entities. (Def.'s Mot. at 4.)

thus might be likely to respond similarly to another mailing in the future. (Gov't's Opp'n at 6.) The government argues that list-sharing resulted in the "most vulnerable victims getting scammed over and over again." (*Id.*) But the government has proffered direct evidence that Priolo, Novis, Sean Novis, and Phillips shared mailing lists—the testimony of Mary Lilienkamp ("Lilienkamp"). (*See id.*; *see also* ECF No. 120-1.) The government expects Lilienkamp to testify as she did in the trial in *United States v. Sean Novis*, No. 20-cr-335, that each of these business entities maintained their own mailing list and that they also shared each other's mailing lists. (Gov't's Opp'n at 6; *see also* ECF No. 120-1 at 7.)

Third, Priolo represents that he does not intend to argue to the jury that the alleged victims and their relatives are lying or mistaken about the volume of mailings alleged victims received, and argues that "any prejudice to the government can be cured by an instruction telling the jury not to speculate about why all this paperwork is not in evidence." (Def.'s Reply at 3.) This representation significantly diminishes any probative value that evidence of payments to the Sean Novis, Denkburg, and Phillips's business entities in response to mailings not attributable to Priolo might have towards explaining or providing context for a witness's testimony.

### ii.  Undue Prejudice

There is a significant risk of undue prejudice to Priolo, confusing the issues, and misleading the jury from admission of evidence of payments sent by mailing recipients to the Sean Novis, Denkberg, and Phillips business entities in response to mailings in which neither Priolo nor his business entities were involved.

First, as previously discussed, the government argues that this evidence shows that the business entities were all sharing mailing lists, which resulted in the "most vulnerable victims" "getting scammed over and over again" by *different* entities—not only the business entities operated by Priolo (Winners Circle and Feel Lucky) or acting on behalf of Priolo's business

60

entities. (Gov't's Opp'n at 6.) The vulnerability of a particular alleged victim is not an issue for the government to prove at trial, and argument on that basis would risk unfair prejudice to Priolo. *See Weaver*, 860 F.3d at 94; *see also United States v. Thomas*, 377 F.3d 232, 243 (2d Cir. 2004) ("[T]he victim's *gullibility* . . . is not relevant" to fraudulent intent).

Second, there is a significant risk that evidence that victims made payments to the Sean Novis, Denkburg, and Phillips's entities would sway the jury to hold Priolo accountable for mailings sent by Sean Novis, Denkberg, or Phillips on their own behalf, rather than on behalf of Priolo or a business entity in which he was involved.

Weighing the probative value of this evidence and the risks of its admission, evidence of payments to the Sean Novis, Denkberg, and Phillips's business entities is only admissible under Rule 403 to the extent that the payments were made in response to mailings issued by or on behalf of Priolo or one of the Priolo-Novis business entities.

### C. Constructive Amendment

Priolo also argues that the admission of this evidence would constructively amend the Indictment. (Def.'s Reply at 3.) I disagree.

Under the Grand Jury Clause of the Fifth Amendment to the U.S. Constitution, "an indictment must contain the elements of the offense charged and fairly inform the defendant of the charge against which he must defend." *United States v. Khalupsky*, 5 F.4th 279, 293 (2d Cir. 2021); U.S. CONST. amend. V, cl. 1. A defendant's rights under this clause are violated if the indictment against him has been "constructively amended," or "when the charge upon which the defendant is tried differs significantly from the charge upon which the grand jury voted." *Id.* In order to prove a constructive amendment, a defendant "must demonstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the

61

grand jury's indictment." *Id.* "The charge has been so altered either where (1) an additional element, sufficient for conviction, is added, or (2) an element essential to the crime charged is altered." *Id.* "[C]ourts have constantly permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial." *Id.*; *see also United States v. Dove*, 884 F.3d 138, 147 (2d Cir. 2018) ("An alteration of the indictment that does not affect the core elements of the crime is not a constructive amendment."). "The core of criminality of an offense involves the essence of a crime, in general terms; the particulars of how a defendant effected the crime falls outside that purview." *Khalupsky*, 5 F.4th at 293.

Priolo relies on three cases in support of his argument that the government intends to constructively amend the Indictment by offering proof of payments made to Sean Novis, Denkberg, and Phillips's business entities: *Stirone v. United States*, 361 U.S. 212 (1960), *United States v. Hassan*, 578 F.3d 108 (2d Cir. 2008), and *United States v. Miller*, 471 U.S. 130, 138 (1985). (Def.'s Reply at 3.)

In *Stirone*, the indictment at issue charged the defendant with engaging in extortion that obstructed shipments of sand intended to be used in the construction of a steel mill from coming into Pennsylvania in violation of the Hobbs Act, 18 U.S.C. § 1951. 361 U.S. at 218. At trial, the government attempted to prove that Stirone interfered with interstate commerce not only by obstructing sand shipments, but *also* by obstructing the steel mill's eventual export of steel to surrounding states. *Id.* at 218–219. The Supreme Court held that the admission of this proof constructively amended the indictment in violation of the Fifth Amendment because the conviction might have been based on the evidence of obstructed steel exports, which was an element of an offense not alleged in the indictment. *Id.* at 219. Similarly, in *Hassan*, the Second Circuit found that a conviction for importing and possessing a different controlled substance than

62

A-176

that which was charged in the indictment would have been an impermissible constructive amendment of the indictment. 578 F.3d at 133–34.

*Miller* does not support Priolo's argument. In *Miller*, the Supreme Court held that where proof at trial "corresponded to a fraudulent scheme much narrower than, though included within, the scheme that the grand jury had alleged," the indictment was *not* constructively amended. 471 U.S. at 135, 145 (1985). Here, however, Priolo argues that the government intends to offer proof that corresponds with a fraudulent scheme that is *broader* than that charged in the Indictment.

The Indictment in this case alleges the following:

3. The defendants SHAWN PHILLIPS, JEFFREY NOVIS, and PHILIP PRIOLO conspired with Gary Denkberg and NOVIS's son Sean Novis, who owned and controlled a direct-mail operation based on Long Island, New York (the "Direct-Mail Operation"). The Direct-Mail Operation aided and abetted PHILLIPS, NOVIS, and PRIOLO in the execution of both the Phillips and the Novis-Priolo Mass-Mailing Schemes. In furtherance of the schemes, employees of the Direct-Mail Operation handled many of the daily operations of the Phillips and the Novis-Priolo Mass-Mailing Schemes, including inventory management, working with third-party vendors to print and mail the prize notices, and maintaining and updating the schemes' mailing lists. . . .

5. As part of the schemes, the defendants JEFFREY NOVIS and PHILIP PRIOLO, together with Sean Novis, Gary Denkberg, and others, sent fraudulent prize notices by U.S. Mail to the Victims, many of whom were elderly and vulnerable. The prize notices fraudulently represented that the Victims were specifically chosen to receive a large cash prize—typically, over $1,000,000—and would receive the prize if they paid a fee, ranging from approximately $20 to $40. Victims who paid the requested fee did not receive the promised cash prize. The object and purpose of the schemes was to obtain money from the Victims by means of these false and fraudulent statements and material concealments of fact in the mailings. . . .

7. The fraudulent prize notices appeared to be personalized notices for the respective recipients. In fact, the prize notices were mass-produced, boilerplate documents that were bulk mailed to hundreds of thousands of recipients. The defendants JEFFREY NOVIS and PHILIP PRIOLO, together with others, obtained the names and addresses of recipients from mailing lists purchased from other parties. When the Victims sent payments in response to fraudulent prize notices, NOVIS and PRIOLO, together with others, sent additional fraudulent prize notices to the Victims.

(Indictment ¶¶ 3, 5, 7.) The Indictment does not allege that Priolo and Novis aided and abetted Sean Novis and Denkberg in their own mailing scheme. (*See id.*)

In light of these allegations, Priolo has not demonstrated that the evidence of payments made by mail recipients to the Sean Novis, Denkberg, and Phillips's business entities in response to mailings on behalf of Priolo or a Priolo-Novis business entity would constitute a constructive amendment of the Indictment by either adding an additional element on which Priolo could be convicted or by altering an element essential to the crime charged. *Khalupsky*, 5 F.4th at 293. The Indictment alleges that Phillips, Priolo, and Novis conspired with Sean Novis and Denkberg, and that Sean Novis and Denkberg's direct mail operation aided and abetted the Priolo-Novis business entities in a number of ways, including by maintaining the Priolo-Novis mailing lists and obtaining mailing lists from other parties. (Indictment ¶¶ 3, 7.) These allegations in the Indictment placed Priolo on notice of the essence of the crime, or the "core of criminality"—that Sean Novis, Denkberg, and Phillips contributed to Priolo and Novis's scheme to defraud mailing recipients into believing they won a large prize and needed to remit a fee in order to claim the prize. *Khalupsky*, 5 F.4th at 293. Because the government's proffered evidence goes to this "core of criminality," its admission would not constructively amend the Indictment. *Id.*

## IV.    Testimony from the Relatives of Alleged Victims

Priolo moves to preclude testimony from the relatives of alleged victims about out-of-court statements the alleged victims made when they received or responded to mailings as inadmissible hearsay and because there is insufficient evidence to connect these statements to mailings attributable to Priolo. (Def.'s Mot. at 2–3.) Priolo specifically objects to the admissibility of Teshale's deposition testimony, arguing that the government did not lay the foundation that Teshale's testimony applied to Priolo's mailings specifically, rather than mailings by other entities. (Def.'s Suppl. Ltr. at 1; Hr'g, Feb. 27, 2025.) The government seeks to

64

admit Teshale's deposition testimony in its entirety or to otherwise present a redacted version of the deposition to the extent the Court finds certain portions of the testimony inadmissible. (Gov't's Suppl. Mot. at 1.) The government also argues that, separate from Teshale's testimony about her husband's out-of-court statement, Teshale's testimony is relevant because she provided first-hand observations of the letters that her husband received and of her husband sending money in response to those letters. (*Id.* at 3.)

In his supplemental letter, Priolo further argues that Teshale's deposition testimony "will be typical of the relative witnesses" and thus demonstrates that the other alleged victims' relatives should be precluded from testifying at all unless the government can establish that they will testify about specific mailings sent by Priolo. (Def.'s Suppl. Ltr. at 2.)

As set forth below, Teshale's deposition testimony is admissible because it is relevant. Moreover, her testimony as to her husband's statement that he would win a prize if he sent money in response to a mailing is not hearsay because it is not offered for its truth and is alternatively admissible as a statement of his then-existing state of mind under Rule 803(3). I reserve ruling on whether the testimony of other relatives of alleged victims is admissible because I do not have sufficient information about their testimony to make this determination. For the reasons set forth below, I am inclined to permit these witnesses to testify about their own experiences and observations and about alleged victims' statements that bear on their state of mind and beliefs about the sweepstakes mailings they were receiving at the time.

A.  Relevance

Priolo argues that these out-of-court alleged victims' statements are not relevant to the issues on trial for two reasons. First, Priolo argues that evidence about the alleged victims' subjective beliefs about the mailings in this case is not an element of mail fraud or conspiracy to

65

commit mail or wire fraud. (Def.'s Reply at 2; *see also* Def.'s Mot. at 3.)[30] Second, Priolo contends that any such statements are also irrelevant because the government will not be able to show that the statements were specifically made in reaction to a mailing sent by or on behalf of Priolo. (Def.'s Reply at 2–3.) As to this second point, Priolo asserts that the government has included in its witness list several witnesses who previously testified in *United States v. Sean Novis*, No. 20-cr-335, about statements that their relatives, the alleged victims, made about certain mailings. (Def.'s Mot. at 2.) Priolo contends that, based on a review of the testimony in *United States v. Sean Novis*, none of these relatives will be able to connect the alleged victims' statements to any specific mailings, including any of the mailings attributable to Priolo. (Def.'s Reply at 2–3.) Priolo further argues that the testimony in *United States v. Sean Novis*, No. 20-cr-335, indicates that these alleged victims received many mailings from many different sources. (*Id.* at 2.)

The government argues that evidence that alleged victims believed they won large prizes based on mailings sent by Priolo and his co-conspirators is relevant to show that the representations in these mailings had the intended effect on the alleged victim and to otherwise serve as circumstantial evidence from which a jury could infer Priolo's intent to cause harm. (Gov't's Tr. Mem. at 31–33.)

Teshale's testimony bears on Priolo's intent to defraud and whether any misrepresentations in Priolo's mailings were material because it tends to show that the

---

[30] In his Motion, Priolo frames this argument as the reason why these alleged victims' statements do not fall under the state of mind exception in Rule 803(3). (Def.'s Mot. at 3.) On reply, however, Priolo frames this argument as one of only "relevance." (Def.'s Reply at 2.) I agree with Priolo's framing in his reply—that this is an argument regarding the relevance of this evidence, rather than whether this evidence meets the requirements for exclusion from the rule against hearsay under Rule 803(3). I separately address whether this evidence meets those requirements.

A-180

representations in the Winners Circle mailing the government showed Teshale naturally tends to lead or is capable of leading a reasonable person to change his conduct. *See Weaver*, 860 F.3d at 94. During the charged period in 2015 and 2016, Teshale testified that she was married to and living with her husband Kore, [31] and that Kore frequently received letters "which would say, you are going to win this amount of money, you are the next person to win, and his name." (Teshale Dep. at 13:14–19.) She testified that these kinds of letters came in the mail "maybe two times or three times a week" and that they were "all over the house." (*Id.* at 18:1–7.) Teshale agreed that the Winners Circle mailing the government showed her was "an example of the letters" that her husband received. (*Id.* at 14:12–18.) The government has proffered evidence that Kore paid money in June 2016 in response to the Winners Circle mailing that the government showed to Teshale, and that Kore made payments in response to four other Winners Circle mailings as well.[32] Teshale testified that when she asked her husband, Kore, why he was "paying them," Kore told her, among other things, "I'm going to win." (Teshale Dep. at 15:20–24.) A factfinder could draw an inference from this evidence that Kore was referring to the Winners Circle mailing.

Thus, Teshale's testimony, including her recollection regarding Kore's statements, is relevant evidence. Priolo can argue to the jury that Teshale's testimony and Kore's specific statements are not connected to any mailings attributable to Priolo.

---

[31] *See* Teshale Dep. at 8:20–23 (explaining that she and Kore have been married since the Ethiopian calendar year 1963); *see also id.* at 11–12 (describing how in that time period she and Kore split bills and that Kore "was taking care of the mortgage for me, for us").

[32] *See* Gov't's Suppl. Mot. at 2 n.1 & 3.

B. Hearsay

Priolo also asserts that testimony from relatives about statements made by alleged victims in response to receiving mailings is inadmissible hearsay under Rule 801. According to Priolo, the statements by alleged victims are out-of-court statements that are offered for their truth because the government offers them to show "that the mailings at issue were in fact prize notices that advised the alleged victims that they had won a prize." (Def.'s Mot. at 3.) Priolo further argues that no exception to the hearsay rule applies to the statements under Rules 803 or 804. (*Id.*; *see also* Def.'s Reply at 2.)

Contrary to Priolo's framing, the out-of-court statements by alleged victims are not offered for their truth. The statements at issue are ones in which an alleged victim stated that "they had won a prize" or "they had paid a fee to get a prize." (*Id.* at 2.) If these statements were offered for the truth of what they assert, they would be offered to show that alleged victims had in fact "won a prize" or would win a prize if they paid the fee. (*Id.*) As the parties have proffered the evidence, the statements the government intends to offer do not assert that "the mailings . . . were in fact 'prize notices'" or that the mailings "advised the alleged victims that they had won a prize." (Gov't's Tr. Mem. at 18, 31–34; Def.'s Mot. at 2–3; Gov't's Opp'n at 3–4; Def.'s Reply at 2–3.)

Because the government does not offer the alleged victims' statements to prove that they *actually did* win large prizes, it does not offer these out-of-court statements for their truth. Rather, the government offers these statements as circumstantial proof that the mailings engaged in material misrepresentations and that Priolo acted with fraudulent intent in sending them. (Gov't's Tr. Mem. at 32 ("These statements are . . . presented . . . to establish that the promises and representations contained in the Defendants' notices were effective in creating the impression in the minds of those victims that they had won."); Gov't's Opp'n at 4 (asserting that

68

A-182

this evidence "is circumstantial evidence of defendants' fraudulent intent and direct evidence of the charged scheme to defraud").) Consequently, alleged victims' statements that they won large prizes based on mailings they received are not hearsay. Fed. R. Evid. 801(c) (defining hearsay as an out-of-court statement that a "party offers in evidence to prove the truth of the matter asserted in the statement.").

Priolo relies on *Smith v. Arizona*, 602 U.S. 779, 795–96 (2024), for the proposition that "the truth of out-of-court declarations is put before the court even if couched as statements that other people relied on and/or based their opinion as to what was going on." (Def.'s Mot. at 3 (citing *Smith*, 602 U.S. 779).) In *Smith*, the Supreme Court considered a confrontation challenge to an expert witness' testimony about a lab analyst's out-of-court statements that she had performed certain tests according to certain protocols and gotten certain results. 602 U.S. at 793, 798. The Supreme Court rejected the government's argument that the lab analyst's statements were not offered for their truth because they were offered "to show the basis of the in-court expert's independent opinion." *Id.* at 793–94, 798. Instead, the Supreme Court found that because the in-court expert's opinion was *predicated* on the truth of the lab analyst's factual statements, her statements were offered for their truth. *Id.* at 798. The alleged victims' statements proffered by the government here are very different from the evidence introduced in *Smith* because the government does not seek to prove any fact that is predicated on the truth of the alleged victims' out-of-court statements. Unlike *Smith*, the government's evidence retains its probative value even if the alleged victims' statements that they had won a prize were false. *Cf. Smith*, 602 U.S. at 795, 798 ("[T]he truth of the [challenged] testimony is what makes it useful to the prosecutor; that is what supplies the predicate for—and thus gives value to—the state expert's opinion.").

69

A-183

These out-of-court statements from the alleged victims are also admissible under the state of mind hearsay exception, Rule 803(3), as they are statements regarding the alleged victims' state of mind when they received the mailings. Fed. R. Evid. 803(3); *see also Johnson*, 117 F.4th at 47 (recognizing that "a state of mind can be proved circumstantially by statements which are not intended to assert the truth of the fact being proved" whether under the theory that such a statement is admissible under Rule 803(3) or because the statement is not hearsay under Rule 801).[33]

Testimony from relatives about these out-of-court statements regarding the alleged victims' state of mind is therefore not precluded under Rule 802, which deems hearsay inadmissible absent an exception established by federal statute, any other rule of the Federal Rules of Evidence, or the rules of the Supreme Court. Fed. R. Evid. 802.

The government shall provide the Court with proffers of the specific testimony it intends to elicit from each of the relatives of alleged victims who will be called to testify at trial. The Court defers a ruling, at this time, on the admissibility of the particulars of the testimony from these witnesses. The government shall identify the testimony it intends to elicit regarding: (1) statements from the alleged victims concerning their beliefs about the mailings they received; (2) any financial impact on the alleged victims beyond the direct payments that are allegedly attributable to Priolo or the Priolo-Novis entities; and (3) a breakdown of the money paid by each victim that is attributable to mailings by or on behalf of Priolo or Priolo-Novis entities and the losses attributable to other mailings.

---

[33] The government does not argue that any of the hearsay exceptions under Rule 804 apply, and I do not reach that issue. (*See* Gov't's Tr. Mem. at 2–3; Gov't's Opp'n at 3–4.)

70

A-184

### V.        Evidence of Uncharged "Scammers" and "Scams"

Priolo moves to preclude any testimony that before receiving the mailings at issue in this case, the alleged victims had previously fallen victim to other "scams" unrelated to the charged sweepstakes scheme. (Def.'s Mot. at 3–4.) Priolo argues that this testimony should be precluded under Rule 402 as irrelevant and, in the alternative, under Rule 403, because "any marginal relevance would be entirely outweighed by the potential for unfair prejudice." (*Id.*) The government responds that it "does not intend to introduce evidence about scams that are unrelated to defendants' and their co-conspirators' prize-notice schemes" such as "lottery scams, technology impersonation scams, [or] law-enforcement impersonation scams," and it "intends to instruct its witnesses from refraining from discussing unrelated scams during their testimony." (Gov't's Opp'n at 4–5.)[34]

As explained above, evidence relating to Priolo's involvement in the uncharged sweepstakes scheme during the late 1990s and early 2000s is admissible. *See supra* Discussion Section I. Any purported "scam" that alleged victims in this case may have previously experienced that was not related to sweepstakes mailings sent by Priolo and his co-conspirators as part of the charged sweepstakes scheme or to mailings in the uncharged sweepstakes scheme in the late 1990s and early 2000s is not relevant to the issues in this case. As Priolo points out, the gullibility of a victim is not relevant to the elements of wire or mail fraud. *See Thomas*, 377 F.3d at 243 ("[T]he victim's *gullibility* or his own criminal background is not relevant" to fraudulent intent). Consequently, any testimony regarding such a "scam" is precluded under Rule

---

[34] The government maintains, however, that evidence relating to mailings sent by Sean Novis, Denkberg, and Phillips's business entities is admissible and relevant at trial. (Gov't's Opp'n at 5.) I have separately ruled on the Priolo's Motion regarding this evidence, *see supra* Discussion Section III.

402. Further, any such testimony is also inadmissible under Rule 403 because this evidence lacks probative value and would be unfairly prejudicial to Priolo and risk confusing the issues and misleading the jury about the facts of consequence to this action.

**VI.    Complaint Letters and Attorney General Letters**

Priolo seeks to preclude letters from mailing recipients and state attorneys general regarding complaints and inquiries about Priolo's mailings pursuant to Rule 403. (Def.'s Mot. at 5.) At oral argument on February 27, 2025, Priolo also argued that this evidence is also inadmissible under Rule 801 and the Confrontation Clause of the Sixth Amendment. (Hr'g, Feb. 27, 2025.) For the reasons set forth below, these letters are not offered for the truth of the matter asserted, but as evidence that Priolo was on notice that the charged scheme was unlawfully deceptive and that the mailings deceived recipients and that Priolo lacked good faith and intended to defraud. Thus, these complaint letters and state attorney general notices are not precluded under the Confrontation Clause or Rule 801.

A. <u>Confrontation Clause</u>

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. In *Crawford v. Washington*, the Supreme Court held that under this provision, a prior testimonial statement made by a witness who does not testify at trial may not be admitted against a defendant unless that witness is unavailable to testify, and the defendant had a prior opportunity for cross-examination. 541 U.S. 36, 53–54 (2004); *see also Johnson*, 117 F.4th at 47–48. "Two limits define the scope of this prohibition" under *Crawford* and its progeny. *Johnson*, 117 F.4th at 48 (citing *Smith*, 602 U.S. at 784). First, the Confrontation Clause "confines itself to 'testimonial statements.'" *Id.* (quoting *Davis v. Washington*, 547 U.S. 813, 823 (2006)). Second, the Clause "bars only the introduction of hearsay—meaning, out-of-

A-186

court statements offered 'to prove the truth of the matter asserted.'" *Id.* (citing *Smith*, 602 U.S. at 785).

Here, the government offers the complaint letters and notices for the purposes of showing that Priolo "had notice that [his] scheme was unlawfully deceptive, that [he] knew their prize notices deceived victims." (Gov't's Tr. Mem. at 26.) Thus, the government does not offer the complaints and notices for the truth of the matters asserted within the letters, but rather for their effect on Priolo and as circumstantial evidence of the writer's state of mind, which is offered to show that mailings attributable to Priolo made material misrepresentations.

For example, Proposed Government Trial Exhibit 162, a letter signed by Brenda McDonald ("McDonald"), states in part: "I am writing to you about a check (for $1,200,000.00) you were supposed to sent back in early Jan. 2016 (I sent a $20.00 M.O.) You stated I was the winner and I was very happy to hear that I had won." (Gov't's Proposed Tr. Ex. 162 at 31.) This letter is offered to show McDonald's state of mind at the time she received Priolo's letter and that Priolo was put on notice that McDonald had been deceived by his mailings into thinking she was supposed to receive a check. Thus, the contents of the letter could be entirely false—the letter could have stated that McDonald was *not* the winner—yet the letter would still be probative as to McDonald's state of mind and its effect on the reader, Priolo. Accordingly, evidence of mail recipients' complaints and notices by state attorney generals' offices relaying complaints does not offend the Confrontation Clause. *Johnson*, 117 F.4th at 48.

B. Hearsay

For the same reason that this evidence does not violate the Confrontation Clause, evidence of these complaints and state attorney general notices are not hearsay under Rule 801 because they are not offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).

73

C.   Probative Value

Priolo argues that the probative value of these letters and notices is "marginal" because the alleged victim's complaints are only the accusations of the alleged victims, and the "the fact that someone feels that they have been ripped off or cheated is not proof that they have been." (Def.'s Mot. at 5.)

The complaints and state attorney general notices are probative of whether the mailings conveyed material misrepresentations—meaning that they had a "natural tendency to influence" the recipient—and whether Priolo acted with an intent to defraud. *Weaver*, 860 F.3d at 94. Like the alleged victims' statements, these complaints tend to make it more probable that the representations in the mailings had a natural tendency to influence recipients to believe they had won a prize. *See United States v. Baren*, 305 F.2d 527, 531, 533–34 (2d Cir. 1962) (recognizing that evidence of "disgruntled purchasers" regarding their experiences is circumstantial proof that the defendant's material representations were false); *see also supra* Discussion Section IV(A) (addressing the admissibility of alleged victims' statements regarding the mailings). Further, the fact that Priolo knew about these complaints and did not change the language of subsequent mailings made by or on behalf of his business entities to make it clear that the recipient did not win a prize is probative of Priolo's knowledge and fraudulent intent.

For example, in *United States v. Press*, the Second Circuit affirmed that evidence of complaints called to a corporation's attention was relevant on the issue of appellants' intent to defraud in a mail fraud and conspiracy to commit mail fraud trial because it concerned the corporation's continued conduct despite knowledge that the literature at issue misled recipients. 336 F.2d 1003, 1011 (2d Cir. 1964). More recently, the Second Circuit held that borrower complaints about a defendant's business were admissible in a RICO trial because the complaints "served to put [the defendant] on notice of their potential illegality" and the fact that the

defendant "continued to operate his business despite this notice makes the complaints probative of his intent to violate the law." *United States v. Moseley*, 980 F.3d 9, 27 (2d Cir. 2020).

Letters and attorney general notices that do not specifically reference the content of the mailings but nevertheless convey a mailing recipient's request to be removed from a mailing list are less probative but still bear on Priolo's intent to defraud and the materiality of any alleged misrepresentations in Priolo's mailings. These letters and notices tend to show that that there was a high volume of these mailings, which was a product of the charged scheme. The requests for the mailings to stop also have some minimal probative value as to the mailing recipients' state of mind when they received the mailing, which bears on the question of whether the mailings set forth any material misrepresentations.

Priolo argues that any probative value of the complaint letters and state attorney general notices is lessened because the government intends to offer direct evidence of the mailings and the jury may determine whether the mailings made any material misrepresentations. (Def.'s Mot. at 5.) This argument is unpersuasive. It may be that the mailings themselves are comparatively more probative of whether the mailings conveyed material misrepresentations. Nevertheless, the complaints and state attorney general notices still shed light on Priolo's knowledge and fraudulent intent even under the objective test applied to determine whether a misrepresentation is material. *See Baren*, 305 F.2d at 531, 533–34.

The government and Priolo further disagree about the relevance of the *volume* of complaint letters and state attorney general notices that were sent to Priolo and Novis. The government describes a "high volume" of complaints, while Priolo argues that the number of complaints and notices was relatively small, stating that: "out of more than a million alleged mailings and thousands of responses, the number of letters and notices is in the dozens – a

75

volume of complaints that even legitimate businesses might well expect to get." (Def.'s Mot. at 5; Gov't's Tr. Mem. at 16; Gov't's Opp'n at 7.) Priolo also argues these complaints and notices did not serve as "notice" to Priolo because "a business owner is not required to change the operation of his business every time he gets a complaint no matter how infrequent or frivolous." (*Id.*)

While Priolo can argue to the jury that the number of complaints and notices from state attorney generals was relatively small or that the concerns raised were "frivolous," the government has proffered enough complaints indicating that mailing recipients believed they had won a large prize or had received a mailing containing a misrepresentation to render this evidence probative of Priolo's knowledge and intent to defraud. (*See, e.g.*, Gov't's Proposed Tr. Exs. 52, 60–62, 151, 160–62, 171, 173–75, 175A, 177–78, 353, 363–64, and 368A–D.)

### D.   Risk of Unfair Prejudice, Delay, and Confusion

Priolo argues that even if the complaints and state attorney general letters regarding customer complaints have some probative value, that relevance "would be grossly outweighed by the risk that the jury would treat the complaints as substantive evidence of guilt." (Def.'s Mot. at 4.) The government argues that any undue prejudice could be mitigated by a limiting instruction which explains the limited purpose for which the jury may consider this evidence— that this evidence is offered only on the issue of Priolo's knowledge of the illegality of the scheme and his intent to defraud. (Gov't's Opp'n at 8; Hr'g, Jan 27, 2025.) I agree that such a limiting instruction would adequately mitigate the risk that the jury would consider these complaint letters and state attorney general notices for an improper purpose. Thus, the risk of undue prejudice does not substantially outweigh the probative value of complaints and state attorney general notices.

76

A-190

VII.   **Temporary Restraining Order in *United States v. Sean Novis*, No. 16-cv-5263**

Priolo moves under Rule 403 to exclude Proposed Government Trial Exhibits 168 and 169, which consist of the September 16, 2022 TRO issued in *United States v. Sean Novis*, No. 16-cv-5263, and a September 30, 2016 Certificate of Notice by Cathy Johnson indicating that Priolo and Novis were provided notice of that TRO. (Def.'s Mot. at 5–6.) Priolo's motion to exclude these exhibits is granted because the risk of prejudice and confusion substantially outweighs the probative value of this evidence. Fed. R. Evid. 403.

A.  Probative Value

Priolo argues that this evidence is not relevant to the charges against him because the TRO was issued close to the *end* of the charged scheme, and after this TRO was issued, he did not send out any additional mailings. (Hr'g, Jan. 27, 2025; *see also* Def.'s Suppl. Ltr. at 3 ("It is undisputed that Priolo *is not* alleged to have sent any mailings after the issuance of the [TRO]. . . .").) The TRO was issued on September 22, 2016, and the government's evidence indicates that Priolo was notified by email about this TRO on September 26, 2016 and again on September 28, 2025. (*See* Gov't's First Suppl. Ltr.; ECF No. 125-1.)[35] The government does not allege that Priolo and Novis continued to send out mailings after that date but does allege that they "continued to collect and deposit victim payments through at least the end of 2016." (Gov't's Tr. Mem. at 17.) As an example, the government proffers that Proposed Government Trial Exhibit 351-AA "contains images of victim's checks serving as the basis for Counts 3–6." (*Id.* at 17 n.51.) Count 3–6 of the Indictment alleges that Priolo and Novis engaged in mail fraud in violation of 18 U.S.C. § 1341 and that alleged victims mailed checks to Priolo and Novis between November 21, 2016 and December 21, 2016. (Indictment ¶ 33.)

---

[35] *See also* Gov't's Proposed Tr. Ex. 168 at 4; Gov't's Proposed Tr. Ex. 169.

The TRO and Johnson's Certificate of Notice are probative of Priolo's fraudulent intent and knowledge of the conspiracy *after* September 26, 2016 regarding the collecting and cashing of alleged victims' checks received in response to his earlier mailings. The documents together show that Priolo was notified that a lawsuit was pending against individuals with whom he was working to send sweepstakes mailings—Sean Novis, Denkberg, and Johnson. (*See* Gov't's Proposed Tr. Ex. 168.) They also show that Priolo was on notice that a federal court had determined there was probable cause to believe that the defendants in that action were committing mail fraud by sending mailings that, among other things, "represent, directly or indirectly, expressly or impliedly that the recipient of the solicitation has won, will win, or will receive cash, prizes or awards." (Gov't's Proposed Tr. Ex. 168 at 1–2; Gov't's Proposed Tr. Ex. 169.) Even if the mailings at issue in that civil action were "differently-worded" and "differently format[ed]," as Priolo argues,[36] the mailings were alleged to have done the same thing Priolo's mailings are alleged to have done—falsely represented in some manner that the recipient will receive a prize or award. Thus, notwithstanding the wording and formatting differences between Priolo's mailings and those of Sean Novis, Denkberg, and Johnson, the evidence that Priolo was given notice of this TRO remains probative of his intent to defraud and his knowledge of the conspiracy.

The TRO also placed Priolo on notice that cashing checks and other proceeds received in response to previous mailings of the kind at issue in the civil action was unlawful. The TRO temporarily restrained the defendants from: "receiving, handling, opening, or forwarding any mail that responded, by sending payment or otherwise, to" the advertisements, solicitations, or promotional materials that the court had temporarily enjoined the defendants from sending.

---

[36] Def.'s Mot. at 8.

A-192

(Gov't's Proposed Tr. Ex. 168 at 3, ¶ iii.) It further temporarily restrained those defendants from "handling, forwarding, or depositing any checks received from U.S. residents, including currency, bank checks, certified checks, money orders, or credit card charge authorizations, or handling any mail received from U.S. residents" which had been sent in response to those mailings. (*Id.* at 3, ¶ iv.)

Priolo also argues that "the fact that Priolo was not named as a defendant in the enforcement action might, if anything, indicate to him that the Postal Inspectors did not consider him a participant in fraud." (Def.'s Mot. at 8.) As the government points out, Priolo may make these arguments to the jury about how to *interpret* this evidence, but the fact that Priolo had notice of the TRO is what makes this evidence probative, even if he was not himself a defendant. (Gov't's Opp'n at 9.)

In his supplemental letter, Priolo argues that his notice of the TRO is completely irrelevant to his intent because he did not send any additional mailings after the TRO was issued, and mail fraud is complete upon sending the allegedly deceptive mailing. (Def.'s Suppl. Ltr. at 4.) In support of this argument, Priolo relies on *Crab House of Douglaston, Inc. v. Newsday, Inc.*, 418 F. Supp. 2d 193, 210 (E.D.N.Y. 2006), and a case on which it relies, *United States v. Eskow*, 422 F.2d 1060, 1064 (2d Cir. 1970). (*Id.*)

These cases do not support Priolo's argument on relevance. The court in *Newsday* found that a civil complaint had failed to adequately plead the "racketeering" element of claims brought under the Racketeer Influences and Corrupt Organizations Act of 1970, 18 U.S.C. §§ 1962(c), (d), because it did not allege with particularity facts showing that the defendants had committed mail and wire fraud, as required under Rule 9 of the Federal Rules of Civil Procedure. 418 F. Supp. 2d at 198–99, 210. The court did not hold, as Priolo suggests, that cashing a check based

A-193

on a prior fraudulent mailing is irrelevant to a criminal charge of mail fraud or conspiracy to commit mail or wire fraud. *See id.* Rather, *Newsday* relied on *Eskow* for the proposition that "[t]he offense [of mail or wire fraud] is complete upon the mailing or wire transmission, and each such mailing or transmission is a separate offenses." *Id.* at 210 (citing *Eskow*, 422 F.2d at 1064). But this rule does not establish that evidence probative of knowledge of a conspiracy and intent to defraud that arises *after* a fraudulent mailing has been sent is irrelevant to charges of mail fraud and conspiracy to commit mail or wire fraud. Instead, in *Eskow*, the Second Circuit had rejected an argument that multiple counts of mail fraud were duplicative, finding that "each mailing pursuant to an alleged scheme to defraud constitutes a separate offenses." *Eskow*, 422 F.2d at 1064. Indeed, *Eskow* explicitly noted that the fact that victims were induced to purchase something based on the defendants' false representations was "relevant" to proving mail fraud under 18 U.S.C. § 1341. *Id.*

### B.  Risk of Unfair Prejudice, Delay, and Confusion to the Jury

On the other hand, admitting the September 22, 2016 TRO in *United States v. Sean Novis*, No. 16-cv-5263, poses a significant risk of unfair prejudice to Priolo, as well as a risk of delay, confusing the issues, and misleading the jury.

Priolo argues that "the potential for unfair prejudice from this exhibit is extensive" for two main reasons. (Def.'s Mot. at 6.) First, he asserts that a jury might interpret the TRO "as a conclusive judicial finding of fraud" because the TRO was "issued by a judge" and "a lay jury . . . does not understand the difference between the standard of proof for a TRO and the standard of proof at a criminal trial." (*Id.*) Priolo contends that notwithstanding an explanation from the Court, the jury would be confused between the difference between a preliminary injunction and a final judgment and would not understand that the federal court issued the TRO without notice to any of the defendants. (Def.'s Reply at 5.)

80

A-194

Second, Priolo argues that the evidence of this TRO would be highly prejudicial because the TRO ordered the defendants in that action to provide notice of the TRO to all "list brokers, printer/distributors, mailing houses, and/or caging services with which they do business regarding the [prohibited mailings] . . . informing them that they are subject to the [TRO] *as an entity in active concert or participation with Defendants*." (Gov't's Proposed Tr. Ex. 168 at 4 (emphasis supplied); *see also* ECF No. 125-1 at 2 (email from Johnson to Priolo and Novis highlighting this same language).)

The government argues that the risks identified by Priolo can be adequately mitigated by a limiting jury instruction explaining the differences between these standards of proof relating to the issuance of a TRO and a final judgment in a civil case, that a TRO may be issued ex parte, and that these matters are "no more complex or prejudicial than the myriad other issues about which the Court must instruct the jury." (Gov't's Opp'n at 9.)

Evidence of the TRO is highly prejudicial to Priolo, especially when combined with evidence that Priolo had been given notice of the TRO in accordance with its terms, which required notice to persons "in active concert or participation with Defendants . . . ." (Gov't's Proposed Tr. Ex. 168 at 4 (emphasis supplied); Gov't's Proposed Tr. Ex. 169; *see also* ECF No. 125-1 at 1 (email from Johnson to Priolo and Novis highlighting this "active concert or participation" language).) As previously discussed, the government does not allege that Priolo was involved in Sean Novis or Denkberg's business operations. *See supra* Discussion Section III. The TRO evidence, however, would suggest to the jury that a court had determined that Priolo was "an entity in active concert or participation" with Sean Novis and Denkberg based on their separate mailings conducted through their own entities.

A-195

Balancing all of these factors, the risk of unfair prejudice to Priolo and confusing the issues substantially outweighs the probative value of this evidence. Fed. R. Evid. 403. The probative value that notice of a TRO like this *could* have is diminished considerably in this case given that Priolo is not alleged to have sent any mailings after the TRO was issued. Accordingly, Proposed Government Trial Exhibits 168 and 169—the TRO issued in *United States v. Sean Novis*, No. 16-cv-5263, and the Certificate of Notice documenting service of the TRO on Priolo—and any proposed exhibit based on the email Johnson sent to Priolo and Novis (ECF No. 125-1) are inadmissible under Rule 403.

## VIII.    Reference to "Prize Notices"

Priolo seeks an order precluding the government from referring to the mailings at issue in this action as "prize notices" during the direct and cross-examination of witnesses and from eliciting witnesses to use this term. (Def.'s Mot. at 6.) Instead, Priolo requests that the Court direct the government to (1) refer to the mailings at issue as "mailings" or a "similarly neutral term" at all points during trial except for opening and summation, and (2) direct its witnesses to similarly use the term "mailings" or another "similar neutral term." (*Id.*) As part of his defense, Priolo intends to argue that the mailings did *not* notify the recipients that they had won any prize and thus asserts that "the central issue in this case" is whether or not these mailings are in fact "prize notices." (*Id.*) Thus, Priolo argues that any reference to these mailings as "prize notices" during examination of witnesses "would amount to assuming facts not in evidence." (*Id.*) In response, the government argues that the term "prize notice" is appropriate given that the mailings at issue in this case contain terms like "Prize Notification" and "Cash Prize and Award Communique." (Gov't's Opp'n at 10.) The government provides a list of its proposed exhibits that it argues use similar language. (*See id.*)

82

A-196

Priolo's request is granted in part and denied in part. The government is not precluded from referring to an exhibit as a "prize notice" where the exhibit referenced during the examination of a witness actually uses a term synonymous with "prize notification." For example, at the top of mailings the government pre-marked as Proposed Government Trial Exhibits 1, 8, and 9, the words "CASH & PRIZE ADVISEMENT" and "A GUARANTEED PRIZE NOTIFICATION" appear. (Gov't's Proposed Tr. Exs. 1, 8–9; *see also* Gov't's Proposed Tr. Ex. 21.) The government may properly use the term "prize notice" to refer to these specific exhibits during witness examination. The government may also refer to an exhibit as a "prize notice" where the exhibit uses terms the terms "Cash Prize and Award Communique" and "Cash and Prize Advisement," which are synonymous with "prize notification." (Gov't's Proposed Tr. Exs. 15, 21.) Additionally, Proposed Government Trial Exhibit 14 features a header that states "AGGREGATE $1,675,000.000 MAJOR MONEY AWARDS" and the word "NOTICE" also appears at the top of the document, near that header. (Gov't's Proposed Tr. Ex. 14.) Proposed Government Trial Exhibit 14 may also be referred to as a "prize notice" because it uses terms synonymous with "prize" and "notice," even though the terms do not appear directly adjacent to one another.

Although they present a closer question, Proposed Government Trial Exhibits 10 and 12 also may be referred to as "prize notices." Proposed Government Trial Exhibit 12 uses the terms "NOTIFICATION" and "PRIZE PAYMENT RESOURCES" and features the dollar figure $1,180,350.00 prominently at the top in large font, and Proposed Government Trial Exhibit 10 uses the terms "Prize Verification Service," "Official PVS Notification" and features the dollar figure $1,400,000.00 at the top in large font. (Gov't's Proposed Tr. Exs. 10, 12.) They may be

83

A-197

referred to as "Prize Notices" because the dollar figures and the terms "prize" and synonyms of the word "notice" appear close enough together in the context of the overall document.

The government may not, however, refer to an exhibit as a "Prize Notice" during witness examinations where such language or synonymous terms do not appear on the exhibit because to do so would assume facts not in evidence. There are several such exhibits within the list of exhibits the government argues "contain similarly fraudulent descriptors." (Gov't's Opp'n at 10.) For example, Proposed Government Trial Exhibit 3 does *not* feature the term "prize notice" or a synonymous term. Instead, it features the terms "CORPORATE LEGAL NOTIFICATION" and "DETERMINATION OF FULL PAYMENTS PENDING." (Gov't's Proposed Tr. Ex. 3.) Proposed Government Trial Exhibit 7 only states "NOTICE OF CASH FUNDS HELD IN TRUST" and does not contain a synonym for "prize." (Gov't's Proposed Tr. Ex. 7.) When referring to this exhibit and others that do not explicitly use a synonym for "prize notice" during witness examination, the government is precluded from using the term "prize notice."

Several proposed exhibits present a closer question, but nevertheless may not be referenced as "Prize Notices." For example, Proposed Government Trial Exhibit 23 is titled an "OFFICIAL DIRECTIVE" from the "Department of Notification," and includes a smaller subject line that states "$2.1 MILLION DOLLAR AWARD DOCUMENT TRANSFER NOTIFICATION." (Gov't's Proposed Tr. Ex. 23 at 1.) Although this exhibit uses both the terms "award" and "notification," reading these terms within the context of the entire document makes it unclear whether mailing sought to provide "notification" of the winning of a prize. The government is precluded from referring to this exhibit as a "prize notice."

A-198

### CONCLUSION

For the reasons set forth above, the government's Motion in Limine (ECF Nos. 78, 99) is GRANTED in part and DENIED in part as set forth above, *see supra* at 4–5, the government's Supplemental Motion in Limine to admit Teshale's deposition testimony (ECF No. 127) is GRANTED, and Priolo's Motion in Limine (ECF No. 106) is GRANTED in part and DENIED in part as set forth above, *see supra* at 5–6.

Dated: Central Islip, New York
       March 4, 2025

　　　　　　　　　　　　　　　　　　　　　*/s/ Nusrat J. Choudhury*
　　　　　　　　　　　　　　　　　　　　　NUSRAT J. CHOUDHURY
　　　　　　　　　　　　　　　　　　　　　United States District Judge

**EDELSTEIN & GROSSMAN**

Attorneys at Law
501 Fifth Avenue, Suite 514
New York, NY 10017
Tel: (212) 871-0571
Fax: (212) 922-2906
jonathan.edelstein.2@gmail.com

_____

March 3, 2025

**VIA ELECTRONIC CASE FILING**

Hon. Nusrat J. Choudhury, U.S.D.J.
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

**Re: United States v. Priolo, Docket No. 21-CR-566 (NJC)**

Your Honor:

Please accept this letter as a motion in limine to preclude the testimony of Thomas Ressler ("Ressler") at the upcoming trial of this matter. The undersigned attorneys apologize for burdening this Court with another in limine motion; however, the necessity for this motion became apparent at the end of the February 27, 2025 conference when this Court confirmed that Ressler's testimony would be admitted as direct evidence of the scheme charged in the indictment.

Ressler will not testify to any of the mailings at issue in this case. It is undisputed that he did not do any copywriting on any of the mailings that were allegedly sent by or on behalf of Priolo. In a recent memorandum of interview which has been disclosed as part of the 3500 material (3500-TR-14), Ressler *could not identify* any of the Priolo mailings when they were shown to him. Indeed, when recently interviewed by the government and shown eight of the Priolo promotions, Ressler advised that none of the eight were his creative - none of the eight appeared to be from a creator he knew about - and he suggested they were "Clip Art - which he explained is that a mailer may have put these together using pieces of others creative - and "clipping and pasting" to make a new solicitation." (Id. at 2). And Ressler's inability to identify the origin of any of the mailings is understandable – at the recent trial of Sean Novis and Gary Denkberg, Ressler testified that he stopped working with Novis in or about 2008 and was certainly no longer working for Novis by 2015 (Novis-Denkberg Tr. at 805, 817), and therefore, had nothing to do with either Priolo *or any of his alleged co-conspirators* during the time period charged in the indictment.

Priolo expects that the government, knowing that Ressler cannot testify as to any of the charged mailings, will proffer his testimony as probative of the period during the 1990s and/or early 2000s when Priolo allegedly *first* worked with Novis. But Ressler's testimony from the Novis-Denkberg trial makes clear that he will not even be able to do that. At no point during his lengthy testimony in that trial did Ressler testify that, even prior to 2008, he ever met, spoke to,

1

A-200

emailed, designed products for, and/or otherwise interacted with defendant Priolo. All his interactions were with two people – Sean Novis, and Novis's lawyer Shelly Lustigman. He testified that, at one meeting, a third person was present, but he could not identify that person and also made clear that the person "just didn't participate." (Novis-Denkberg Tr. at 791-92).

In other words, *regardless of whether Ressler is proffered as a witness for the 2015-16 time period or the 1990s and early 2000s,* he will be unable to connect any of his testimony to Priolo. What he will testify to instead, as in the Novis-Denkberg trial, was that *he* intended to "encourage the customer to order the report… [b]y engaging the same elements that were used in sweepstakes" to make recipients "feel they've already won." (Novis-Denkberg Tr. at 764), and that *he* would design disclaimers to be "hidden in plain sight" with solid, boring letters (id. at 765-66). He will also testify to *his own* reasons for inserting certain language, graphics and/or design features into sweepstakes reports. (Id. at 776-90). But entirely missing – as at the prior trial – will be any testimony whatsoever that he incorporated any of these design features at Priolo's behest, that Priolo requested the mailings to be designed with such purpose in mind, or that Ressler ever communicated his intent to Priolo. To the contrary, Ressler was clear that all the features of these mailings, none of which had anything to do with Priolo, were designed solely by him. (Id. at 840).

Accordingly, defendant submits that Ressler's testimony will not be probative of Priolo's knowledge or intent either in the 1990s, the 2000s, or any later time. The only testimony that Ressler will be able to provide is (i) generic testimony about advertising and design, and (ii) testimony about his interactions *with Novis and his lawyer* prior to 2008, neither of which bears directly, or even indirectly, on what Priolo knew or intended. In contrast, the potential for unfair prejudice is extremely high because of the risk that a jury might accept Ressler's testimony concerning *his own* intent in using certain language and design features and impute that intent by osmosis to Priolo. And this potential for prejudice is particularly great given that, as "direct' evidence, Ressler's testimony will be admitted without a limiting instruction.

This Court should accordingly preclude the government from calling Ressler or, at minimum, require an offer of proof from the government concerning how they intend to connect Ressler's testimony to Priolo.

This Court's consideration in this matter is appreciated.

Respectfully submitted,

/s/ Jonathan I. Edelstein

Jonathan I. Edelstein

/s/ James R. Froccaro, Jr.

James R. Froccaro, Jr.

*Counsel for Defendant*

cc:    All Counsel (Via ECF)

2



**U.S. Department of Justice**
Consumer Protection Branch

---

**Charles B. Dunn**
Telephone:    (202) 305-7227
Fax:          (202) 514-8742
charles.b.dunn@usdoj.gov

**Overnight Delivery Address**
450 5th St., N.W., Room 6400
Washington, D.C.  20001

**Mailing Address**
P.O. Box 386
Washington, D.C.  20044

March 6, 2025

By ECF and Email
Honorable Nusrat Choudhury
United States District Court, CR 1040
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

      Re: *United States v. Phillips, et al.*
      Case No. 21-cr-566-NJC

Dear Judge Choudhury:

      The government hereby responds to the defense's renewed motion to exclude evidence of conduct in the late 1990s and early 2000s, specifically the testimony of Thomas Ressler.  Dkt No. 131.  The defense motion makes no new arguments—these same arguments were advanced in the defense's January 24, 2025, response to the government's motion in limine, at Dkt. No. 85, p. 1 to 6, including the objections to Mr. Ressler's potential testimony at pages 3–4, and in oral argument on these points.  The defense motion cites no legal authority, much less new authority supporting their argument for reconsideration.  Instead, the motion's emphasis appears to be on a purported inconsistency between Ressler's 2022 testimony and that which the defense expects at Priolo's trial, to the effect that because Ressler did not identify Priolo during the 2022 trial, "regardless of whether Ressler is proffered as a witness for the 2015-16 time period or the 1990s and early 2000s, he will be unable to connect any of his testimony to Priolo."  Dkt. No. 131 at 2.

      The government disputes this contention.  Consistent with his most recent memorandum of interview, Ressler is expected to testify that he met with Sean Novis, Priolo, and another person at Ressler's home, and that they went over his work on prize notices.[1]  This meeting is

---

[1] This third individual is Shelly Lustigman, one of Novis's lawyers, as the defense motion states. Insofar as the defense has yet to indicate any particular defense theory other than broad denial of the indictment's allegations, the government does not intend to elicit testimony about Lustigman's role in this meeting or that Novis was receiving legal advice.  In the absence of an assertion of good faith by the defense based on this third-party legal advice (as litigated extensively in this matter), the government is reluctant to delve into the thorny evidentiary issues surrounding Sean Novis's and Denkberg's use of lawyers vs. the present defendants' failure to do so and how that failure resulted in the legal advice given to Sean Novis and Denkberg to move caging out of their office because of the risks presented by Priolo, Jeff Novis, and Shawn

A-202

referred to in the defense motion at the top of page 2.  While Ressler did not identify Priolo by name during the 2022 trial, he is expected to do so in the upcoming trial.  Ressler was very clear in his 2022 testimony that there were three people at this meeting, one of whom he now recalls was Priolo.  Any purported inconsistency is no basis for excluding the witness, but rather, is at most a basis for cross-examination concerning the witness's credibility.  FED. R. EVID. 613; *United States v. Strother*, 49 F.3d 869, 874 (2d Cir. 1995) (noting that under Rule 613(b), "a witness's prior silence regarding critical facts may constitute a prior inconsistent statement"); *see also Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (observing that a defendant is entitled to "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.").

Ressler's memory of this meeting is of course not the only evidence that ties Ressler and Priolo to the late 90s/early 2000s period and Priolo's participation in the scheme during that period.  For example, the prize notices Ressler created are accompanied by one or more handwritten notes to "Sean," which Ressler will testify was his note to "Sean Novis."  *See, e.g.*, GX 401 at 1, 19.  Amongst the prize notices Ressler created in this period are those reflecting the name "Sweepstakes Advisory Network Inc."  *See, e.g., id.* at 19, 20.  Government exhibit 383, page 8 shows that both Priolo and Sean Novis were affiliated with this same shell company, Sweepstakes Advisory Network, Inc.

The defense also objects to Ressler's testimony on the grounds that creation of the prize notices was "his" act, that Ressler did not communicate his "intent" to Priolo, and that Priolo did not direct Ressler to incorporate specific features.  The defense ignores the reality of how conspiracies work and are proven in court—there is almost never such specific agreement or evidence about a criminal agreement and the conspirators need not have such coordination about each subpart of the conspiracy.  *United States v. Abarca*, 22 F.4th 58, 68 (2d Cir. 2021) (discussing the "inherently secretive nature of conspiracies" which "makes it difficult to obtain evidence of communications between co-conspirators" and that "[b]ecause a conspiracy by its very nature is a secretive operation, [] it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel.") (citations and quotations omitted); *Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946) (noting that "[i]t is settled that 'an overt act of one partner may be the act of all without any new agreement specifically directed to that act" and that "[m]otive or intent may be proved by the acts or declarations of some of the conspirators in furtherance of the common objective.").

Finally, the government has no objection in principle to a limiting instruction, should the defense request one and propose language addressing Priolo's concerns.

---

Phillips.  *Testimony of Andrew Lustigman*, 20cr335, Tr. at 1576–79 (May 10, 2022).  In addition, any government evidence raising the substance of Priolo's knowledge that Sean Novis consulted with counsel would be deeply confusing and misleading to the jury and could in myriad ways serve to undermine whatever good-faith defense Priolo intends to assert.

2

A-203

We thank the Court for its consideration of this response.

Respectfully submitted,

/s/ *Charles B. Dunn*
ANN F. ENTWISTLE
CHARLES B. DUNN
JASON FELDMAN
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
(202) 514-4320
Charles.B.Dunn@usdoj.gov

cc: James Froccaro via email and ECF
    Jonathan Edelstein via email and ECF

3

A-204

**PRE-TRIAL CONFERENCE**

4

wishes to handle objections in the courtroom and I think other than that, we agree with the Court's list.

THE COURT: Okay, great. And I will definitely cover that. Mr. Froccaro, anything that you would like to put on the agenda?

MR. FROCCARO: It will be within the agenda that your Honor covers. I may ask some questions.

THE COURT: You can raise things as we go along. I'm just wondering if you have any additional topics that you want to raise?

MR. FROCCARO: Nothing your Honor, no.

THE COURT: Okay, great.

So we'll start with the pending motions concerning Mr. Thomas Ressler's testimony. There are two outstanding Motions in Limine relating to his testimony. First, there is a government motion to permit Mr. Ressler to testify remotely. This motion is filed publically with some information redacted at ECF number 90. The motion is filed under seal in its entirety at ECF number 84-1. Mr. Mr. Priolo responded to this motion stating that, quote; should the Court permit Mr. Ressler to testify over defense objection, I do not oppose to him testifying remotely, closed quote. That's set forth at ECF number 91.

Second, Mr. Priolo filed a supplemental Motion

**PRE-TRIAL CONFERENCE**

5

in Limine to preclude Mr. Ressler from testifying at all. This is at ECF number 131. The defense previously raised an objection to Mr. Ressler's testimony in its Motion in Limine at ECF number 106, and that the hearings that I held regarding the parties motions in limine on February 4, 2025, and February 7, 2025. I overruled Mr. Priolo's objection in my March 4, 2025 written opinion and order on the parties Motion in Limine, which is docketed at ECF number 130. On pages 35 to 36 on my opinion and order, I found that Mr. Ressler's testimony about his work creating mailings for Sweepstakes Advisory Network Incorporated and Justin Grant Limited, as part of the uncharged Sweepstakes conspiracy, was inexplicably intertwined with the charged conspiracy against Mr. Priolo, which concerned conduct in 2015 and 2016, and is therefore relevant and admissible as direct evidence of the charged conspiracy.

In my analysis, I relied on United States Versus Kaiser. 609 F.3d 556 Second Circuit 2010. And United States Versus Lingat, Docket number 21-CR-573, 2024 West Law 1051633. That's a Southern District of New York decision dated March 11, 2024.

And I considered the Government's proffered evidence of Mr. Priolo's involvement in those two companies in the late 1990's and early 2000's, as well as

A-206

**PRE-TRIAL CONFERENCE**

6

the Government's proffered evidence that Mr. Ressler met Mr. Priolo at the time. I also noted that any argument that Mr. Priolo's interactions with Mr. Ressler were minimal, can be drawn out on cross examination and argued to the jury. This is addressed in footnote 19 on page 26 of my opinion and order.

I considered the arguments that Mr. Priolo had raised in his supplemental Motion in Limine at ECF number 131. The Government's opposition at ECF number 136. The parties argument at the pretrial conference yesterday on March 6, 2025, and the evidence on which the parties relied. Mr. Priolo's additional arguments do not change my analysis at set forth in my opinion and order. Mr. Ressler's testimony about the mailing he created for Sweepstakes Advisory Network and Justin Grant, and the meeting he had with Sean Novis and Priolo are relevant and admissible evidence of the conspiracy that's charged in this case.

First, the Government has proffered evidence that Mr. Ressler created mailings for Sweepstakes Advisory Network and Justin Grant at around the time that Mr. Priolo was involved in both of those companies.

Second, the Government's January 16, 2025, memorandum interview with Mr. Ressler reflects that Mr. Ressler told the Government on that day that, as part of

**PRE-TRIAL CONFERENCE**

7

his work with Sean Novis, he recalls a meeting at Mr. Ressler's residence where Sean Novis, Sean Novis' lawyer, Shelly Lustigman, and Mr. Priolo were in attendance.  He also testified that the purpose of the meeting was to review solicitation that Mr. Ressler had created.  The Government disclosed this memorandum and interview as part of its 3500 material marked as 3500 PR17.

Based on this proffered evidence, Mr. Ressler's testimony about the elements and techniques he used to create mailings for Sweepstakes Advisory Network and Justin Grant is relevant evidence concerning the charged Sweepstakes conspiracy, Mr. Priolo's knowledge of the conspiracy, and his intent to defraud.

Mr. Priolo argues that the probative value of this evidence is diminished because Ressler's anticipated testimony that he met with Priolo during the late 1990, 2000s period would be inconsistent with Ressler's prior testimony at the 2022 trial in United States versus Sean Novis and Gary Denkberg.  That's at docket number 20-CR-335 EDNY.

Mr. Priolo argues that at trial, Mr. Ressler didn't remember the identity of the fourth individual at that meeting with him, Sean Novis, and Shelly Lustigman. And Mr. Priolo argues that his anticipated testimony would be similarly inconsistent with statements Ressler made in

**PRE-TRIAL CONFERENCE**

8

past interviews with the Government. These arguments go to Ressler's credibility as a witness, and not the admissibility of his anticipated testimony. During trial, Priolo will have the opportunity to cross examine Ressler and make arguments regarding the inferences the jury should draw from his testimony.

For example, if Ressler testified inconsistently with past testimony or statements, Priolo can try to impeach him with his prior statements under Rule 613 of the Federal Rules of Evidence. And with respect to Ressler's prior trial testimony, under Rule 801(b)(1) of the Federal Rules of Evidence. And, if he choses, Priolo can cross examine Ressler on his identification of Priolo in the January 16, 2025, meeting with the Government.

Priolo also argues that Ressler should be precluded from testifying because, based on Ressler's testimony in United States versus Sean Novis, the fourth individual at the meeting did not participate in the meeting. This argument is unpersuasive. Even if Priolo did not actively participate in the meeting, evidence that he was present at the meeting during which Ressler and Sean Novis were going through mailings is relevant to Priolo's knowledge of the conspiracy, and, to a lesser extent, intent.

Finally, Ressler's testimony is not barred by

A-209

**PRE-TRIAL CONFERENCE**

9

Rule 403 of the Federal Rules of Evidence, because any risk of unpair prejudice to Priolo or confusion of the issues, does not substantially outweigh the significant probative value of this evidence. On page 2 of his supplemental motion in limine, Mr. Priolo argues that this evidence is especially prejudicial because no limiting instruction will be given. The Government has stated that it has no objection and principal to a limiting instruction, should the defense request one, and proposed language addressing Priolo concerned. This is at page 2 of ECF number 136.

So, in conclusion, because I have found that Ressler's testimony is admissible under Rule 401, and 403, I deny Mr. Priolo's supplemental Motion in Limine located at docket number 131.

With that, I have ruled on all of the Motion in Limines, and my understanding is that no motions are pending, other than the motions for Mr. Ressler's remote testimony. Before I move on to that issue, I want to make sure the parties agree that's the case.

Mr. Dunn?

MR. DUNN: The Government concurs, your Honor.

THE COURT: Mr. Froccaro?

MR. FROCCARO: I agree, Judge.

THE COURT: Okay. And Mr. Froccaro, at this

A-210

PRE-TRIAL CONFERENCE

10

point, do you request a limiting instruction in light of my ruling.

MR. FROCCARO: Judge, I have to be honest, I really want to make sure I understand it first. Is your Honor suggesting that the jury can use the evidence from the early 2000s to prove his intent? Like, in other words, if direct evidence of the charged offense, or is it something they can just consider vis a vis 404(b) for intent? I want to make sure I'm clear on it.

THE COURT: So you read my ruling on the Motion in Limine, which found that evidence of the uncharged Sweepstakes scheme from the late 1990's and early 2000s is inexplicably intertwined with the charged sweepstakes conspiracy. And what I just ruled is that Mr. Ressler's testimony is relevant in that context.

MR. FROCCARO: It's only relevant on the issue of -- like, because I wouldn't understand. Direct proof of the charged conspiracy, which is 2015 to '16, I don't know if I could ask for a limited instruction.

THE COURT: That's fine. And I just delivered the ruling. So I think you can think about it and let me know if that's something that you're going to request, it's something we can talk about on Monday morning. But my ruling, as I indicated, is that evidence of the late 1990's, early 2000's uncharged sweepstakes conspiracy,

**PRE-TRIAL CONFERENCE**

11

which involved Justin Grant and Sweepstakes Advisory Network and Mr. Priolo's involvement in those companies is inexplicably intertwined with the charged conspiracy. That's in the lengthy opinion that I issued earlier this week for the parties to digest. And what I'm finding today is that Mr. Ressler's testimony or anticipated testimony, based on the proffers given by the Government, you know, falls within that type of information. So it's not 404(b). Although I did provide an alternative analysis of 404(b) with respect to all of that uncharged sweepstakes conspiracy evidence. I set that forth in my opinion at great length as well. But my principal ruling is that it's inexplicably intertwined with the charged --

MR. FROCCARO: I understand, Judge. I'll just continue my objection and I'll consider it. Thank you for giving me the opportunity until Monday morning.

THE COURT: Thank you.

So moving to the motion for remote testimony of Mr. Ressler, this is at ECF numbers 84-1 and 90. Mr. Froccaro, I understand the Government does not object to Mr. Ressler's testimony being provided remotely, in the event that I permit him to testify over the defense objection, which is noted on the record; is that correct?

MR. FROCCARO: That's correct, Judge.

THE COURT: Okay. So I grant the Government's

PRE-TRIAL CONFERENCE

12

motion and will permit Mr. Ressler to testify remotely. Given that that will be a remote testimony, when will the Government call this witness? I want to make sure we work through any logistical issues with the timing and the AV?

MR. DUNN: Your Honor, our witness travel arrangements and so forth are still in flux. We would expect Mr. Ressler's testimony between Tuesday afternoon and Wednesday. But we will be happy to file a letter with expected witness testimonies and dates and times as soon as we have that. Not later than Monday morning.

THE COURT: Okay, great. Thank you so much.

Okay. So moving on to the question of the summary of the indictment, did the parties meet and confer about that? Mr. Dunn?

MR.FELDMAN: Your Honor, this is Jason Feldman. We have been in touch with Mr. Froccaro and Mr. Edelstein on this issue. It's proving just to take a little bit more time than we expected to come up with language summary that we can send to them for them to consider and have time to add their own comments and suggestions or objections to that language. So, if the Court is amenable, we're just asking for a bit more time to give the Court a joint proposal from the parties or, alternatively, to competing proposals from the parties.

THE COURT: Okay. And again, this is for



**U.S. Department of Justice**
Consumer Protection Branch

---

**Charles B. Dunn**
Telephone:    (202) 305-7227
Fax:          (202) 514-8742
charles.b.dunn@usdoj.gov

**Overnight Delivery Address**
450 5th St., N.W., Room 6400
Washington, D.C.  20001

**Mailing Address**
P.O. Box 386
Washington, D.C.  20044

March 12, 2025

<u>By ECF and Email</u>
Honorable Nusrat Choudhury
United States District Court, CR 1040
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

Re: *United States v. Phillips, et al.*
Case No. 21-cr-566-NJC

Dear Judge Choudhury:

We write to address the matters raised during trial this morning, concerning whether reference may be made to witness Cathy Johnson's immunity order and the similar issue of her proffer agreements with the government.[1]

Concerning the procedure for conveying the immunity order to Ms. Johnson, the statute requires the witness to first refuse to testify, at which point the Court is required to "communicate" the order to Ms. Johnson.  18 U.S.C. § 6002.  The government has no objection to this process happening on the record, outside the presence of the jury..

Concerning whether the government may bring out impeaching evidence for Ms. Johnson, the government seeks to do so pursuant to Fed. R. Evid. 607, which permits either party to impeach a witness.  The questions the government intends to ask Ms. Johnson are limited in duration and scope, to the effect that she is testifying under an immunity order, that she sat for interviews under the protection of a proffer letter, what her understanding of that proffer letter was, and that the government has not made her additional promises.  It is.

---

[1] Because similar issues could arise with respect to witness Thomas Ressler's prior conviction and cooperation agreement, the government has conferred on that issue with the defense. Defense counsel has indicated that they do not intend to raise the same objection with regard to the government questioning Mr. Ressler on direct examination about his prior conviction for conspiracy to commit mail fraud and his cooperation agreement.  The parties have agreed to further meet and confer try to agree on the questions Mr. Ressler will be asked on these topics, to attempt to avoid objections during witness testimony.

A-214

The objection to impeachment information on direct examination is unfounded.  Well-established Second Circuit law permits eliciting such testimony on direct examination of government witnesses at trial for the legitimate purposes of, among other things: (1) enabling the jury to properly assess the credibility of the witnesses and (2) to prevent any jury confusion about whether or not the witnesses have been criminally charged and the reasons surrounding that decision, regardless of the defense's intentions about its own cross-examination.

For example, in this Circuit, the Government is permitted to introduce evidence concerning a  witness's guilty plea on direct examination during its case-in-chief.  "[A]lthough the Government may not introduce the bolstering aspects of an agreement until after the witness's credibility has been attacked, this restriction does not apply to an agreement's impeaching aspects, which the Government is free to introduce even on the witness's direct examination."  *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 86 (2d Cir. 2014).  Similarly, the government is permitted to introduce testimony regarding the impeaching aspects of a cooperation agreement on direct examination.  *United States v. Cosentino*, 844 F.2d 30, 33 (2d Cir. 1988) (the government is free to introduce the "impeaching aspects" of a cooperation agreement on the witness's direct examination even without a prior attack by the defense on the witness's credibility).

Proper purposes for the introduction of such evidence include "disclosure[s] of matters damaging to the credibility of a witness and contradiction of any inference that the government is concealing a witness' bias."  *United States v. Louis*, 814 F.3d 852, 856 (2d Cir. 1987) (internal citations omitted); *see also* Fed R. Evid. 607 (parties may impeach their own witnesses).  The Government is aware that testimony concerning the truth-telling provisions of a plea agreement or proffer letter cannot be elicited and the agreement or letter itself cannot be introduced until after the credibility of the cooperating witness has been attacked by the defense. *See United States v. Gaind,* 31 F.3d 73, 78 (2d Cir. 1994).  The government will not seek to enter the proffer agreement into evidence or elicit testimony regarding the truth-telling provisions.

The defense states that it believes the witnesses didn't do anything wrong.  The defense is free to explore that belief on cross-examination.  However, defense counsel questioning the witnesses in an effort to demonstrate that they are innocent of the charged conspiracy and scheme to defraud will be especially misleading and confusing to the jury if they are ignorant of the basic facts that Ms. Johnson required immunity to testify.  Such confusion can be avoided by simply following Second Circuit law and permitting brief testimony concerning the impeachment information on direct examination.  The district court is well within its discretion to make decisions concerning the admission of testimony or other evidence in light of concerns about jury confusion.  *See United States v. Salemo*, 499 F. App'x. 110, 114 (2d Cir. 2012).

A matter remarkably similar to that raised at this morning's conference arose in the case of *United States v. Runner*, 2023 WL 3727532, at *3 (E.D.N.Y. May 30, 2023).  There, the defense tried to preclude the government's use of similar impeaching evidence and "took the position that [because] the entire charged conspiracy [i]s legally invalid and that the cooperating co-conspirators are innocent, he does not currently intend to impeach the[m] nor attack their credibility because they pled guilty or ... are trying to curry the [G]overnment's favor." *Id.* (quotations omitted).  The court denied the defense motion, deeming this information "highly

A-215

relevant" and permitting the government to elicit the non-bolstering information during its direct examinations. *Id.*

Finally, the defense cannot show that Mr. Priolo would be prejudiced by the government eliciting testimony concerning the impeachment information. Typically, in this Circuit, any concern about possible prejudice to the defendant from testimony and evidence concerning things such as guilty pleas and cooperation agreements can be remedied by a limiting instruction. A limiting instruction is justified when evidence—such as the guilty plea of a testifying co-defendant—is admissible for a limited purpose but might also be considered for a purpose that is impermissible. Fed. R. Evid. 105. "When a plea is introduced for any proper reason, however, the district court, when asked, should instruct the jury that the co-defendant's plea may not be considered as evidence of the defendant's guilt." *United States v. Prawl*, 168 F.3d 622, 626 (2d Cir. 1999); *see United States v. Williams*, 690 F.3d 70, 77 (2d Cir. 2012)(presuming that "jurors follow their instructions."); *United States v. Snype*, 441 F.3d 119, 129 (2d Cir. 2006)("[T]he law recognizes a strong presumption that juries follow limiting instructions."). The appropriate way to address Mr. Priolo's concern is a limiting instruction, not preclusion.

We thank the Court for its consideration of this letter.

Respectfully submitted,

/s/ *Charles B. Dunn*
ANN F. ENTWISTLE
CHARLES B. DUNN
JASON FELDMAN
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
(202) 514-4320
Charles.B.Dunn@usdoj.gov

cc: James Froccaro via email and ECF
    Jonathan Edelstein via email and ECF

3

A-216

**EDELSTEIN & GROSSMAN**

Attorneys at Law
501 Fifth Avenue, Suite 514
New York, NY 10017
Tel: (212) 871-0571
Fax: (212) 922-2906
jonathan.edelstein.2@gmail.com

———

March 12, 2025

**VIA ELECTRONIC CASE FILING**
Hon. Nusrat J. Choudhury, U.S.D.J.
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

**Re: United States v. Priolo, Docket No. 21-CR-566 (NJC)**

Your Honor:

The undersigned counsel, on behalf of defendant Priolo, respectfully submit this letter in support of their contention that the government should not be permitted to (i) elicit testimony that Cathy Johnson is testifying under immunity and//or that she was interviewed pursuant to a proffer agreement; and/or (ii) introduce any grant of immunity and/or proffer agreement into evidence. Defendant does not object to the government eliciting that Johnson was interviewed, as long as the proffer and/or immunity are not mentioned.

As discussed on the record earlier today, the defendant agrees <u>not</u> to refer to the proffer agreement and/or immunity during cross-examination of Johnson. Defendant also will not characterize Johnson as a criminal either during cross-examination or in closing arguments. Moreover, defendant agrees not to accuse the government, either expressly or by implication, of concealing Johnson's immunity and/or the proffer agreement. Defendant personally will allocute his consent to these restrictions.

Defendant acknowledges that the Second Circuit draws a distinction between "bolstering aspects" and "impeaching aspects" of an agreement that provides benefits to a witness. <u>See</u> <u>United States v. Certified Environmental Services, Inc.</u>, 753 F.3d 72, 86 (2d Cir. 2014). The "bolstering aspects," including "the truth-telling provisions in particular or the agreement as a whole," may not be introduced unless the defendant opens the door. <u>See id.</u> The "impeaching aspects," in contrast, may ordinarily "be brought out in the government's direct examination of a [cooperating] witness." <u>Id.</u> But it is important to note *why* the Second Circuit makes this distinction:

Even in the absence of a prior attack on credibility, the elicitation of

1

> the fact of the agreement and the witness's understanding of it, as a motivation for the witness to testify for the Government, should be permitted on direct examination *in order to anticipate cross-examination by the defendant which might give the jury the unjustified impression that the Government was concealing this relevant fact.*

Id. (emphasis added), quoting United States v. Edwards, 632 F.3d 1049, 1052 (emphasis added).

Defendant Priolo submits that the distinction between "bolstering" and "impeaching" aspects of a proffer or immunity agreement must be considered in light of this purpose. If the sole purpose of permitting the government to introduce "impeaching aspects" of such agreements on direct is to "anticipate cross-examination… which might… [imply that] the Government was concealing" the agreements or the witness's status, then this purpose *disappears* where, as here, the defendant is willing to agree in advance not to conduct such cross-examination. Priolo will not accuse the government of concealing that Johnson received immunity or received a proffer agreement, and will even avoid cross-examination that might *imply* such an accusation, because he will not refer to or elicit anything about proffer agreements or grants of immunity at all. If the jury never hears on cross that Johnson proffered (as opposed to simply being interviewed by law enforcement) and/or has received immunity, then it cannot possibly be misled into believing that these facts have been concealed, whether by the government or anyone else.

The Second Circuit has stated that even though certain aspects of cooperation, proffer, and/or immunity agreements may ordinarily be elicited on direct, "[t]here may be circumstances where, on proper request of the defense, the trial judge should limit, or even bar such testimony… *because of the witness' admission of crime implicating the defendant would outweigh the advantages of a full disclosure of the witness' criminal background*." United States v. Silverman, 430 F.2d 106, 125 (2d Cir. 1970) (emphasis added). This case presents exactly such circumstances. A key part of Priolo's defense is that the mailings were simply not fraudulent and that none of the people he worked with, including Jacquard or Priolo, were criminals. If the jury hears that Johnson received immunity and that her testimony cannot be used against her, there is a great risk of the jurors getting the impression that she received this benefit because she committed crimes (even though, as pointed out on the record, the statute of limitations had run by the time immunity was granted). Likewise, Johnson's proffer agreement explicitly provided, *inter alia*, that she would be providing information about the criminal activity of "others" – which, given that Priolo is the one on trial, a jury would obviously take to mean Priolo. Mention of either of these would greatly undermine Priolo's defense by insinuating that, even though no criminal charges have ever been brought against her, Johnson was in fact a criminal associate.

It is well settled that Rule 403 precludes admission of evidence whose probative value is significantly outweighed by the potential for unfair prejudice even if that evidence is otherwise admissible. See Old Chief v. United States, 519 U.S. 172, 180-83 (1997). Here, for the reasons stated in the preceding paragraph, the risk of prejudice is strong. In contrast, given that Priolo is agreeing in advance not to cross-examine Johnson concerning the proffer agreement or grant of immunity, the probative value of direct testimony on this subject would be minimal to nonexistent. Thus, under the specific circumstances of this case, where defendant agrees in advance to obviate

2

A-218

the sole purpose for which evidence of cooperation and/or immunity agreements may be elicited on direct examination, it is submitted that this Court's Rule 403 balancing militates in favor of precluding such examination.

Finally, defendant submits that any concern by the government for his appellate rights is misplaced. It is well settled in the Second Circuit that where an arguable error is committed at the specific request of the defendant, the "invited error" doctrine bars any appellate relief. See United States v. Wells, 519 U.S. 482, 488 (1997). Indeed, where an error is invited, an appellate court is barred from even reviewing for plain error. See United States v. Bastian, 770 F.3d 212, 218 (2d Cir. 2014). Here, as discussed earlier on the record, not only does counsel agree not to cross-examine on cooperation and/or immunity, but defendant himself will allocute and state his personal consent. There is thus nothing for this Court to fear in terms of making the outcome of this case vulnerable to appeal.

This Court's consideration in this matter is appreciated.

Respectfully submitted,

/s/ Jonathan I. Edelstein

Jonathan I. Edelstein

/s/ James R. Froccaro, Jr.

James R. Froccaro, Jr.

*Counsel for Defendant*

cc:     All Counsel (Via ECF)

3

A-219

373

mailings sent in the 2015, 2016 time period.  Nevertheless, I looked closely at the exhibit yesterday, conducted a DeNovo review and essentially land in the same place.  These letters and notices are probative of intent to defraud, so they are admissible.

So that's my ruling on the 395 issue.  Any concerns or discussion that you wish to reserve?

MR. FROCCARO:  I just renew my objection and I'm amazed that you did all of that between last night and this morning.

THE COURT:  And there's more, I have two more rulings for you.  Thank you so much.  Anything the Government wishes to day?

MR. DUNN:  No, your Honor.

THE COURT:  Let's go on.  So now I turn to the question of Cathy Johnson and the motion that defense filed first -- first, made orally yesterday and elaborated on in a letter and I did look at both party's letters very closely, as well as the case law cited therein.  And we also did some additional research.  I take very seriously the arguments that the defense is rasing here and I think, Mr. Froccaro, you're absolutely doing your job to raise objections when you should.  When there are issues of concern.  I needed more time just to think through this issue, particularly in the context of the unfair prejudice concerns that you raise.  And trying to find

A-220

374

a case on point as to that issue, and here's where I land.

MR. EDELSTEIN: Your Honor, may we briefly be heard additionally on that?

MR. FROCCARO: Something to respond to the Government.

THE COURT: Okay.

MR. EDELSTEIN: Just briefly to address the case of US versus Runner that the Government cited.

THE COURT: Which case, sir, I'm sorry?

MR. EDELSTEIN: United states verse Runner. R-U-N-N-E-R. It's an Eastern District of New York case. There is only a Westlaw citation, which is 2023, WL, 3727532. And it was cited in the Government's submission of last night. And I just would like to point out a couple of things about the Runner case.

First of all, that, in the Runner case, the three witnesses in question whose cooperation agreements and guilty pleas the Government wanted to elicit, are people who pled guilty. And the Government, among the relevance, items of relevance that the Government advocated for this bringing this out on direct, was to, quote; prevent any jury confusion about whether the witnesses have been criminally charged and the reasons surrounding that decision, unquote. I'm reading from page star 3 of the case in Westlaw.

And in addition, the representation made by the

375

defendant in Runner, and I'm reading from the same page of the case, was that, quote; he does not currently intend to impeach them, meaning, the witnesses, nor attack their credibility because they pled guilty or are trying to curry the Government's favor, unquote.  So first of all, the defendant in Runner, unlike Mr. Priolo, hedged bets.  He said he doesn't currently intend to impeach the witnesses concerning these cooperations agreements, meaning, maybe, you know, during cross he's going to change his mind.  We, on the other hand, are going to make -- you know.  We've offered and irrevocable decision that we will not only not impeach Ms. Johnson based on the grant of immunity and/or the proffer agreement, but we will not mention that at all.  The words immunity and proffer are never going to come out of Mr. Froccaro's lips during the cross examination.  Nor, if, you know, lighting strikes and for some reason I do the cross, which we don't anticipate, those words will never cross my lips.  And furthermore in contrast to Runner where these are witnesses who pled guilty, they admittedly committed criminal acts and there was an arguable need to prevent confusion about whether they had been charged of a crime.  That is not present with Ms. Johnson. She's never been charged at this point, she can't be charged. When the immunity was granted, she couldn't be charged.  And we would submit that she's no different from either of the other women who work in the Novis office, you know,

376

Ms. Lillenkamp or Ms. Jacquard. All of them, Ms. Jacquard testified without any mention of whether she was charged with a crime or not because she never was. We don't anticipate there's going to be any testimony of that sort from Ms. Lillenkamp. And there should not be either from Ms. Johnson. She's never been charged with anything, there's no confusion that needs to be prevented. And, on the contrary, if the jury hears from about immunity, the impression they're going to get is that Ms. Johnson got immunity because she needed it.

So I would submit that, again, the Rule 403 considerations in this case are far more compelling than in Runner. And that, instead, the Court, this court should be guided by the Silverman case in the Second Circuit which we cited sating, you know, there are circumstances where the implication of criminal conduct against the defendant from mention of these type of agreements or grants of immunity outweighs the relevance to the credibility of the witness. And that, given the waivers that we are proposing here, there should be a preclusion. Thank you, Judge.

THE COURT: Thank you so much. Does the Government wish to add anything?

MR. DUNN: I believe we will just stand on our paper at this point. I would make a very short observation that the quote selected from Silverman is indicia that, in fact, the

A-223

377

court in that case and the case it pulled that language from, if I'm remembering it correctly from my question quick reading of these cases was from 1962. In neither of those cases did they do as the defense is suggesting here. That's all I wanted to add, your Honor.

THE COURT: Okay. I thought deeply about this and I read all of the cases, including Silverman. Here is where I land. Start from the beginning.

Mr. Priolo filed a motion to preclude the Government from eliciting the testimony -- well, I just want to stop.

Mr. Dunn, I want to confirm that the testimony that you seek to elicit is limited to the following.

That Ms. Johnson is testifying under the grant of immunity from prosecution and that she previously met with the Government on several occasions in proffer meetings so-to-speak. But without eliciting any testimony about those proffer agreements or any agreements she may have entered into for those sessions or any testimony about what was said in those proffer sessions because that's all hearsay.

MR. DUNN: That is exactly right. And should the door be opened to further questioning about that during cross examination, we would certainly request a sidebar before getting further into any of those issues.

THE COURT: You don't intend to, for example, elicit testimony about any truth telling because that would be

A-224

378

inadmissible bolstering.

MR. DUNN:  Of course, your Honor.

MR. FROCCARO:  Judge, the question when you ask about immunity is because -- the only thing you're not precluded from is from telling the truth.

THE COURT:  That's in my order, right?

MR. FROCCARO:  But the jury is going to hear that.

THE COURT:  The jury going to hear that and you're going to hear my ruling.  And the main issue here is that no one has cited me a case indicating that under Rule 403, that the party offering a witness who is compelled to testify under grant of immunity that, on direct, you can't elicit testimony about the fact that the person is testifying under a grant of immunity.  I have not seen that case.

MR. FROCCARO:  There may be a reason for that because I never heard anybody ask for that or rejected on the Government's side.  Normally, they wouldn't want to show that a witness has an incentive to lie.

THE COURT:  But under Silverman, the Second Circuit made very clear that it doesn't matter whether a witness's testimony is favorable to one side or the other.  Either side can seek to impeach the witness.  It doesn't matter that -- what I'm hearing from the Government is you don't want to impeach her credibility because you think she might say things favorable to you.  No desire to impeach her credibility, but

A-225

379

that don't change the fact that under Rule 607, the Government can try to impeach her credibility.  And, frankly, it doesn't change the fact that the issue of her credibility is part of the entire circumstances of her testimony and highly relevant to the jury's determination of her credibility and to how weigh the weight of her testimony.  Go ahead, Mr. Froccaro.

MR. FROCCARO:  But her credibility to be impeached without the fact that had proffer agreements or without the fact that she had immunity, to be impeached by any prior statements she may have made.  They don't have to bring up anything about immunity.

THE COURT:  There may be a number of ways to impeach a witness, but it doesn't change the Second Circuit's preference in this case.  Indicating that what they're trying to do is not unfairly prejudicial.

MR. FROCCARO:  Once they say she's testifying under a grant of immunity, it puts me then in a bad position because they're going to suggest that she's telling the truth because immunity.  And, listen, Judge, I do --

THE COURT:  I want to correct that because I just asked Mr. Dunn if there's an intention to bolster or indicate that she is required to tell the truth and make statements of that kind.  I didn't hear that you were planning on doing that, Mr. Dunn.

MR. DUNN:  That is correct, your Honor.  We don't

A-226

380

intend to ask that question.

MR. FROCCARO: So how does the jury understand why she's granted immunity? What is the basis for that? That she had Fifth Amendment concerns and that's why she's got immunity concerns? What is the jury left with?

THE COURT: Okay. I've heard you Mr. Froccaro, I'm going to regroup right now. So now I'm going to be very clear about why I'm landing where I'm landing.

Is there anything further that you want to add before I do that?

MR. FROCCARO: There isn't, Judge. Just my concern that once they bring that up, they put me in a bad position. But so be it. I don't know what she's going to say.

THE COURT: Well, I mean, you have the 3500 material from Ms. Johnson.

MR. FROCCARO: That's true, and -- yeah. I mean, that's true.

THE COURT: So Mr. Priolo filed a motion to preclude the Government from eliciting testimony from Cathy Johnson concerning the fact that she's testifying under a grant of immunity and that she was interviewed pursuant to one or more proffer agreements. And to preclude the Government from introducing any grant of immunity or proffer agreement into evidence. And this is at docket number 144.

Mr. Dunn, was there one or more proffer agreements

381

at issue?

MR. DUNN: I have a copy if it in the Court wishes to see it.

THE COURT: I don't believe it's in the 3500 material.

MR. DUNN: It was sent separately to defense counsel in late January so they have it. I'm happy to show it to the Court. It's one proffer agreement and it's signed by the parties on two different occasions.

THE COURT: I don't need to see it right now, but I may. Because we will see how things unfold. The defense does not object to the Government eliciting that Ms. Johnson was interviewed, as long as the proffer and/or immunity are not mentioned. Mr. Priolo argues that the testimony should be precluded because the defense agreed not to refer to the proffer agreement and/or immunity during cross examination of Ms. Johnson. They agreed not to attack Ms. Johnson's credibility or to characterize her as a criminal. The defense agrees not to accuse the Government, either expressly or by implication, of concealing Johnson's immunity and/or the proffer agreement, and Mr. Priolo agrees to allocate his consent to these restrictions.

Contrary to Mr. Priolo's contention, the jury does need to know that Cathy Johnson is testifying under immunity because that information is highly probative of her

382

credibility, regardless of whether she is facing favorable to the Government or to the defense. A witness's receipt of a benefit for testifying is relevant to the jury's evaluation of their credibility. A witness's grant of immunity can also be probative of the witness's reluctance to testify, which is further relevant to the jury's evaluation of their credibility. I'm relying on United States Versus Silverman. 430 F.2d. 106 at page 125 Second Circuit 2007 where the Second Circuit stated, quote; each reference to the immunity was to emphasize the reluctance of the witnesses to testify. This reluctance was relevant to the jury's evaluation of the witness's credibility, closed quote.

The fact that Mr. Priolo may anticipate that Ms. Johnson will provide testimony favorable to the defense and that he does not want to impeach her testimony does not change the fact that the jury needs to know the circumstances under which she is testifying in order to assess her credibility. The Second Circuit has recognized that, quote; credibility concerns attend a grant of immunity, closed quote, whether the witness testifies favorably for the defense or the prosecution. I'm citing United States Versus Dixon. 511 at appendix 48 at page 51. This is a 2013 Second Circuit decision where the Court is citing its previous decision in United States Versus Gleason. 616 F.2d 2 at page 15. Second Circuit 1979. In Dixon, the Second Circuit upheld an

A-229

383

instruction to scrutinize a defense witness's testimony with particular care based on her immunity that she had been granted by the Government. This is at page 51 of the Dixon decision. The defense has not identified a case in which, under Rule 403, the Federal Rules of Evidence, the Court is precluded -- where the Court precluded a party from examining a witness on direct about the circumstances of their grant of immunity from prosecution or their testimony.

Mr. Priolo argues that the impeaching aspect of an agreement that provides a benefit to a witness may not be introduced unless the defendant opens the door. Mr. Priolo relies on Certified Services Incorporated, 753 F.3d 72. Second Circuit 2014. This case is -- because it concerns testimony by a cooperator, the question of bolstering the witness's testimony, and offering into evidence the complete agreement by which the cooperating witness testified in that case. That is not what is at issue here.

The Government's intention to elicit limited questioning on direct examination that Johnson is testifying pursuant to a grant of immunity and has been interviewed by the Government in proffer sessions is not bolstering. By contrast, in Certified Services, the Government impermissibly bolstered the cooperating witness during direct examination by eliciting testimony about and offering evidence of agreements by which the cooperating witness testified. The agreements

384

include so-called, quote; truth-telling provisions, closed quote, provisions, which set out the cooperating witnesses promises to testify truthfully, and provisions setting out the penalties for failing to do so.  Such as prosecution for perjury and reinstatement for any charge dropped pursuant to the agreement.  In Certified, the Government also impermissibly bolstered the witnesses when it relied upon these cooperation agreements and those truth-telling provisions in opening and summation.  This is set forth on pages 85 to 897 of the agreement.  Here, the Government does not seek to offer any proffer agreements it made with Johnson into evidence, or to elicit testimony on direct regarding the truth telling provisions in any such agreements.  And for this I'm citing docket number 143 at page 2.  Nor, has the Government made any comments in opening that it, in any way, improperly vouched for the truthfulness of Johnson's testimony.

Mr. Priolo also relies on United States versus Silverman, 430 F.2d 106 at page 125, Second Circuit 2007. This case supports the Government's position.  In Silverman, the Second Circuit found that the trial court did not err in permitting the Government to elicit on direct examination that witnesses were testifying pursuant to a grant of immunity. This is at pages 124 to 125.  The Second Circuit recognized that testimony about the grant of immunity to government

385

witnesses was probative of the witness's credibility, because it tended to show the reluctance to testify, as I noted earlier.

Thus, the Second Circuit held that evidence of a grant of immunity may be brought out on direct evidence examination, provided that the jury is cautioned that the testimony is not evidence of the defendant's guilt. In his motion, Mr. Priolo also cited from United States versus Freeman, 302 F.2d 347 at page 350, Second Circuit 1962, which the Second Circuit cited in Silverman. Which provides the following. Quote, there may be circumstances where, on proper request of the defense, the trial judge did limit or even bar such testimony, or allow it only under cautionary instructions because the prejudice to the defendant of the witness's admission of crime in would outweigh the advantages of full knowledge of the witnesses criminal background. And this is Freeman 302 F.2d at page 350. Second Circuit 1962. In Freeman, the Second Circuit found no such likelihood of prejudice where an alleged coconspirator testified that she had been convicted of possession of narcotics pertaining to the same case as the case in which she was testifying. In Silverman, the Second Circuit did not reach the issue of prejudice because it found that the defense failed to preserve an objection. The defense has not pointed to a case where, under Rule 403, a court precluded a witness's testimony about

386

the fact that the witness was testifying under a grant of immunity from prosecution.

While the defense argues there is a risk of prejudice here, the risk of unfair prejudice to Mr. Priolo does not substantially outweigh the probative value of this evidence for six reasons.

First, under the Second Circuit precedence, the fact this a witness is testifying under an immunity is highly probative of the witness's credibility, whether the witness is testifying favorably for the defense or prosection. Again, this is Dixon. 511 F appendix at page 51. Citing Gleason. 616 F.2d at page 15.

Second, the risk of unfair prejudice here is less than the arguable unfair prejudice in Freeman because Johnson has not been convicted of a crime related to this case, nor was she ever charged or named as a coconspirator prior to her grant of immunity.

Third, the risk of unfair prejudice is also minimized because the Government does not intend to offer Johnson's proffer agreement itself as evidence. The provisions of the agreement that mention Johnson was providing information to the Government about the criminal activity of others would not be presented to the jury.

Fourth, unfair prejudice is further reduced because the Government's intended questioning to elicit testimony

A-233

387

about Johnson's grant of immunity and meeting with the Government in one or more proffer sessions about any substance of those sessions is narrow in scope and duration.

Fifth, the defense will have a full and fair opportunity to cross examine Ms. Johnson.

And six, I will consider any limiting instruction the defense proposes with respect to these questions.

And finally, I emphasize that my ruling should not be interpreted to imply that the Government may elicit testimony from Ms. Johnson about the substance of what was discussed during her proffer sessions with the Government or the substance of her proffer agreement.  That information is hearsay it is not admissible on the exception to the rule of when hearsay applies.

Moreover, unless the defense seeks to attack Johnson's credibility, the Government may not bolster Johnson's testimony in any way.  Including by eliciting testimony referring to any proffer agreement with the Government.

Finally, my ruling is also supported by United States versus Visa Industries Incorporated.  There, the Second Circuit found no error in prosecutions questioning of a witness about their claim of privilege and testimony pursuant to a grant of immunity where the prosecution, quote; merely asked a series of four neutral questions so the jury would

A-234

388

understand the circumstances under which the witness was testifying. The Government did not comment on that witness's claim of privilege in its summation. Pursuant to the witness's grant of immunity, the witness testified at length, and was subject to cross examination by defendants attorneys, and the judge instructed the jury, quote; that it was not to consider the witness's assertion of its privilege in any way against the defendants. This is 775 F.2d 196 at page 496 to 497. Second Circuit 1985.

So for these reasons, the Government can question Johnson on direct to elicit testimony about the fact that she is testifying pursuant to a grant of immunity from prosecution, and the fact that she met with the Government for more proffer sessions prior to her decision to testify. But, number two, the Government cannot question Johnson on direct about the substance of what was discussed during any proffer sessions with the Government because the statements made during those sessions are hearsay, and the Government would have to show that any statements fall under the hearsay exception.

Mr. Froccaro, I've noted your objection, I understand it, but that's my ruling.

MR. FROCCARO: Can I ask a question, Judge? Once they bring up the fact that she has immunity, I can certainly go into that fact without opening any doors. The prior

389

proffer agreement can't come in on that basis.

THE COURT: I do not see the prior proffer agreement coming in.

MR. FROCCARO: So I can do whatever I want. That's the bottom line.

THE COURT: What do you mean you can do whatever you want?

MR. FROCCARO: I apologize. When I say that, I don't mean whatever I want. I mean, I can challenge her credibility, I can challenge the fact that she got immunity and why she may have needed it for whatever reasons, and there's nothing more because that can come in. If they want, they can certainly say there are no prior interview. She -- you know, she was required to tell the truth. Right?

THE COURT: If you attack her credibility, that opens the door for them to provide the truth-telling provisions of the agreement and eliciting testimony about that. Is that what you're asking?

MR. FROCCARO: But there's really a truth telling provision anyway because any interview with a federal agent, you're subject to criminal -- it's a crime if you lie to a federal agent. So that's the bottom line. So my point, Judge, is once immunity comes in, everything is fair game for me then in terms of challenging her credibility.

THE COURT: Yes, I think that you can challenge her

390

credibility, absolutely.  I don't see why you can't challenge credibility.  That then opens the door for them to counter and try to bolster, and we would need to have a sidebar, just to make sure that we're staying in scope.  I mean, the Government also, in terms of what they can say on impeachment, I gave them pretty strict parameters on what they're allowed to do on direct.  Like, they can't go into substance, they can't go into agreements, etcetera.  Now, once you attack credibility, we will need to have a sidebar to discuss the scope of what they anticipate trying to elicit to respond to that.

MR. FROCCARO:  I understand.  I don't think there's anything that they can go into.  We'll argue at the appropriate time.  The question I have, Judge, is what promises have been made to her because she's testifying, she's never been charge.  I have a right to know under Brady where there's been any promise made, why hasn't she been charged with things from the Government?  There certainly should have been discussions about that if she has immunity concerns.  I haven't heard a thing from them about any kind of promises that's been made to her.

THE COURT:  Mr. Dunn?

MR. DUNN:  I think the immunity order speaks for itself in that regard.  It's a court order that she cannot be charged.  The fact that she never was charged is self-evident.

THE COURT:  Well, I think he's raising a different

391

issue.  The defendant wants to know why the grant of immunity was even given in the first place.

MR. DUNN:  Because her lawyer required it, your Honor.

THE COURT:  Well, and that might be her answer.

MR. FROCCARO:  Judge, that's not what the question I had was.  Why hasn't she been charged with a crime?  Immunity is just when she testifies.  What she says can't be used directly or indirectly against her.  What about the nine years I think it's been that she hasn't been charged with a crime.  Was that part of the discussions that she wouldn't be charged with a crime?  A promise of immunity is a benefit if she's going to testify.

THE COURT:  I understand the distinction.  And Mr. Dunn, do you have a concern about that line of questioning?

MR. DUNN:  He's free to inquire, but I will be very plain about this with the facts are.  Just so everybody is operating on the same set of information.  We approached Ms. Johnson, called her through counsel, she's always been represented by counsel, in 2021 about testifying against Sean Novis and Gary Denkberg.  There are no circumstances under which we were able to seek immunity for her at that time because she would not even proffer to be -- she would not interview without a court ordered grant of immunity.  So that's where that discussion ended.  Approximately two years

392

after the Sean and Gary Denkberg trial, we approached her again with counsel. And they agreed to an interview under the protection of the subject proffer letter. And so, that is what began a more productive discussion about securing her testimony. So that continued, you know, over the course of 2024. And we eventually filed a motion that your Honor granted, I believe, in January or, potentially, February, I forget the date, the immunity.

THE COURT: In response to Mr. Froccaro's question, your answer, what I heard, is that he's free to inquire and ask her. Did you get something and is that why they have never prosecuted you.

MR. DUNN: He's free to ask whatever he wishes.

MR. FROCCARO: That's not their Brady obligation. Apparently he doesn't understand Brady. If she had concerns about immunity, your Honor, she could have been changed with something. Was there was a promise made that she would not be charged with something, and they will give her immunity if she wants to testify. That's what Brady is. I'm astounded that a prosecutor will say, I asked that question. It's their obligation to tell me, was there an implicit promise, was there an expressed promise? Why hasn't she been charged? Why does she need immunity if she committed a crime and she hasn't been charged? It's a promise they make.

THE COURT: Do you disagree with that position, Mr.

393

Dunn, that though would be Brady material.

MR. FELDMAN: If we promise a witness that we wouldn't charge her, I agree that would be Brady. But, in this case, it was her lawyer who demanded that she would not testify without a grant of immunity. And so there were no promises about charging or not charging Ms. Johnson. The Government makes charging decisions for all sorts of reasons. Who we charge in different cases, resource issues, you know. The decision in this case was made to charge initially in one indictment; Sean Novis and Gary Denkberg. And a second indictment, Mr. Priolo, Sean Novis and Sean Philips. The decision was made not to charge the employees that worked under those individuals. There was no promise not to charge anyone. It was a decision that was made based on the evidence and it was a decision that was made based on, based on resources and who we felt was the most culpable -- who the office at the time felt was culpable to prosecute.

THE COURT: Yes. But if a promise would have been given, would it be in the proffer agreement.

MR. FELDMAN: Yes, and I think --

MR. FROCCARO: No --

MR. FELDMAN: I haven't read the proffer, but I've seen a lot of standard proffer agreements. But my understanding is the proffer agreement --

MR. FROCCARO: Judge, the answer is no. What it

394

says specifically in everyone I've ever seen in my whole life is this is not a promise that you'll ever get a cooperation agreement. That's what it says. And it's, again, to reach the point where the lawyer says I have to have immunity, you need a good faith basis for that so they can challenge it, if the person had a good faith basis to assert. They have be telling the lawyer we're not going to charge her, we'll get her an agreement. So they can try to couch it any way they want, that's the bottom line. She got a benefit by testifying. She never got charged or they would have --

THE COURT: Mr. Froccaro, I'm just hearing that you're just doubtful of the representation from the Government that she didn't get a benefit, right?

MR. FROCCARO: I'm not doubtful. There is no doubt, your Honor, I'll be honest with you. There is no doubt because I've dealt with immunity situations where I have to appear before duty judges where I tell them my client is going to assert the fifth. And they have challenged it, the Government, saying he has no good faith basis. Well what's the good faith basis the lawyer has that says, hey, she has real concerns. She's not going to testify unless you give her immunity. Well, the Government response has not to, she's not going to be charged with anything, we'll give her immunity. There's no way around that.

THE COURT: I need to stop for a second because I

395

think I'm missing something.  Her lawyer insists she needs immunity in order to testify.  I issue an order that compelled her to testify on the basis of that immunity grant.  So she got a benefit, the benefit is already there.  It's the product of immunity.

MR. FROCCARO:  The real benefit is she didn't get charged with a crime or there wouldn't be a good faith basis for the assertion that she needed immunity, Judge.

THE COURT:  So what you want to know is what crime they didn't --

MR. FROCCARO:  Charge her with, exactly.

THE COURT:  Is that standard Brady material?

MR. FROCCARO:  Absolutely.

MR. FELDMAN:  Your Honor, we agree with Mr. Froccaro that the statute on the charges that we charged his client with had run.  She is represented by very able and experienced counsel; Mark Durant.  We had no intention of charging Ms. Johnson, but, at the same time, her lawyer insisted that she technically had exposure under a RICO statute, and that statute had not run.  And so he would not allow her to testify without a grant of immunity.  So we filed the immunity motion, it was unopposed at the time.  If counsel had an issue with this particular point, he could have raised it at that time. We haven't hidden anything from the defense.  All of this has been turn over.  So I don't quite see how this is Brady

A-242

396

material.

MR. FROCCARO:  Judge, first of all, yesterday it was a five-year statue of limitations, then it's a ten-year, now it's RICO that they're claiming?  And apparently they don't understand the RICO statue as well.  The RICO stature, you can only be subject to prosecution if there's a predicate out within five years, or, if someone else commits -- there's a conspiracy that they committed within five years.  That doesn't exist here.  So you're absolutely wrong.  There is no basis for a RICO prosecution.  The key is here what charges -- they should be disclosing what charges could she have been charged with that are giving rise to the immunity assertion. What charges?  It's a benefit.  She had to have received a benefit if there are charges out there she could have gotten and she didn't.  Instead, she got an immunity letter.  That's the key.

THE COURT:  So at that point, what is the relief that you're seeking?

MR. FROCCARO:  I want to know what crimes she would have been charged with under the statue because, when she takes the stand and says she needs immunity, I have a right to say you didn't need immunity.  I do.  What charges could they have charged you with?  Let's hear from the Government what they are so I can take her through.

MR. FELDMAN:  Your Honor, the other issue is --

A-243

397

THE COURT:  Can you answer that question before you move on to another issue?  Is there information about a charge that could have been levied against Ms. Johnson prior to the application that was not disclosed to defense?

MR. DUNN:  We discussed this yesterday, your Honor. One; the potential charges.  And it can be, I'm fairly sure that can also be brought through the RICO statute as a predicate offense.  But bank fraud, mail fraud, and wire fraud affecting a financial institution, which would be a 10 year statute of limitations.  So this, you know --

MR. FROCCARO:  What financial -- I apologize, Judge. What financial institution?

THE COURT:  Mr. Froccaro, just let him finish, please.

MR. DUNN:  So the longer statute of limitations, whether it's directly through the mail or wire or bank fraud statues or RICO is what prompted Mr. Durant to insist on the immunity order.  And, as Mr. Feldman said, and, as I think I've already said several times this morning, it is self-evident that we did not charge Ms. Johnson in, I believe, 2020, when we initially -- and it was not me, I did not initially indict the case.  But when the department first indicted Sean Novis and Gary Denkberg.  She was not charged. And those are -- that is for the reasons that Mr. Feldman expressed, concerning prosecutorial discretion and those sorts

A-244

398

of decisions. So I am at a loss to understand how the defense does not have the information they need to conduct whatever cross examination. None of that is Brady at this point.

THE COURT: I just want to note one thing. Is that I did, at the February 4, 2025, conference with the parties prior to granted this motion, I did ask for the defense position. At that time, I remember Mr. Froccaro you said something to the effect of I don't think I have a basis to oppose this motion, given the statute language. At that time, you did not raise a concern that the Government's decision to move the Court for an order compelling her to testify under a grant of immunity signaled a lack of disclosure of Brady information.

MR. FROCCARO: I didn't know I have standing. I have no authority to challenge that. I didn't know I would have standing.

THE COURT: I'm making clear that, at that time, it didn't raise alarm bells at that time.

MR. FROCCARO: It's DC based. I can always move your Honor to exclude evidence under 403 that should not come in, or under relevancy. I can't prevent them from making a motion.

THE COURT: That's fair. I'm just simply noting that I raised it with the parties just to get a sense of whether there would be concerns in some way. And at that

399

time, they didn't arise. I understand they have since arisen. And that you raise a 403 issue, which I ruled on. I also, on that note, just want to mention that with respect to Mr. Edelstein, your arguments about United States versus Runner, I don't think that decision changes my ruling. It does not change my ruling because, as I mentioned, my ruling is based on the fact that regardless of whether or not the Government would like to impeach Ms. Johnson, the Government does have the right to do that under Rule 607. And, more importantly, Ms. Johnson's credibility is important for the jury to assess. And the fact that her testimony is being made pursuant to a grant of immunity. Included in a that evaluation. So I'm sorry I didn't note that earlier I wanted to add that additional analysis.

I need the parties to meet and confer on this. Because, Mr. Froccaro, I'm hearing that you believe there is some kind of Brady material that the Government has not provided in light of the grant of immunity from Ms. Johnson. I'm hearing from the Government that they insist that no such material exists and that -- of Mr. Durant, who is not present here today. I did ask the Government to let me know if he was going to be here today in case an issue like this arose, and he is not here.

MR. FROCCARO: Judge, I just don't understand the bank statute, honestly. While they're sitting here, my

A-246

400

credibility, your Honor, is very important.  I always try with every federal judge, and I like to think that my representation is good.  They're giving you three separate scenarios.  He said five years yesterday, money laundering. Then we came up with RICO Mr. Feldman said.  Now we're at bank fraud.  I want a list of what crimes she could probably be charged with because I can't rely on her for that.  If she gives the answer well, I don't know.  Well, what, am I stuck with that?  I need to know what benefit she received and why she needed immunity from them.  What is her exposure?  I can't just rely on her answer.  That's not how Brady works.

THE COURT:  But if the reality is that it's the insistence of her counsel in an abundance of caution, that's the reality.

MR. FROCCARO:  But you need a good faith basis. They gave her a benefit that she had no good faith basis to assert the Fifth.  That's a benefit and a real big benefit.

THE COURT:  But that was an issue that should have been raised earlier because I already issued the order compelling her to testify, and I had the motion which indicated, and I have it right here, that it was the judgment of the undersigned that the witness is likely to refuse to testify on the basis of her privilege against self-incrimination.  That's the Government's representation in their motion.  I had no opposition or concern on the other

401

side, so I granted the order.

MR. FROCCARO:  But, again, I'm doing it now because I --

THE COURT:  So you want me to take back my order compelling to testify?  Is that what you want?

MR. FROCCARO:  I'm sorry, Judge?

THE COURT:  You want me to take back my order compelling her to testify?

(Continued on the next page.)

402

(Continuing.)

MR. FROCCARO: No. Listen I wish you could, but no, I'm not -- honestly, does she have a good faith basis? Yeah. I really think it could, but I don't know that I have a standing to ask Your Honor to do that.

In order to assert, she needs a good faith basis. They should be required to say, what benefit is she getting, what exposure does she have, why the immunity grant was given.

THE COURT: What case law are you relying on for this?

MR. FROCCARO: Judge, I've never heard of the things that have gone on so far in this case. I can't tell you a case off the top of my head, but they should know what benefits -- what hasn't she been charged with to this point she needs an immunity order? It's simple on their end. Her lawyer -- it's not up to her lawyer. It's up to them. The lawyer doesn't make prosecuting decisions. As far as I know, in all my experience, it's the prosecutors. They shouldn't have given her immunity if there's nothing they're exposed to, but they did so it will color her testimony like she's being much more credible.

But what charge is she not being charged with? That's the key.

EDNY 11/2025

AO 245B (Rev. 11/25)   Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

## Eastern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>Philip Priolo | ) **JUDGMENT IN A CRIMINAL CASE**<br>)<br>)<br>) Case Number: 2:21CR00566-003(NJC)<br>)<br>) USM Number: 73783-509<br>)<br>) Arthur L. Aidala, Esq.<br>) Defendant's Attorney |

**THE DEFENDANT:**

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☑ was found guilty on count(s)   Counts Two (2) through Six (6) of an eight-count Indictment
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §§ 1349, 1341, 1343 | Conspiracy to Commit Mail Fraud and Wire Fraud | 12/31/2016 | TWO (2) |
| 18 U.S.C. § 1341 | Mail Fraud | 11/21/2016 | THREE (3) |

   The defendant is sentenced as provided in pages 2 through ___8___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

   It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

11/18/2025
Date of Imposition of Judgment

/s/ Nusrat J. Choudhury
Signature of Judge

NUSRAT J. CHOUDHURY U.S.D.J.
Name and Title of Judge

11/19/2025
Date

A-250

AO 245B (Rev. 11/25)   Judgment in a Criminal Case
Sheet 1A

Judgment—Page  2  of  8

DEFENDANT:  Philip Priolo
CASE NUMBER:  2:21CR00566-003(NJC)

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1341 | Mail Fraud | 12/11/2016 | FOUR (4) |
| 18 U.S.C. § 1341 | Mail Fraud | 12/15/2016 | FIVE (5) |
| 18 U.S.C. § 1341 | Mail Fraud | 12/21/2016 | SIX (6) |

A-251

AO 245B (Rev. 11/25) Judgment in Criminal Case
Sheet 2 — Imprisonment

DEFENDANT:  Philip Priolo                                                    Judgment — Page __3__ of __8__
CASE NUMBER:   2:21CR00566-003(NJC)

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
COUNTS TWO (2) THROUGH SIX (6): FORTY TWO (42) MONTHS CUSTODY ON EACH COUNT TO RUN CONCURRENTLY

☑ The court makes the following recommendations to the Bureau of Prisons:
   Federal Prison Camp Miami, Florida.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

   ☐ at _____ ☐ a.m.  ☐ p.m.   on _____ .

   ☐ as notified by the United States Marshal.

☑ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☑ before 2 p.m. on    2/2/2026                   .

   ☐ as notified by the United States Marshal.

   ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

A-252

AO 245B (Rev. 11/25)   Judgment in a Criminal Case
　　　　　　　　　　Sheet 3 — Supervised Release

Judgment—Page __4__ of __8__

DEFENDANT:   Philip Priolo
CASE NUMBER:   2:21CR00566-003(NJC)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

COUNTS TWO (2) THROUGH SIX (6):  TWO (2) YEARS OF SUPERVISED RELEASE ON EACH COUNT TO RUN CONCURRENTLY

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☑ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 11/25)    Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page ___5___ of ___8___

DEFENDANT: Philip Priolo
CASE NUMBER: 2:21CR00566-003(NJC)

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines based on your criminal record, personal history and characteristics, and the nature and circumstances of your offense, you pose a risk to another person (including an organization), the probation officer, with prior approval of the Court, may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

A-254

AO 245B (Rev. 11/25)    Judgment in a Criminal Case
Sheet 3D — Supervised Release

Judgment—Page __6__ of __8__

DEFENDANT: Philip Priolo
CASE NUMBER: 2:21CR00566-003(NJC)

## SPECIAL CONDITIONS OF SUPERVISION

The defendant shall perform 400 hours of community service in a manner approved by the U.S. Probation Office. The defendant will cooperate in allowing the U.S. Probation Office to confirm that all 400 hours of community service is completed.

The defendant shall cooperate with the United States Probation Department in the investigation and approval of any position of self-employment, including any independent, entrepreneurial, or freelance employment or business activity. If approved for self-employment, the defendant shall provide the United States Probation Department with full disclosure of their self-employment and other business records, including, but not limited to, all of the records identified in the Probation Form 48F, or as otherwise requested.

Upon request, the defendant shall provide the United States Probation Department with full disclosure of his financial records, including co-mingled income, expenses, assets, and liabilities, to include yearly income tax returns. Except for the financial accounts reported and noted within the presentence report, the defendant is prohibited from maintaining and/or opening any additional individual and/or joint checking, savings, or other financial accounts, for either personal or business purposes, without the knowledge and approval of the United States Probation Department. The defendant shall cooperate with the Probation Officer in the investigation of his financial dealings and shall provide truthful monthly statements of his income and expenses. The defendant shall cooperate in the signing of any necessary authorization to release information forms permitting the United States Probation Department access to his financial information and records.

A-255

AO 245B (Rev. 11/25)    Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page __7__ of __8__

DEFENDANT: Philip Priolo
CASE NUMBER: 2:21CR00566-003(NJC)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* |
|---|---|---|---|---|
| TOTALS | $ 500.00 | $ | $ 1,250,000.00 | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| | Total Loss*** | Restitution Ordered | |
|---|---|---|---|
| TOTALS | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the    ☐ fine    ☐ restitution.

    ☐ the interest requirement for the    ☐ fine    ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

A-256

AO 245B (Rev. 11/25)    Judgment in a Criminal Case
                        Sheet 6 — Schedule of Payments

Judgment — Page __8__ of __8__

DEFENDANT: Philip Priolo
CASE NUMBER: 2:21CR00566-003(NJC)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☑  Lump sum payment of $ __500.00__ due immediately, balance due

    ☐ not later than _____ , or
    ☑ in accordance with ☐ C,   ☐ D,   ☐ E, or   ☑ F below; or

B  ☐  Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☑  Special instructions regarding the payment of criminal monetary penalties:
    $1,250,000 FINE IMPOSED DUE IMMEDIATELY.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate |
|---|---|---|---|
| | | | |

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

A-257

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK (CENTRAL ISLIP)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v-<br><br>SHAWN PHILLIPS, et al.,<br>Defendants. | **NOTICE OF APPEAL**<br><br>Case No. 21-cr-00566 |

Notice is hereby given that Defendant Philip Priolo appeals in the above-captioned case to the United States Court of Appeals for the Second Circuit from the judgment of conviction and sentence entered on November 19, 2025, and from all rulings and orders adverse to him.

Dated: December 5, 2025

Arthur L. Aidala, Esq.
Aidala, Bertuna & Kamins, P.C.
546 Fifth Avenue, 6th Floor
New York, New York 10036

cc: United States Attorney's Office